THE LAW OFFICES OF WILLIAM W. PALMER
WILLIAM W. PALMER – State Bar No. 146404
1241 Carter Road
Sacramento, California 95864
Telephone : (916) 972-0761

Attorney for Plaintiffs Chris Lusby Taylor,
Nancy A. Pepple-Gonsalves

**FILED**

DEC 3 1 2001

CLERK, U. S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LUSBY TAYLOR, NANCY A. PEPPLE-GONSALVES, <br><br> On behalf of themselves and other persons similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> KATHLEEN CONNELL, in her capacity as STATE CONTROLLER OF THE STATE OF CALIFORNIA, <br><br> Defendant. | **CIV.S- 0 1 - 2 4 0 7 FCD GGH** <br> Case No.: <br><br> CLASS ACTION COMPLAINT FOR: <br><br> (1.) DECLARATORY RELIEF; <br><br> (2.) VIOLATION OF 42 U.S.C. § 1983 (Procedural Due Process Fourteenth Amendment Violations); <br><br> (3.) VIOLATION OF 42 U.S.C. § 1983 (Takings Clause of the Fifth Amendment Violations); <br><br> (4.) VIOLATION OF 15 U.S.C. §§ 77a-77bbb, 78a-78hh (Federal Securities Laws Violations); <br><br> (5.) VIOLATION OF CAL. C.C.P. § 1300, et seq. (Unclaimed Property Law, C.C.P. §§1300, et. seq., Violations); <br><br> (6.) INJUNCTIVE RELIEF; <br><br> (7.) ACCOUNTING; <br><br> (8.) ATTORNEY FEES AND COMMON FUND. <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Chris Lusby Taylor and Nancy A. Pepple-Gonsalves (collectively, the "Plaintiffs"), by their undersigned counsel, as and for their Complaint against Kathleen Connell, the Controller for the State of California (hereinafter, "Defendant" or "Controller"), hereby allege as follows:

I.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§1331, 1343, 2201, and 2202. This action arises under the "Takings Clause" of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article I, Section 10 of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant's official office is in the judicial district, and pursuant to 28 U.S.C.§ 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

II.

## PARTIES

### A. Plaintiffs

3. Plaintiff Chris Lusby Taylor is an individual who resides in England and holds 52,224 shares of stock among other investments in Intel Corporation.

4. Plaintiff Nancy A. Pepple-Gonsalves currently resides in the Riverside County, California, and owns 7000 shares of stock in TWA.

### B. Defendant

5. Defendant Kathleen Connell holds the elected position of Controller for the State of California.

## CLASS ACTION ALLEGATIONS

6. This is a class action brought by Plaintiffs on their own behalf and on behalf of all other shareholders similarly situated pursuant to F.R.C.P. 23(b)(1)(A) and 23(b)(2). The proposed class consists of all individuals who are or were, at any time between 1989 to present stockowners whose investments were confiscated and sold by Defendant without notice and due process.

7. Although the exact number, identity, and location of persons in the proposed class is readily discernable based on the Defendant's own records for the period 1989 to present. Based on information and belief, the number of persons in the proposed class will be in excess of 10,000. Those persons in the class are therefore so numerous that joinder of the entire proposed class is impractical. The Class is composed of numerous residents of California, as well as persons and businesses disbursed throughout the United States and other countries, the joinder of whom is impracticable. The disposition of their claims in the Class action will provide substantial benefits to the parties and to the Court.

8. There are questions of law and fact common to all members of the proposed class, to-wit, whether Defendant has complied with the Constitutional and statutory requirements for the taking and sale of stock investments.

9. Plaintiffs' claims are typical of those of the members of the proposed class, who are subject to the same deprivations of their property and rights as shareholders. There is a well-defined community of interest in the questions of law and fact involved in this case. The issues and questions of fact and law are common to the members of the Class that predominate over questions that may affect individual members.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road - Sacramento - California - 95864
TELEPHONE (916) 972-8764

1    10. Plaintiffs can adequately represent the interests of the members of the proposed class.

2    They have no interests relevant to the lawsuit's subject matter antagonistic to the class members.

3    Their attorney has experience in litigation, including class actions, involving issues identical or

4    similar to those raised in this action.

5

6    11. Because Defendant's duties to comply with the Constitution apply equally to all in

7    the proposed class, the prosecution of separate actions by individual class members would create

8    a risk of inconsistent or varying adjudications which would establish incompatible standards of

9    conduct for Defendant.

10

11   12. Defendant's actions and threatened actions are depriving and will deprive Plaintiffs

12   and members of the proposed class of their Constitutional rights on grounds generally applicable

13   to all, thereby making appropriate declaratory, injunctive and equitable relief and § 1983 claims

14   with regard to the proposed class as a whole.

15

16   13. A class action is superior to other available methods for the fair and efficient

17   adjudication of this controversy.

18                                        IV.

19   **EQUITABLE ESTOPPEL AND THE TOLLING OF THE STATUTE OF LIMITATIONS**

20   14. As a result of Defendant's acts, omissions, misrepresentations, and practices

21   described herein, any statute of limitation applicable to the claims asserted in this Complaint has

22   been tolled or is equitably estopped. Through such acts, omissions, misrepresentations, and

23   practices, Defendant was able to conceal from Plaintiffs the material facts involving their

24   investments. Though Defendant was under common law and statutory duties, Defendant

25   intentionally and/or negligently failed to follow the statutes and common law altogether so that

26   her actions were *ultra vires* insofar as Defendant failed to notify and afford Plaintiffs due process

27

28

- 4 -
CLASS ACTION COMPLAINT

1    after seizing and prior to the sale of their stock investments. Plaintiffs and members of the
2    general public were deliberately mislead and deprived of material facts regarding their ownership
3    of securities and in fact Defendant made every effort to interfere with and divest Plaintiffs of
4
5    their stock-related rights and privileges without due process. Based, among other things, on
6    Defendant's breach of her statutory obligation to notify Plaintiffs, Defendant is estopped from
7    asserting a statute of limitations and has waived any such defense.

8        15. Specifically, Plaintiffs could not have known Defendant was engaged in the illegal
9    activities described above. Plaintiffs only discovered these facts after a detailed investigation
10
11   that included hiring an attorney in California, reviewing applicable law, and obtaining the
12   information at their own expense that Defendant was obligated by law to provide.

13       16. Plaintiffs had a right to rely upon Defendant, who had common law and statutory
14   duties, and who took an oath as an elected official to uphold the constitutions of the United
15
16   States and the State of California, which included affording Plaintiffs constitutionally sufficient
17   notice and due process prior to the seizure and sale of their private stock investments and
18   appraising them of the true facts relating to their investments.

19                                           V.

20
21                          **NATURE OF THIS ACTION**

22       17. This action is based on the unconstitutional conduct of Defendant under color of state
23   law. Plaintiffs and Class Members are stockholders and investors living in California, the United
24   States, and other countries, who have invested in United States Corporations.

25       18. Plaintiffs allege that the Defendant has unlawfully seized and is in possession of
26
27   Plaintiffs' stock and those investments of similarly situated shareholders and that the Defendant is
28   illegally withholding the stock investments or has sold them. Plaintiffs allege that their stock

CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

1  investments were taken from them without their knowledge and sold by the Controller under color of

2  state law without notice and due process.

3
4       19. As such, Defendant's conduct is *ultra vires* insofar as she acted beyond her authority and

5  outside her constitutional office in direct violation of the United States and California Constitutions.

6  Defendant is the elected official charged under the California Constitution with overseeing the

7  estimated $2.7 billion Unclaimed Property Fund for the State of California. Defendant's actions

8  were allegedly first prompted by a lack of funds during the period of 1989 to 1994. (See Exhibit A –

9
10  an internal history of mishandled stock prepared by the Controller and incorporated herein by

11  reference.) The lack of funding allegedly precluded Defendant from providing direct mail notice to

12  known owners of stock and publication notice as required by the United States and California

13  Constitutions and relevant statutory sections of the Unclaimed Property Law, California Code of

14  Civil Procedure sections 1300, et. seq. (herinafter,"UPL").

15
16       20. The same California budgetary crisis prompted the Controller to increase efforts to audit

17  companies, banks, and other financial institutions, typically referred to as "Holders" under the UPL,

18  and to seize private stock investments, under threat of fine. Because of California's worsening

19  budget crisis, which was exacerbated by roughly $50 billion in electricity purchases during 2001, the

20  Controller has stepped up and increased her efforts to seize stock investments from private savings,

21
22  retirement, and employee stock plans.

23       21. Starting in 1989, Defendant further made a series of unpublished, internal policy

24  decisions, such as the decision to immediately sell all stock certificates received or in the possession

25  of the state, which was later authorized by statute, and to relax enforcement of UPL provisions that

26
27  required the Holders to locate "lost" shareholders. The UPL provisions applicable to Holders - the

28  companies and banks - required that the stock investments would only escheat if the identities or the

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California 95864
TELEPHONE (916) 972-1764

**CLASS ACTION COMPLAINT**

THE LAW OFFICES OF
William W. Palmer
1211 Exeter Road – Sacramento – Folsom, Illinois, 95864
TELEPHONE: (916) 972-8764

1    owners were "unknown" or "lost," after a 7-year dormancy period. As evidence of whether a

2    shareholder has abandoned stock, the Holder is required to review whether an investor has failed to

3    cash dividends, respond to proxy notices, or otherwise failed to communicate with the Holder.

4

5        22. At the Controller's urging, the dormancy period was later shortened by the legislature

6    from 7-years to 5-years, and, in 1995, further reduced to a 3-year window of time. Thus, for

7    example, if a stockowner fails to respond or to communicate during the 3-year time period, the

8    Controller has concluded that she is entitled to seize and to immediately sell the private stock

9    investment without notice to the investor. The Controller accomplishes the seizure by requiring the

10

11   corporations and their agents to create a list of the so-called "lost" and "unknown" shareholders and

12   to generate duplicate shareholder certificates.

13       23. Plaintiffs allege that the Holders either failed or were precluded by Defendant from

14   taking appropriate action under the relevant federal and state securities laws. The Holders, which are

15   the publicly traded corporations and their agents, are required to exercise due diligence in order to

16

17   avoid the presumption of abandonment, act in good faith, maintain accurate records, and provide

18   written notice to Plaintiffs and Class prior to divesting the shareholders of their investments.

19       24. Plaintiffs allege that the Defendant, using color of law, interfered with the contractual

20

21   and fiduciary relations that run from corporations and their agents to Plaintiffs, who are minority

22   stock investors. At times, Defendant sent her agents outside the State of California and to other states

23   in order to force the surrender of stock investments, which was done under threat of fines and

24   penalties issued by Defendant against the corporations and their agents. The Controller hired agents

25   through improper "sole-source" contracts, which is in and of itself a violation of state guidelines.

26

27   The agents were then paid a consulting fee together with a "bounty" or percentage of all investments

28   seized from the companies located in the different states. In order to comply with the Controller's

-7-

1    demands, the Holders separately surrendered duplicate stock certificates and then delivered a list of

2    the investors' names to the Controller. Once the Controller received the duplicate certificates, the

3
     stock investments were sold through private brokers and the proceeds were deposited in the general
4
5    fund for the State of California.

6        25. Starting in or about 1995, the Controller and her staff made the purposeful decision to

7    disregard the Controller's notice and due process obligations altogether. The Controller determined

8    that it was "impractical" and not cost efficient to publish the individual names, addresses and stock
9
     information as required by statute, nor was it necessary to notify known stockowners with direct mail
10
11   notice. Instead, the Defendant determined that generic "block ads" were sufficient constitutional

12   notice to the owners of the stock investments. (See Exhibit B for examples of the "block ads" and

13   other generic advertisements.) Consequently, the investors whose stock was seized and sold by the

14   Controller have no reason to suspect that their investments were taken. In many instances the

15   investors hold the original stock certificates and have received no notice that their stock was taken
16
17   from them and sold by the Controller.

18       26. Thus, as discussed in greater detail below, Defendant's actions in taking possession of

19   Plaintiffs' and Class Members' stock investments without notice and due process or the

20
     knowledge and consent of the Plaintiffs and Class violates the express provisions of the UPL, state
21
22   and federal securities laws, and the California Constitution, Article I, §§ 7, 15 and, the "due

23   process" clauses of the United States Constitution, Fifth and Fourteenth Amendments, the latter

24   of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due

25   process of law," and the Contract Clause of Article I, Section 10 of the United States
26
     Constitution.
27

28   ///

THE LAW OFFICES OF
William W. Palmer
1244 Carter Road - Sacramento - California - 95864
TELEPHONE (916) 572-4561

## FACTUAL ALLEGATIONS

### A. The Plaintiffs And Their Stock Investments.

27. Plaintiffs are typical of stockholders around this country and other countries who acquire stock and hold the securities in publicly traded American corporations. For example, Chris Lusby Taylor is a resident of England and worked on the development of the microprocessor for Intel Corporation during the period of roughly 1978 to 1983. His wife was the General Counsel for Intel Corporation in Europe. In exchange for his contributions to Intel, he was allowed to invest a portion of his income in Intel for which he received serialized stock certificates. Chris Lusby Taylor also received stock options, which he later redeemed for more Intel stock, and he received a pension. To this day, Intel continues to correspond with Chris Lusby Taylor regarding his stock and his pension fund and the company knows precisely where he lives. However, sometime in or about 1992, the Controller caused Intel to issue duplicate stock certificates representing the stock owned by Chris Lusby Taylor, and roughly 600 of his European colleagues, which Defendant then unlawfully seized the shares of stock and sold them without notice and due process. As a result of the Controller's actions, Chris Lusby Taylor and the other men and women who assisted in the formation of Intel Corporation hold original stock certificates that are now worthless.

28. Nancy A. Pepple-Gonsalves was a flight attendant for twenty years and set aside a portion of her salary to invest in TWA, which eventually totaled 7000 shares of stock. In or about 1990, the Controller caused TWA to issue duplicate stock certificates, representing Ms. Pepple-Gonsalves shares of stock, which the Defendant sold, without notice or due process, and then deposited the proceeds in the general fund. As with Chris Lusby Taylor, the company at all

**CLASS ACTION COMPLAINT**

THE LAW OFFICES OF
William W. Palmer
1241 Corner Road - Sacramento - California - 95864
TELEPHONE (916) 972-0761

1  times knew precisely where Nancy A. Pepple-Gonsalves lived in the State of California, or could
2  readily have located her using her Social Security Number. However, like Chris Lusby Taylor,
3  the Controller made the arbitrary and capricious determination that she was "lost" and
4  "unknown" and used this decision to justify the unlawful seizure of her stock investments. Nancy
5  A. Pepples-Gonsalves is typical of 2,000 other TWA stockholders who had their shares in the
6  company unlawfully seized by the Defendant.

## B. The Decision To Sell Plaintiffs' Stock Investments.

29.  Since the inception of the Unclaimed Property program until 1989 the internal policy
of the Controller's Office was to retain a "position", or set of securities certificates in stock that
escheated to the Controller under the UPL, so that stockowners who filed claims with the
Controller could be paid later in certificate form. Pursuant to the UPL, the Holders delivered a
list of "lost" or "unknown" stockowners to the Controller along with a separate set of duplicate
shareholder certificates. Thus, duplicate certificates are delivered to the Controller along with a
list of the purported owners of the stock for each publicly traded company. However, because the
stockowner still retains the original certificates and in some instances is actively communicating
or employed by the company, the individual, such as Plaintiffs and Class Members, would have
no reason to suspect their investments are being seized and sold by the Controller for the State of
California.

30.  The UPL operates under the legal fiction that an individual has abandoned his
investment if certain indicia are met, such as the failure to cash dividends, vote on a merger, or
mail in a proxy over an extended period of time. Until the 1970s, the period of time was 16
years, which was shortened in 1990 to seven years, and then further shortened to five years, then,
in 1995, shortened to three years. As California became increasingly cash-strapped, the UPL

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road • Sacramento • California • 95864
TELEPHONE (916) 972-1141

- 10 -

1  was identified by the Controller as a revenue source, and the period of presumptive abandonment

2  was shortened to three years, and is in some cases arbitrarily shortened even further to as little as

3
4  six months.  Thus, the Controller now presumes abandonment and seizes and sells stock

5  investments after a period of as little as or less than three years if the investor fails to cash a

6  dividend, vote, or mail in a proxy.

7  31. The Controller takes these actions though the individual is known to the company

8  and a list of the known owners of the stock is provided to the Controller that includes, in nearly

9
10  every case, the stockowners' addresses, taxpayer and social security numbers. The Controller

11  sells the investments and deposits the bulk of the $2.7 billion in unclaimed property in the

12  general fund.

13  32. Only a small fraction of the unclaimed property, perhaps $20 million, is maintained

14  as "petty cash" on hand to cover the needs of those individuals who step forward to claim their

15
16  investments. The original rationale for maintaining a stock position was so that claimants could

17  be paid in certificate form as they stepped forward to claim their property. (See page 2 of

18  Exhibit A.) The original policy of payment in certificate form avoided exposure to the

19  fluctuations of the stock market and the situation where the Controller may have sold stocks for a

20  loss, due to the appreciation of the stock market. The unwritten rule created by policy makers at

21  the Controller's Office prior to 1989 is that they did not feel that the Controller should be

22  exposed to liability based on the increased value of the given stock investment, hence the internal

23  policy of compensating the owner in certificate form.

24  33. Beginning in 1989, this unwritten internal policy of compensating the claimant in

25
26  certificate form was discarded by the Controller, and other internal policies discussed below,

27  were permanently changed.

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road - Sacramento - California 95864
TELEPHONE (916) 972-8764

**CLASS ACTION COMPLAINT**

## C. The Controller's Decision to Disregard Notice and Due Process Obligations.

34. Plaintiffs allege that after 1989 the Controller disregarded her legal obligations to provide direct mail notice and publication notice to investors upon their seizure of their stock investments.

35. Additionally, until 1989, the Bureau of Unclaimed Property published the stockowner's names in newspapers, as required by law, in each of the 58 counties in California that listed a named owner's last known address, as indicated on the Controller's computer files. In the mid-1980s the Controller also used a Locator Unit with a staff of three people that attempted to locate owners and return their property to them. Both common law and statute require that the Controller actively locate the owners of property so that the property may be returned.

36. Funding for both the Locator Unit, direct mail to owners, and the publication of names in the newspapers was not available after 1989. (See page 2 of Exhibit A.) In 1994, some publication funding was restored, and the Bureau began placing generic "block ads" (see Exhibit B) in newspapers of wide circulation. In November 1994 the "block ads" began running and were, in theory, designed to cover property reports and notices that required under the UPL for the period running from 1990 through 1993. As Exhibit B graphically illustrates, the collection of block ads are generic, nonspecific, and contain a coupon that a member of the public might mail to the Controller's office in order to determine, in theory, whether the state was holding lost property for the given member of the public. The block ads provide no notice to Plaintiffs and Class Members who are in many instances holding original shareholder certificates and thus would have no reason to suspect that Defendant has seized their investments. The bottom of

## CLASS ACTION COMPLAINT

1     each generic "block ad" contains a footnote that states the advertisements are "*in lieu of*" the

2     Controller's statutory duties to provide notice and due process.

3
    37. In or about 1995 another internal policy decision was made by the Controller to
4
5     permanently adopt the "block ad" as the only notice that would be provided to stockowners when

6     their investments were seized and sold by the Controller. This decision was based on

7     expediency, cost, and the "impracticality" of publishing thousands of names and property

8     descriptions of the supposedly "lost" and "unknown" stockowners in newspapers.

9
    38. Also, beginning in 1995 the Controller began publishing the "block ads" at times of
10
11     the year that were calculated to minimize the number of members of the public who would see

12     the advertisements, such as just before major holidays when many people leave for or on

13     vacation. The rationale of the Controller for publishing the advertisements during these off-

14     times is that her limited staff is unable to handle the large influx of calls generated by the

15
    advertisements.
16

17     39. Thus, no direct mail notice or any meaningful notice was provided to known owners

18     of shares of stock as their property was confiscated by the Defendant, who then sold their stock,

19     again without notice. The block ads were so inadequate that claimants were afforded no

20
    reasonable opportunity to learn of the escheat proceeding and of its effect on their claims, or to
21

22     appear in order to protect their stock and property rights. Plaintiffs allege that the Controller's

23     actions are unconstitutional and that their stock investments were seized and sold without their

24     knowledge under color of state law. As illustrated by the Plaintiffs, one of whom resides in

25     England, the Controller took these steps outside the boundaries of the State of California.

26
    ///
27

28     ///

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road— Sacramento— California, 95864
TELEPHONE (916) 972-8761

CLASS ACTION COMPLAINT

## D. **Defendant Violated her Constitutional Duties.**

40. The Controller is obligated by her oath of office to uphold the California and United States Constitutions. Plaintiffs allege that the seizure and sale without notice and due process of a citizen's property, such as their stock investments by an elected officer of the government, such as Defendant, is a gross violation of the law and repugnant to our form of government. Specifically, Plaintiffs allege that Defendant's conduct violated the California Constitution, Article I, §§ 7, 15 and, the United States Constitution, Fourth, Fifth, and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law," and the Contract Clause of Article I, Section 10.

## E. **Defendant's Conduct Further Violated And Interfered With California and Federal Securities Laws.**

41. Defendant's conduct further violates the Federal Securities Acts (and the State of California's own Corporations Code or *"Blue Sky Laws"*) that are designed by congress to protect investors. Among other things, these laws expressly preclude interference with its citizens' stock investments.

42. For example, the Securities Act of 1933 (15 U.S.C. §§ 77a-77bbb) and the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78a-78hh) (hereinafter referred to as the "1933 Act" and the "1934 Act") are designed specifically to protect members of the public, such as Plaintiffs and Class, and their stock investments.

43. The federal securities rules set forth in Sections 11 and 12(1), 12(2), 13(e) of the 1933 Act, and Sections 13(e), 13e-3, 14(a), 14(e), 15(c)(1), 16(b), and 18 of the 1934 Act are designed to protect the public and stock investors like Plaintiffs and Class, thus guaranteeing them the right to transfer and hypothecate their shares of stock as they please, to receive timely material information on their investments, to vote on shareholder issues, etc. These federal laws

- 14 -

THE LAW OFFICES OF
William W. Palmer
1211 Carter Road · Sacramento · California · 95864
(916) 978-0701 · Fax (916) 978-0702

1  as enacted by Congress and other common laws further specify that a corporation must provide

2  timely, material information regarding an individual's investments. Furthermore, these laws

3  specify that a fiduciary relationship exists and runs from the corporation, its board of directors,

4

5  and majority shareholders to minority stock investors like Plaintiffs. Defendant's unlawful

6  conduct interfered with the federal and state securities laws and fiduciary relationships that were

7  designed to protect Plaintiffs and Class Members.

8  44. The unlawful seizure of Plaintiffs' and Class Members' stock by Defendant without

9  notice and due process violates Federal Securities laws and directly interferes with the

10  application of the federal laws, such as the 1933 Act and the 1934 Act, that were designed and

11

12  enacted by our federal Congress to protect the public.

13  45. The Defendant interfered with the common law and statutory fiduciary duties that

14  run from corporations, boards of directors and majority shareholders in favor of Plaintiffs. Using

15  unconstitutional, unstated criteria, Defendant audited and threatened to fine any company that

16

17  did not surrender stock. The stock was then transferred to private stockbrokers and sold and the

18  proceeds used as a revenue stream to balance the State of California's budget.  At no time was

19  the Controller authorized by Plaintiffs and Class Members to confiscate their stock.  The

20  Plaintiffs did not otherwise cause title to transfer to the Defendant as required by U.C.C. Article

21

22  8, which guides the transfer of stock in California and the United States. Consequently, the stock

23  is not and has never been the property of the Controller or the State of California, but remains the

24  private property of Plaintiffs and Class.

25  ///

26

27  ///

28  ///

- 15 -

**F. The Controller Violated Her Own State Laws, Such As The Unclaimed Property Act (UPL), Code of Civil Procedure §§ 1300, et. Seq. So That Her Actions Are *Ultra Vires* And Outside The Law.**

46. A fundamental purpose of the Unclaimed Property Law (UPL) that the Defendant swore to uphold is to protect <u>unknown</u> owners by locating them and restoring their property and to give the state the benefit of the use of it. Defendant breached the UPL by confiscating the property of "known" owners, without notice, and selling their stock investments without their knowledge. Plaintiff alleges specific examples of the statutory breaches as follows:

**1. Defendant Failed To Determine Whether Plaintiffs Met The Threshold Requirements Of The UPL And Whether They Were Truly "Lost" And "Unknown."**

47. Defendant is charged with the responsibility of upholding the UPL and protecting the public from its misapplication. At all times Plaintiffs allege that their identities and locations were known, or should have been known to the Holders and the Controller upon exercise of reasonable due diligence. Defendant simply failed or refused to carry out her statutory obligations to police the Holders and require them to notice Plaintiffs prior to escheat as required by the UPL, state and federal securities laws, and the Holders' common law fiduciary duties.

48. As evidence of this fact, several of the Plaintiffs and Class have received mail at their current addresses from the various companies and agents within the last year, though their identities were supposedly unknown to the Holders the late 1980s and early 1990s. In fact, in or about December of 2000, TWA began returning stock to various shareholders, whose identities were listed as lost and "unknown" and among the lists maintained by Defendant.

49. The UPL in effect became a tool for some Holders (companies and banks) to divorce themselves from unwanted shareholders, which resulted in obvious advantages to the Holders in

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road · Sacramento · California · 95864
TELEPHONE (916) 972-0761

**CLASS ACTION COMPLAINT**

the form of reduced administrative costs, increased retained earnings, and increased control among the remaining shareholders, among other advantages.

## 2. Defendant Failed To Provide Statutory Notice And Publicly Stated That She Has Only A "Moral" Duty To Provide Notice And Due Process.

50. Defendant publicly disaffirmed her notice and due process obligations, publicly stating through her agents that she has only a "moral" obligation to notify stockowners when she seizes and sells their investments. Between the years 1989 through 1994, Defendant lacked the budget and consequently did not provide notice and due process to Plaintiffs and Class. Under California Code of Civil Procedure section 1531, the Controller was expressly required to provide notice to the Plaintiffs both by publication of notice and through direct mail and publication within fixed periods of time. Specifically, during the period from 1984 to 1990, section 1531 required direct mail notice and publication notice within set periods of time so that the relevant provisions read, in pertinent part:

(a) Within 150 days after the receipt of property as required by Section 1532, the Controller shall cause a notice to be published, in a newspaper of general circulation which the Controller determines is most likely to give notice to the apparent owner of the property. The Controller need not publish any name the publication of which is not likely to give notice to the apparent owner of the property. The Controller need not publish any name the publication of which is not likely to give notice to the apparent owner.

(b) Each published notice shall be entitled "notice of names of persons appearing to be owners of unclaimed property" and shall contain the names in alphabetical order.

(c) Each published notice shall also contain a statement that information concerning the amount or description of the property may be obtained by any persons possessing an interest in the property by addressing any inquiry to the Controller.

(d) ....

(e) Within 120 days from the filing date for filing the report required by Section 1530, the Controller shall mail a notice to each person having an address

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 17 -

1    listed therein who appears to be entitled to property of the value of $25 or more
2    escheated under this chapter.

3    (f) The mailed notice shall contain:
              (1) A statement that, according to a report filed with the Controller,
4    property is being held to which the addressee appears entitled.
              (2) The name and address of the person holding the property and
5    any necessary information regarding changes of name and address of the
6    holder.
              (3) A statement that, if satisfactory proof of claim is not presented
7    by the owner to the holder by the date specified in the published notice,
     the property will be placed in the custody of the Controller and all further
8    claims must be directed to the Controller.

9

10   51. Section 1531 was subsequently amended so that between the years 1991 to 1996 the

11   relevant subsections state:

12
              (a) Within one year after payment or delivery as required by Section 1532,
13   the Controller shall cause a notice to be published, in a newspaper of general
     circulation which the Controller determines is most likely to give notice to the
14   apparent owner of the property. The Controller need not publish any name the
     publication of which is not likely to give notice to the apparent owner of the
15   property.
16
              (b) Each published notice shall be entitled "notice of names of persons
17   appearing to be owners of unclaimed property" and shall contain the names in
18   alphabetical order.

19
              (c) Each published notice shall also contain a statement that information
20   concerning the amount or description of the property may be obtained by any
     persons possessing an interest in the property by addressing any inquiry to the
21   Controller.

22
              (d) ….
23
              (e) Within 180 days after payment or delivery of escheated property as
24   required by section 1532, the Controller shall mail a notice to each person having
     an address listed therein who appears to be entitled to property of the value of $25
25   or more escheated under this chapter.
26
     52. As of 1997, section 1531 reads:
27
              (a) Within one year after payment or delivery of escheated property as
28   required by Section 1532, the Controller shall cause a notice to be published, in a

                                         - 18 -
     _____
                             CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1244 Carter Road - Sacramento - California - 95864
TELEPHONE (916) 972-0761

1    newspaper of general circulation which the Controller determines is most likely to
2    give notice to the apparent owner of the property.

3        (b) Each published notice shall be entitled "notice to owners of unclaimed
     property."
4

5        (c) Each published notice shall also contain a statement that information
     concerning the amount or description of the property may be obtained by any
6    persons possessing an interest in the property by addressing any inquiry to the
     Controller.
7

8        (d) If an account paid or delivered to the Controller pursuant to Section
     1532 includes a social security number, the Controller shall request the Franchise
9    Tax Board to provide a current address for the apparent owner on the basis of that
     number. The Controller shall mail a notice to the apparent owner for whom a
10   current address is obtained if the address is different than the address previously
11   reported to the Controller.

12

13       53. Beginning in 1989 and continuing to present, Defendant knowingly failed to provide

14   notice by publication and direct mail as required by Code of Civil Procedure section 1531. In

15   November 1994, Defendant attempted to remedy the lack of notice and compliance with 1531 by

16   publishing single "block ads" that ran in publications of major circulation. In or about 1995,

17   Defendant discontinued her notice and due process obligations altogether and currently relies

18

19   only on the so-called non-descript "block ads" and the internet to meet notice and due process

20   requirements.

21       54. The 1994 "block ads" published in certain newspapers as notice to the unclaimed

22   property owners was constitutionally deficient as a matter of law and do not satisfy the various

23   iterations of the UPL (1984-1990;1991-1996;1997-present) or the due process clauses of the

24   United States and California Constitutions.
25

26       55. Likewise, though the Plaintiffs' records contain social security and taxpayer

27   identification numbers, Defendant failed to request that the Franchise Tax Board provide current

28   addresses in order to provide them with notice by direct mail as required by statute.

- 19 -

**3. Defendant Failed to Verify the Holder's UPL Obligations.**

56. Defendant also failed to verify that the Holders had accurately reported the stock investments (C.C.P. §1530), delivered all property (C.C.P. §1532), and Defendant failed to verify that the companies and their bank transfer agents had transmitted notice to Plaintiffs prior to escheating his shares of stock (C.C.P. § 1513.5). Under these sections and others, the Holders were not to escheat investments unless, depending on the applicable version of the statute, a 7-year, 5-year, or 3-year dormancy period had expired and the owner's identity was unknown. Furthermore, the Holder was required to exercise due diligence under the UPL, federal, state, and common law securities laws, and to act in good faith.

**G. The Damages Caused To Plaintiffs and Class Members By Defendant's Actions, Arbitrarily.**

57. Defendant's actions in the illegal confiscation and sale of stock resulted in significant, readily calculable damages to Plaintiffs and Class Members. In most instances Defendant has returned the liquidated sums representing some investments, which amount to roughly .10¢ on the dollar, after the reduction in appreciation and application of the 38% tax and other costs. Because Defendant immediately sold the stock investments, the shares of stock did not appreciate during the rapid rise in the stock market during the 1990s or receive dividends and stock splits. The appreciation in value, receipt of dividends and stock splits would otherwise have occurred absent Defendant's conduct.

58. For example, the Defendant's records appear to show Plaintiff Chris Lusby Taylor is entitled to 1058 shares of stock, when in reality had the stock received the appropriate splits he would be entitled to 52,224 shares of Intel stock. The Controller's account for Chris Lusby Taylor is entitled to roughly $200,000.00, when his investment should have reached a recent high in excess of $3,864,576.00 (52,224 shares x $74.00 per share = $3,864,576.00).

- 20 -

THE LAW OFFICES OF
William W. Palmer
1261 Carter Road – Sacramento – California – 95864
TEL (916) 972-9764

1      59. In other instances, Defendant has arbitrarily assigned values to shares of stock,

2      previously liquidated, and refused to pay interest on dividends issued after Defendant had seized

3
       Plaintiffs' stock investments.   In the case of Plaintiff Nancy A. Pepple-Gonsalves, Defendant is
4
5      unable to locate the proceeds from the stock sale altogether and simply lists the 7,000 shares of

6      TWA stock as permanently misplaced and unpayable.

7      60. Defendant has knowingly falsified public records, misrepresented facts, and directed

8      stockowners from the public escheat records, where they are listed as "unknown" owners, and

9
       back to the Holders. The actions of the Defendant are arbitrary and capricious and outside the
10
11     scope of the Controller's authority as defined by state statutes.

12                                             VII.

13                                  CLAIMS FOR RELIEF

14
                                          First Claim
15
16                        (Declaratory Relief Against Defendant)

17     61. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 60 as

18     though fully set forth herein.

19     62. A real and actual controversy exists between Plaintiffs and Defendant Kathleen

20     Connell concerning Defendant's duties under the various statutes and laws that guide her office.

21     Specifically, Plaintiffs require a declaration as to:

22              (a)    Whether Defendant failed to determine whether Plaintiffs and their

23                     property fall within and meet the threshold definitions of the UPL because

24                     their identities and whereabouts are known or are reasonably locatable using

25                     the social security and taxpayer identification numbers that are necessarily

26                     escheated with the stockholders' investments.

27              (b)    Whether Defendant took and sold Plaintiffs' stock without notice and due

28                     process in violation of the California Constitution, Article I, §§ 7, 15 and,

THE LAW OFFICES OF
William W. Palmer
1241 Carfter Road - Sacramento - California - 95864
TELEPHONE (916) 972-2761

- 21 -

the United States Constitution, Fifth and Fourteenth Amendments.

(c) Whether Defendant violated California's own *"Blue Sky Laws"* Corporations Code *(see also* California Constitution, Article XX, §5 [authority of State to govern corporations]) and Federal Securities laws (1933 Act and 1934 Act) by interfering with Plaintiffs' investment and their right to, among other things, transfer their shares of stock, receive material information on his investments, and vote on shareholder issues.

(d) Whether Defendant has failed and currently fails to comply with the notice provisions set forth in Code of Civil Procedure section 1531 (as amended,1984-1990;1991-1996;1997-present) by failing to provide mail and publication notice to owner.

(e) Whether Defendant failed to fulfill her obligations to verify that the corporations fulfilled their obligations under Code of Civil Procedure sections 1530 and 1531.5, and in all other ways complied with the UPL.

(f) Whether the State of California's current laws, with respect to generic block ads and failure to provide mail notice to known owners violates the due process clause of the California and the United States Constitutions.

63. The dispute between Plaintiffs and Defendant is actual and concrete, and involves a significant financial burden unilaterally imposed upon Plaintiffs based on the loss of their investments. A determination of the rights and duties of the parties is necessary and proper at this time in order that Plaintiffs may ascertain their rights, and establish as a matter of law that Defendant has violated her obligations and duties under the above laws such that, based on any one of the above violations, Plaintiffs and Class are entitled to the disgorgement and return of either their stock investment or the return of the reasonable value thereof.

## Second Claim
### (Violation of 42 U.S.C. § 1983)
### (Procedural Due Process)

64. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

- 22 -

65. The Due Process Clause of the United States Constitution prohibits the State of California from depriving citizens of a protected property interest without due process of law.

66. Plaintiffs had a constitutionally protected property interest in stocks that they owned, but that nevertheless escheated to the State of California between 1989 and 1994.

67. Defendant took action affecting Plaintiffs' constitutionally protected property interest by seizing and liquidating Plaintiffs' stock investments. The seizure and sale of Plaintiffs' stock investments stripped Plaintiffs of their right to obtain the benefits of many years of appreciation of the stock, triggered capital gains taxes of roughly thirty-eight percent, and resulted in other unnecessary fees and costs.

68. Defendant deprived Plaintiffs' of their protected property interests without due process of law by:

(a) Failing to provide timely mail notice to Plaintiffs, whose identity and contact information Defendant either knew, or by the exercise of reasonable diligence should have known, that Plaintiffs property had escheated to the State of California pursuant to the UPL;

(b) Failing to provide timely publication notice to Plaintiffs that their property had escheated to the State of California pursuant to the UPL;

(c) Failing to provide publication notice that was reasonably calculated, under all the circumstances, to apprise Plaintiffs that their property had escheated to the State of California pursuant to the UPL;

(d) Failing to provide timely mail notice to Plaintiffs, whose identity and contact information Defendant either knew, or by the exercise of reasonable diligence should have known, of Defendant's intention to liquidate Plaintiffs' stock prior to Defendant permanently altering Plaintiffs' property in this manner;

(e) Failing to inform Plaintiffs, when such Plaintiffs filed claims for property delivered to the Controller many years subsequent to the escheatment of Plaintiffs' property, of the fact that (1) Defendant had failed to comply with the Procedural Due Process clause in escheating Plaintiffs' stock and (2) the value attached to Plaintiffs' property was based upon the amount the State purportedly received from a sale of Plaintiffs' property of which Plaintiffs' neither consented nor were aware;

(f) Failing to ensure that the prior holders of Plaintiffs' property prior to escheatment complied with the notice requirements imposed upon these

- 23 -

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road - Sacramento - California 95864
TELEPHONE (916) 972-0761

1    holders pursuant to California Code of Civil Procedure section 1513.5, among
2    others.

3    69. Defendant's failure to comply with the requirements of the Due Process Clause of
4    the United States Constitution in the manners outlined above has resulted in substantial monetary
5    losses to Plaintiffs.

6    70. Based upon the foregoing, Plaintiffs are entitled to and hereby seek monetary
7    damages in a manner commensurate with the damages they have suffered as a result of
8    Defendant's violations of the Due Process Clause of the United States Constitution.

9
                                          **Third Claim**
10                                  **(Violation of 42 U.S.C. § 1983)**
11                            **(Takings Clause of the Fifth Amendment)**

12    71. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 70 as
13    though fully set forth herein.

14    72. The Takings Clause of the United States Constitution prohibits the State of
15    California from taking private property for public use without just compensation.

16    73. As set forth more fully above, the Controller has illegally taken control of and
17    liquidated Plaintiffs' stock. The Controller has thereafter set the value of Plaintiffs' stock for
18    reimbursement purposes as the price for which that stock was liquidated in the early 1990s, less
19    taxes, fees, and expenses.

20    74. Plaintiffs are entitled to the return of their property. Specifically, Plaintiffs' stocks
21    should be disgorged or valued at the highest market between the time of Defendant's wrongful
22    seizure and liquidation of their stock investments.

23    75. Based upon the foregoing, Plaintiffs are entitled to and hereby seek monetary
24    damages in a manner commensurate with the damages they have suffered as a result of
25    Defendant's violations of the Takings Clause of the United States Constitution.

26    ///

27    ///

28    ///

- 24 -

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-9764

## Fourth Claim
### (Violation of 15 U.S.C. §§ 77a-77bbb, 78a-78hh)
### (Violations of Federal Securities Laws)

76. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77. The Securities Act of 1933 (15 U.S.C. §§ 77a-77bbb) and the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78a-78hh) (hereinafter referred to as the "1933 Act" and the "1934 Act") are designed specifically to protect members of the public, such as Plaintiffs and Class, and their stock investments.

78. The federal securities rules, for example, found in Sections 11 and 12(1), 12(2), 13(e) of the 1933 Act, and Sections 13(e), 13e-3, 14(a), 14(e), 15(c)(1), 16(b), and 18 of the 1934 Act are designed to protect the public and stock investors like Plaintiffs and Class, thus guaranteeing them the right to transfer their shares of stock as they please, receive material information on their investments, vote on shareholder issues, etc. These laws, and others, further specify that a fiduciary relationship exists and runs from the corporation, its board of directors, and majority shareholders to minority stock investors like Plaintiffs. Defendant's conduct interfered with the federal securities protections designed to protect Plaintiffs.

79. Additionally, many of the Plaintiffs executed contracts with companies that further guaranteed their equity position in the given company based on unique contributions of intellectual property and work product.

80. The improper receipt and forced sale of Plaintiffs' stock by Defendant without notice and due process violates Federal Securities laws and directly interferes with the application of the federal laws, such as the 1933 Act and the 1934 Act, that were designed and enacted by Congress to protect the public.

81. The Defendant interfered with the common law and statutory fiduciary duties that run from corporations, boards of directors and majority shareholders in favor of Plaintiffs. Using unconstitutional, unstated criteria, Defendant audited and threatened to fine any company that did not surrender stock to the State of California. The stock was then sold and used to balance the State of California's budget.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
I.PI.FPHONE:(916) 972-1761

- 25 -

82. Based upon the foregoing, Plaintiffs are entitled to and hereby seek monetary damages in a manner commensurate with the damages they have suffered as a result of Defendant's violations of the Federal Securities Laws.

### Fifth Claim
### (Violation of Cal. Code of Civil Procedure § 1300, et seq.)
### (Unclaimed Property Act)

83. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 82 as though fully set forth herein.

84. A primary and fundamental purpose of California's Unclaimed Property Act ("UPL") is to protect unknown owners by locating them and restoring their property to them.

85. The UPL in effect during the relevant time period either expressly or impliedly required Defendant to:

(a) Exercise reasonable diligence in determining whether, as a threshold matter, Plaintiffs' property was even subject to the UPL. Property only is subject to the UPL when its owners' identities and locations are "unknown." Thus, defendant bore the initial responsibility of determining whether Plaintiffs identities and locations were in fact "unknown;"

(b) Publish timely notice to Plaintiffs of the escheatment of their property in the newspapers most likely to give each of these particular Plaintiffs notice that their property had escheated to the State of California;

(c) Include within the published notice described in section (b), the actual names of Plaintiffs;

(d) Mail timely notice to Plaintiffs of the escheatment of their property;

(e) Verify that the holders of Plaintiffs' property prior to escheatment ("Holders") had accurately reported Plaintiffs' stock investments (CCP § 1530), delivered all of Plaintiffs' property (CCP § 1532), and properly transmitted notice to Plaintiffs prior to escheating Plaintiffs' stock (CCP § 1513.5);

(f) Assign a value to Plaintiffs' stock upon liquidating it that was rationally related to the time and manner that Plaintiffs' stock was or should have been sold.

**CLASS ACTION COMPLAINT**

1    86. Based upon the foregoing, Plaintiffs are entitled to and hereby seek monetary
2    damages in a manner commensurate with the damages they have suffered as a result of
3    Defendant's violations of the Unclaimed Property Law.

4

5                                    **Sixth Claim**

6                                    **(Injunction)**

7    87. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 86 as
8    though fully set forth herein.

9    88. Plaintiff has no plain, adequate, or speedy remedy at law, and will suffer significant,
10   permanent and irreparable harm unless the Court issues preliminary and permanent injunctive
11   relief ordering Defendant to comply with the law, as set forth above, and to return Plaintiffs'
12   stock and the stock belonging to other injured investors.

13                                   **Seventh Claim**

14                          **(For An Accounting By Defendant)**

15   89. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 88 as
16   though fully set forth herein.

17   90. Defendant never apprised Plaintiffs and Class Members of the true state of affairs
18   and that she had taken possession and sold his stock investments, but failed to take possession of
19   other property, or even what that property might be. In some instances, Plaintiffs and Class
20   Members received correspondence from company agents referring to the investors as both a
21   "stockholder" and a "bondholder" and promising a few hundred dollars for other investment
22   instruments that the agent had been holding since 1978. The letter noted that the investment
23   instruments would otherwise escheat to the State within an arbitrary, non-statutory period of
24   thirty (30) days. In other instances, some of the Class Members have received share certificates
25   from TWA without explanation.

26   91. The total amount of Plaintiff's damages, which included not only the improperly
27   sold stock investments, but other investment instruments (noted in the recent correspondence),
28   the proper calculation of principal and interest, and the unnecessary fees, costs, and taxes, cannot

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California 95864
TEL & PHONE (916) 972-0754

- 27 -
CLASS ACTION COMPLAINT

1 be ascertained without an accounting for such property.

2 ### Eighth Claim

3 ### (Attorney Fees and Common Fund)

4 92. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 91 as
5 though fully set forth herein.

6 93. Plaintiffs, in acting as representative for all injured shareholders will by their success
7 in this litigation create a common fund consisting of all monies improperly received from the
8 improper acquisition and sale of stock without notice and due process that must necessarily be
9 refunded by Defendant to other affected shareholders, together with savings of future costs, fees
10 and taxes which will not have to be paid.

11 94. In creating such a fund, Plaintiffs are acting in good faith on behalf of all claimants
12 and are entitled to be paid for their legal expense in bringing and prosecuting this action.

13 95. This Court has equitable power to order the payment by Defendant of Plaintiffs' legal
14 expense from any funds held by and disgorged by Defendant in their budget and appropriated by
15 the Legislature, of from the common fund thus created.

16 ### VIII.

17 ### Prayer for Relief

18 **WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them, as
19 follows:

20 1. For equitable and injunctive relief as determined by this court, including but not
21 limited to, imposition of a constructive trust over an accounting of any and all transactions
22 unlawfully entered into by Defendant without the appropriate notification of the public;

23 2. A permanent injunction restraining defendants from engaging in future unlawful
24 and/or improper transactions, as alleged in this Complaint;

25 3. Restitution and disgorgement of ill-gotten gains to the public and/or claimants in the
26 form of an order requiring Defendant to refund the stock investments taken from Plaintiff and
27 other injured investors that Defendant obtained by engaging in the conduct which violates the
28 UPL, California Corporations Code and Federal Securities Acts, State and Federal Constitutions;

THE LAW OFFICES OF
William W. Palmer
1241 Carmer Road - Sacramento - California - 95864
TELEPHONE (916) 972-0761

-28 -

4.  For an accounting;

5.  For creation of a common fund;

6.  For a reasonable sum of attorneys' fees incurred by Plaintiffs to date and to be incurred by Plaintiff hereinafter in connection with this action;

7.  For all costs incurred by Plaintiffs to date and to be incurred by Plaintiffs hereafter in connection with this action; and

8.  For such other and further relief as the Court deems just and proper.

Dated this *21st* day of December, 2001, at Sacramento, California.

Law Offices of William W. Palmer

By: _____
   **WILLIAM W. PALMER**
   Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Law Offices of William W. Palmer

By: _____
   **WILLIAM W. PALMER**
   Attorney for Plaintiffs

**CLASS ACTION COMPLAINT**

# EXHIBIT A

# BLUE CHIP STAMPS/BERKSHIRE HATHAWAY [1]
## Historical Information
### July 16, 1997



| BLUE CHIP STAMPS | | | | | |
|---|---|---|---|---|---|
| Date Received | Number Shares | Notice Sent | Shares Claimed | Shares Traded | Shrs Cnvrt Berk/Hath |
| 08/26/77 | 22 | yes | 0 | 22 | 0 |
| 04/10/79 | 114 | yes | 0 | 0 | 114 |
| 04/30/80 | 32 | yes | 0 | 0 | 32 |
| 11/06/80 | 205 | yes | 25 | 0 | 180 |
| 11/04/81 | 46 | yes | 0 | 0 | 46 |
| 05/21/82 | 36 | yes | 36 | 0 | 0 |
| 10/10/82 | 225 | yes | 0 | 0 | 225 |
| Total | 680 | | 61 | 22 | 597 |

| BERKSHIRE HATHAWAY | | | | |
|---|---|---|---|---|
| Date Received | Number Shares | Notice Sent | Shares Claimed | Shares Traded |
| 11/07/83 [2] | 45 | yes | 20 | 25 |
| 11/07/83 [3] | 24 | yes | 23 | 1 |
| 05/17/84 | 2 | no | 1 | 1 |
| 05/15/85 [3] | 2 | yes | 0 | 2 |
| 05/08/86 [3] | 3 | yes | 1 | 2 |
| 05/03/89 [4] | 132 | yes | 83 | 49 |
| 11/07/89 [5] | 642 | no | 127 | 515 |
| 12/18/90 | 1 | no | 0 | 1 |
| 12/02/92 [6] | 70 | no | 70 | 0 |
| Total | 921 | | 325 | 596 |

(1) Refer to the Report/Disbursement Information Section for Detail
(2) Blue Chip Stamps Exchange
(3) Merrill Lynch
(4) Nebraska Reciprocity
(5) Massachusetts Reciprocity
(6) State Street Bank

1



DEPOSITION
EXHIBIT
26



Since the inception of the Unclaimed Property program, the Bureau has traded securities from time to time. However, the policy was to always retain a position so that claimants could be paid in certificate form. The rationale for this policy was due to the fluctuation of the stock market, and by paying in certificate form, owners were not exposed to the situation where we may have sold their stock for $100.00 per share (for example), and when they came to claim, the stock had appreciated to $500.00 per share. The policy makers at the time did not feel that the SCO should be exposed to such a situation of the increased value of a position, thus the reason for the policy of always paying in certificate form.

## TRADE INFORMATION

| DATE TRADED | SHARES TRADED | Broker | Gross | Com- mission | Fees | Net Proceeds | Net Rate Per Share |
|---|---|---|---|---|---|---|---|
| 10/87 | 38 | E. F. Hutton | $158,840 | $101 | $0 | $158,739 | $4,177 |
| 06/90 | 100 | Sutro | $711,250 | $3,000 | $24 | $708,226 | $7,082 |
| 11/95 | 457 | Prudential | $14,248,750 | $27 | $427 | $14,248,296 | $31,118 |
| 09/96 | 1 | Prudential | $32,200 | $0 | $1 | $32,199 | $32,199 |
| TOTAL | 596 | | $15,151,040 | $3,128 | $452 | $15,147,460 | |

## NOTICE AND PUBLICATION INFORMATION

### NOTICES:

Prior to the implementation of the Franchise Tax Board SSN matching process in the late 1980's, as unclaimed property reports were uploaded to our database, notices were automatically generated and mailed to the owner's last known address. With the implementation of the FTB process, the Bureau's "notice process" was more effective because we were obtaining the owner's current address from the Franchise Tax Board.

### PUBLICATIONS:

Through the 1989 report years, the Bureau of Unclaimed Property published the owner's names in each of the 58 counties in California that had a named owner's last know address, as indicated on our computer files, that was located in the county of publication. The last publication of this type was in the 91-92 fiscal year. In addition, in the mid 1980's the Bureau had a Locator Unit with a staff of three that attempted to locate owners and return their property to them. Funding for both the Locator Unit and the publication of names in the newspapers was not available after 1989. In 1994, some publication funding was restored, and the Bureau began placing "block ads" in newspapers of wide circulation. In November, 1994 the "block ad" covered unclaimed property reports from 1990 through 1993.

2

# EXHIBIT B





## Notice of Unclaimed Property - You May Be Owed Money!

The State Controller's Office has received unclaimed property belonging to over 2 million individuals and companies. This includes bank accounts, stocks, bonds, uncashed checks, and safe deposit box contents. Most accounts become unclaimed when there is no owner contact with the institution or account activity for three (3) years. Often the owner forgets the account exists, moves and does not leave a forwarding address or the forwarding address expires.

### This money is waiting to be claimed by its rightful owners.



## Call 1-800-992-4647

**STATE CONTROLLER'S OFFICE**
Bureau of Unclaimed Property
P.O. Box 942850, Sacramento, CA 94250-5873
Hours: 8:00 a.m. to 5:00 p.m., Monday through Friday

95/96

California Relay (Telephone) Service for the Deaf or Hearing Impaired from TDD phones: 1-800-735-2929 and ask for 1-800-992-4647

This ad is in lieu of CCP 1531 and is in accordance with Chapter 302, Statutes of 1985.

# YOU MAY BE OWED MONEY!



## Notice of Unclaimed Property

### STATE CONTROLLER'S OFFICE
Division of Unclaimed Property
P.O. Box 942850
Sacramento, CA 94250-5873

The State Controller's Office has received unclaimed property belonging to over 2 million individuals and companies. This includes bank accounts, stocks, bonds, uncashed checks, and safe deposit box contents. Most accounts become unclaimed when there is no owner contact with the institution or account activity for three (3) years. Often the owner forgets the account exists, moves and does not leave a forwarding address or the forwarding address expires.

This money is waiting to be claimed by its rightful owners.

# Call 1-800-992-4647

California Relay (Telephone) Service for the Deaf or Hearing Impaired From
TDD phones: 1-800-735-2929 and ask for 1-800-992-4647

*This ad, covering accounts received in the 1989 through 1993 reporting periods, is in lieu of CCP 1531 and is in accordance with Chapter 138, Statutes of 1994.*

# Your Money?

## Notice of Unclaimed Property - You May Be Owed Money!



The State Controller's Office has received unclaimed property belonging to over 2 million individuals and companies. This includes bank accounts, stocks, bonds, uncashed checks, and safe deposit box contents. Most accounts become unclaimed when there is no owner contact with the institution or account activity for three (3) years. Often the owner forgets the account exists, moves and does not leave a forwarding address or the forwarding address expires.

## This money is waiting to be claimed by its rightful owners.

## Call 1-800-992-4647

### STATE CONTROLLER'S OFFICE

Bureau of Unclaimed Property, P.O. Box 942850, Sacramento, CA 94250-5873; Hours: 8:00 a.m. to 5:00 p.m., Monday through Friday

---

Please complete and mail to:

### STATE CONTROLLER - P. O. BOX 942850 - Sacramento, CA 94250-5873

| Last Name (Please Print or Type) | First Name | Middle Initial | |
|---|---|---|---|
| Current Street Address | City | State | Zip Code |
| Previous Street Address | City | State | Zip Code |
| Previous Cities Lived In | | ( ) Daytime Phone Number | |
| Signature | Social Security Number | Newspaper Name | |

---

California Relay (Telephone) Service for the Deaf or Hearing Impaired from TDD phones: 1-800-735-2929 and ask for 1-800-992-4647
If phone lines are busy, send in the attached coupon along with a self-addressed stamped envelope (#10 size).

00001

JS-44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

C.Lusby Taylor,N.Pepple-Gonsalves

## DEFENDANTS

Kathleen Connell, Controller

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **England**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Sacramento**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(C)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William W. Palmer, Esq.
Law Office of William W. Palmer
1241 Carter Rd, Sac., CA. 95864
Telephone: (916)972-0761

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR
(For Diversity Cases Only)     PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R & Truck | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| | | | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL UNLESS DIVERSITY.)

This action arises under the "Takings Clause" of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article I, Section 10 of the United States Constitution and is based on the Defendant's unauthorized seizure and sale of Plaintiffs' and Class Members' stock investments without notice and due process.

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____     DOCKET NUMBER _____

DATE
December 31, 2001

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

CIV.S- 0 1 - 2 4 0 7 FCD GGH

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.