THE LAW OFFICES OF WILLIAM W. PALMER
    WILLIAM W. PALMER – State Bar No. 146404
1241 Carter Road
Sacramento, California  95864
Telephone : (916) 972-0761

Attorney for Plaintiffs Chris Lusby Taylor,
Nancy A. Pepple-Gonsalves, Gary Kesselman,
Susan Swinton, Dawn E. Struck and William J.
Palmer

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LUSBY TAYLOR, NANCY A. PEPPLE-GONSALVES, GARY KESSELMAN, SUSAN SWINTON, DAWN E. STRUCK, and WILLIAM J. PALMER<br><br>As Taxpayers, and on behalf of themselves and other persons similarly situated,<br><br>       Plaintiff,<br><br>    vs.<br><br>STEVE WESTLY, individually and in his capacity as STATE CONTROLLER OF THE STATE OF CALIFORNIA,<br><br>       Defendant. | Case No.:  CV-01-02407-FCD<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>(1.) DECLARATORY RELIEF;<br><br>(2.) VIOLATION OF 42 U.S.C. § 1983<br>   (Procedural Due Process Fourteenth Amendment Violations);<br><br>(3.) VIOLATION OF 15 U.S.C. §§ 77a-77bbb, 78a-78hh (Federal Securities Laws Violations);<br><br>(4.) VIOLATION OF CAL. C.C.P. § 1300, et seq. (Unclaimed Property Law, C.C.P. §§1300, et. seq., Violations);<br><br>(5.) INJUNCTIVE RELIEF;<br><br>(6.)  ACCOUNTING;<br><br>(7.)  ATTORNEY FEES AND COMMON   FUND.<br><br>(8.) TAXPAYER CLAIMS<br><br><u>DEMAND FOR JURY TRIAL</u> |

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

Plaintiffs Chris Lusby Taylor, Nancy A. Pepple-Gonsalves, Gary Kesselman, Susan Swinton, Dawn E. Struck, and William J. Palmer (collectively, the "Plaintiffs"), by their undersigned counsel, as and for their First Amended Class Action Complaint against Steve Westly, the Controller for the State of California (hereinafter, "Defendant" or "Controller"), hereby allege as follows:

## I.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§1331, 1343, 2201, and 2202.  This action arises under the "Takings Clause" of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article I, Section 10 of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant's official office is in the judicial district, and pursuant to 28 U.S.C.§ 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## II.

## PARTIES

### A. Plaintiffs

3.      Plaintiff Chris Lusby Taylor is an individual who resides in England and holds 52,224 shares of stock among other investments in Intel Corporation. Mr. Taylor is representative of non-U.S. citizens whose property has been seized by the Controller.

4.      Plaintiff Nancy A. Pepple-Gonsalves is an individual and taxpayer who resides in Temecula, California, and owns 7000 shares of stock in TWA.

5.      Plaintiff Gary Kesselman is an individual and taxpayer who resides in Moreno Valley, California, and owns 876 shares of stock in Nucor Corporation.

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

6.     Plaintiff Dawn E. Struck is an individual and taxpayer who resides in Folsom, California, and owns 125 shares of stock in Vodafone.

7.     Plaintiff William J. Palmer is an individual and taxpayer who resides in Fair Oaks, California, and owns shares of stock in PG&E.

8.     Plaintiff Susan Swinton is an individual and taxpayer who resides in Poway, California. Ms. Swinton and her daughter Kimberly Swinton, son Kameron Swinton, and husband Stephen Swinton own shares of stock in General Electric, Merck, Intel, and MSDW Liquid Asset Fund. Kimberly Swinton, Kameron Swinton and Stephen Swinton have assigned their claims against the Controller to Susan Swinton. Plaintiff Susan Swinton brings this action individually, as custodian of shares owned by Kimberly Swinton and Kameron Swinton, and as assignee of claims from Kimberly Swinton, Kameron Swinton and Stephen Swinton.

**B. Defendant**

9.     Defendant Steve Westly holds the elected position of Controller for the State of California. Defendant Westly was substituted as a party for the original Defendant in this action, Kathleen Connell, the former Controller for the State of California, pursuant to Federal Rule of Appellant Procedure 43(c)(2). *See Taylor v. Westly*, 402 F.3d 924 at fn. 20 (9th Cir. 2005). Defendant is named in his individual capacity and in his official capacity as Controller of the State of California.

## III.

## CLASS ACTION ALLEGATIONS

10.     This is a class action brought by Plaintiffs on their own behalf and on behalf of all other shareholders similarly situated pursuant to F.R.C.P. 23(b)(1)(A) and

FIRST AMENDED CLASS ACTION COMPLAINT

23(b)(2). The proposed class consists of all individuals who are or were, at any time between 1989 to present property owners whose investments were confiscated and sold by Defendant without notice and due process.

11. Although the exact number, identity, and location of persons in the proposed class is readily discernable based on the Defendant's own records for the period 1989 to present. Based on information and belief, the number of persons in the proposed class will be in excess of 10,000. Those persons in the class are therefore so numerous that joinder of the entire proposed class is impractical. The Class is composed of numerous residents of California, as well as persons and businesses disbursed throughout the United States and other countries, the joinder of whom is impracticable. The disposition of their claims in the Class action will provide substantial benefits to the parties and to the Court.

12. There are questions of law and fact common to all members of the proposed class, namely, whether Defendant complied with the Constitutional and statutory requirements for the taking and sale of stock investments and other property.

13. Plaintiffs' claims are typical of those of the members of the proposed class, who are subject to the same deprivations of their property and rights as shareholders. There is a well-defined community of interest in the questions of law and fact involved in this case. The issues and questions of fact and law are common to the members of the Class that predominate over questions that may affect individual members.

14. Plaintiffs can adequately represent the interests of the members of the proposed class. They have no interests relevant to the lawsuit's subject matter

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 4 -
FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

antagonistic to the class members.  Their attorney has experience in litigation, including class actions, involving issues identical or similar to those raised in this action.

15.   Because Defendant's duties to comply with the Constitution apply equally to all in the proposed class, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant.

16.   Defendant's actions and threatened actions are depriving and will deprive Plaintiffs and members of the proposed class of their Constitutional rights on grounds generally applicable to all, thereby making appropriate declaratory, injunctive and equitable relief and § 1983 claims with regard to the proposed class as a whole.

17.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**IV.**

**EQUITABLE ESTOPPEL AND THE TOLLING OF THE STATUTE OF**

**LIMITATIONS**

18.   As a result of Defendant's acts, omissions, misrepresentations, and practices described herein, any statute of limitation applicable to the claims asserted in this Complaint has been tolled or is equitably estopped.  Through such acts, omissions, misrepresentations, and practices, Defendant was able to conceal from Plaintiffs the material facts involving their investments.  Though Defendant was under common law and statutory duties, Defendant intentionally and/or negligently failed to follow the statutes and common law altogether so that his actions were *ultra vires* insofar as Defendant failed to notify and afford Plaintiffs Due Process after seizing and prior to the

FIRST AMENDED CLASS ACTION COMPLAINT

sale of their stock investments. Plaintiffs and members of the general public were deliberately misled and deprived of material facts regarding their ownership of securities and in fact Defendant made every effort to interfere with and divest Plaintiffs of their property rights and privileges without Due Process. Based, among other things, on Defendant's breach of his statutory obligation to notify Plaintiffs, Defendant is estopped from asserting a statute of limitations and has waived any such defense.

19.    Specifically, Plaintiffs could not have known Defendant was engaged in the illegal activities described above. Plaintiffs only discovered these facts after a detailed investigation that included hiring an attorney in California, reviewing applicable law, and obtaining the information at their own expense that Defendant was obligated by law to provide.

20.    Plaintiffs had a right to rely upon Defendant, who had common law and statutory duties, and who took an oath as an elected official to uphold the Constitutions of the United States and the State of California, which included affording Plaintiffs Constitutionally-sufficient notice and Due Process prior to the seizure and sale of their private stock investments and appraising them of the true facts relating to their investments.

## V.

## NATURE OF THIS ACTION

21.    This action is based on the unconstitutional conduct of Defendant under color of state law. Plaintiffs and Class Members are property owners, stockholders and investors living in California, the United States, and other countries, who have invested in United States Corporations.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 6 -

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

22.   Plaintiffs allege that the Defendant has unlawfully seized and is in possession of Plaintiffs' stock, bank accounts, and other property and the property of similarly situated shareholders and that the Defendant is illegally withholding the property or has sold it. Plaintiffs allege that their property was taken from them without their knowledge and sold by the Controller under color of state law without notice and Due Process.

23.   As such, Defendant's conduct is *ultra vires* insofar as she acted beyond his authority and outside his constitutional office in direct violation of the United States and California Constitutions. Defendant is the elected official charged under the California Constitution with overseeing the estimated $4.1 billion Unclaimed Property Fund for the State of California.  Defendant's actions were allegedly first prompted by a lack of funds during the period of 1989 to 1994.  (See Exhibit A – an internal history of mishandled stock prepared by the Controller and incorporated herein by reference.)  The lack of funding allegedly precluded Defendant from providing direct mail notice to known owners of stock and publication notice as required by the United States and California Constitutions and relevant statutory sections of the Unclaimed Property Law, California Code of Civil Procedure sections 1300, et. seq. (herinafter,"UPL").

24.   The same California budgetary crisis prompted the Controller to increase efforts to audit companies, banks, and other financial institutions, referred to as "Holders" under the UPL, and to seize private stock investments, under threat of fine.  Because of California's worsening budget crisis, which was exacerbated by a roughly $30-40 billion debt, in part caused by electricity purchases during 2001, the Controller has stepped up and increased his efforts to seize private property, including stock, from various sources, such as private savings, retirement, and employee stock plans.

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

25.    Starting in 1989, the Controller further made a series of unpublished, internal policy decisions, such as the decision to sell all stock immediately upon receipt, which were only later authorized by statute, and to relax enforcement of UPL provisions that required the Holders to locate "lost" shareholders.  The UPL provisions applicable to Holders - the companies and banks - required that the stock investments would only escheat if the identities or the owners were "unknown" or "lost," after a lengthy dormancy period.  As evidence of whether a shareholder has abandoned stock, the Holder is required to review whether an investor has failed to cash dividends, respond to proxy notices, or otherwise failed to communicate with the Holder.

26.    At the Controller's urging, the dormancy period was later shortened by the legislature from 16 years to 7 years to 5 years, and, in 1995, further reduced to a 3-year window of time.  Thus, for example, if a stockowner fails to cash a dividend check, return a proxy, or otherwise communicate during the 3-year time period, the Controller has concluded that he is entitled to seize and to immediately sell the private stock investment without notice to the investor.  The Controller, acting through agents, accomplishes the seizure by requiring the corporations and their agents to create a list of the so-called "lost" and "unknown" shareholders and to generate duplicate shareholder certificates.

27.    Plaintiffs allege that the Holders either failed or were precluded by Defendant from taking appropriate action under the relevant federal and state securities laws.  The Holders, which are the publicly traded corporations and their agents, are required to exercise due diligence in order to avoid the presumption of abandonment, act in good faith, maintain accurate records, and provide written notice to Plaintiffs and Class prior to divesting the shareholders of their investments.

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

28.    Plaintiffs allege that the Defendant, using color of law, interfered with the contractual and fiduciary relations that run from corporations and their agents to Plaintiffs, who are minority stock investors.  At times, Defendant sent his agents outside the State of California and to other states in order to force the surrender of stock investments, which was done under threat of fines and penalties issued by Defendant against the corporations and their agents. The Controller hired agents through improper "sole-source" contracts, which is in and of itself a violation of state guidelines.  The agents were then paid a consulting fee together with a "bounty" or percentage of all investments seized from the companies located in the different states.  In order to comply with the Controller's demands, the Holders separately surrendered duplicate stock certificates and then delivered a list of the investors' names to the Controller.  Once the Controller received the duplicate certificates, the stock investments were sold through private brokers and the proceeds were deposited in the general fund for the State of California.

29.    Starting in or about 1995, the Controller and his staff made the purposeful decision to disregard the Controller's notice and due process obligations altogether.  The Controller determined that it was "impractical" and not cost efficient to publish the individual names, addresses and stock information as required by statute, nor was it necessary to notify known stockowners with direct mail notice.  Instead, the Defendant determined that generic "block ads" were sufficient constitutional notice to the owners of the stock investments. (See Exhibit B for examples of the "block ads" and other generic advertisements.)  Consequently, the investors whose stock was seized and sold by the Controller have no reason to suspect that their investments were taken. In many instances the investors hold the original stock

FIRST AMENDED CLASS ACTION COMPLAINT

certificates and have received no notice that their stock was taken from them and sold by the Controller.

30.     Thus, as discussed in greater detail below, Defendant's actions in taking possession of Plaintiffs' and Class Members' stock investments without notice and due process or the knowledge and consent of the Plaintiffs and Class violates the express provisions of the UPL, state and federal securities laws, and the California Constitution, Article I, §§ 7, 15 and, the "due process" clauses of the United States Constitution, Fifth and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law," and the Contract Clause of Article I, Section 10 of the United States Constitution.

## VI.

## FACTUAL ALLEGATIONS

### A.  The Plaintiffs And Their Property.

31.     Plaintiffs are typical of stockholders around this country and other countries who acquire stock and hold the securities in publicly traded American corporations.  For example, Chris Lusby Taylor is a resident of England and worked on the development of the microprocessor for Intel Corporation during the period of roughly 1978 to 1983.  His wife was the General Counsel for Intel Corporation in Europe.  In exchange for his contributions to Intel, he was allowed to invest a portion of his income in Intel for which he received serialized stock certificates.  Chris Lusby Taylor also received stock options, which he later redeemed for more Intel stock, and he received a pension.  To this day, Intel continues to correspond with Chris Lusby Taylor regarding his stock and his pension fund and the company knows precisely where he lives.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

However, sometime in or about 1992, the Controller caused Intel to issue duplicate stock certificates representing the stock owned by Chris Lusby Taylor, and roughly 600 of his European colleagues. Defendant then unlawfully seized the shares of Intel stock and sold them without Notice and Due Process.  As a result of the Controller's actions, Chris Lusby Taylor and the other men and women who assisted in the formation of Intel Corporation hold original stock certificates that are now worthless.

32.    Nancy A. Pepple-Gonsalves was a flight attendant for twenty years and set aside a portion of his salary to invest in TWA, which eventually totaled 7000 shares of stock.  In or about 1990, the Controller caused TWA to issue duplicate stock certificates, representing Ms. Pepple-Gonsalves shares of stock, which the Defendant sold, without notice or due process, and then deposited the proceeds in the general fund.  As with Chris Lusby Taylor, the company at all times knew precisely where Nancy A. Pepple-Gonsalves lived in the State of California, or could readily have located her using her Social Security Number.  However, like Chris Lusby Taylor, the Controller made the arbitrary and capricious determination that she was "lost" and "unknown" and used this decision to justify the unlawful seizure of his stock investments. Nancy A. Pepples-Gonsalves is typical of 2,000 other TWA stockholders who had their shares in the company unlawfully seized by the Defendant.

33.    Plaintiff William J. Palmer is an individual and taxpayer residing in Fair Oaks, California. Mr. Palmer owns approximately 600 shares of stock in Pacific Gas & Electric Company ("PG&E"). Simultaneously with the purchase of those shares, Mr. Palmer elected to participate in PG&E's dividend reinvestment program such that dividends paid quarterly on Mr. Palmer's PG&E would automatically be used to purchase

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 11 -

additional shares of PG&E stock. Since the time Mr. Palmer made his initial purchase of PG&E stock, he accumulated additional shares of PG&E stock under the dividend reinvestment program. However, on information and belief, on or about June 10, 2005, the Controller took custody of approximately 19 shares of PG&E stock that had accumulated under the dividend reinvestment program. Those shares were registered under Mr. Palmer's name, exactly as the original approximately 600 shares of PG&E stock, which were not confiscated and which Mr. Palmer still owns. Mr. Palmer is not "unknown" to the Holder, PG&E, as he continues to receive regular communications from PG&E at his current address. Nor is Mr. Palmer "unknown" to the State of California, as Mr. Palmer files an income tax return every year with the California Franchise Tax Board. Mr. Palmer's stock, therefore, is not subject to escheat to the State of California under the UPL, nor does the Controller have any authority to divest Mr. Palmer of such stock or to sell it. Mr. Palmer received no notice that his shares of PG&E stock had been seized and sold, nor any opportunity to recover the stock before it was liquidated.

34.     Plaintiff Gary Kesselman is an individual and taxpayer residing in Moreno Valley, California. In 1972, Mr. Kesselman's mother, Ruth Kesselman, now deceased, acquired shares of stock in Nucor Corporation ("Nucor"). In or about 1972 Mr. Kesselman transferred the stock into joint tenancy with right of survivorship with Plaintiff Mr. Kesselman. The shares of Nucor appreciated and split several times, such that Mr. Kesselman's and his mother's joint holdings reached 876 shares of stock. Mr. Kesselman's mother retained the original stock certificates in her safe deposit box in Florida. Each of the certificates properly listed the owners as Plaintiff Mr. Kesselman and

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

his mother, Ruth Kesselman, as joint tenants with right of survivorship, and further contained Ruth Kesselman's correct address. On December, 31, 2001, while Mrs. Kesselman was still living at her address of record in Florida and while Plaintiff Mr. Kesselman was living at his address of record in California, the Controller divested these individuals of their stock without telling the, or otherwise providing Notice or Due Process. On January 2, 2002, the Controller sold the 876 shares of Nucor stock. In 2003, Ruth Kesselman died, and by operation of law her entire right, title and interest in and to the stock, which was held in joint tenancy, passed to the Joint Tenant. Neither Ruth Kesselman nor Plaintiff Kesselman ever received notice that their stock had been seized and sold. Rather, the fact that his investment had disappeared came to light because in 2003, an investigative service known as an "heir-finder" located Mr. Kesselman and advised him that the Controller of the State of California was in possession of Mr. Kesselman's stock. At all times since Mr. Kesselman and his mother purchased the stock the Holder has known both of their names, addresses and social security numbers. Likewise, Mr. Kesselman's mother has lived at the same address where she was listed as a shareholder and where corporate communications were mailed, up to the day the stock was seized. Thus, neither Mr. Kesselman nor his mother were "unknown" to the Holder. Nor is Mr. Kesselman "unknown" to the State of California, as Mr. Kesselman files an income tax return every year with the California Franchise Tax Board. Mr. Kesselman's stock, therefore, is not and never was subject to escheat to the State of California under the UPL, nor does the Controller have any authority to divest Mr. Kesselman of such stock or to sell it. Mr. Kesselman received no notice that his shares of stock had been

FIRST AMENDED CLASS ACTION COMPLAINT

seized and sold from either the Holder or the Controller, nor any opportunity to recover the stock before it was liquidated.

35.     Plaintiff Dawn E. Struck is an individual and taxpayer residing in Folsom, California. In 1995, Ms. Struck obtained approximately 25 shares of stock in Vodafone ("Vodafone") as a result of a spin-off from Pacific Telesis, in which Ms. Struck was also a shareholder. On information and believe, in 2002 or 2003 the Controller divested Ms. Struck of her stock under color of the UPL and sold it. Prior to the time of divestiture, Ms. Struck received communications from the Holder at her current address. Thus, the Holder knows her name, address and social security number. She received annual reports, proxy materials, and other regular communications from the Holder until the confiscation of her stock. Thus, she was not "unknown" to the Holder. Nor was Ms. Struck "unknown" to the State of California, as Ms. Struck files an income tax return every year with the California Franchise Tax Board. Ms. Struck's stock, therefore, was not subject to escheat to the State of California under the UPL, nor does the Controller have any authority to divest Ms. Struck of such stock or to sell it. Ms. Struck received no notice that her shares of stock had been seized and sold, nor any opportunity to recover the stock before it was liquidated. Rather, the fact that her investment had disappeared came to light because she stopped receiving annual reports, proxies, and other expected materials from the Holder.

36.     Plaintiff Susan Swinton is an individual and taxpayer residing in Poway, California. Plaintiff Swinton's father, Ralph Drawlee, purchased shares of stock in General Electric Corporation ("GE") and held it in custody for Plaintiff Swinton. In or about 1982 or 1983 the stock was transferred into Plaintiff's married name. Plaintiff has

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

received annual reports, income tax Form 1099s, and other information regarding this investment in each tax year since I purchased the stock. In or about March, 2001, Plaintiff learned that 18 shares of stock in GE had been seized by the Controller of the State of California pursuant to the Unclaimed Property Law. Plaintiff never received notice that her GE stock had been confiscated by the Controller, nor an opportunity to recover the stock before it was liquidated. GE, the "Holder" under the Unclaimed Property Law, at all relevant times knew her name, address and social security number, and had been in possession of this information since at least the mid-1980s. The Holder communicated with Plaintiff regularly at all times, and still regularly communicates with her because she owns other shares of GE stock.

37.    In or about 1995 or 1996, Plaintiff Swinton purchased stock in Intel Corporation ("Intel") for her daughter, Kimberly Swinton. This stock was placed in a dividend reinvestment program, where it grew over the years. Plaintiff Swinton acted as the custodian of those shares for my daughter. In or about October, 2003, the Controller seized the shares of Intel stock from her daughter's custodial account. The Controller ultimately took possession of 415.86 shares of stock in Intel Corporation. At all times Intel had Plaintiff Swinton's and Kimberly Swinton's name, address, and social security numbers. They continue to receive communications from Intel regarding this stock to this day. This stock was seized wrongfully because neither Plaintiff Swinton as custodian nor her daughter were "unknown" to Intel. They did not receive notice that the Intel stock had been seized, nor were they provided an opportunity to recover their stock before it was liquidated. Rather, they learned that the stock had been confiscated because they received a letter from an heir-finder offering to assist in reclaiming Plaintiff Swinton's daughter's

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

stock. Kimberly Swinton assigned her claim against the Controller in this matter to Plaintiff Swinton.

38.   In or about 1997, Plaintiff Swinton purchased stock in Merck Corporation ("Merck") for herself, her son Kameron Swinton, and her daughter, Kimberly Swinton. This stock was placed in a dividend reinvestment program, where it grew over the years. Plaintiff Swinton acted as the custodian of those shares for her son and daughter. In or about October, 2003, the Controller seized the shares of Merck stock from her account, her son's custodial account, and her daughter's custodial account. The Controller ultimately took possession of approximately 11 shares of stock in Merck from each of Plaintiff, her daughter and her on. On information and belief, there are additional shares of Merck stock belonging to her family that may have also been confiscated, but has not yet been reported on the Controller's web site. Her most recent statement from Merck dated 2001 shows that her son had a total of approximately 51 shares of Merck stock at that time. The Swintons received no further communication from Merck since then, which suggests that the Controller may have seized the entire balance from the account. At all times Merck had the Swintons' names, addresses, and social security numbers. They received communications from Merck regarding this stock at Plaintiff Swinton's current address. This stock was seized wrongfully because neither none of the Swintons were "unknown" to Merck. None of the Swintons received notice that their stock had been confiscated, nor were they given an opportunity to recover their stock before it was liquidated. Kimberly and Kameron Swinton assigned their claims against the Controller in this matter to Plaintiff Susan Swinton.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 16 -

FIRST AMENDED CLASS ACTION COMPLAINT

39. Susan Swinton's husband, Stephen P. Swinton owned 224 shares of MSDW Liquid Asset Fund, which is a money market fund maintained by Morgan Stanley, where he held a brokerage account. In or about 1998 or 1998 this money market fund was confiscated by the Controller. This account was a portion of Stephen Swinton's retirement account, which he rolled over into a new retirement account. The Holder, Morgan Stanley, therefore had all of Stephen Swinton's correct information, including his name, address and social security number. However, he did not receive notice that this account had been seized, nor provided an opportunity to recover his property, notwithstanding that the California Franchise Tax Board has his name, address and social security number. Stephen Swinton assigned his claim against the Controller in this matter to Plaintiff Susan Swinton.

B. **The Decision To Sell Plaintiffs' Property.**

40. Since the inception of the Unclaimed Property program until 1989 the internal policy of the Controller's Office was to retain a "position," or number of shares of stock that escheated to the Controller under the UPL, so that stockowners who filed claims with the Controller could be paid later in certificate form. Pursuant to the UPL, the Holders delivered a list of "lost" or "unknown" stockowners to the Controller along with a separate set of duplicate shareholder certificates. Thus, duplicate certificates are delivered to the Controller along with a list of the purported owners of the stock for each publicly traded company. However, because the stockowner still retains the original certificates and in some instances is actively communicating or employed by the company, the individual, such as Plaintiffs and Class Members, would have no reason to

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

suspect their investments are being seized and sold by the Controller for the State of California.

41.     The UPL operates under the legal fiction that an individual has abandoned his investment if certain indicia are met, such as the failure to cash dividends, vote on a merger, or mail in a proxy over an extended period of time.  Until the 1970s, the period of time was 16 years, which was shortened in 1990 to seven years, and then further shortened to five years, then, in 1995, shortened to three years.  As California became increasingly cash-strapped, the UPL was identified by the Controller as a revenue source, and the period of presumptive abandonment was shortened to three years, and is in some cases arbitrarily shortened even further to as little as six months.  Thus, the Controller now presumes abandonment and seizes and sells stock investments after a period of as little as or less than three years if the investor fails to cash a dividend, vote, or mail in a proxy.

42.     The Controller takes these actions though the individual is known to the company and a list of the known owners of the stock is provided to the Controller that includes, in nearly every case, the stockowners' addresses, taxpayer and social security numbers.  The Controller sells the investments and deposits the bulk of the $4.1 billion in unclaimed property in the general fund.

43.     Only a small fraction of the unclaimed property, perhaps $20 million, is maintained as "petty cash" on hand to cover the needs of those individuals who step forward to claim their investments. The original rationale for maintaining a stock position was so that claimants could be paid in certificate form as they stepped forward to claim their property.  (See page 2 of Exhibit A.)  The original policy of payment in certificate

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 18 -
FIRST AMENDED CLASS ACTION COMPLAINT

form avoided exposure to the fluctuations of the stock market and the situation where the Controller may have sold stocks for a loss, due to the appreciation of the stock market. The unwritten rule created by policy makers at the Controller's Office prior to 1989 is that they did not feel that the Controller should be exposed to liability based on the increased value of the given stock investment, hence the internal policy of compensating the owner in certificate form.

44.    Beginning in 1989, this unwritten internal policy of compensating the claimant in certificate form was discarded by the Controller, and other internal policies discussed below, were permanently changed. Now the Controller immediately sells any stock that comes into his possession, within days of its receipt.

C. **The Controller's Decision to Disregard Notice and Due Process Obligations.**

45.    Plaintiffs allege that after 1989 the Controller disregarded his legal obligations to provide constitutionally-required direct mail notice and publication notice to investors upon their seizure of their stock investments.

46.    Additionally, until 1989, the Bureau of Unclaimed Property published the stockowner's names in newspapers, as required by law, in each of the 58 counties in California that listed a named owner's last known address, as indicated on the Controller's computer files.  In the mid-1980s the Controller also used a Locator Unit with a staff of three people that attempted to locate owners and return their property to them.   Both common law and statute require that the Controller actively locate the owners of property so that the property may be returned.

47.    Funding for both the Locator Unit, direct mail to owners, and the publication of names in the newspapers was not available after 1989.  (See page 2 of

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 19 -

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

Exhibit A.) In 1994, some publication funding was restored, and the Bureau began placing generic "block ads" (see Exhibit B) in newspapers of wide circulation. In November 1994 the "block ads" began running and were, in theory, designed to cover property reports and notices that required under the UPL for the period running from 1990 through 1993. As Exhibit B graphically illustrates, the collection of block ads are generic, nonspecific, and contain a coupon that a member of the public might mail to the Controller's office in order to determine, in theory, whether the state was holding lost property for the given member of the public. The block ads provide no notice to Plaintiffs and Class Members who are in many instances holding original shareholder certificates and thus would have no reason to suspect that Defendant has seized their investments. The bottom of each generic "block ad" contains a footnote that states the advertisements are "*in lieu of*" the Controller's statutory duties to provide notice and due process.

48. In or about 1995 another internal policy decision was made by the Controller to permanently adopt the "block ad" as the only notice that would be provided to stockowners when their investments were seized and sold by the Controller. This decision was based on expediency, cost, and the "impracticality" of publishing thousands of names and property descriptions of the supposedly "lost" and "unknown" stockowners in newspapers as the Controller increased the seizure of property.

49. Also, beginning in 1995 the Controller began publishing the "block ads" at times of the year that were calculated to minimize the number of members of the public who would see the advertisements, such as just before major holidays when many people leave for or on vacation. The rationale of the Controller for publishing the

FIRST AMENDED CLASS ACTION COMPLAINT

advertisements during these off-times is that his limited staff is unable to handle the large influx of calls generated by the advertisements.

50.    Thus, no direct mail notice or any meaningful notice was provided to known owners of shares of stock as their property was confiscated by the Defendant, who then sold their stock, again without notice.  The block ads were so inadequate that claimants were afforded no reasonable opportunity to learn of the escheat proceeding and of its effect on their claims, or to appear in order to protect their stock and property rights.  Plaintiffs allege that the Controller's actions are unconstitutional and that their stock investments were seized and sold without their knowledge under color of state law. As illustrated by the Plaintiffs, one of whom resides in England, the Controller took these steps outside the boundaries of the State of California.

51.    The Section of the Unclaimed Property Law requiring notice to Owners was significantly revised in recent years. Under the current law, the Controller is not required to publish the names of the Owners whose property is taken into custody and sold by the Controller. Instead Section 1531 requires the Controller to publish only a generic "block ad" in newspapers of general circulation within the State of California. Also, under the current law, the Controller is not required to provide direct mail notice to the Owner unless the Holder provides the Controller with a social security number. These forms of Notice violate the Due Process Clause of the United States Constitution under controlling authority, as they do not provide notice satisfactory under the circumstances to apprise the Owners of the fact that their property has been seized, and providing them with a meaningful opportunity to recover their property prior to the time when it is liquidated. *Taylor v. Westly*, 402 F.3d 924, 934 (9th Cir. 2005); *Mullane v. Central*

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 21 -

*Hanover Bank*, 339 U.S. 306 (1950). Moreover, certain classes of individuals, namely those who (a) live outside California who do not receive California newspapers, and (b) whose social security number is not provided to the Controller (including, of course, all foreign citizens like Mr. Lusby Taylor, who has no social security number), receive no notice whatsoever, even the inadequate notice required by Section 1531 of the UPL. For this reason, Section 1531 of the UPL is unconstitutional because it does not provide notice that is reasonable under the circumstances to alert Owners that their property has been taken the custody of the Controller to be sold for the use of the State.

**D.  Defendant Violated His Constitutional Duties.**

52.    The Controller is obligated by his oath of office to uphold the California and United States Constitutions.  Plaintiffs allege that the seizure and sale without notice and due process of a citizen's property, such as their stock investments by an elected officer of the government, such as Defendant, is a gross violation of the law and repugnant to our form of government.  Specifically, Plaintiffs allege that Defendant's conduct violated the California Constitution, Article I, §§ 7, 15 and, the United States Constitution, Fourth, Fifth, and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law," and the Contract Clause of Article I, Section 10.

53.    The Controller has no authority, either under color of the UPL or otherwise, to seize property that is not within the scope of the UPL. *See Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005). Because the Controller refuses to verify whether property it seizes under color of the UPL is actually subject to the jurisdiction and scope of the UPL,

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

the Controller regularly seizes and sells property that is beyond the Controller's statutory and constitutional authority. These actions are *ultra vires* and unconstitutional.

54.    In addition, the Controller has adopted policies that, when combined with the failure to provide Notice as required by the Due Process Clause and the Controller's *ultra vires* seizure of property beyond the scope of the UPL, operates to inflict immediate and irreparable harm on the Owners. One such "policy" is to sell stock immediately upon taking the stock into custody. The effect of this policy is to render it impossible for any Owner to recover the stock itself, whether or not properly escheated and whether or not Due Process has been provided. Instead, the Controller forces the Owners to accept an "account" in an amount determined by the Controller, purportedly representing the proceeds of the sale of the stock. This "account" is net of commissions and costs, which are determined by the Controller without any published guidelines or rationale; in addition, the sale of the securities triggers an instant tax liability for the Owner. The Controller, however, does not advise the Owner of the sale of his stock, with the result that the Owner cannot properly report the liquidation of his stock on his tax return or pay the appropriate capital gain tax, which subjects the Owner to penalties and interest from the IRS when the sale is finally discovered. In short, once the stock is sold, the Owner cannot restore his stock holding to its original position, as the funds in his "account," after costs, tax liabilities and deprivation of interest, will be insufficient to repurchase the number of shares of stock that were originally seized. This policy, then, ensures that every Owner is irreparably harmed, regardless of whether or not the Controller observes his Constitutional obligations.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

55. The Controller also implemented a policy to enforce the application of recently enacted interest rate legislation that shifts and reduces the pooled money interest rate to zero, such that the interest rate decrease was applied *retroactively*. This action effects an unconstitutional taking of vested property (interest lawfully accrued on the accounts prior to the interest rate decrease) without just compensation. The Controller is now applying retroactively the zero rate to 6,800,000 accounts and the $4.1 billion in private funds, backwards over the entire 25-year life of the Unclaimed Property Fund. The amendment that was inserted into Section 1540(c) of the UPL replaced language that requires the compounding of interest so that it now states, in relevant part: "No interest shall be payable on any claim paid under this chapter." The effect is that the rightful owners of property held in the Unclaimed Property Fund are now deprived of the interest that had accrued under applicable law while their property was in the custody of the Controller. For example, if an Owner's property worth $100,000 was placed in the custody of the Unclaimed Property fund on January 1, 1990, as of December 31, 2002 the Owner would be entitled to $188,564.91, assuming a constant interest rate of 5%. Under the "new" rate, the owner would be entitled to only $100,000. This difference of $88,564.91 represents an unconstitutional taking because the Controller has applied the zero interest rate retroactively. The reduction in interest to zero is not, in itself, unconstitutional, provided that it is applied prospectively. However, Defendant Westly's retroactive enforcement of this legislation directly harms every Owner under the UPL whose property was seized during the time when the UPL accounts accrued interest, including Plaintiffs.

**E.   Defendant's Conduct Further Violated And Interfered With California and Federal Securities Laws.**

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

56.    Defendant's conduct further violates the Federal Securities Acts (and the State of California's own Corporations Code or *"Blue Sky Laws"*) that are designed by congress to protect investors.    Among other things, these laws expressly preclude interference with its citizens' stock investments.

57.    For example, the Securities Act of 1933 (15 U.S.C. §§ 77a-77bbb) and the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78a-78hh) (hereinafter referred to as the "1933 Act" and the "1934 Act") are designed specifically to protect members of the public, such as Plaintiffs and Class, and their stock investments.

58.    The federal securities rules set forth in Sections 11 and 12(1), 12(2), 13(e) of the 1933 Act, and Sections 13(e), 13e-3, 14(a), 14(e), 15(c)(1), 16(b), and 18 of the 1934 Act are designed to protect the public and stock investors like Plaintiffs and Class, thus guaranteeing them the right to transfer and hypothecate their shares of stock as they please, to receive timely material information on their investments, to vote on shareholder issues, etc.  These federal laws as enacted by Congress and other common laws further specify that a corporation must provide timely, material information regarding an individual's investments.  Furthermore, these laws specify that a fiduciary relationship exists and runs from the corporation, its board of directors, and majority shareholders to minority stock investors like Plaintiffs.  Defendant's unlawful conduct interfered with the federal and state securities laws and fiduciary relationships that were designed to protect Plaintiffs and Class Members.

59.    The unlawful seizure of Plaintiffs' and Class Members' stock by Defendant without notice and due process violates Federal Securities laws and directly

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

interferes with the application of the federal laws, such as the 1933 Act and the 1934 Act, that were designed and enacted by our federal Congress to protect the public.

60.    The Defendant interfered with the common law and statutory fiduciary duties that run from corporations, boards of directors and majority shareholders in favor of Plaintiffs.  Using unconstitutional, unstated criteria, Defendant audited and threatened to fine any company that did not surrender stock.  The stock was then transferred to private stockbrokers and sold and the proceeds used as a revenue stream to balance the State of California's budget. At no time was the Controller authorized by Plaintiffs and Class Members to confiscate their stock. The Plaintiffs did not otherwise cause title to transfer to the Defendant as required by U.C.C. Article 8, which guides the transfer of stock in California and the United States. Consequently, the stock is not and has never been the property of the Controller or the State of California, but remains the private property of Plaintiffs and Class. The Controller's seizure of title to this property violates these fundamental principles and vested rights.

**F. The Controller Violated his Own State Laws, Such As The Unclaimed Property Act (UPL), Code of Civil Procedure §§ 1300, et. Seq, So That His Actions Are *Ultra Vires* And Outside The Law.**

61.    A fundamental purpose of the Unclaimed Property Law (UPL) that the Defendant swore to uphold is to protect <u>unknown</u> owners by locating them and restoring their property and to give the state the benefit of the use of it.  Defendant breached the UPL by confiscating the property of "known" owners, without notice, and selling their stock investments without their knowledge. The fact that the Controller does not tell the Owners that he has their property means, for all practical purposes, that they will never

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

be "reunited" with their property. Plaintiff alleges specific examples of the statutory breaches as follows:

**1.   Defendant Failed To Determine Whether Plaintiffs Met The Threshold Requirements Of The UPL And Whether They Were Truly "Lost" And "Unknown."**

62.    Defendant is charged with the responsibility of upholding the UPL and protecting the public from its misapplication.  At all times Plaintiffs allege that their identities and locations were known, or should have been known to the Holders and the Controller upon exercise of reasonable due diligence. Defendant simply failed or refused to carry out his statutory obligations to police the Holders and require them to notice Plaintiffs prior to escheat as required by the UPL , state and federal securities laws, and the Holders' common law fiduciary duties.

63.    As evidence of this fact, several of the Plaintiffs and Class have received mail at their current addresses from the various companies and agents immediately prior to, and in some cases, after the confiscation of their stock, even though the contention that they were "unknown" to the Holders provides the basis for confiscation of the stock in the first place.  In fact, in or about December of 2000, TWA began returning stock to various shareholders, whose identities were listed as lost and "unknown" and among the lists maintained by Defendant.

64.    The UPL in effect became a tool for some Holders (companies and banks) to divorce themselves from unwanted shareholders, which resulted in obvious advantages to the Holders in the form of reduced administrative costs, increased retained earnings, and increased control among the remaining shareholders, among other advantages.

**2. Defendant Failed To Provide Statutory Notice And Publicly Stated That He Has Only A "Moral" Duty To Provide Notice And Due Process**.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 27 -

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

65.     Defendant and his predecessors publicly disaffirmed his notice and due process obligations, publicly stating through his agents that he has only a "moral" obligation to notify stockowners when he seizes and sells their investments.  Between the years 1989 through 1994, Defendant lacked the budget and consequently did not provide notice and due process to Plaintiffs and Class. Under California Code of Civil Procedure section 1531, the Controller was expressly required to provide notice to the Plaintiffs both by publication of notice and through direct mail and publication within fixed periods of time.  Specifically, during the period from 1984 to 1990, section 1531 required direct mail notice and publication notice within set periods of time so that the relevant provisions read, in pertinent part:

(a) Within 150 days after the receipt of property as required by Section 1532, the Controller shall cause a notice to be published, in a newspaper of general circulation which the Controller determines is most likely to give notice to the apparent owner of the property.  The Controller need not publish any name the publication of which is not likely to give notice to the apparent owner of the property.  The Controller need not publish any name the publication of which is not likely to give notice to the apparent owner.

(b) Each published notice shall be entitled "notice of names of persons appearing to be owners of unclaimed property" and shall contain the names in alphabetical order.

(c) Each published notice shall also contain a statement that information concerning the amount or description of the property may be obtained by any persons possessing an interest in the property by addressing any inquiry to the Controller.

(d) ….

(e) Within 120 days from the filing date for filing the report required by Section 1530, the Controller shall mail a notice to each person having an address listed therein who appears to be entitled to property of the value of $25 or more escheated under this chapter.

- 28 -

FIRST AMENDED CLASS ACTION COMPLAINT

(f) The mailed notice shall contain:

(1) A statement that, according to a report filed with the Controller, property is being held to which the addressee appears entitled.

(2) The name and address of the person holding the property and any necessary information regarding changes of name and address of the holder.

(3) A statement that, if satisfactory proof of claim is not presented by the owner to the holder by the date specified in the published notice, the property will be placed in the custody of the Controller and all further claims must be directed to the Controller.

66.     Section 1531 was subsequently amended so that between the years 1991 to 1996 the relevant subsections state:

(a) Within one year after payment or delivery as required by Section 1532, the Controller shall cause a notice to be published, in a newspaper of general circulation which the Controller determines is most likely to give notice to the apparent owner of the property. The Controller need not publish any name the publication of which is not likely to give notice to the apparent owner of the property.

(b) Each published notice shall be entitled "notice of names of persons appearing to be owners of unclaimed property" and shall contain the names in alphabetical order.

(c) Each published notice shall also contain a statement that information concerning the amount or description of the property may be obtained by any persons possessing an interest in the property by addressing any inquiry to the Controller.

(d) ….

(e) Within 180 days after payment or delivery of escheated property as required by section 1532, the Controller shall mail a notice to each person having an address listed therein who appears to be entitled to property of the value of $25 or more escheated under this chapter.

67.     As of 1997, section 1531 reads:

(a) Within one year after payment or delivery of escheated property as required by Section 1532, the Controller shall cause a notice to be published, in a newspaper of general circulation which the Controller

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 29 -

FIRST AMENDED CLASS ACTION COMPLAINT

determines is most likely to give notice to the apparent owner of the property.

(b) Each published notice shall be entitled "notice to owners of unclaimed property."

(c) Each published notice shall also contain a statement that information concerning the amount or description of the property may be obtained by any persons possessing an interest in the property by addressing any inquiry to the Controller.

(d) If an account paid or delivered to the Controller pursuant to Section 1532 includes a social security number, the Controller shall request the Franchise Tax Board to provide a current address for the apparent owner on the basis of that number. The Controller shall mail a notice to the apparent owner for whom a current address is obtained if the address is different than the address previously reported to the Controller.

68.    Beginning in 1989 and continuing to present, Defendant knowingly failed to provide notice by publication and direct mail as required by Code of Civil Procedure section 1531. In November 1994, Defendant attempted to remedy the lack of notice and compliance with 1531 by publishing single "block ads" that ran in publications of major circulation.  In or about 1995, Defendant discontinued his notice and due process obligations altogether and currently relies only on the so-called non-descript "block ads" and the internet to meet notice and due process requirements.

69.    The 1994 "block ads" published in certain newspapers as notice to the unclaimed property owners was constitutionally deficient as a matter of law and do not satisfy the various iterations of the UPL (1984-1990;1991-1996;1997-present) or the due process clauses of the United States and California Constitutions. *Taylor v. Westly*, 402 F.3d 924, 934 and fn 55 (9th Cir. 2005) (*citing See  Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Likewise, though the Plaintiffs' records contain social security and taxpayer identification numbers, Defendant failed to request that the

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

Franchise Tax Board provide current addresses in order to provide them with notice by direct mail as required by statute.

70.     Some Owners receive no notice at all, even if the Controller upholds all of his notice obligations under the UPL. Specifically, the publication "notice" (which violates the *Mullane* standard and is insufficient to provide true notice to a reasonable person that his property has been seized) is only required in newspapers in California, which represents only a subset of Owners of "unclaimed" property in the Controller's custody pursuant to the UPL. Similarly, direct mail notice is required only when the Controller receives a social security number from the Holder. Section 1531. Again, this is only a subset of the Owners of "unclaimed" property in the Controller's custody pursuant to the UPL. Excluded from *any* form of notice, no matter how insufficient, are Owners who (a) live anywhere other than California, and (b) whose Holders do not provide a social security number to the Controller. This would include *any* foreign citizen living in his native country whose stock is seized, since foreign citizens would not have social security numbers. In addition, it includes *all* United States citizens living outside of California whose Holder does not properly report the social security number to the Controller, whether the citizen has a social security or not, and whether or not the Holder complies with its own obligations under the UPL.

**3. Defendant Failed to Verify the Holder's UPL Obligations.**

71.     Defendant also failed to verify that the Holders had accurately reported the stock investments (C.C.P. §1530), delivered all property (C.C.P. §1532), and Defendant failed to verify that the companies and their bank transfer agents had transmitted notice to Plaintiffs prior to escheating his shares of stock (C.C.P. § 1513.5).  Under these sections

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 31 -

and others, the Holders were not to escheat investments unless, depending on the applicable version of the statute, a 7-year, 5-year, or 3-year dormancy period had expired and the owner's identity was unknown. Furthermore, the Holder was required to exercise due diligence under the UPL, federal, state, and common law securities laws in order to avoid the forfeiture, and to act in good faith.

**G. The Damages Caused To Plaintiffs and Class Members By Defendant's Actions. Arbitrarily.**

72.    Defendant's actions in the illegal confiscation and sale of stock resulted in significant, readily calculable injuries to Plaintiffs and Class Members. In most instances Defendant has returned the liquidated sums representing some investments, which amount to roughly .10¢ on the dollar, after the reduction in appreciation and application of tax liabilities and other costs. Because Defendant immediately sold the stock investments, the Owners were unable to participate in the appreciation of their shares of stock or receive dividends and stock splits. The appreciation in value, receipt of dividends and stock splits would otherwise have occurred absent Defendant's conduct.

73.    For example, the Defendant's records appear to show Plaintiff Chris Lusby Taylor is entitled to 1058 shares of stock, when in reality had the stock received the appropriate splits he would be entitled to 52,224 shares of Intel stock. The Controller's account for Chris Lusby Taylor is entitled to roughly $200,000.00, when his investment should have reached a recent high in excess of $3,864,576.00 (52,224 shares x $74.00 per share = $3,864,576.00).

74.    In other instances, Defendant has arbitrarily assigned values to shares of stock, previously liquidated, and refused to pay interest on dividends issued after Defendant had seized Plaintiffs' stock investments. In the case of Plaintiff Nancy A.

- 32 -

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

Pepple-Gonsalves, Defendant is unable to locate the proceeds from the stock sale altogether and simply lists the 7,000 shares of TWA stock as permanently misplaced and unpayable.

75.    In the case of Gary Kesselman, the Controller's actions have deprived Mr. Kesselman of a two-for-one stock split that occurred in October, 2004, which deprived him of participating in the doubling of the value of his stock since the stock was confiscated.

76.    In the case of Dawn Struck, the Controller's actions have deprived Ms. Struck of participating in a 33% increase in the value of her Vodafone stock since it was confiscated.

77.    In the case of Susan Swinton, Kimberly Swinton, Kameron Swinton, and Stephen Swinton, the Controller's actions have deprived each of these individuals of increases of the value in their Merck, GE, Intel stock, as well as their Morgan Stanley funds.

78.    In the case of William J. Palmer, the Controller's actions have deprived Mr. Palmer of an increase in the 65-80% of the value of his PG&E stock since it was confiscated.

79.    Defendant has knowingly falsified public records, misrepresented facts, and directed stockowners from the public escheat records, where they are listed as "unknown" owners, and back to the Holders. The actions of the Defendant are arbitrary and capricious and outside the scope of the Controller's authority as defined by state statutes.

**VII.**

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

**CLAIMS FOR RELIEF**

**First Claim**

**(Declaratory Relief Against Defendant)**

80.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 79 as though fully set forth herein.

81.    A real and actual controversy exists between Plaintiffs and Defendant Steve Westly concerning Defendant's duties under the various statutes and laws that guide his office.  Specifically, Plaintiffs require a declaration as to:

(a)    Whether Defendant failed to determine whether Plaintiffs and their property fall within and meet the threshold definitions of the UPL because their identities and whereabouts are known or are reasonably locatable using the social security and taxpayer identification numbers that are necessarily escheated with the stockholders' investments.

(b)    Whether Defendant took and sold Plaintiffs' stock without notice and due process in violation of the California Constitution, Article I, §§ 7, 15 and, the United States Constitution, Fifth and Fourteenth Amendments.

(c)    Whether Defendant violated California's own *"Blue Sky Laws"* Corporations Code (*see also* California Constitution, Article XX, §5 [authority of State to govern corporations]) and Federal Securities laws (1933 Act and 1934 Act) by interfering with Plaintiffs' investment and their right to, among other things, transfer their shares of stock, receive material information on his investments, and vote on shareholder issues.

(d)    Whether Defendant has failed and currently fails to comply with the notice provisions set forth in Code of Civil Procedure section 1531

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 34 -

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

(as amended,1984-1990;1991-1996;1997-present) by failing to provide mail and publication notice to owner.

(e)    Whether Defendant failed to fulfill his obligations to verify that the corporations fulfilled their obligations under Code of Civil Procedure sections 1530 and 1531.5, and in all other ways complied with the UPL.

(f)    Whether the State of California's current laws, with respect to generic block ads and failure to provide mail notice to known owners violate the due process clause of the California and the United States Constitutions.

82.    The dispute between Plaintiffs and Defendant is actual and concrete, and involves a significant financial burden unilaterally imposed upon Plaintiffs based on the loss of their investments. A determination of the rights and duties of the parties is necessary and proper at this time in order that Plaintiffs may ascertain their rights, and establish as a matter of law that Defendant has violated his obligations and duties under the above laws such that, based on any one of the above violations, Plaintiffs and Class are entitled to the disgorgement and return of either their stock investment or the return of the reasonable value thereof.

## Second Claim
### (Violation of 42 U.S.C. § 1983)
### (Procedural Due Process)

83.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 82 as though fully set forth herein.

84.    The Due Process Clause of the United States Constitution prohibits the State of California from depriving citizens of a protected property interest without due process of law.

85.    Plaintiffs had a constitutionally protected property interest in stocks that they owned, but that nevertheless escheated to the State of California between 1989 and 2005.

FIRST AMENDED CLASS ACTION COMPLAINT

86. Defendant took action affecting Plaintiffs' constitutionally protected property interest by seizing and liquidating Plaintiffs' stock investments. The seizure and sale of Plaintiffs' stock investments stripped Plaintiffs of their right to obtain the benefits of many years of appreciation of the stock, triggered capital gains taxes, and resulted in other unnecessary fees and costs.

87. Defendant deprived Plaintiffs' of their protected property interests without due process of law by:

(a) Failing to provide timely mail notice to Plaintiffs, whose identity and contact information Defendant either knew, or by the exercise of reasonable diligence should have known, that Plaintiffs property had escheated to the State of California pursuant to the UPL;

(b) Failing to provide timely publication notice to Plaintiffs that their property had escheated to the State of California pursuant to the UPL;

(c) Failing to provide publication notice that was reasonably calculated, under all the circumstances, to apprise Plaintiffs that their property had escheated to the State of California pursuant to the UPL;

(d) Failing to provide timely mail notice to Plaintiffs, whose identity and contact information Defendant either knew, or by the exercise of reasonable diligence should have known, of Defendant's intention to liquidate Plaintiffs' stock prior to Defendant permanently altering Plaintiffs' property in this manner;

(e) Failing to inform Plaintiffs, when such Plaintiffs filed claims for property delivered to the Controller many years subsequent to the escheatment of Plaintiffs' property, of the fact that (1) Defendant had failed to comply with the Procedural Due Process clause in escheating Plaintiffs' stock and (2) the value attached to Plaintiffs' property was based upon the amount the State purportedly received from a sale of Plaintiffs' property of which Plaintiffs' neither consented nor were aware;

(f) Failing to pay interest that had accrued on Owners' Unclaimed Property Accounts prior to the legislature's reduction of the interest rate to zero;

(g) Failing to ensure that the prior holders of Plaintiffs' property prior to escheatment complied with the notice requirements imposed upon

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

these holders pursuant to California Code of Civil Procedure section 1513.5, among others.

88. Defendant's failure to comply with the requirements of the Due Process Clause of the United States Constitution in the manners outlined above has resulted in substantial monetary losses to Plaintiffs.

89. Based upon the foregoing, Plaintiffs are entitled to and hereby seek restitution of their property or the value thereof from the Unclaimed Property Fund, or, alternatively, monetary damages, in a manner commensurate with the injuries they have suffered as a result of Defendant's violations of the Due Process Clause of the United States Constitution.

**Third Claim**
**(Violation of 15 U.S.C. §§ 77a-77bbb, 78a-78hh)**
**(Violations of Federal Securities Laws)**

90. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 89 as though fully set forth herein.

91. The Securities Act of 1933 (15 U.S.C. §§ 77a-77bbb) and the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78a-78hh) (hereinafter referred to as the "1933 Act" and the "1934 Act") are designed specifically to protect members of the public, such as Plaintiffs and Class, and their stock investments.

92. The federal securities rules, for example, found in Sections 11 and 12(1), 12(2), 13(e) of the 1933 Act, and Sections 13(e), 13e-3, 14(a), 14(e), 15(c)(1), 16(b), and 18 of the 1934 Act are designed to protect the public and stock investors like Plaintiffs and Class, thus guaranteeing them the right to transfer their shares of stock as they please, receive material information on their investments, vote on shareholder issues, etc. These laws, and others, further specify that a fiduciary relationship exists and runs from the corporation, its board of directors, and majority shareholders to minority stock investors like Plaintiffs. Defendant's conduct interfered with the federal securities protections designed to protect Plaintiffs.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

93.    Additionally, many of the Plaintiffs executed contracts with companies that further guaranteed their equity position in the given company based on unique contributions of intellectual property and work product.

94.    The improper receipt and forced sale of Plaintiffs' stock by Defendant without notice and due process violates Federal Securities laws and directly interferes with the application of the federal laws, such as the 1933 Act and the 1934 Act, that were designed and enacted by Congress to protect the public.

95.    The Defendant interfered with the common law and statutory fiduciary duties that run from corporations, boards of directors and majority shareholders in favor of Plaintiffs.  Using unconstitutional, unstated criteria, Defendant audited and threatened to fine any company that did not surrender stock to the State of California.  The stock was then sold and used to balance the State of California's budget.

96.    Based upon the foregoing, Plaintiffs are entitled to and hereby seek restitution of their property or the value thereof from the Unclaimed Property Fund, or, alternatively, monetary damages, in a manner commensurate with the injuries they have suffered as a result of Defendant's violations of the Federal Securities Laws.

**Fourth Claim**
**(Violation of Cal. Code of Civil Procedure § 1300, et seq.)**
**(Unclaimed Property Act)**

97.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 96 as though fully set forth herein.

98.    A primary and fundamental purpose of California's Unclaimed Property Act ("UPL") is to protect unknown owners by locating them and restoring their property to them.

99.    The UPL in effect during the relevant time period either expressly or impliedly required Defendant to:

> (a)    Exercise reasonable diligence in determining whether, as a threshold matter, Plaintiffs' property was even subject to the UPL. Property only is subject to the UPL when its owners' identities and

- 38 -

FIRST AMENDED CLASS ACTION COMPLAINT

locations are "unknown." Thus, defendant bore the initial responsibility of determining whether Plaintiffs identities and locations were in fact "unknown;"

(b)    Publish timely notice to Plaintiffs of the escheatment of their property in the newspapers most likely to give each of these particular Plaintiffs notice that their property had escheated to the State of California;

(c)    Include within the published notice described in section (b), the actual names of Plaintiffs;

(d)    Mail timely notice to Plaintiffs of the escheatment of their property;

(e)    Verify that the holders of Plaintiffs' property prior to escheatment ("Holders") had accurately reported Plaintiffs' stock investments (CCP § 1530), delivered all of Plaintiffs' property (CCP § 1532), and properly transmitted notice to Plaintiffs prior to escheating Plaintiffs' stock (CCP § 1513.5);

(f)    Assign a value to Plaintiffs' stock upon liquidating it that was rationally related to the time and manner that Plaintiffs' stock was or should have been sold.

100.    Based upon the foregoing, Plaintiffs are entitled to and hereby seek restitution of their property or the value thereof from the Unclaimed Property Fund, or, alternatively, monetary damages, in a manner commensurate with the injuries they have suffered as a result of Defendant's violations of the Unclaimed Property Law.

## **Fifth Claim**

### **(Injunction)**

101.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 100 as though fully set forth herein.

102.    Plaintiff has no plain, adequate, or speedy remedy at law, and will suffer significant, permanent and irreparable harm unless the Court issues preliminary and permanent injunctive relief ordering Defendant to comply with the law, as set forth above, and to return Plaintiffs' stock and the stock belonging to other injured investors.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

## Sixth Claim

### (For An Accounting By Defendant)

103.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 102 as though fully set forth herein.

104.   Defendant never apprised Plaintiffs and Class Members of the true state of affairs and that she had taken possession and sold his stock investments, but failed to take possession of other property, or even what that property might be.  In some instances, Plaintiffs and Class Members received correspondence from company agents referring to the investors as both a "stockholder" and a "bondholder" and promising a few hundred dollars for other investment instruments that the agent had been holding since 1978.  The letter noted that the investment instruments would otherwise escheat to the State within an arbitrary, non-statutory period of thirty (30) days. In other instances, some of the Class Members have received share certificates from TWA without explanation.

105.   Plaintiffs therefore seek an accounting to determine and deliver to Plaintiffs restitution of their property, including the total amount of Plaintiff's injuries, which included not only the improperly sold stock investments, but other investment instruments (noted in the recent correspondence), the proper calculation of principal and interest, and the unnecessary fees, costs, and taxes, cannot be ascertained without an accounting for such property.

## Seventh Claim

### (Attorney Fees and Common Fund)

106.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 105 as though fully set forth herein.

107.   Plaintiffs, in acting as representative for all injured shareholders will by their success in this litigation create a common fund consisting of all monies improperly received from the improper acquisition and sale of stock without notice and due process that must necessarily be refunded by Defendant to other affected shareholders, together with savings of future costs, fees and taxes which will not have to be paid.

108.   In creating such a fund, Plaintiffs are acting in good faith on behalf of all claimants and are entitled to be paid for their legal expense in bringing and prosecuting this action.

109.   This Court has equitable power to order the payment by Defendant of Plaintiffs' legal expense from any funds held by and disgorged by Defendant in their budget and appropriated by the Legislature, of from the common fund thus created.

### Eighth Claim
### (Taxpayer Action)

110.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 109 as though fully set forth herein.

111.   Pursuant to California Code of Civil Procedure section 526a, Plaintiffs Pepple-Gonsalves, Kesselman, Swinton, Struck, and Palmer and all similarly situated persons in their capacity as taxpayers allege Defendant Westly expended the moneys of the Controller's Office and threaten to and will continue to spend or waste such moneys and have created unnecessary liability and exposure to the Controller's Office for the State of California by:

(a) Failing to provide notice and due process pursuant to the provisions of Section 1531 of the UPL, and the California and United States Constitutions, which resulted in the Unconstitutional seizure of private property by the Defendant;

(b) Seizing private property that is completely outside the scope of the UPL, such as the personal property of foreign citizens and *known* (as opposed to "unknown") individuals;

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 41 -

(c) Enforcing unconstitutional, retroactive (as opposed to constitutionally allowed prospective) application of recently enacted interest rate legislation that reduces the pooled money interest rate to zero, which the Controller is now applying retroactively to 6,800,000 accounts and the $4.1 billion in private funds, backwards over the entire 25-year life of the Unclaimed Property Fund;

(d) Arbitrarily and capriciously failing to pay interest altogether on certain internally recorded accounts such as cashiers checks and stock dividends from stock investments that arrived at the Controller's Office after the stock was taken from the investors;

(e) Commingling private funds held in the Unclaimed Property Fund with public funds held in the General Fund of the State of California;

(f) Illegally contracting and paying vendors, such as "auditors" and "auctioneers," resulting in the needless expenditure of taxpayer funds and then allowed these vendors to keep the improper payments from Plaintiffs' and Taxpayers' funds and property despite the findings of a *KPMG* Report prepared with the assistance of Defendant's staff;

(g) Allowing certain companies and financial institutions to retain property and funds that rightfully belong to the citizens of California pursuant to the UPL and other laws that total, conservatively, between $1 and $5 billion and provided active assistance to and engaged in collusion with the regulated entities in violation of the law and at taxpayer expense;

(h) Implementing and executing arbitrary and capricious document shredding policies under which the Controller destroys all documents older than three (3)

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

years  including the documentation that is needed by rightful owners (such as Plaintiff Pepple-Gonsalves) to verify their entitlement to active and unclaimed accounts;

(i) Seizing, selling, and destroying without notice to the owners in violation of the 4th Amendment (Right to Privacy), 5th Amendment (Private Property) and 14th Amendment (Due Process), the contents of private bank safety deposit boxes which contained such items as original testamentary instruments (e.g., wills and trusts), insurance policies and personal correspondence such as "love letters";

(j) Failing to propound regulations that address: (1) the proper submission and review of claims for unclaimed property as required by the UPL; (2) document retention; (3) review of safety deposit boxes and their contents which include original testamentary instruments (e.g. wills and trusts), insurance policies, personal letters, all of which the Controller destroy as "worthless"; (4) attorneys fees as distinguished from investigator fees; and, (5) the time period for payment to claimants, which typically takes 12 to 16 months for payment from the Controller's office while the Controller captures float on the interest owed on the account.

(k) Violating California's *Blue Sky Laws* contained in the Corporations Code (*see also* California Constitution, Article XX, §5 [authority of State to govern corporations]) and Federal Securities laws (1933 Act and 1934 Act) and other consumer laws by interfering with Plaintiffs' investments and property.

FIRST AMENDED CLASS ACTION COMPLAINT

(l) Failing to fulfill obligations to verify that the corporations fulfilled their obligations under Code of Civil Procedure sections 1530 and 1531.5, and in all other ways complied with the UPL.

112. Since these actions are unconstitutional, moneys spent to enforce the Defendants' illegal scheme are illegal expenditures and further expenditures should be enjoined and the funds ordered disgorged by the vendors and corporations and returned to the Controller's Office for the State of California.

## VIII.

### Prayer for Relief

**WHEREFORE**, Plaintiff prays for judgment against Defendants and each of them, as follows:

1. For equitable and injunctive relief as determined by this court, including but not limited to, imposition of a constructive trust over an accounting of any and all transactions unlawfully entered into by Defendant without the appropriate notification of the public;

2. For declarations that Defendant:

(a) Failed to provide notice and due process pursuant to the provisions of Section 1531 of the UPL, and the California and United States Constitutions, which resulted in the Unconstitutional taking of private property by the Defendant state officials;

(b) Seized private property that is completely outside the scope of the UPL, such as the personal property of foreign citizens and known (as opposed to "unknown") individuals;

(c) Enforced unconstitutional, retroactive (as opposed to constitutionally allowed prospective) application of recently enacted interest rate

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 44 -

legislation that reduces the pooled money interest rate to zero, which the Controller is now applying retroactively to 6,800,000 accounts and the $4.1 billion in private funds, backwards over the entire life of the Unclaimed Property Fund;

(d) Commingled private funds held in the Unclaimed Property Fund with public funds held in the General Fund of the State of California;

(e) Illegally contracted and paid vendors, such as "auditors" and "auctioneers," resulting in the needless expenditure of taxpayer funds and then allowed these vendors to keep the improper payments from Plaintiffs' and Taxpayers' funds and property despite the findings of a KPMG Report prepared with the assistance of Defendants' staff;

(f) Allowed certain companies and financial institutions to retain property and funds that rightfully belong to the citizens of California pursuant to the UPL and other laws that total, conservatively, between $1 and $5 billion and provided active assistance to and engaged in collusion with the regulated entities in violation of the law and at taxpayer expense;

(g) Implemented and executed arbitrary and capricious document shredding policies under which the Controller destroys all documents older than three (3) years including the documentation that is needed by rightful owners to verify their entitlement to active and unclaimed accounts;

(h) Seized, sold, and destroyed without notice to the owners in violation of the 4th Amendment (Right to Privacy), 5th Amendment (Private Property) and 14th Amendment (Due Process), the contents of private bank safety

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

- 45 -

FIRST AMENDED CLASS ACTION COMPLAINT

deposit boxes which contained such items as original testamentary instruments (e.g., wills and trusts), insurance policies and personal correspondence such as "love letters";

(i) Failed to propound regulations that address: (1) the proper submission and review of claims for unclaimed property as required by the UPL; (2) document retention; (3) review of safety deposit boxes and their contents which include original testamentary instruments (e.g. wills and trusts), insurance policies, personal letters, all of which the Controller destroy as "worthless"; (4) attorneys fees as distinguished from investigator fees; and, (5) the time period for payment to claimants, which typically takes 12 to 16 months for payment from the Controller's office while the Controller captures float on the interest owed on the account.

(j) Violated California's "Blue Sky Laws" contained in the Corporations Code (see also California Constitution, Article XX, §5 [authority of State to govern corporations]) and Federal Securities laws (1933 Act and 1934 Act) and other consumer laws by interfering with Plaintiffs' investments and property.

(k) Failed to fulfill obligations to verify that the corporations fulfilled their obligations under Code of Civil Procedure sections 1530 and 1531.5, and in all other ways complied with the UPL.

3. For a declaration that enacted legislation is unconstitutional insofar as it attempts to retroactively change the computation of interest to a rate of zero;

4. For a permanent injunction against applying a zero interest rate retroactively;

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT

5. A permanent injunction restraining defendants from engaging in future unlawful and/or improper transactions, as alleged in this Complaint;

6. Restitution and disgorgement Owners' property to the claimants and/or the public in the form of an order requiring Defendant to refund the stock investments taken from Plaintiffs and other injured investors that Defendant obtained by engaging in the conduct which violates the UPL, California Corporations Code and Federal Securities Acts, State and Federal Constitutions;

7. For an accounting;

8. For creation of a common fund;

9. For a reasonable sum of attorneys' fees incurred by Plaintiffs to date and to be incurred by Plaintiff hereinafter in connection with this action;

10. For all costs incurred by Plaintiffs to date and to be incurred by Plaintiffs hereafter in connection with this action; and

11. For such other and further relief as the Court deems just and proper.

Dated this 20th day of June, 2005, at Sacramento, California.

Law Offices of William W. Palmer


By:___/s/ William W. Palmer_____
WILLIAM W. PALMER
Attorney for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Law Offices of William W. Palmer

By:     /s/ William W. Palmer
         WILLIAM W. PALMER
         Attorney for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

Chris Lusby Taylor, et.al. v. Steve Westly

## PROOF OF SERVICE

## United States District Court For The Eastern District Of California

I am employed in the County of Sacramento, State of California.  I am over the age of 18 and not a party to the within action; my business address is:

On **June 20, 2005**, I served the foregoing document described as:

## First Amended Class Action Complaint

on all interested parties in this action by placing [  ] the original  [  ]a true copy  thereof enclosed in sealed envelopes addressed as follows:

[ x ]BY MAIL
    I caused such envelope to be deposited in the mail at Sacramento, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date deposit for mailing in affidavit.

[  ]BY PERSONAL SERVICE
    I caused to be delivered by hand to the above-listed addressees or to the addressees on the list attached hereto.  A proof of service executed by the delivery person will be mailed under separate cover.

[  ]BY OVERNIGHT MAIL/COURIER
    To expedite the delivery of the above-named document, said document was sent via overnight courier for next day delivery to the above-listed party.

[  ]BY FACSIMILE ("FAX")
    In addition to the manner of proof of service indicated above, a copy was sent by FAX to the above-listed party.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on **June 20, 2005**, at Sacramento, California.

　　　　　　　　　　　　　　　　　　/s/ Jerry Franco
　　　　　　　　　　　　　　　　　　Assistant

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

FIRST AMENDED CLASS ACTION COMPLAINT