1  THE LAW OFFICES OF WILLIAM W. PALMER
       WILLIAM W. PALMER – State Bar No. 146404
2  1241 Carter Road
   Sacramento, California  95864
3  Telephone : (916) 972-0761
   Facsimile: (916) 972-0877
4
5  Attorney for Plaintiffs Chris Lusby Taylor,
   Nancy A. Pepple-Gonsalves, Gary Kesselman,
6  Susan Swinton, Dawn E. Struck, and William J.
   Palmer
7
8                     UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  CHRIS LUSBY TAYLOR, NANCY A.     Case No.:  CIV. –S-01-2407 WBS
    PEPPLE-GONSALVES, GARY
12  KESSELMAN, SUSAN SWINTON, DAWN E.    DECLARATION OF WILLIAM W.
    STRUCK, and WILLIAM J. PALMER      PALMER IN SUPPORT OF PLAINTIFFS'
13                                   MOTION FOR INTERIM FEE AWARD
14  As Taxpayers, and on behalf of themselves and
    other persons similarly situated,
15
16           Plaintiff,
17      vs.                          Hearing:
                                     Date:        October 29, 2007
18  JOHN CHIANG, individually and in his     Time:        2:00 p.m.
    capacity as STATE CONTROLLER OF THE   Courtroom: 5
19  STATE OF CALIFORNIA; STEVE WESTLY,
    individually                        (The Hon. Judge William B. Shubb)
20
21           Defendants.
22  _____
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

_____
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
INTERIM FEE AWARD

## DECLARATION OF WILLIAM W. PALMER

I, William W. Palmer, Esq., declare as follows:

1.      I am an attorney at law licensed to practice law before all courts of the State of California, including the United States Supreme Court and the U.S. District Federal Court for the Eastern District of California. I am attorney of record for Plaintiffs herein. I have personal knowledge of the facts contained herein and if called as a witness I could and would testify to them.

2.      Simultaneously with this Declaration, I caused to be filed Plaintiffs' Motion for Interim Fee Award (the "Motion") made on behalf of my clients in this case.

3.      I filed the original Complaint in this case on December 31, 2001. I have invested significant time and effort litigating this case on behalf of my clients and the putative Class Members. A true and correct breakdown of the hours, including the date, the time expended by my firm, and the tasks performed, is attached hereto as **Exhibit A**. This time report (**Exhibit A**) also details the expenses my firm has incurred in prosecuting this case.

4.      I began this case as a solo practitioner. As reflected in the time report (**Exhibit A**), I undertook all of the research and investigation to understand the nature and magnitude of the Controller's wrongdoing. This work included many hours in public libraries and archives researching the actual steps the Controller took in his administration of California's Unclaimed Property Law ("UPL"), such as the notices (or lack thereof) published in newspapers in California, and compared those steps to the requirements of the UPL as it existed from time to time. What I learned was startling: the Controller systematically abused the UPL in an effort to maximize the "revenues" available to the State by refusing to provide proper Notice and by systematically seizing more and more private

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 1 -

property, without regard for whether it was actually "unclaimed" (*i.e.,* within the scope of the UPL) or not. As a result of this research, I recognized that this case extended far beyond the injury inflicted on my two initial clients in this case, Chris Lusby Taylor and Nancy A. Pepple-Gonsalves. Accordingly, I prepared this case as a class action.

5.      As reflected in this Court's docket, this case was dismissed on the grounds that the Eleventh Amendment precluded this case. Thereafter, Daniel J. Culhane, an attorney based in Denver, Colorado, who has experience in federal and state appellate litigation, agreed, and joined my firm and began working on the case. (**Exhibit A**).

6.      From time to time as the need arose during the course of this litigation my firm collaborated with another attorney, Brian Boydston, who is based in Los Angeles with his law firm. Mr. Boydston's contributions are likewise contained in the time report attached to his declaration.

7.      My fee agreement with my initial clients (and with the additional Plaintiffs who entered the case in 2005) is a contingency fee agreement. Under each of the fee agreements, my firm is obligated to bear all of the risk that the case might not succeed, as well as to advance all of the costs and expenses incurred in litigating the case. I have never received any payment of any legal fees from any client (or anyone else) in connection with this case. Indeed, despite the fact that the Ninth Circuit Court of Appeals twice ordered the Controller to pay my costs in connection with the successful appeals, the Controller has never paid those costs. My colleagues Mr. Culhane and Mr. Boydston have also never received any remuneration of any kind for their contributions to this case, although both attorneys have incurred costs in connection with the case.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM FEE AWARD

1   This case has proven to be difficult, complex, and enormously time- and resource-

2   consuming. In total, the attorneys in this case have invested 6660.08 hours, valued at

3   $400.00 per hour, for a total time-value of $ 2,700,348.70 in this case from inception

4   through September 15, 2007, which represents the period for which the Plaintiffs seek an

5   interim award of fees. The attorneys' $400.00 rate is commensurate with their credentials

6   and experience, and is reasonable based on not only the attorneys' capabilities, but also in

7   the marketplace for complex, sophisticated litigation. A copy of my executive summary is

8   attached hereto as **Exhibit G**. I regularly communicate with attorneys from larger firms who

9   have similar experience and credentials to me, Mr. Culhane, and Mr. Boydston, and those

10  attorneys typically charge higher (and sometimes significantly higher) hourly rates than

11  $400.00. Accordingly, $400.00 per hour is reasonable based on the experience, credentials

12  and capabilities of my firm, as well as based on market rates for similar work.

13      8.      On behalf of my clients, I have used my best efforts to move this case

14  forward expeditiously. However, my efforts have been frustrated by Defendants' litigation

15  practices, which appear designed to use every possible means to delay the proceedings.

16  While I respect my opposing counsel's efforts, which were initially successful, to defend the

17  Controller's practices and to argue for immunity under the Eleventh Amendment, the Ninth

18  Circuit rejected their arguments in its March, 2005, unanimous published opinion. *Taylor v.*

19  *Westly*, 402 F.3d 924 (9th Cir. 2005) ("*Taylor I*"). In addition, the Ninth Circuit clearly held

20  that the Controller's practices (as alleged in the Complaint, and as subsequently admitted in

21  the Declaration of Robert Huarte dated June 26, 2006 (attached hereto as **Exhibit B**)

22  ("Huarte Decl.")) violate the Due Process Clause of the United States Constitution. At that

23  point, I expected the Controller to significantly reform his practices and to seek a way to end

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 3 -

1    this litigation through a mutually-agreeable settlement. Instead, amazingly, following the

2    *Taylor I* opinion, Controller Steve Westly actually *increased* the seizure of private property,

3    and took increasingly aggressive and unsupported positions in this litigation, and my

4    colleagues who represent the Defendants announce that the unanimous, published decision

5    was "merely jurisdictional."

6

7        9.    Plaintiffs immediately sought to enjoin further violations of the United States

8    Constitution at the Ninth Circuit Appellant level by moving for a Temporary Restraining

9    Order ("TRO") and a preliminary injunction, and then again at the District Court level.

10    When this was denied, Plaintiffs again appealed to the Ninth Circuit. While that appeal was

11    pending, we presented the Plaintiffs in a separate case pending in the Northern District

12    captioned *Suever v. Westly*, No. C-01-00156 RS (E.D. Cal.) where we obtained another

13    favorable ruling from the Ninth Circuit echoing the holding in *Taylor I. See Suever v.*

14    *Westly*, 439 F.3d 1142 (9th Cir. 2006). In 2007, the Ninth Circuit issued another unanimous,

15    published decision directing this Court to enter a preliminary injunction prohibiting further

16    violations of the Due Process Clause. *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007)

17    ("*Taylor II*"). The *Taylor II* opinion explicitly relied on *Jones v. Flowers*, 126 S.Ct. 1726

18    (2006) and *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). In addition,

19    the *Taylor II* opinion recommended that this Court consider federal oversight of the

20    Controller in recognition of the reality that the Controller has taken no action whatsoever to

21    correct his Unconstitutional practices despite the explicit rulings of *Taylor I*, *Suever* and the

22    United States Supreme Court's opinion in *Jones v. Flowers*. *Taylor II* at 1202. This Court

23    entered a Preliminary Injunction Order on June 1, 2007, which remains in effect.

24

25

26

27

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 4 -

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

10.     After this Court enjoined the Controller from taking possession, custody or title to property under color of the UPL the Controller took the public position that he "agrees" with the Federal Courts that the Unclaimed Property Law is broken and must be fixed, and even went so far as to assert that he is "outraged" by the UPL: "No, Sen. McClintock, I wasn't "shocked" when I took office six months ago. I was outraged – outraged that a program that I believe should be safeguarding lost property had been perverted by 20 years of shortsighted lawmaking into becoming the very thing it was designed to protect against." J. Chiang, "State Controller on Asset Seizures," Orange County Register (July 29, 2007), a true and correct copy of which is attached hereto as **Exhibit C**. *See also* M. Lifsher, "Lost track of those old assets? The state may have seized them," Los Angeles Times, July 9, 2007, p. A-1, a true and correct copy of which is attached hereto as **Exhibit D.**

11.     Unfortunately, the Controller does not appear to have informed his litigation team of his "outrage" with the "perverted" Unclaimed Property Law—a characterization that closely mirrors Plaintiffs' own allegations, albeit in more colorful terms. Thus, while the Controller publicly announced his intention to "fix" the problems with the UPL, he continued to assert in this Court and before the Northern District Court that there are no problems, and to argue that this Court's ruling, and the decisions in *Taylor I*, *Suever*, and *Taylor II*, have no application whatsoever because the multiple, published decisions are wrong and the Controller's conduct is completely legal and Constitutional. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, *Suever v. Westly*, No. CIV-03-00156 (E.D. Cal.) July 18, 2007 ("MPSJ Opp."). A true and correct copy of the MPSJ Opp. is attached hereto as **Exhibit E**. Plaintiffs have moved for FRCP

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM FEE AWARD

1    Rule 11 and related sanctions against the Controller and his counsel in the *Suever* case for

2    these violations.

3        12.     All of these activities, including Defendants' compulsive denial of the reality

4    that the Ninth Circuit has already decided this case in Plaintiffs' favor, have dramatically

5    increased the difficulty, complexity and expense of litigating this case. Regrettably, this

6    "scorched-earth" strategy is deeply troubling when adopted by a publicly-elected official

7    who has taken an oath to uphold the Constitution, and who publicly professes his "shock"

8    and "outrage." (Exhibit C and D, hereto.) In short, Plaintiffs have had to litigate, over the

9    Controller's aggressive objection, every minute point in this case, no matter how

10   insignificant or obvious. In the meantime, Defendants continue to advance arguments that

11

12   have been repeatedly rejected, and the Defendants are in denial regarding the realities of this

13   litigation. Echoing the Ninth Circuit, the Northern District Court recently remarked that

14   "Plaintiffs' obvious frustration with the apparent inability of the Controller to 'get it' is

15   therefore understandable." Order Denying Application for Temporary Restraining Order,

16

17   *Suever v. Chiang*, No. C 03-00156 RS (E.D. Cal. August 27, 2007) at 2:19-20 (attached

18   hereto as **Exhibit F**).

19

20       13.     Plaintiffs' counsel have expended enormous resources creating the successful

21   outcome in this case. In addition to the tens of thousands of dollars of expenses that counsel

22   has incurred, this case has consumed an enormous amount of attorney time—time for which

23   none of the attorneys has ever received any compensation whatsoever. As a result, this case

24   has created significant hardship for Plaintiffs' counsel. I have personally financed a

25   significant percentage of this case through a second mortgage on my home, credit cards, and

26

27   other indebtedness. This case has taken its toll on my personal financial situation, as well as

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 6 -

my co-counsel. In addition to the burden of financing this litigation, I have been deprived of the opportunity to take on other work that could have generated a steady income for my firm. Likewise, because I have not received any compensation for my work to date, I have lost the time-value of the income I would have received if I were compensated regularly, as well as the opportunity to invest such income.

14.     Nevertheless, because the Ninth Circuit ruled in our favor in March, 2005, my co-counsel and I elected to find a way to vindicate our clients' rights, and to correct the enormous injustice perpetrated by the Controller over the past two decades. On August 27, 2007, Governor Schwartzenegger signed SB 86, which is the first concrete step in correcting the Controller's vast misconduct. Without our efforts, the 8.2 million owners of the $5.1 Billion Unclaimed Property Fund would never receive Constitutional Notice of the seizure of their property, and the Controller would have continued to recklessly seize billions more. This case will result in the vindication of important Constitutional rights for millions of individuals, past and future. This is an extraordinary result, particularly given the hurdles that Plaintiffs surmounted at each stage of the case. When my firm obtains an extraordinary result on behalf of a client, my clients will typically pay a premium—*i.e.,* either a "bonus" or an increased billing rate, for the extraordinary result. I am familiar with other firms who likewise receive a "premium" for extraordinary results that they obtain on behalf of their clients.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 18, 2007

                              /s/
                              _____
                              William W. Palmer, Esq.

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

1

Exhibit A

2

Time Report and Invoice

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM
FEE AWARD

# LAW OFFICES OF WILLIAM W. PALMER

1241 CARTER ROAD
SACRAMENTO, CALIFORNIA 95864-5327
(916) 972-0761
FAX (916) 972-0877

September 18, 2007

Re:    *Taylor v. Intel*; Santa Clara Superior Court Case No. CV796629

Services rendered at the rate of $400.00 per hour;

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 1/2/2001 | 1.2 | WWP | Prepare letter to clients regarding Potential Claims against the California Controller | $ 480.00 |
| 2/18/2001 | 1.8 | WWP | Legal research ("LR") regarding statute of limitations | $ 720.00 |
| 3/13/2007 | 1.8 | WWP | Legal research regarding statute of limitations | $ 720.00 |
| 4/9/2001 | 0.3 | WWP | Emails from and to associate regarding Potential Claims against the California Controller | $ 120.00 |
| 5/29/2001 | 1.3 | WWP | Telephone conference with ("TCW") client regarding potential claims against the Controller | $ 520.00 |
| 5/30/2001 | 4.5 | WWP | Legal Research ("LR") regarding Potential Claims against the Controller. | $ 1,800.00 |
| 5/31/2001 | 7.5 | WWP | Continue LR Potential Claims against the Controller | $ 3,000.00 |
| 6/1/2001 | 10.0 | WWP | Continue LR Potential Claims against the Controller | $ 4,000.00 |
| 6/2/2007 | 6.5 | WWP | Continue LR Potential Claims against the Controller | $ 2,600.00 |
| 6/4/2007 | 8.5 | WWP | Continue LR Potential Claims against the Controller | $ 3,400.00 |
| 6/5/2001 | 5.5 | WWP | Continue LR Potential Claims against the Controller | $ 2,200.00 |
| 6/6/2001 | 0.4 | WWP | Email to Client re quick update | $ 160.00 |
| 6/7/2001 | 9.3 | WWP | Emails to and from Client re status and follow up; review microfiche to determine last date of published notice to unclaimed property owners. | $ 3,720.00 |
| 6/8/2001 | 0.5 | WWP | LT Client forwarding necessary documents and quick update | $ 200.00 |
| 6/9/2001 | 8.5 | WWP | LR and continue review of Constitutional Violation and UPL; Statute of Limitations; | $ 3,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 2

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | Meeting with Investigators | |
| 6/11/2001 | 2.9 | WWP | LT co-counsel regarding fees and update, and assemble materials | $ 1,160.00 |
| 6/12/2001 | 3.1 | WWP | Plan strategy regarding claims against the Controller; Prepare draft complaint against the California Controller | $ 1,240.00 |
| 6/22/2001 | 0.5 | WWP | Review law relevant to Constitutional Violations. | $ 200.00 |
| 6/25/2001 | 3.5 | WWP | LR and prepare lengthy memorandum to file re Attorney Work Product | $ 1,400.00 |
| 7/6/2002 | 0.4 | WWP | LF associate regarding future work | $ 160.00 |
| 7/7/2001 | 4.8 | WWP | TCW and emails to and from Client and multipleTCWs and emails from and to investigator arranging for trip to England ; Follow-up on Department of Trade and Industry, review same | $ 1,920.00 |
| 7/9/2001 | 72.0 | WWP | Multiple emails to and from Clients re travel arrangements to England, pick up and hotel; Travel to airport and flight to London, England; Meeting with clients in London, England, and return | $ 28,800.00 |
| 8/20/2001 | 0.6 | WWP | Email to Client re trip to England, update, next steps and current issues, including potential claims against Controller | $ 240.00 |
| 9/3/2001 | 4.5 | WWP | Meet with potential client Nancy Pepple-Gonsalves regarding escheat of stock to Controller. | $ 1,800.00 |
| 9/4/2001 | 8.5 | WWP | LR California Unclaimed Property Law ("UPL") | $ 3,400.00 |
| 9/5/2001 | 7.6 | WWP | Continue LR UPL | $ 3,040.00 |
| 9/13/2002 | 0.5 | WWP | TCW associates discussed status and update | $ 200.00 |
| 9/14/2001 | 2.5 | WWP | TCW Client Pepple-Gonsalves regarding case; LR escheatment of stock. | $ 1,000.00 |
| 9/18/2001 | 4.1 | WWP | LR escheatment issues; continue to draft complaint against Controller; TCW Associate discussed status | $ 1,640.00 |
| 9/19/2001 | 0.9 | WWP | Update outline of Complaint | $ 360.00 |
| 9/27/2001 | 0.3 | WWP | TCW associate discussed status and update | $ 120.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 3

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 10/12/2001 | 4.5 | WWP | Morning meeting with counsel regarding Due Diligence issues in Sacramento State University-review microfiche of newspaper for LA Times, SF Chronicle, Sacramento Bee regarding preceeding decade from 1991 to confirm no public notice | $ 1,800.00 |
| 10/13/2001 | 4.0 | | Due Diligence issues research in Sacramento State University-review microfiche of newspaper for LA Times, SF Chronicle, Sacramento Bee regarding preceeding decade | $ 1,600.00 |
| 10/17/2001 | 3.5 | WWP | Morning meeting with counsel; Complete library due diligence research at CSUS | $ 1,400.00 |
| 10/18/2001 | 3.5 | WWP | Coordinate with counsel regarding his review of records at California State Archives, review copies of proper publicatio notice and meeitn regarding same | $ 1,400.00 |
| 10/19/2001 | 0.9 | WWP | Report to Client, fax regarding same | $ 360.00 |
| 10/22/2001 | 0.5 | WWP | TCW Conner regarding status | $ 200.00 |
| 10/23/2001 | 10.2 | WWP | TCW Client re update; LR UPL and Constitutional cases; securities transfer; LT associates regarding same; Fax same; Meeting with Conner regardin status | $ 4,080.00 |
| 10/24/2001 | 8.5 | WWP | Due Diligence of Controller Emplyees, TCW co-counsel | $ 3,400.00 |
| 10/26/2001 | 8.9 | WWP | Review LF Controller, TCW co-counsel re same; LR Controller misconduct, impact on client | $ 3,560.00 |
| 10/27/2001 | 1.0 | WWP | TCW counsel in Bakersfiled regarding possible case | $ 400.00 |
| 10/28/2001 | 1.0 | WWP | Forward documents to Bakersfield attorney regarding claims | $ 400.00 |
| 10/29/2001 | 3.5 | WWP | Reivew documents with counsel, continue due diligence meeting with former Controller employee; Meeting with investigators | $ 1,400.00 |
| 10/30/2001 | 3.5 | WWP | LR Bofa v. Corey case, and travel to and from Sacramento Superior Court and order LR on microfishe; | $ 1,400.00 |
| 10/31/2007 | 1.0 | WWP | Meeith with counsel regarding status | $ 400.00 |
| 11/1/2001 | 1.7 | WWP | Forward draft of Complaint to associates; Fax same; TF Counsel regarding same | $ 680.00 |
| 11/2/2001 | 0.7 | WWP | Forward draft of Complaint to associates; Fax same | $ 280.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 4

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 11/4/2001 | 1.5 | WWP | TCW and meeting with counsel regarding Controller employee Janice Cole | $ 600.00 |
| 11/5/2001 | 5.5 | WWP | Revise Taylor Complaint; TT London Financial Times; Follow up with former Controller employee; TT potential PR Contract; TT LA Times Reporter | $ 2,200.00 |
| 11/6/2001 | 0.5 | WWP | TCW counsel regarding status | $ 200.00 |
| 11/7/2001 | 1.0 | WWP | Meeting with counsel regarding case status, discovery and due diligence issues | $ 400.00 |
| 11/9/2001 | 0.4 | WWP | TCW client regarding status | $ 160.00 |
| 11/12/2001 | 4.0 | WWP | LR and revise Complaint | $ 1,600.00 |
| 11/13/2001 | 2.5 | WWP | LR and revise Complaint | $ 1,000.00 |
| 11/14/2001 | 2.3 | WWP | LR and revise complaint; TCW and emails to associate | $ 920.00 |
| 11/15/2001 | 3.7 | WWP | Emails to and from associate; LR and revise Complaint | $ 1,480.00 |
| 11/16/2001 | 1.0 | WWP | Meeting with counsel; revise complaintl LR statutes of 11th Amendment; | $ 400.00 |
| 11/19/2001 | 0.4 | WWP | TCW counsel regarding status | $ 160.00 |
| 11/25/2001 | 3.0 | WWP | TCW counsel reminded of meeting; LR and Draft Complanit | $ 1,200.00 |
| 11/26/2001 | 11.5 | WWP | Emails to and from reporter Martin Wolf/London Newspaper Times re story; LR applicability of UPL to foreign citizens; Meeting with counsel | $ 4,600.00 |
| 11/27/2001 | 7.8 | WWP | TCW Client re update on most recent correspondence, Legal research for motion, news story and federal action; Meeting with investigator | $ 3,120.00 |
| 11/28/2007 | 1.2 | WWP | Email from associate; Moring meeting with counsel | $ 480.00 |
| 11/29/2001 | 6.1 | WWP | Factual research on published notice; TCW counsel regaring complaint | $ 2,440.00 |
| 12/2/2001 | 7.0 | WWP | LR UPL and Controller's Application; Meeting with counsel | $ 2,800.00 |
| 12/4/2001 | 8.2 | WWP | Legal Research Corp. Code § 419, UCC 8505 state laws and cases | $ 3,280.00 |
| 12/6/2001 | 6.8 | WWP | TCW LexisNexis, continue legal research on 419 | $ 2,720.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 5

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 12/7/2001 | 4.8 | WWP | TCW Client at home and work lengthy conversation regarding current issues and next steps, potential claims against California Controller; LR LexisNexis list of cases, pull and review | $ 1,920.00 |
| 12/8/2001 | 3.9 | WWP | Arrange to get Lengthy KPMG Audit Report, and review same | $ 1,560.00 |
| 12/9/2001 | 7.5 | WWP | Review KPMG report on Controller | $ 3,000.00 |
| 12/10/2001 | 4.5 | WWP | Continue review of KPMG report on Controller and related issues | $ 1,800.00 |
| 12/11/2001 | 6.5 | WWP | Update outline of Complaint to add KPMG findings | $ 2,600.00 |
| 12/12/2001 | 9.5 | WWP | Continue LR regarding Controller misconduct | $ 3,800.00 |
| 12/13/2001 | 9.5 | WWP | Begin drafting the complaint against the Controller of California; LR regarding same | $ 3,800.00 |
| 12/14/2001 | 10.6 | WWP | LR regarding possible claims against Controller, and impact on Intel complaint; Continue drafting the complaint | $ 4,240.00 |
| 12/18/2001 | 0.8 | WWP | TCW investigator general update regarding status and potential claims against the Controller | $ 320.00 |
| 12/19/2001 | 8.5 | WWP | LR Reg D. Private Placement, 1933, 1934 Acts | $ 3,400.00 |
| 12/21/2001 | 8.8 | WWP | TCW Client regarding update and fax; LR 1933 and 1934 Acts and continue drafting the complaint against the controller | $ 3,520.00 |
| 12/22/2001 | 8.9 | WWP | TCW Client Nancy Pepple-Gonsalves regarding facts of case; LR history of TWA. | $ 3,560.00 |
| 12/26/2001 | 3.5 | WWP | Continue LR and drafting Complaint | $ 1,400.00 |
| 12/27/2001 | 10.1 | WWP | Continue drafting Complaint; LR tolling of Statute of Limitations | $ 4,040.00 |
| 12/28/2001 | 9.2 | WWP | Continue drafting and LR re Complaint | $ 3,680.00 |
| 12/29/2001 | 9.5 | WWP | LR on statutes and continue drafting complaint against the Controller of California | $ 3,800.00 |
| 12/30/2001 | 8.5 | WWP | LR and continue drafting Complaint against the Controller | $ 3,400.00 |
| 12/31/2001 | 6.8 | WWP | Finalize and file complaint against the controller, forward same to Clients; Prepare Civil Case Cover Sheet; Review same and LR | $ 2,720.00 |
| 1/2/2002 | 1.3 | WWP | Fax to Client regarding cover page of federal action, LR securites laws, impact of claim | $ 520.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 6

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 1/3/2002 | 3.7 | WWP | Multiple Emails to and from clients and several associates; Forwarding multiple documents and Fax regarding same | $ 1,480.00 |
| 1/4/2002 | 1.6 | WWP | TCWs investigators re new account found for Client; 2xTCW Client re same | $ 640.00 |
| 1/9/2002 | 5.5 | WWP | Fax from attorney Robin B. Johansen regarding substitution of counsel; Multiple TCWs multiple associates regarding status, update and possible next steps | $ 2,200.00 |
| 1/10/2002 | 0.5 | WWP | Emails from and to associates regarding update | $ 200.00 |
| 1/15/2002 | 1.8 | WWP | Multiple TCWs associates | $ 720.00 |
| 1/18/2002 | 0.2 | WWP | TCWs associate regarding case | $ 80.00 |
| 1/21/2002 | 0.6 | WWP | TCW and emails from attorney Robin Johansen | $ 240.00 |
| 1/23/2002 | 0.2 | WWP | TCW attorney Robin Johansen | $ 80.00 |
| 1/24/2002 | 0.3 | WWP | TCW attorney Robin Johansen | $ 120.00 |
| 2/13/2002 | 0.4 | WWP | Emails from and to associates | $ 160.00 |
| 2/14/2002 | 1.2 | WWP | Emails from and to associates regarding update; Several TCWs regarding same | $ 480.00 |
| 2/16/2002 | 0.2 | WWP | Emails from associate | $ 80.00 |
| 2/22/2002 | 2.0 | WWP | Prepare lengthy memorandum to assoictes; Fax same | $ 800.00 |
| 2/25/2002 | 0.7 | WWP | Arrange for service of process on California Controller; Faxes to associates | $ 280.00 |
| 2/27/2002 | 1.3 | WWP | Prepare lenthy emails to associates | $ 520.00 |
| 2/28/2002 | 0.8 | WWP | Confirm service of process on Controller Kathleen Connel; TCW clients regarding same. | $ 320.00 |
| 3/1/2007 | 0.9 | WWP | File return of service on Kathleen Connell. | $ 360.00 |
| 3/5/2002 | 2.5 | WWP | Prepare Memorandum, forward same to Media associates | $ 1,000.00 |
| 3/6/2002 | 0.4 | WWP | TCW Media assoictes | $ 160.00 |
| 3/8/2002 | 0.5 | WWP | TCWs attorney Robin Johnasen | $ 200.00 |
| 3/12/2002 | 1.4 | WWP | LT attorney Robin Johansen regarding meeting and settlement discussion | $ 560.00 |
| 3/13/2002 | 0.6 | WWP | TCW and LF counsel for Controller regarding extension of time to answer federal complaint. | $ 240.00 |
| 3/14/2002 | 2.3 | WWP | TCW attorney Robin Johansen; Meeting with attorneys Robin Johansen and James Harrison | $ 920.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 7

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 3/15/2002 | 2.1 | WWP | TCW and LT associate forwarding necessary documents; Prepare complaint memorandum | $ 840.00 |
| 3/18/2002 | 0.8 | WWP | Review draft stipulation to extend time to answer. | $ 320.00 |
| 3/19/2002 | 0.5 | WWP | TCW attorney Robin Johansen discussed several outstanding issues | $ 200.00 |
| 3/20/2006 | 1.2 | WWP | Finalize and sign off on stipulation to extend time to answer | $ 480.00 |
| 3/21/2002 | 0.7 | WWP | TCW and emails from several associates regarding status and update | $ 280.00 |
| 3/24/2002 | 0.2 | WWP | Email from associate regarding status | $ 80.00 |
| 4/3/2002 | 0.3 | WWP | Facsimile to Client forwarding necessary documents | $ 120.00 |
| 4/5/2002 | 1.0 | WWP | 2xTCW Clients discussed severla outstanding issues | $ 400.00 |
| 4/16/2002 | 0.4 | WWP | Email from and facsimile to associate | $ 160.00 |
| 4/18/2002 | 0.3 | WWP | TCW attorney Robin Johansen discussed status | $ 120.00 |
| 4/19/2002 | 0.8 | WWP | TCWs Robin Johansen regarding hearing date; Email to associate regarding same | $ 320.00 |
| 4/22/2002 | 6.1 | WWP | Receive and review motion to dismiss federal complaint; And all the supporting documents | $ 2,440.00 |
| 4/23/2002 | 5.5 | WWP | LR Eleventh Amendment | $ 2,200.00 |
| 4/24/2002 | 7.5 | WWP | LR Eleventh Amendment; Prepare draft of Opposition to Motion to Dismiss | $ 3,000.00 |
| 4/25/2002 | 5.5 | WWP | Work on Joint Status Report; LR various legal issues raised in motion to dismiss | $ 2,200.00 |
| 4/26/2002 | 8.5 | WWP | Continue work on Joint Status Report; begin drafting Opposition to Motion to Dismiss. | $ 3,400.00 |
| 4/27/2002 | 6.5 | WWP | Continue drafting Opposition to Motion to Dismiss. | $ 2,600.00 |
| 4/28/2002 | 8.7 | WWP | Continue drafting Opposition to Motion to Dismiss; LR re same. | $ 3,480.00 |
| 4/29/2002 | 10.5 | WWP | Finalize and sign off on Joint Status Conference Report; continue drafting Opposition to Motion to Dismiss. | $ 4,200.00 |
| 4/30/2002 | 3.5 | WWP | LR Eleventh Amendment | $ 1,400.00 |
| 5/1/2002 | 4.5 | WWP | Review Motion to Dismiss; continue reading cases cited; Faxes to assoictes regarding same | $ 1,800.00 |
| 5/2/2002 | 6.8 | WWP | Continue drafting opposition to Motion to Dismiss | $ 2,720.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 8

| Date | Hours | Attorney | Description | Amount |
|---|---|---|---|---|
| 5/6/2002 | 0.5 | WWP | LT Clients regarding Motion to Dismiss | $ 200.00 |
| 5/7/2002 | 5.6 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 2,240.00 |
| 5/8/2002 | 8.5 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 3,400.00 |
| 5/9/2002 | 9.1 | WWP | LR statutes of limitations; continue drafting Opposition to Motion to Dismiss | $ 3,640.00 |
| 5/10/2002 | 6.5 | WWP | LR Constitutional Notice. | $ 2,600.00 |
| 5/13/2002 | 8.5 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 3,400.00 |
| 5/14/2002 | 1.1 | WWP | TCWs associates regarding several outstanding issues | $ 440.00 |
| 5/15/2002 | 6.5 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 2,600.00 |
| 5/16/2002 | 10.7 | WWP | LR Tort Claims Act. | $ 4,280.00 |
| 5/17/2002 | 11.3 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 4,520.00 |
| 5/20/2002 | 3.5 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 1,400.00 |
| 5/21/2002 | 6.7 | WWP | Draft Opposition to Motion to Dismiss. | $ 2,680.00 |
| 5/22/2002 | 8.5 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 3,400.00 |
| 5/23/2002 | 6.7 | WWP | Continue drafting Opposition to Motion to Dismiss | $ 2,680.00 |
| 5/24/2002 | 9.5 | WWP | Continue Opposition to Motion to Dismiss; and LR regarding same and other issues | $ 3,800.00 |
| 5/25/2002 | 3.5 | WWP | Review draft of Opposition to Motion; LR to fill gaps in research. | $ 1,400.00 |
| 5/27/2002 | 11.3 | WWP | LR securities laws, Fourteenth Amendment to U.S. Constitution; review KPMG report | $ 4,520.00 |
| 5/28/2002 | 10.5 | WWP | LR sovereign immunity, other issues; continue drafting. | $ 4,200.00 |
| 5/29/2002 | 13.0 | WWP | Draft Opposition to Motion to Dismiss. | $ 5,200.00 |
| 5/30/2002 | 11.5 | WWP | Review tables of authorities, contents; edit final draft of brief. | $ 4,600.00 |
| 5/31/2002 | 9.2 | WWP | Finalize and file Opposition to Motion to Dismiss with Court; Arrange for Service ($140.00); Emails from and to attorney James Harrison | $ 3,680.00 |
| 6/1/2002 | 0.2 | WWP | Email to attorney James Harrison | $ 80.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 9

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 6/3/2002 | 0.6 | WWP | Facsimile to associate attorneys forwarding documents | $ 240.00 |
| 6/4/2002 | 4.7 | WWP | Organize files; LT Clients enclosing copies of filings; TCW associate attorneys regarding status | $ 1,880.00 |
| 6/5/2002 | 0.8 | WWP | LT Clients regarding Motion to Dismiss | $ 320.00 |
| 6/7/2002 | 7.0 | WWP | Read Reply to Opposition to Motion to Dismiss; LR cases cited; LR and Prepare lengthy LT Securities and Exchange Commission regarding Complaint | $ 2,800.00 |
| 6/8/2002 | 5.2 | WWP | Review cited cases; begin preparation for oral argument. | $ 2,080.00 |
| 6/9/2002 | 7.1 | WWP | Review cases; outline oral argument. | $ 2,840.00 |
| 6/10/2002 | 7.7 | WWP | Continue preparation for oral argument; TCW court, and associates regarding status; Review Minute Order regarding hearing date | $ 3,080.00 |
| 6/11/2002 | 4.6 | WWP | Continue preparation for oral argument; TCW Client regarding update | $ 1,840.00 |
| 6/12/2002 | 1.8 | WWP | Prepare for oral argument on motion to dismiss; Emails to and from associates | $ 720.00 |
| 6/13/2002 | 7.1 | WWP | Prepare for oral argument; review Order of Court vacating oral argument; Email to associate regarding same | $ 2,840.00 |
| 6/16/2002 | 1.7 | WWP | Organize files | $ 680.00 |
| 6/20/2002 | 0.8 | WWP | Review Memorandum and Order from the Court | $ 320.00 |
| 6/27/2002 | 3.7 | WWP | Review order of court dismissing case; LR federal appellate rules, filing appeal | $ 1,480.00 |
| 6/28/2002 | 8.2 | WWP | LR general appellate practice; contact attorney Daniel Culhane to discuss association in case; Emails to and from associates regarding same | $ 3,280.00 |
| 6/28/2002 | 1.8 | DJC | TCW attorney William Palmer ("WWP") regarding association into case. | $ 720.00 |
| 6/29/2002 | 6.7 | WWP | Prepare package of materials to attorney Daniel Culhane ("DJC") for his review; begin drafting memorandum regarding same | $ 2,680.00 |
| 6/30/2002 | 3.5 | WWP | Continue memorandum regarding case to DJC | $ 1,400.00 |
| 7/1/2002 | 4.2 | DJC | Receive materials from WWP; begin review. | $ 1,680.00 |
| 7/1/2002 | 5.5 | WWP | Complete work product memorandum to DJC | $ 2,200.00 |
| 7/2/2002 | 6.5 | DJC | Review WWP memorandum and materials | $ 2,600.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 10

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 7/5/2002 | 1.5 | WWP | TCW DJC regarding association into case. | $ 600.00 |
| 7/5/2002 | 5.5 | DJC | Review materials; TCW WWP to discuss association into case | $ 2,200.00 |
| 7/6/2002 | 6.7 | DJC | Analyze strengths and weaknesses of case; evaluate association; TCW co-counsel WWP | $ 2,680.00 |
| 7/6/2002 | 1.3 | WWP | TCWs co-counsel DCJ | $ 520.00 |
| 7/8/2002 | 3.5 | DJC | Further analysis, discussions with WWP | $ 1,400.00 |
| 7/8/2002 | 2.6 | WWP | Negotiate terms of association with DJC; Emails to and from other associates regarding same | $ 1,040.00 |
| 7/9/2002 | 2.5 | WWP | LT DJC confirming terms of association | $ 1,000.00 |
| 7/9/2002 | 8.7 | DJC | LR appeal process, procedural issues; review letter confirming terms of association. | $ 3,480.00 |
| 7/10/2002 | 10.1 | DJC | LR Eleventh Amendment; review treatise; begin pulling Supreme Court authority; TCW and emails to and from co-counsel regarding same | $ 4,040.00 |
| 7/10/2002 | 0.9 | WWP | TCW and emails from and to co-counsel regarding LR | $ 360.00 |
| 7/11/2002 | 9.1 | DJC | LR Eleventh Amendment; read fundamental Eleventh Amendment cases; TCW and emails from and to co-counsel regarding same | $ 3,640.00 |
| 7/11/2002 | 1.0 | WWP | TCW and emails from and to co-counsel regarding LR | $ 400.00 |
| 7/12/2002 | 8.7 | DJC | LR Eleventh Amendment; review materials regarding likelihood of success of appeal; multiple TCWs WWP | $ 3,480.00 |
| 7/12/2002 | 6.5 | WWP | Organize additional materials for DJC; TCWs with DJC | $ 2,600.00 |
| 7/13/2002 | 3.5 | DJC | Outline of issues to discuss with WWP; TCW WWP | $ 1,400.00 |
| 7/13/2002 | 1.5 | WWP | TCW DJC regarding appeals process, strategy | $ 600.00 |
| 7/14/2002 | 0.9 | DJC | Work on outline of issues; TCW from and to co-counsel regarding same | $ 360.00 |
| 7/14/2002 | 0.3 | WWP | TCW from and to co-counsel | $ 120.00 |
| 7/15/2002 | 9.1 | DJC | Identify and research appellate procedure issues necessary to prosecute appeal; TCW WWP re same | $ 3,640.00 |
| 7/15/2002 | 6.5 | WWP | TCW DJC regarding appellate issues; LR re same | $ 2,600.00 |
| 7/16/2002 | 13.3 | DJC | LR substantive issues; identify and read key Supreme Court Eleventh Amendment cases | $ 5,320.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 11

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 7/16/2002 | 3.6 | WWP | TCW DJC regarding strategy, issues, litigation plan | $ 1,440.00 |
| 7/17/2002 | 6.6 | DJC | Continue LR Eleventh Amendment; outline key cases; study Treasure Salvors case; TCW WWP | $ 2,640.00 |
| 7/17/2002 | 1.0 | WWP | TCW DJC | $ 400.00 |
| 7/18/2002 | 8.1 | DJC | Obtain and study forms of notice of appeal, designation of transcript, representation statement, other forms; draft notice of appeal; TCW WWP | $ 3,240.00 |
| 7/18/2002 | 7.8 | WWP | TCW colleagues to obtain form documents; review files to identify factual materials | $ 3,120.00 |
| 7/19/2002 | 5.5 | DJC | Revise notice of appeal, related documents; TCW WWP; forward drafts to WWP for review | $ 2,200.00 |
| 7/19/2002 | 6.6 | WWP | Review draft notice of appeal; TCW DJC; edit and prepare documents for filing. | $ 2,640.00 |
| 7/20/2002 | 0.2 | WWP | Facsimile to associate forwarding necessary documents | $ 80.00 |
| 7/20/2002 | 8.1 | DJC | LR substantive issues for appeal | $ 3,240.00 |
| 7/22/2002 | 6.5 | WWP | Review draft plan for completing appeal; edit same; continue research | $ 2,600.00 |
| 7/22/2002 | 7.3 | DJC | Prepare plan for managing appeal with timelines, division of tasks, issues; continue legal research; TCW WWP | $ 2,920.00 |
| 7/23/2002 | 4.5 | WWP | LR statute of limitations, other issues; TCW DJC; Send materials to attorney Brian Boydston | $ 1,800.00 |
| 7/23/2002 | 6.1 | DJC | Outline legal arguments | $ 2,440.00 |
| 7/24/2002 | 7.5 | WWP | Begin drafting facts for appellate brief; TCW DJC | $ 3,000.00 |
| 7/24/2002 | 5.3 | DJC | TCW WWP; continue legal research, including Ninth Circuit authority | $ 2,120.00 |
| 7/25/2002 | 7.8 | WWP | Edit and finalize notice of appeal and related documents; prepare for filing; LR substantive issues | $ 3,120.00 |
| 7/25/2002 | 8.1 | DJC | Finalize notice of appeal for filing; TCW WWP | $ 3,240.00 |
| 7/26/2002 | 6.5 | WWP | File notice of appeal, representation statement, designation of record, proof of service; continue LR; TCW DJC | $ 2,600.00 |
| 7/26/2002 | 3.8 | DJC | TCW WWP; update plan for appellate brief; research filing deadlines | $ 1,520.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 12

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 6/29/2007 | 0.4 | DJC | TCW from and to co-counsel | $ 160.00 |
| 7/29/2002 | 3.1 | WWP | Continue factual background section of brief; TCW from and to co-counsel | $ 1,240.00 |
| 7/30/2002 | 5.5 | DJC | Revise and update outline of appellate brief; forward and discuss with WWP; draft headers | $ 2,200.00 |
| 7/30/2002 | 5.8 | WWP | TCW DJC regarding outline of brief; continue drafting | $ 2,320.00 |
| 7/31/2002 | 1.0 | WWP | Email from associate; Review Notice from the Court | $ 400.00 |
| 7/31/2002 | 6.0 | DJC | Draft Statement of Case, Issues Presented, begin argument section | $ 2,400.00 |
| 8/1/2002 | 9.7 | DJC | Begin drafting Eleventh Amendment argument | $ 3,880.00 |
| 8/1/2002 | 3.2 | WWP | Complete draft of factual section; TCW DJC | $ 1,280.00 |
| 8/2/2002 | 8.7 | WWP | Begin drafting procedural history; LR standard of review; TCW DJC and other attorney; Review Time Scheduling Order | $ 3,480.00 |
| 8/2/2002 | 6.8 | DJC | TCW WWP; review and edit factual section; review law review articles and treatises relevant to UPL | $ 2,720.00 |
| 8/3/2002 | 5.1 | DJC | TCW WWP; continue drafting Eleventh Amendment argument | $ 2,040.00 |
| 8/3/2002 | 1.2 | WWP | TCW DJC | $ 480.00 |
| 8/5/2002 | 9.5 | DJC | Follow up LR to develop theory under Supreme Court authority | $ 3,800.00 |
| 8/5/2002 | 0.5 | WWP | TCW DJC regarding Eleventh Amendment argument | $ 200.00 |
| 8/6/2002 | 6.7 | DJC | Continue drafting Eleventh Amendment argument; forward same to WWP | $ 2,680.00 |
| 8/7/2002 | 6.7 | WWP | Review and revise draft Eleventh Amendment argument; review cases | $ 2,680.00 |
| 8/7/2002 | 9.1 | DJC | TCW WWP regarding Eleventh Amendment argument; LR interplay of Eleventh Amendment immunity and general sovereign immunity | $ 3,640.00 |
| 8/8/2002 | 1.5 | DJC | TCW WWP; review revised Eleventh Amendment argument | $ 600.00 |
| 8/8/2002 | 7.9 | WWP | Continue editing Eleventh Amendment argument; begin second draft of fact section; TCW DJC, and TCW attorney Brian Boydston | $ 3,160.00 |
| 8/9/2002 | 8.5 | DJC | Continue LR and drafting Opening Brief; TCW | $ 3,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 13

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | with co-counsel. | |
| 8/9/2002 | 9.3 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel DJC and Brian Boydston. | $ 3,720.00 |
| 8/10/2002 | 5.6 | WWP | Continue LR and contine drafting Opening Brief; TCW and emails to and from co-counsel regarding same | $ 2,240.00 |
| 8/10/2002 | 4.8 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,920.00 |
| 8/12/2002 | 11.3 | DJC | TCW with co-counsel coordinate on LR and drafting Opening Brief; . | $ 4,520.00 |
| 8/12/2002 | 8.9 | WWP | Legal research; TCW attorney DJC and continue revising Opening Brief | $ 3,560.00 |
| 8/13/2002 | 13.3 | WWP | Continue legal research and TCW attorney DJC and continue revising Opening Brief | $ 5,320.00 |
| 8/13/2002 | 14.1 | DJC | Emails from and to and TCW attorey WWP; Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,640.00 |
| 8/14/2002 | 12.5 | DJC | Emails to and from and TCW co-counsel; LR and revisions to Opening Brief as needed | $ 5,000.00 |
| 8/14/2002 | 10.5 | WWP | TCW co-counsel DJC and emails regarding same; Legal research and conitue drafting Opening Brief | $ 4,200.00 |
| 8/15/2002 | 11.9 | WWP | Continue LR and revisions to Opening Brief; TCW and emails from and to co-counsel WWP coordinate regarding same. | $ 4,760.00 |
| 8/15/2002 | 9.1 | DJC | Emails from and to WWP; TCW regarding same; Continue LR and revising Opening Brief. | $ 3,640.00 |
| 8/16/2002 | 8.6 | WWP | LR and drafting Opening Brief; TCW and emails from and to co-counsel DJC | $ 3,440.00 |
| 8/16/2002 | 11.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,440.00 |
| 8/17/2002 | 9.1 | WWP | TCW and emails from and to co-counsel DJC; LR and drafting Opening Brief; TCW with co-counsel. | $ 3,640.00 |
| 8/17/2002 | 3.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,400.00 |
| 8/18/2002 | 5.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 2,200.00 |
| 8/18/2002 | 0.9 | WWP | TCW from and to co-counsel | $ 360.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 14

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/19/2002 | 14.1 | WWP | LR and drafting Opening Brief; TCW and emails from and to co-counsel DJC | $ 5,640.00 |
| 8/19/2002 | 10.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,200.00 |
| 8/20/2002 | 13.5 | WWP | TCW and emails from and to co-counsel DJC; Continue LR and drafting Opening Brief; | $ 5,400.00 |
| 8/20/2002 | 13.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,400.00 |
| 8/21/2002 | 5.8 | WWP | LR and TCW and emails from and to co-counsel DJC regarding drafting Opening Brief | $ 2,320.00 |
| 8/21/2002 | 13.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,240.00 |
| 8/22/2002 | 10.9 | WWP | TCW and emails from and to co-counsel DJC; Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,360.00 |
| 8/22/2002 | 11.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,440.00 |
| 8/23/2002 | 9.3 | WWP | TCW and emails from and to co-counsel DJC; Legal research and drafting Opening Brief; TCW with co-counsel. | $ 3,720.00 |
| 8/23/2002 | 9.3 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,720.00 |
| 8/24/2002 | 4.5 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,800.00 |
| 8/24/2002 | 8.6 | DJC | LR and drafting Opening Brief; . | $ 3,440.00 |
| 8/25/2002 | 4.5 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,800.00 |
| 8/25/2002 | 3.2 | DJC | LR and drafting Opening Brief; TCW with co-counsel;TCW and emails from and to co-counsel DJC | $ 1,280.00 |
| 8/26/2002 | 10.0 | WWP | Legal research and continue drafting Opening Brief; TCW and multiple meilas to and from associate attorney regarding same. | $ 4,000.00 |
| 8/26/2002 | 10.0 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,000.00 |
| 8/27/2002 | 8.5 | WWP | TCW and emails from and to co-counsel DJC; Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,400.00 |
| 8/27/2002 | 10.0 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,000.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 15

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/28/2002 | 11.1 | WWP | LR and drafting Opening Brief; TCW and emails from and to co-counsel DJC. | $ 4,440.00 |
| 8/28/2002 | 11.0 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,400.00 |
| 8/29/2002 | 9.6 | WWP | TCW and emails from and to co-counsel DJC; LR and drafting Opening Brief | $ 3,840.00 |
| 8/29/2002 | 9.0 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,600.00 |
| 8/30/2002 | 13.3 | WWP | Legal research and TCW and emails from and to co-counsel DJC regarding draft Opening Brief | $ 5,320.00 |
| 8/30/2002 | 14.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,640.00 |
| 8/31/2002 | 12.5 | WWP | TCW and emails from and to co-counsel DJC; LR and drafting Opening Brief; | $ 5,000.00 |
| 8/31/2002 | 10.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,200.00 |
| 9/1/2002 | 11.9 | WWP | TCW and emails from and to co-counsel DJC; Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,760.00 |
| 9/1/2002 | 9.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,640.00 |
| 9/2/2002 | 8.6 | WWP | Continue LR and drafting Opening Brief; TCW and emails from and to co-counsel DJC | $ 3,440.00 |
| 9/2/2002 | 11.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,440.00 |
| 9/3/2002 | 9.1 | WWP | Legal research and continue revising Opening Brief; TCW and emails from and to co-counsel DJC | $ 3,640.00 |
| 9/3/2002 | 3.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,400.00 |
| 9/4/2002 | 5.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 2,200.00 |
| 9/4/2002 | 7.5 | WWP | Continue LR and drafting Opening Brief; TCWs with co-counsel; request 14-day extension from court to file Opening Brief. | $ 3,000.00 |
| 9/5/2002 | 14.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,640.00 |
| 9/5/2002 | 10.5 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,200.00 |
| 9/6/2002 | 13.5 | DJC | Continue LR and drafting Opening Brief; TCW | $ 5,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 16

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | with co-counsel. | |
| 9/6/2002 | 13.5 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,400.00 |
| 9/7/2002 | 3.0 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,200.00 |
| 9/7/2002 | 5.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 2,000.00 |
| 9/9/2002 | 9.3 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,720.00 |
| 9/9/2002 | 9.3 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,720.00 |
| 9/10/2002 | 4.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 1,800.00 |
| 9/10/2002 | 8.6 | WWP | Emails to and from and TCW associate attorney DJC; Continue legal research and continue drafting Opening Brief | $ 3,440.00 |
| 9/11/2002 | 9.5 | DJC | TCW and emails from and to co-counsel WWP; Continue drafting Opening Brief | $ 3,800.00 |
| 9/11/2002 | 7.9 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,160.00 |
| 9/12/2002 | 10.0 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,000.00 |
| 9/12/2002 | 10.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,000.00 |
| 9/13/2002 | 8.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,400.00 |
| 9/13/2002 | 10.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,000.00 |
| 9/14/2002 | 11.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,440.00 |
| 9/14/2002 | 11.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,400.00 |
| 9/15/2002 | 9.6 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,840.00 |
| 9/15/2002 | 9.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,600.00 |
| 9/16/2002 | 13.3 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,320.00 |
| 9/16/2002 | 14.1 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,640.00 |
| 9/17/2002 | 12.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,000.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 17

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/17/2002 | 10.5 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,200.00 |
| 9/18/2002 | 11.9 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,760.00 |
| 9/18/2002 | 9.1 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,640.00 |
| 9/19/2002 | 8.6 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,440.00 |
| 9/19/2002 | 11.1 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,440.00 |
| 9/20/2002 | 9.1 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,640.00 |
| 9/20/2002 | 8.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,200.00 |
| 9/21/2002 | 13.6 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,440.00 |
| 9/21/2002 | 11.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,400.00 |
| 9/22/2002 | 9.0 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 3,600.00 |
| 9/22/2002 | 10.5 | DJC | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 4,200.00 |
| 9/23/2002 | 13.5 | WWP | Continue LR and drafting Opening Brief; TCW with co-counsel. | $ 5,400.00 |
| 9/23/2002 | 13.5 | DJC | Work on tables, pagination, formatting, finalizing brief. | $ 5,400.00 |
| 9/24/2002 | 10.0 | WWP | Edit final draft of brief; prepare for filing | $ 4,000.00 |
| 9/24/2002 | 13.0 | DJC | Finalize brief. | $ 5,200.00 |
| 9/25/2002 | 14.0 | WWP | Finalize brief; copy, file and serve opening brief and supporting documents | $ 5,600.00 |
| 9/25/2002 | 15.0 | DJC | Final proofreading and correction of brief. | $ 6,000.00 |
| 9/26/2002 | 9.0 | WWP | Organize files; conference with co-counsel; LTR regarding same. | $ 3,600.00 |
| 9/26/2002 | 4.5 | DJC | File drafts, legal research, other materials. | $ 1,800.00 |
| 9/27/2002 | 8.5 | WWP | Filing and organization; conference with co-counsel regarding anticipated opposition arguments. | $ 3,400.00 |
| 9/27/2002 | 1.0 | DJC | Conference with co-counsel. | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 18

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/30/2002 | 3.5 | WWP | TCW clients; LT clients regarding status, providing copy of opening brief; forward file-stamped, bound copy of brief to co-counsel. | $ 1,400.00 |
| 9/30/2002 | 1.0 | DJC | Conference with co-counsel; strategy and planning. | $ 400.00 |
| 10/2/2007 | 0.3 | WWP | Telephone call to attorney Brian Boydston | $ 120.00 |
| 10/4/2002 | 1.5 | DJC | Emails to and from co-counsel WWP regarding status | $ 600.00 |
| 10/4/2002 | 2.5 | WWP | Emails to and from associate attorney DJC and other associates; Research Intel stock value | $ 1,000.00 |
| 10/9/2002 | 0.2 | DJC | Emails from co-counsel regaridng update and follow up | $ 80.00 |
| 10/9/2002 | 0.3 | WWP | Emails to associates regarding status | $ 120.00 |
| 10/15/2002 | 0.4 | WWP | LF attorney James Harrison regarding new briefing schedule | $ 160.00 |
| 10/16/2002 | 1.0 | WWP | Review court's order granting extension for filing of answer brief; conference with co-counsel. | $ 400.00 |
| 10/16/2002 | 1.5 | DJC | Review court's order granting extension for filing of answer brief; conference with co-counsel. | $ 600.00 |
| 10/21/2002 | 0.8 | DJC | TCWs co-counsel WWP regarding rule of law | $ 320.00 |
| 10/21/2002 | 0.8 | WWP | TCWs attorney DJC regarding possible extension and rules | $ 320.00 |
| 10/28/2002 | 0.3 | DJC | Emails to co-counsel WWP regarding rules of court | $ 120.00 |
| 10/28/2002 | 0.4 | WWP | Emails from attorney DJC regarding extension and rule of court; TCW Brian Boydston regarding same; | $ 160.00 |
| 11/6/2002 | 0.3 | WWP | TCW attorney James Harrison regarding Opening Briefs | $ 120.00 |
| 11/7/2002 | 1.0 | WWP | Conference with co-counsel regarding appellee's brief. | $ 400.00 |
| 11/7/2002 | 1.0 | DJC | Conference with co-counsel regarding appellee's brief. | $ 400.00 |
| 11/8/2002 | 3.5 | WWP | Review appellee's answer brief; conference with co-counsel regarding reply brief. | $ 1,400.00 |
| 11/8/2002 | 8.6 | DJC | Review appellee's answer brief; conference with co-counsel regarding reply brief; begin LR to respond to answer brief. | $ 3,440.00 |
| 11/9/2002 | 11.1 | WWP | LR and begin drafting Reply Brief | $ 4,440.00 |
| 11/9/2002 | 9.1 | DJC | LR and begin drafting Reply Brief | $ 3,640.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 19

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 11/10/2002 | 3.5 | DJC | LR and continue drafting Reply Brief | $ 1,400.00 |
| 11/11/2002 | 5.5 | WWP | LR and continue drafting Reply Brief | $ 2,200.00 |
| 11/11/2002 | 14.1 | DJC | LR and continue drafting Reply Brief | $ 5,640.00 |
| 11/12/2002 | 10.5 | WWP | LR and continue drafting Reply Brief | $ 4,200.00 |
| 11/12/2002 | 13.5 | DJC | LR and continue drafting Reply Brief | $ 5,400.00 |
| 11/13/2002 | 13.5 | WWP | LR and continue drafting Reply Brief | $ 5,400.00 |
| 11/13/2002 | 5.8 | DJC | LR and continue drafting Reply Brief | $ 2,320.00 |
| 11/14/2002 | 13.1 | WWP | LR and continue drafting Reply Brief | $ 5,240.00 |
| 11/14/2002 | 10.9 | DJC | LR and continue drafting Reply Brief | $ 4,360.00 |
| 11/15/2002 | 11.1 | WWP | LR and continue drafting Reply Brief; TCW Court to obtain 14-day extention to file Reply Brief; Confirm with opposing counsel | $ 4,440.00 |
| 11/15/2002 | 9.3 | DJC | LR and continue drafting Reply Brief | $ 3,720.00 |
| 11/16/2002 | 9.3 | WWP | LR and continue drafting Reply Brief | $ 3,720.00 |
| 11/16/2002 | 4.5 | DJC | LR and continue drafting Reply Brief | $ 1,800.00 |
| 11/17/2002 | 8.6 | WWP | LR and continue drafting Reply Brief | $ 3,440.00 |
| 11/17/2002 | 4.5 | DJC | LR and continue drafting Reply Brief | $ 1,800.00 |
| 11/18/2002 | 3.2 | WWP | LR and continue drafting Reply Brief | $ 1,280.00 |
| 11/18/2002 | 10.0 | DJC | LR and continue drafting Reply Brief | $ 4,000.00 |
| 11/19/2002 | 10.0 | WWP | LR and continue drafting Reply Brief | $ 4,000.00 |
| 11/19/2002 | 8.5 | DJC | LR and continue drafting Reply Brief | $ 3,400.00 |
| 11/20/2002 | 10.0 | WWP | LR and continue drafting Reply Brief | $ 4,000.00 |
| 11/20/2002 | 11.1 | DJC | LR and continue drafting Reply Brief | $ 4,440.00 |
| 11/21/2002 | 11.0 | WWP | LR and continue drafting Reply Brief | $ 4,400.00 |
| 11/21/2002 | 9.6 | DJC | LR and continue drafting Reply Brief | $ 3,840.00 |
| 11/22/2002 | 9.0 | WWP | LR and continue drafting Reply Brief | $ 3,600.00 |
| 11/22/2002 | 13.3 | DJC | LR and continue drafting Reply Brief | $ 5,320.00 |
| 11/23/2002 | 14.1 | WWP | LR and continue drafting Reply Brief | $ 5,640.00 |
| 11/23/2002 | 12.5 | DJC | LR and continue drafting Reply Brief | $ 5,000.00 |
| 11/24/2002 | 10.5 | WWP | LR and continue drafting Reply Brief | $ 4,200.00 |
| 11/24/2002 | 11.9 | DJC | LR and continue drafting Reply Brief | $ 4,760.00 |
| 11/25/2002 | 9.1 | WWP | LR and continue drafting Reply Brief | $ 3,640.00 |
| 11/25/2002 | 8.6 | DJC | LR and continue drafting Reply Brief | $ 3,440.00 |
| 11/26/2002 | 11.1 | WWP | LR and continue drafting Reply Brief | $ 4,440.00 |
| 11/26/2002 | 9.1 | DJC | LR and continue drafting Reply Brief | $ 3,640.00 |
| 11/27/2002 | 3.5 | WWP | LR and continue drafting Reply Brief | $ 1,400.00 |
| 11/28/2002 | 7.5 | DJC | LR and continue drafting Reply Brief | $ 3,000.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 20

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 11/28/2002 | 14.1 | WWP | LR and continue drafting Reply Brief | $ 5,640.00 |
| 11/29/2002 | 10.5 | DJC | LR and continue drafting Reply Brief | $ 4,200.00 |
| 11/29/2002 | 13.5 | WWP | LR and continue drafting Reply Brief | $ 5,400.00 |
| 11/30/2002 | 13.5 | DJC | LR and continue drafting Reply Brief | $ 5,400.00 |
| 11/30/2002 | 3.0 | WWP | LR and continue drafting Reply Brief | $ 1,200.00 |
| 12/2/2002 | 5.0 | DJC | LR and continue drafting Reply Brief | $ 2,000.00 |
| 12/2/2002 | 10.0 | WWP | LR and continue drafting Reply Brief | $ 4,000.00 |
| 12/3/2002 | 13.0 | DJC | LR and continue drafting Reply Brief | $ 5,200.00 |
| 12/3/2002 | 7.9 | WWP | LR and continue drafting Reply Brief | $ 3,160.00 |
| 12/4/2002 | 8.6 | DJC | LR and continue drafting Reply Brief | $ 3,440.00 |
| 12/4/2002 | 9.5 | WWP | LR and continue drafting Reply Brief | $ 3,800.00 |
| 12/5/2002 | 7.9 | DJC | LR and continue drafting Reply Brief | $ 3,160.00 |
| 12/5/2002 | 10.0 | WWP | LR and continue drafting Reply Brief | $ 4,000.00 |
| 12/6/2002 | 10.0 | DJC | LR and continue drafting Reply Brief | $ 4,000.00 |
| 12/6/2002 | 8.5 | WWP | LR and continue drafting Reply Brief | $ 3,400.00 |
| 12/7/2002 | 10.0 | DJC | LR and continue drafting Reply Brief | $ 4,000.00 |
| 12/7/2002 | 11.1 | WWP | LR and continue drafting Reply Brief | $ 4,440.00 |
| 12/8/2002 | 11.0 | DJC | Work on tables, pagination, formatting, finalizing brief. | $ 4,400.00 |
| 12/8/2002 | 9.6 | WWP | Edit final draft of brief; prepare for filing | $ 3,840.00 |
| 12/9/2002 | 9.0 | DJC | Finalize brief. | $ 3,600.00 |
| 12/9/2002 | 13.3 | WWP | Finalize brief; copy, file and serve opening brief and supporting documents | $ 5,320.00 |
| 12/10/2002 | 2.5 | DJC | Filing and organization; review order from court regarding oversized reply brief; LR motion to exceed page limits. | $ 1,000.00 |
| 12/10/2002 | 1.5 | WWP | Organize files; conference with co-counsel. | $ 600.00 |
| 12/11/2002 | 1.0 | DJC | TCW co-counsel regarding motion to exceed pages | $ 400.00 |
| 12/11/2002 | 1.5 | WWP | TCW co-counsel regarding motion to exceed pages | $ 600.00 |
| 12/12/2002 | 2.0 | DJC | LR and begin drafting motion to exceed pages. | $ 800.00 |
| 12/13/2002 | 0.5 | DJC | Continue drafting motion to exceed pages. | $ 200.00 |
| 12/16/2002 | 2.5 | DJC | Continue drafting motion to exceed pages, declaration, proposed order. | $ 1,000.00 |
| 12/20/2002 | 1.0 | DJC | Complete draft of motion to exceed pages; conference with co-counsel | $ 400.00 |
| 12/20/2002 | 3.5 | WWP | Review and edit motion to exceed pages. | $ 1,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 21

| Date | Hours | Attorney | Description | Amount |
|---|---|---|---|---|
| 12/30/2002 | 1.0 | DJC | Finalize motion to exceed pages and supporting documents. | $ 400.00 |
| 12/31/2002 | 2.5 | WWP | Finalize, copy and file motion to exceed pages and supporting papers. | $ 1,000.00 |
| 12/31/2002 | 1.3 | DJC | Finalize motion to exceed pages and supporting papers. | $ 520.00 |
| 1/18/2003 | 0.5 | WWP | TCW Court Clerk regarding status | $ 200.00 |
| 1/22/2003 | 8.6 | WWP | LR and edit Reply Brief; Order from Court regarding Motion for Leave to File | $ 3,440.00 |
| 1/22/2003 | 3.5 | DJC | Review court's order requiring revised Reply Brief; review Reply Brief | $ 1,400.00 |
| 1/23/2003 | 2.0 | WWP | Conference with co-counsel; Emails regarding same | $ 800.00 |
| 1/23/2003 | 5.8 | DJC | Edit Reply Brief; additional LR. | $ 2,320.00 |
| 1/24/2003 | 5.6 | WWP | LR and edit Reply Brief | $ 2,240.00 |
| 1/24/2003 | 4.8 | DJC | Legal research and edit Reply Brief | $ 1,920.00 |
| 1/25/2003 | 9.1 | DJC | LR and edit Reply Brief | $ 3,640.00 |
| 1/27/2003 | 3.7 | WWP | LR and edit Reply Brief | $ 1,480.00 |
| 1/27/2003 | 5.0 | DJC | LR and edit Reply Brief | $ 2,000.00 |
| 1/28/2003 | 6.1 | WWP | LR and edit Reply Brief | $ 2,440.00 |
| 1/28/2003 | 6.0 | DJC | LR and edit Reply Brief | $ 2,400.00 |
| 1/29/2003 | 5.1 | WWP | LR and edit Reply Brief | $ 2,040.00 |
| 1/30/2003 | 3.8 | WWP | LR and edit Reply Brief | $ 1,520.00 |
| 1/30/2003 | 4.5 | DJC | LR and edit Reply Brief | $ 1,800.00 |
| 2/3/2003 | 1.0 | WWP | LR and edit Reply Brief | $ 400.00 |
| 2/3/2003 | 4.0 | DJC | LR and edit Reply Brief | $ 1,600.00 |
| 2/4/2003 | 2.5 | WWP | LR and edit Reply Brief | $ 1,000.00 |
| 2/5/2003 | 6.0 | WWP | LR and edit Reply Brief | $ 2,400.00 |
| 2/5/2003 | 5.3 | DJC | LR and edit Reply Brief | $ 2,120.00 |
| 2/6/2003 | 4.7 | WWP | LR and edit Reply Brief | $ 1,880.00 |
| 2/6/2003 | 4.5 | DJC | LR and edit Reply Brief | $ 1,800.00 |
| 2/7/2003 | 1.0 | WWP | LR and edit Reply Brief | $ 400.00 |
| 2/7/2003 | 3.3 | DJC | LR and edit Reply Brief | $ 1,320.00 |
| 2/10/2003 | 8.0 | WWP | LR and edit Reply Brief | $ 3,200.00 |
| 2/10/2003 | 11.5 | DJC | LR and edit Reply Brief | $ 4,600.00 |
| 2/11/2003 | 6.0 | WWP | Final edits to revised Reply Brief. | $ 2,400.00 |
| 2/11/2003 | 9.2 | DJC | Prepare tables, proof of service; finalize revised Reply Brief. | $ 3,680.00 |

Case 2:01-cv-02407-JAM-GGH   Document 120   Filed 09/18/07   Page 31 of 155

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 22

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 2/12/2003 | 4.0 | DJC | Finalize revised Reply Brief; TCW attorney WWP | $ 1,600.00 |
| 2/12/2003 | 2.3 | WWP | Finalize revised Reply Brief; TCW attorney Daniel Culhane regaring same | $ 920.00 |
| 2/13/2003 | 4.1 | DJC | LR and edit Reply Brief | $ 1,640.00 |
| 2/13/2003 | 6.5 | WWP | Copy, serve and file revised Reply Brief in accordance with court's order. | $ 2,600.00 |
| 2/14/2003 | 2.0 | DJC | Organize files; conference with co-counsel. | $ 800.00 |
| 2/14/2003 | 3.5 | WWP | Organize files; conference with associate attorney. | $ 1,400.00 |
| 2/19/2003 | 0.3 | DJC | TCW co-counsel regarding follow up | $ 120.00 |
| 2/19/2003 | 0.3 | WWP | TCW associate regarding status | $ 120.00 |
| 2/21/2003 | 0.8 | DJC | TCW co-counsel regarding status and update | $ 320.00 |
| 2/21/2003 | 0.8 | WWP | TCW associate attorney regarding status and update | $ 320.00 |
| 4/8/2003 | 1.0 | WWP | Prepare letter to associate regarding update, fax same; Prepare letter to client forwarding the Opposition and the Reply briefs | $ 400.00 |
| 4/9/2003 | 0.8 | WWP | TCW attorney Brian Bodyston regarding status | $ 320.00 |
| 6/10/2003 | 0.2 | DJC | TCW co-counsel regarding status and update | $ 80.00 |
| 6/10/2003 | 0.3 | WWP | TCW associates regarding update | $ 120.00 |
| 7/24/2003 | 0.7 | WWP | Prepare letter to clients regarding status of the case and update | $ 280.00 |
| 8/12/2003 | 0.2 | DJC | LF co-counsel regarding status | $ 80.00 |
| 8/12/2003 | 0.4 | WWP | Letter to associates regarding update | $ 160.00 |
| 8/15/2003 | 2.1 | WWP | Notice from the court regarding upcoming hearing; LT associate attorney and TCW other associates regarding same; Prepare Acknowledgement of hearing Notice and forward same to the Court and opposing counsel | $ 840.00 |
| 8/15/2003 | 1.5 | DJC | LF and TCW co-counsel regarding status | $ 600.00 |
| 8/18/2003 | 0.4 | WWP | Acknowledgement of Hearing from attorney Robin Johansen | $ 160.00 |
| 8/19/2003 | 0.4 | WWP | Letter from associate attorneys regarding status | $ 160.00 |
| 9/30/2003 | 1.5 | WWP | Meeting with attorneys James Harrison and Brian Boydston | $ 600.00 |
| 10/6/2003 | 4.5 | DJC | Review briefs; begin preparation of outline for oral argument. | $ 1,800.00 |
| 10/6/2003 | 6.0 | WWP | Conference with co-counsel regarding oral argument. | $ 2,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 23

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 10/7/2003 | 8.5 | DJC | Review authorities, filed briefs; continue preparation for oral argument | $ 3,400.00 |
| 10/7/2003 | 8.5 | WWP | Review authorities, filed briefs; continue preparation for oral argument | $ 3,400.00 |
| 10/8/2003 | 6.5 | DJC | Conference with co-counsel; revise outline. | $ 2,600.00 |
| 10/8/2003 | 7.0 | WWP | Review and revise outline; conference with co-counsel. | $ 2,800.00 |
| 10/9/2003 | 13.5 | WWP | Prepare for hearing; Travel to San Francisco to attend hearing before the 9th Circuit Court of Appeals | $ 5,400.00 |
| 10/10/2003 | 7.5 | WWP | Prepare for and attend oral argument before the 9th Circuit Court of Appeal | $ 3,000.00 |
| 10/11/2003 | 1.5 | DJC | Conference with co-counsel regarding oral argument. | $ 600.00 |
| 10/11/2003 | 1.5 | WWP | Conference with co-counsel regarding oral argument. | $ 600.00 |
| 10/21/2003 | 0.6 | WWP | Prepare LT clients regarding update on the past hearing before the 9th Circuit Court of Appeal | $ 240.00 |
| 10/22/2003 | 0.5 | WWP | TCW co-counsel regarding status. | $ 200.00 |
| 10/22/2003 | 0.5 | DJC | TCW co-counsel regarding status. | $ 200.00 |
| 10/24/2003 | 0.2 | WWP | TCW attorney Brian Boydston | $ 80.00 |
| 10/27/2003 | 3.1 | WWP | TCW attorney Brian Bodyston regarding status; LR regarding same | $ 1,240.00 |
| 10/31/2003 | 1.2 | WWP | Review Order from court regarding motion to substitute parties | $ 480.00 |
| 11/3/2003 | 1.3 | WWP | Emails from and to co-counsel regarding settlement conference, legal research and update | $ 520.00 |
| 11/3/2003 | 2.5 | WWP | Review order from court requiring supplemental briefing; TCW co-counsel | $ 1,000.00 |
| 11/3/2003 | 2.5 | DJC | Review order from court requiring supplemental briefing; TCW co-counsel | $ 1,000.00 |
| 11/4/2003 | 3.5 | DJC | LR effect of state sovereign immunity on Takings Clause claim. | $ 1,400.00 |
| 11/4/2003 | 6.5 | WWP | LR substitution of state official following election | $ 2,600.00 |
| 11/5/2003 | 8.0 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,200.00 |
| 11/5/2003 | 9.2 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,680.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 24

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 11/6/2003 | 9.5 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,800.00 |
| 11/6/2003 | 7.8 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,120.00 |
| 11/7/2003 | 11.1 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 4,440.00 |
| 11/7/2003 | 5.6 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,240.00 |
| 11/8/2003 | 4.5 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 1,800.00 |
| 11/9/2003 | 2.5 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 1,000.00 |
| 11/10/2003 | 9.5 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,800.00 |
| 11/10/2003 | 6.3 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,520.00 |
| 11/11/2003 | 8.0 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,200.00 |
| 11/11/2003 | 4.9 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 1,960.00 |
| 11/12/2003 | 9.0 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,600.00 |
| 11/12/2003 | 6.6 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,640.00 |
| 11/13/2003 | 9.1 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,640.00 |
| 11/13/2003 | 7.3 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,920.00 |
| 11/14/2003 | 8.6 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,440.00 |
| 11/14/2003 | 5.9 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,360.00 |
| 11/15/2003 | 4.8 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 1,920.00 |
| 11/15/2003 | 5.1 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,040.00 |
| 11/16/2003 | 4.0 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 1,600.00 |
| 11/17/2003 | 5.6 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,240.00 |
| 11/17/2003 | 7.3 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 2,920.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 25

| Date | Hours | Attorney | Description | Amount |
|---|---|---|---|---|
| 11/18/2003 | 9.1 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,640.00 |
| 11/18/2003 | 8.6 | DJC | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,440.00 |
| 11/19/2003 | 9.1 | WWP | LR and draft Supplemental Brief, Motion to Substitute Parties. | $ 3,640.00 |
| 11/19/2003 | 6.7 | DJC | Finalize and format Supplemental Brief, Motion to Substitute Parties, supporting papers. | $ 2,680.00 |
| 11/20/2003 | 8.6 | WWP | Finalize and file Supplemental Brief and Motion to Substitute Parties; Review Appellee's Supplemental Brief | $ 3,440.00 |
| 11/20/2003 | 5.0 | DJC | Finalize and file Supplemental Brief and Motion to Substitute Parties. | $ 2,000.00 |
| 12/2/2003 | 3.5 | WWP | Receive letter regarding substitution of parties; LR re same; TCW attorney Brian Boydston regarding same | $ 1,400.00 |
| 12/2/2003 | 1.5 | DJC | TCW co-counsel; review letter. | $  600.00 |
| 12/3/2003 | 4.5 | DJC | Receive and review opposition to motion to substitute counsel; LR re same; begin drafting Reply. | $ 1,800.00 |
| 12/3/2003 | 8.7 | WWP | Receive and review opposition to motion to substitute counsel; LR re same; begin drafting Reply, Motion to Strike; Telephone conference with attornys Brian Boydston, James Harrison, Robin Johansen and others | $ 3,480.00 |
| 12/4/2003 | 5.6 | DJC | Draft Reply to Motion to Substitute Parties; begin drafting Motion to Strike | $ 2,240.00 |
| 12/4/2003 | 9.1 | WWP | Draft Reply to Motion to Substitute Parties, Motion to Strike; TCW attorney Brian Boydston regarding same | $ 3,640.00 |
| 12/5/2003 | 5.6 | DJC | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 2,240.00 |
| 12/5/2003 | 8.7 | WWP | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 3,480.00 |
| 12/6/2003 | 3.5 | DJC | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 1,400.00 |
| 12/6/2003 | 4.8 | WWP | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 1,920.00 |
| 12/8/2003 | 9.1 | DJC | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 3,640.00 |
| 12/8/2003 | 8.0 | WWP | Draft Reply to Motion to Substitute Parties, | $ 3,200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 26

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | Motion to Strike. | |
| 12/9/2003 | 9.0 | DJC | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 3,600.00 |
| 12/9/2003 | 10.5 | WWP | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 4,200.00 |
| 12/10/2003 | 9.1 | DJC | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 3,640.00 |
| 12/10/2003 | 5.0 | WWP | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 2,000.00 |
| 12/11/2003 | 9.3 | DJC | Draft Reply to Motion to Substitute Parties, Motion to Strike. | $ 3,720.00 |
| 12/11/2003 | 9.1 | WWP | Finalize Reply to Motion to Substitute Parties. | $ 3,640.00 |
| 12/12/2003 | 9.1 | WWP | File Reply Motion to Substitute Parties. | $ 3,640.00 |
| 12/12/2003 | 6.8 | DJC | Finalize Reply; continue work on Motion to Strike and for Judicial Notice. | $ 2,720.00 |
| 12/15/2003 | 8.6 | WWP | Finalize Reply; continue work on Motion to Strike and for Judicial Notice. | $ 3,440.00 |
| 12/15/2003 | 9.1 | DJC | Draft Motion to Strike and Judicial Notice. | $ 3,640.00 |
| 12/16/2003 | 6.7 | WWP | Letter to Court correcting footnote in Reply; Motion to Strike. | $ 2,680.00 |
| 12/16/2003 | 8.8 | DJC | Draft Motion to Strike and Judicial Notice; conference with co-counsel. | $ 3,520.00 |
| 12/17/2003 | 1.0 | WWP | TCW associate attorney. | $ 400.00 |
| 12/17/2003 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 12/24/2003 | 0.3 | WWP | TCW associate attorney discussed status | $ 120.00 |
| 12/30/2003 | 0.8 | WWP | TCW regarding update. | $ 320.00 |
| 12/30/2003 | 0.7 | DJC | TCW co-counsel. | $ 280.00 |
| 12/31/2003 | 0.3 | WWP | TCW associate attorney follow up. | $ 120.00 |
| 12/31/2003 | 0.5 | DJC | TCW co-counsel regarding status. | $ 200.00 |
| 1/6/2004 | 0.5 | WWP | TCW co-counsel | $ 200.00 |
| 1/20/2004 | 1.0 | WWP | TCW associate attorney discussed status and possible next steps. | $ 400.00 |
| 1/20/2004 | 1.0 | DJC | TCW co-counsel discussed status | $ 400.00 |
| 1/29/2004 | 0.7 | WWP | TCW associate attorney discussed possible next steps | $ 280.00 |
| 1/29/2004 | 0.7 | DJC | TCW co-counsel follow up | $ 280.00 |
| 1/30/2004 | 0.5 | WWP | TCW associate attorney, discussed status. | $ 200.00 |
| 1/30/2004 | 0.5 | DJC | TCW co-counsel attorney regarding status and update | $ 200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 27

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 2/3/2004 | 0.3 | DJC | TCW co-counsel regarding update | $ 120.00 |
| 2/3/2004 | 0.3 | WWP | TCW associate attorney regarding status | $ 120.00 |
| 2/4/2004 | 1.2 | WWP | TCW associate attorney regarding update | $ 480.00 |
| 2/4/2004 | 1.2 | DJC | TCW co-counsel. | $ 480.00 |
| 2/6/2004 | 1.3 | WWP | TCW associate attorney regarding status and update | $ 520.00 |
| 2/10/2004 | 0.3 | DJC | TCW co-counsel | $ 120.00 |
| 2/10/2004 | 0.3 | WWP | TCW co-counsel | $ 120.00 |
| 2/12/2004 | 0.2 | WWP | TCW co-counsel | $ 80.00 |
| 2/17/2004 | 0.3 | WWP | TCW co-counsel | $ 120.00 |
| 2/23/2004 | 0.6 | WWP | TCW co-counsel | $ 240.00 |
| 2/24/2004 | 0.7 | WWP | TCW co-counsel | $ 280.00 |
| 2/26/2004 | 1.5 | WWP | TCW co-counsel. | $ 600.00 |
| 2/26/2004 | 1.5 | DJC | TCW co-counsel. | $ 600.00 |
| 3/6/2004 | 0.2 | WWP | TCW co-counsel. | $ 80.00 |
| 3/6/2004 | 0.2 | DJC | TCW co-counsel. | $ 80.00 |
| 3/9/2004 | 0.1 | WWP | Correspondence to co-counsel | $ 40.00 |
| 3/10/2004 | 0.1 | WWP | Correspondence to co-counsel | $ 40.00 |
| 3/11/2004 | 0.2 | WWP | TCW co-counsel | $ 80.00 |
| 3/16/2004 | 0.5 | WWP | TCW co-counsel | $ 200.00 |
| 3/17/2004 | 1.5 | WWP | TCW co-counsel. | $ 600.00 |
| 3/17/2004 | 1.5 | DJC | TCW co-counsel. | $ 600.00 |
| 3/24/2004 | 0.1 | WWP | TCW co-counsel | $ 40.00 |
| 4/30/2004 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 4/30/2004 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 5/1/2004 | 0.2 | WWP | TCW co-counsel. | $ 80.00 |
| 5/1/2004 | 0.2 | DJC | TCW co-counsel. | $ 80.00 |
| 5/5/2004 | 0.3 | WWP | TCW co-counsel. | $ 120.00 |
| 5/5/2004 | 0.3 | DJC | TCW co-counsel. | $ 120.00 |
| 5/13/2004 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 5/13/2004 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 7/1/2004 | 0.5 | WWP | TCW co-counsel. | $ 200.00 |
| 7/1/2004 | 0.5 | DJC | TCW co-counsel. | $ 200.00 |
| 7/7/2004 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 7/7/2004 | 1.2 | DJC | TCW co-counsel. | $ 480.00 |
| 7/14/2004 | 0.5 | WWP | TCW co-counsel. | $ 200.00 |
| 7/19/2004 | 0.3 | WWP | TCW co-counsel | $ 120.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 28

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 7/20/2004 | 0.6 | WWP | TCW co-counsel | $ 240.00 |
| 7/23/2004 | 1.0 | WWP | TCW co-counsel, email from co-counsel. | $ 400.00 |
| 7/27/2004 | 1.3 | WWP | Prepare subpoena forward to co-counsel; TCW co-counsel regarding same | $ 520.00 |
| 7/29/2004 | 3.8 | WWP | TCW and emails from and to co-counsel, review documents. | $ 1,520.00 |
| 7/29/2007 | 3.8 | DJC | Emails to and from and TCW co-counsel WWP regarding status | $ 1,520.00 |
| 7/30/2004 | 2.3 | WWP | TCW co-counsel, review documents. | $ 920.00 |
| 7/30/2004 | 2.3 | DJC | Review documents and file; TCW co-counsel WWP | $ 920.00 |
| 8/3/2004 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 8/3/2004 | 0.4 | DJC | TCW co-counsel WWP discussed update and status | $ 160.00 |
| 8/9/2004 | 1.5 | WWP | TCW associate attorney DJC regarding update. | $ 600.00 |
| 8/9/2004 | 1.5 | DJC | TCW co-counsel. | $ 600.00 |
| 8/23/2004 | 0.7 | WWP | TCW DJC discussed update and status. | $ 280.00 |
| 8/23/2004 | 0.7 | DJC | TCW co-counsel. | $ 280.00 |
| 8/24/2004 | 1.5 | WWP | TCW co-counsel; review and revise motion for judicial notice and to strike | $ 600.00 |
| 8/24/2004 | 4.8 | DJC | TCW co-counsel; review and revise motion for judicial notice and to strike | $ 1,920.00 |
| 8/25/2004 | 5.5 | WWP | Revise motion for judicial notice and to strike, draft declaration in support of same. | $ 2,200.00 |
| 8/25/2004 | 7.0 | DJC | Begin LR ane draft Motion for judicial notice. | $ 2,800.00 |
| 8/26/2004 | 8.1 | WWP | Continue legal research and drafting the Motion. | $ 3,240.00 |
| 8/26/2004 | 7.0 | DJC | Coording with co-counsel and begin drafting supporting documents for the Motion for Judical Notice. | $ 2,800.00 |
| 8/27/2004 | 3.5 | WWP | Contine drafting Motion for judicial notice and supporting declarations. | $ 1,400.00 |
| 8/27/2004 | 4.8 | DJC | Draft Motion for judicial notice and supporting documents. | $ 1,920.00 |
| 8/30/2004 | 8.5 | WWP | Draft Motion for judicial notice and supporting documents. | $ 3,400.00 |
| 8/30/2004 | 7.5 | DJC | Draft Motion for judicial notice and supporting documents. | $ 3,000.00 |
| 8/31/2004 | 4.5 | WWP | Draft Motion for judicial notice and supporting documents. | $ 1,800.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 29

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/31/2004 | 9.0 | DJC | Draft Motion for judicial notice and supporting documents. | $ 3,600.00 |
| 9/1/2004 | 10.3 | WWP | Draft Motion for judicial notice and supporting documents. | $ 4,120.00 |
| 9/1/2004 | 7.6 | DJC | Draft Motion for judicial notice and supporting documents. | $ 3,040.00 |
| 9/2/2004 | 7.5 | WWP | Draft Motion for judicial notice and supporting documents. | $ 3,000.00 |
| 9/2/2004 | 7.0 | DJC | Draft Motion for judicial notice and supporting documents. | $ 2,800.00 |
| 9/3/2004 | 4.5 | WWP | Draft Motion for judicial notice and supporting documents. | $ 1,800.00 |
| 9/3/2004 | 6.5 | DJC | Draft Motion for judicial notice and supporting documents. | $ 2,600.00 |
| 9/4/2004 | 4.0 | WWP | Draft Motion for judicial notice and supporting documents. | $ 1,600.00 |
| 9/4/2004 | 2.3 | DJC | Draft Motion for judicial notice and supporting documents. | $  920.00 |
| 9/6/2004 | 4.5 | WWP | Draft Motion for judicial notice and supporting documents. | $ 1,800.00 |
| 9/6/2004 | 7.0 | DJC | Draft Motion for judicial notice and supporting documents. | $ 2,800.00 |
| 9/7/2004 | 7.5 | WWP | Draft Motion for judicial notice and supporting documents. | $ 3,000.00 |
| 9/7/2004 | 7.3 | DJC | Draft Motion for judicial notice and supporting documents. | $ 2,920.00 |
| 9/8/2004 | 8.0 | WWP | Finalize and file Motion for Judicial Notice and supporting documents. | $ 3,200.00 |
| 9/8/2004 | 4.0 | DJC | Finalize filing. | $ 1,600.00 |
| 9/9/2004 | 1.0 | WWP | Conference with co-counsel. | $  400.00 |
| 9/9/2004 | 2.5 | DJC | Conference with co-counsel; organize files. | $ 1,000.00 |
| 9/13/2004 | 0.8 | DJC | Prepare corrected proof of service. | $  320.00 |
| 9/13/2004 | 1.5 | WWP | File corrected proof of service. | $  600.00 |
| 9/21/2004 | 3.5 | DJC | Review Opposition to Motion to Strike; begin drafting Reply. | $ 1,400.00 |
| 9/21/2004 | 6.0 | WWP | Review Opposition to Motion to Strike; begin drafting Reply. | $ 2,400.00 |
| 9/22/2004 | 6.0 | WWP | Draft Reply to Motion to Strike. | $ 2,400.00 |
| 9/22/2004 | 8.1 | DJC | Draft Reply to Motion to Strike. | $ 3,240.00 |
| 9/23/2004 | 6.0 | WWP | Draft Reply to Motion to Strike. | $ 2,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 30

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/23/2004 | 8.1 | DJC | Draft Reply to Motion to Strike. | $ 3,240.00 |
| 9/24/2004 | 6.5 | WWP | Draft Reply to Motion to Strike; TCW co-counsel. | $ 2,600.00 |
| 9/24/2004 | 5.0 | DJC | Draft Reply to Motion to Strike. | $ 2,000.00 |
| 9/25/2004 | 4.5 | WWP | Draft Reply to Motion to Strike. | $ 1,800.00 |
| 9/25/2004 | 8.0 | DJC | Draft Reply to Motion to Strike. | $ 3,200.00 |
| 9/26/2004 | 2.1 | DJC | Draft Reply to Motion to Strike. | $ 840.00 |
| 9/27/2004 | 6.0 | WWP | Finalize and file Reply to Motion to Strike. | $ 2,400.00 |
| 9/27/2004 | 3.5 | DJC | Finalize and assist with filing. | $ 1,400.00 |
| 9/29/2004 | 1.0 | WWP | TCW associate attorney. | $ 400.00 |
| 9/29/2004 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 9/30/2004 | 1.3 | WWP | TCW associate attorney DJC. | $ 520.00 |
| 9/30/2004 | 1.3 | DJC | TCW co-counsel regarding status and update | $ 520.00 |
| 10/7/2004 | 1.0 | WWP | TCW attorney Daniel Culhane regarding status. | $ 400.00 |
| 10/7/2004 | 1.0 | DJC | TCW co-counsel discussed status | $ 400.00 |
| 10/11/2004 | 0.8 | WWP | TCW associate attorney regarding update | $ 320.00 |
| 10/11/2004 | 0.8 | DJC | TCW co-counsel discussed update | $ 320.00 |
| 10/12/2004 | 0.8 | WWP | TCW regarding update. | $ 320.00 |
| 10/12/2004 | 0.7 | DJC | TCW co-counsel. | $ 280.00 |
| 10/13/2004 | 0.3 | WWP | TCW associate attorney follow up. | $ 120.00 |
| 10/13/2004 | 0.5 | DJC | TCW co-counsel regarding status. | $ 200.00 |
| 11/2/2004 | 1.0 | WWP | TCW associate attorney discussed status and possible next steps. | $ 400.00 |
| 11/2/2004 | 1.0 | DJC | TCW co-counsel discussed status | $ 400.00 |
| 11/12/2004 | 0.5 | WWP | TCW associate attorney, discussed status. | $ 200.00 |
| 11/12/2004 | 0.5 | DJC | TCW co-counsel attorney regarding status and update | $ 200.00 |
| 11/17/2004 | 1.2 | WWP | TCW associate attorney regarding update | $ 480.00 |
| 11/17/2004 | 1.2 | DJC | TCW co-counsel. | $ 480.00 |
| 12/9/2004 | 1.5 | WWP | TCW co-counsel. | $ 600.00 |
| 12/9/2004 | 1.5 | DJC | TCW co-counsel. | $ 600.00 |
| 12/18/2004 | 0.2 | WWP | TCW co-counsel. | $ 80.00 |
| 12/18/2004 | 0.2 | DJC | TCW co-counsel. | $ 80.00 |
| 12/29/2004 | 1.5 | WWP | TCW co-counsel. | $ 600.00 |
| 12/29/2004 | 1.5 | DJC | TCW co-counsel. | $ 600.00 |
| 2/11/2005 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 2/11/2005 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 31

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 2/12/2005 | 0.2 | WWP | TCW co-counsel. | $ 80.00 |
| 2/12/2005 | 0.2 | DJC | TCW co-counsel. | $ 80.00 |
| 2/16/2005 | 0.3 | WWP | TCW co-counsel. | $ 120.00 |
| 2/16/2005 | 0.3 | DJC | TCW co-counsel. | $ 120.00 |
| 2/24/2005 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 2/24/2005 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 3/24/2005 | 1.7 | WWP | Review Court's Order denying Motion to Strike; TCW co-counsel | $ 680.00 |
| 3/24/2005 | 1.0 | DJC | Review Court's Order denying Motion to Strike; TCW co-counsel | $ 400.00 |
| 3/28/2005 | 0.4 | WWP | LT clients regarding update; Review Order denying Motion to Strike | |
| 3/29/2005 | 6.5 | WWP | Review Court's Opinion; TCW co-counsel; strategy and planning; Email from attorney Daniel Culhane; Review Taylor Opinion; TT, TF associates regarding update | $ 2,600.00 |
| 3/29/2005 | 7.0 | DJC | Review Court's Opinion; TCW co-counsel; strategy and planning. | $ 2,800.00 |
| 3/30/2005 | 4.5 | WWP | Multiple emails to and from associates regarding published decision; Prepare bill of costs. | $ 1,800.00 |
| 3/30/2005 | 1.5 | DJC | Review rules regarding costs; multipleemails with co-counsel. | $ 600.00 |
| 3/31/2005 | 3.6 | WWP | Letter to clients egarding update and forwarding published decision; Multiple telephone calls to media and others; | $ 1,440.00 |
| 3/31/2005 | 2.1 | DJC | Legal research. | $ 840.00 |
| 4/1/2005 | 4.5 | WWP | Telephone calls to colleagues and others; LF associates; forward same to attorney Daniel Culhane | $ 1,800.00 |
| 4/1/2005 | 3.5 | DJC | Legal research. | $ 1,400.00 |
| 4/4/2005 | 3.1 | WWP | Telephone calls to colleagues and others regarding Ninth Circuit victory; Emails from and to associates; Review local rules and prepare Bill of Costs | $ 1,240.00 |
| 4/5/2005 | 4.5 | WWP | Telephone calls to colleagues and others regarding Ninth Circuit victory; Review Order awarding cost; Emails from associates | $ 1,800.00 |
| 4/6/2005 | 2.3 | DJC | Review motion to extend time to petition for rehearing; LR re same. | $ 920.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 32

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 4/6/2005 | 5.0 | WWP | Review motion to extend time to petition for rehearing; communications with various persons; LF and TCW opposing counsel Robin Johansen; Emails from associates; Motion for Extension of Time | $ 2,000.00 |
| 4/7/2005 | 9.8 | DJC | LR Emergency Motion for Preliminary Injunction before Court of Appeals; LF attorney regarding several outstanding issues | $ 3,920.00 |
| 4/7/2005 | 8.7 | WWP | LR Preliminary Injunctions; Pepare motion to Expedite, arragne for filing and service. | $ 3,480.00 |
| 4/8/2005 | 10.1 | DJC | LR and Draft Motion for TRO/Preliminary Injunction. | $ 4,040.00 |
| 4/8/2005 | 13.0 | WWP | LR and Draft Motion for TRO/Preliminary Injunction. | $ 5,200.00 |
| 4/9/2005 | 10.1 | DJC | LR and Draft Motion for TRO/Preliminary Injunction. | $ 4,040.00 |
| 4/9/2005 | 8.7 | WWP | LR and Draft Motion for TRO/Preliminary Injunction. | $ 3,480.00 |
| 4/10/2005 | 14.0 | DJC | LR and Draft Motion for TRO/Preliminary Injunction. | $ 5,600.00 |
| 4/10/2005 | 12.0 | WWP | LR and Draft Motion for TRO/Preliminary Injunction; Emails from and to associate attorney Daniel Culhane regarding status; Review Federal Court of Appeals Manual | $ 4,800.00 |
| 4/11/2005 | 15.0 | DJC | LR and Draft Motion for TRO/Preliminary Injunction. | $ 6,000.00 |
| 4/11/2005 | 11.1 | WWP | LR and Draft Motion for TRO/Preliminary Injunction; file Bill of Costs; Email to associates regarding update | $ 4,440.00 |
| 4/12/2005 | 13.5 | DJC | LR and Draft Motion for TRO/Preliminary Injunction. | $ 5,400.00 |
| 4/12/2005 | 10.9 | WWP | LR and Draft Motion for TRO/Preliminary Injunction. | $ 4,360.00 |
| 4/13/2005 | 5.6 | DJC | LR and Draft Motion for TRO/Preliminary Injunction; Multiple TCW opposing counsel Robin Johansen; Lengthy LT Robin Johansen regarding settlement discussions; Fax same; Email from associates regarding update | $ 2,240.00 |
| 4/13/2005 | 8.7 | WWP | Finalize and file Emergency Motion for TRO/Preliminary Injunction. | $ 3,480.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 33

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 4/14/2005 | 4.5 | WWP | Email to, multiple TCW and LT associates regarding update and forwarding documents; TF opposing counsel Robin Johansen regarding extension; LT clients regarding update | $ 1,800.00 |
| 4/14/2005 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 4/15/2005 | 1.3 | WWP | TCW co-counsel; review motion for extension of time; Emails to and from associates forwarding necessary documents | $ 520.00 |
| 4/15/2005 | 1.0 | DJC | TCW co-counsel; review motion for extension of time. | $ 400.00 |
| 4/16/2005 | 0.3 | WWP | TCW associate attorney follow up. | $ 120.00 |
| 4/16/2005 | 0.5 | DJC | Emails to and from associates regarding status and update | $ 200.00 |
| 4/18/2005 | 1.0 | WWP | TCW associate attorney; TCW Robin Johansen (10:00 a.m.) | $ 400.00 |
| 4/18/2005 | 1.0 | DJC | TCW co-counsel discussed status; TCW Robin Johansen discussed position | $ 400.00 |
| 4/19/2005 | 1.7 | WWP | TCW co-counsel; review petition for rehearing; TCW attorney Robin Johansen (3:00 p.m.); Review Controller's Petition for Rehearing; fax same to associate attorney Daniel Culhane; | $ 680.00 |
| 4/19/2005 | 3.5 | DJC | TCW co-counsel; review petition for rehearing; LR re same | $ 1,400.00 |
| 4/20/2005 | 1.7 | WWP | TReview response to bill of costs; TCW 9th Circuit Mediation Center; Emails regarding update; TCW associate attorney Daniel Culhane regarding status; LT Robin Johansen regarding possible settlement; fax same; Review Controller's Objections to Bill of Costs | $ 680.00 |
| 4/20/2005 | 0.5 | DJC | TCW co-counsel; review response to bill of costs. | $ 200.00 |
| 4/21/2005 | 1.9 | WWP | TCW Sacramento Lobbyist; TCW associate attorney Daniel Culhane and TF Controller's counsel; Emails from attorney Daniel Culhane | $ 760.00 |
| 4/21/2005 | 1.5 | DJC | TCW co-counsel | $ 600.00 |
| 4/22/2005 | 1.5 | WWP | TCW co-counsel; TCW Strategist Jonathan Wilcox, email regarding same; LT clients regarding update and forwarding documents | $ 600.00 |
| 4/22/2005 | 0.2 | DJC | TCW co-counsel | $ 80.00 |
| 4/23/2005 | 0.3 | WWP | TCW associates discussed status | $ 120.00 |
| 4/23/2005 | 0.3 | DJC | TCW co-counsel follow up | $ 120.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 34

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 4/24/2005 | 1.0 | WWP | Telephone calls to and from attorney Daniel Culhane and other associates regarding update | $ 400.00 |
| 4/25/2005 | 6.5 | WWP | Review opposition to Motion for Preliminary Injunction;TCW Dan Schuns, Mark Bagetich,; TCW Private Investigator; Lengthy email to attorney Daniel Culhane regarding major points of the reply; Begin to prepare a Draft of the Reply to the Opposition | $ 2,600.00 |
| 4/25/2005 | 6.8 | DJC | Review opposition to Motion for Preliminary Injunction; LR re same. | $ 2,720.00 |
| 4/26/2005 | 7.8 | WWP | Review opposition to Motion for Preliminary Injunction and Supporting Documents; LR re same; Fax from Clerk of the U.S. Court of Appeal regarding order regarding Preliminary Injunction | $ 3,120.00 |
| 4/26/2005 | 8.1 | DJC | Review opposition to Motion for Preliminary Injunction; LR re same; review order denying motion for preliminary injunction | $ 3,240.00 |
| 4/27/2005 | 1.2 | WWP | TCW co-counsel; TCW Lew Uhler | $ 480.00 |
| 4/27/2005 | 0.7 | DJC | TCW co-counsel WWP. | $ 280.00 |
| 4/28/2005 | 1.0 | WWP | TCW associate DCJ discussed status. | $ 400.00 |
| 4/28/2005 | 1.0 | DJC | TCW co-counsel regarding status. | $ 400.00 |
| 4/29/2005 | 6.5 | WWP | TCW associate attorney; Travel to and from Meeting with Brian Boydston | $ 2,600.00 |
| 4/29/2005 | 0.6 | DJC | Emails to and from associates regarding status and update | $ 240.00 |
| 4/30/2005 | 1.3 | WWP | TCW co-counsel; Meeting with Brian Boydston | $ 520.00 |
| 4/30/2005 | 0.3 | DJC | TCW co-counsel discussed status; TCW Robin Johansen discussed position | $ 120.00 |
| 5/1/2005 | 3.5 | WWP | Return travel from LA meeting with Brian Boydston | $ 1,400.00 |
| 5/2/2005 | 0.4 | WWP | TCW co-counsel; Email injunction | $ 160.00 |
| 5/2/2005 | 1.3 | DJC | TCW co-counsel; strategy and planning. | $ 520.00 |
| 5/3/2005 | 0.5 | WWP | TCW associate DCJ discussed possible next steps; Email correspondence to and from Mark Tofal and Jonathan Wilcox regarding status update | $ 200.00 |
| 5/3/2005 | 0.5 | DJC | TCW co-counsel WWP. | $ 200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 35

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 5/4/2005 | 1.2 | WWP | TCW co-counsel; Emails to Jonathan Wilcox, and author of Unclaimed Property; Emails to and from Mark Tofal regarding update | $ 480.00 |
| 5/4/2005 | 0.8 | DJC | TCW co-counsel | $ 320.00 |
| 5/5/2005 | 1.0 | WWP | TCW co-counsel; TCW Strategist Jonathan Wilcox, email regarding same; LT clients regarding update and forwarding documents | $ 400.00 |
| 5/5/2005 | 1.0 | DJC | TCW co-counsel | $ 400.00 |
| 5/6/2005 | 0.7 | WWP | TCW associate attorney; Travel to and from Meeting with Brian Boydston | $ 280.00 |
| 5/6/2005 | 0.7 | DJC | Emails to and from associates regarding status and update | $ 280.00 |
| 5/7/2005 | 1.3 | WWP | TCW co-counsel; Meeting with Brian Boydston | $ 520.00 |
| 5/7/2005 | 0.3 | DJC | TCW co-counsel discussed status; TCW Robin Johansen discussed position | $ 120.00 |
| 5/8/2005 | 0.4 | WWP | TCW associate attorney regarding update | $ 160.00 |
| 5/8/2005 | 0.4 | DJC | TCW co-counsel regarding status and follow up | $ 160.00 |
| 5/9/2005 | 0.3 | WWP | Email injunction; TCW attorney Daniel Culhane regarding status; discussed action, and further steps | $ 120.00 |
| 5/9/2005 | 0.3 | DJC | TCW co-counsel regarding update and status. | $ 120.00 |
| 5/10/2005 | 0.6 | WWP | TCW associate attorney DJC discussed status possible next steps. | $ 240.00 |
| 5/10/2005 | 0.6 | DJC | TCW co-counsel regarding update and status. | $ 240.00 |
| 5/11/2005 | 1.3 | WWP | TCW co-counsel; Emails to Jonathan Wilcox, and author of Unclaimed Property; Emails to and from Mark Tofal regarding update | $ 520.00 |
| 5/11/2005 | 1.3 | DJC | TCW co-counsel | $ 520.00 |
| 5/12/2005 | 2.0 | WWP | TCW co-counsel; Travel to and from and Meeting with Consultant/Lew Uherl | $ 800.00 |
| 5/12/2005 | 1.0 | DJC | TCW co-counsel regarding update and status. | $ 400.00 |
| 5/13/2005 | 1.7 | WWP | Review Ninth Circuit Order denying rehearing; planning; TCW private investigator | $ 680.00 |
| 5/13/2005 | 1.2 | DJC | Review Ninth Circuit Order denying rehearing; planning. | $ 480.00 |
| 5/16/2005 | 3.5 | WWP | Conference co-counsel; begin drafting motion for TRO; LR re same; TT Bakersfield attorney regarding status; | $ 1,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 36

| Date | Hours | Attorney | Description | Amount |
|---|---|---|---|---|
| 5/16/2005 | 8.7 | DJC | Conference co-counsel; begin drafting motion for TRO; LR re same. | $ 3,480.00 |
| 5/17/2005 | 9.1 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,640.00 |
| 5/17/2005 | 8.7 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,480.00 |
| 5/18/2005 | 10.5 | WWP | Draft Motion for TRO in District Court; Legal research regarding same; LR Rule 41(d); TCW Lew Uhler; TCW Jonathan Wilcox; TCW Steve Swenton discussed status and procedural next steps; Multiple email correspondence to and from attorney Daniel Culhane and Jonathan Wilcox regarding same; Fax to Jonathan regarding Order denying Controller's petitions | $ 4,200.00 |
| 5/18/2005 | 11.3 | DJC | Draft Motion for TRO in District Court; Legal research regarding same; LR Rule 41(d); TCW Lew Uhler; TCW Jonathan Wilcox. | $ 4,520.00 |
| 5/19/2005 | 5.0 | WWP | Draft Motion for TRO in District Court; LR regarding same; TCW associate attorney regarding same | $ 2,000.00 |
| 5/19/2005 | 9.5 | DJC | Draft Motion for TRO in District Court; Legal research regarding same; TCW co-counsel regarding same | $ 3,800.00 |
| 5/20/2005 | 6.3 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 2,520.00 |
| 5/20/2005 | 9.1 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,640.00 |
| 5/21/2005 | 6.8 | WWP | Draft Motion for TRO in District Court; LR regarding same. | $ 2,720.00 |
| 5/21/2005 | 8.7 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,480.00 |
| 5/22/2005 | 3.1 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 1,240.00 |
| 5/22/2005 | 2.5 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 1,000.00 |
| 5/23/2005 | 11.1 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 4,440.00 |
| 5/23/2005 | 8.5 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 37

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 5/24/2005 | 6.6 | WWP | Draft Motion for TRO in District Court; Legal research regarding same; Review Final Judgment and Cost Award and forward same to attorney Daniel Culhane | $ 2,640.00 |
| 5/24/2005 | 10.0 | DJC | Draft Motion for TRO in District Court; Legal research regarding same; Emails to and from attorney Daniel J. Culhane regarding State Auditor's Report; Fourteenth Amendment research ant TCW client discussed same | $ 4,000.00 |
| 5/25/2005 | 9.8 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,920.00 |
| 5/25/2005 | 10.0 | DJC | Draft Motion for TRO in District Court; Legal research regarding same; TCW Steve Swinton and Susan Swinton | $ 4,000.00 |
| 5/26/2005 | 6.5 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 2,600.00 |
| 5/26/2005 | 9.5 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,800.00 |
| 5/27/2005 | 9.6 | WWP | Draft Motion for TRO in District Court; Legal research regarding same; Review National Tax Limitation Committee's report; Revise same; Correspondence and emails regarding same | $ 3,840.00 |
| 5/27/2005 | 8.5 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,400.00 |
| 5/28/2005 | 6.5 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 2,600.00 |
| 5/28/2005 | 5.0 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $ 2,000.00 |
| 5/29/2005 | 2.5 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 1,000.00 |
| 5/29/2005 | 1.7 | DJC | Draft Motion for TRO in District Court; Legal research regarding same. | $  680.00 |
| 5/30/2005 | 9.2 | WWP | Draft Motion for TRO in District Court; Legal research regarding same. | $ 3,680.00 |
| 5/30/2005 | 13.0 | DJC | Draft Motion for TRO; LR re same; work on declaration supporting TRO, related documents. | $ 5,200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 38

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 5/31/2005 | 11.5 | WWP | Draft Motion for TRO; LR re same; work on declaration supporting TRO, related documents;Continue working on the Temporary Restraining Order and accompanying declarations; Emails to and from Dan Culhane regarding same; TCW Steve Swinton; TCW cp-counsel; TCW Financial/Consultant | $ 4,600.00 |
| 5/31/2005 | 12.5 | DJC | Draft Motion for TRO; LR re same; work on declaration supporting TRO, related documents; TCW Steve Swinton; TCW cp-counsel; TCW Financial/Consultant | $ 5,000.00 |
| 6/1/2005 | 10.0 | WWP | Draft Motion for TRO; LR re same; work on supporting documents for TRO, related documents; Emails to and from attorney Daniel Culhane and other associates; TCWs Member of Publix inquies regarding case | $ 4,000.00 |
| 6/1/2005 | 13.5 | DJC | Draft Motion for TRO; LR re same; work on declaration supporting TRO, related documents. | $ 5,400.00 |
| 6/2/2005 | 10.6 | WWP | Finalize and file Motion for TRO and supporting documents; prepare for hearing; TCW court clerk;  Review minute order from the court; Emails to and from attorney Daniel Culhane and opposing counsel Robin Johansen and other associates; TCW attorney Robin Johansen | $ 4,240.00 |
| 6/2/2005 | 7.0 | DJC | Finalize and file Motion for TRO and supporting documents; prepare for hearing | $ 2,800.00 |
| 6/3/2005 | 8.5 | WWP | Meeting with Counsel; Prepare for hearing; 2:30 Hearing and argue motion before Court; TCW associates regarding status; TCW attorney Daniel Culhane; Review letter from the court; Prepare Declaration pursuant to Local Rule 65-23; | $ 3,400.00 |
| 6/3/2005 | 6.5 | DJC | Prepare outline for hearing. | $ 2,600.00 |
| 6/4/2005 | 0.3 | WWP | Email from the court | $  120.00 |
| 6/6/2005 | 8.5 | WWP | Planning for Preliminary Injunction Motion; TCW associates regarding status and update; Emails regarding same | $ 3,400.00 |
| 6/6/2005 | 3.5 | DJC | Outline of Preliminary Injunction Motion. | $ 1,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 39

| Date | Hours | Attorney | Description | Amount |
|---|---|---|---|---|
| 6/7/2005 | 7.2 | WWP | Telephone calls with potential clients regarding representation; conference with co-counsel regarding amended complaint; Emails from and to associates; Travel to and from 1:00 meeting with Remcho attorneys, and Attorney General regarding settlement discussions, case handling | $ 2,880.00 |
| 6/7/2005 | 8.5 | DJC | Begin drafting amended complaint; TCW potential clients. | $ 3,400.00 |
| 6/8/2005 | 10.8 | WWP | Research regarding ownership of unclaimed property by Judge Damrell; research ethical issues; TCW clients; draft amended complaint; Travel to and from meeting with Rob Maylor | $ 4,320.00 |
| 6/8/2005 | 11.3 | DJC | Continue drafting amended complaint; TCW clients; draft motion for recusal; LR re same. | $ 4,520.00 |
| 6/9/2005 | 9.2 | WWP | TCW clients; continue drafting amended comlaint, motion for recusal; finalize stipulation for extension of time;TCW attorney Robin Johansen; Draft, email and fax letter to associates; | $ 3,680.00 |
| 6/9/2005 | 6.5 | DJC | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 2,600.00 |
| 6/10/2005 | 9.5 | WWP | Review Order, Email Bob; Conference Call with Bakersfield attorney; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 3,800.00 |
| 6/10/2005 | 9.6 | DJC | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 3,840.00 |
| 6/11/2005 | 6.5 | WWP | TCWs attorney DJC; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 2,600.00 |
| 6/11/2005 | 6.5 | DJC | TCWs co-counsel; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 2,600.00 |
| 6/12/2005 | 5.0 | WWP | TCWs co-counsel Daniel Culhane; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 2,000.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 40

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 6/12/2005 | 2.5 | DJC | TCWs co-counsel; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 1,000.00 |
| 6/13/2005 | 1.7 | WWP | Email from associate; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction; | $ 680.00 |
| 6/13/2005 | 9.2 | DJC | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 3,680.00 |
| 6/14/2005 | 12.0 | WWP | TCW Gary Kessleman regrding opinion and fax same; Emails to and form and multiple TCWs attorney Daniel Culhane and other associates; Forward documents to clients; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction; | $ 4,800.00 |
| 6/14/2005 | 11.5 | DJC | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 4,600.00 |
| 6/15/2005 | 12.5 | WWP | TCW associate regarding status; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction; TCW Gary Kessleman | $ 5,000.00 |
| 6/15/2005 | 10.0 | DJC | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 4,000.00 |
| 6/16/2005 | 13.5 | WWP | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 5,400.00 |
| 6/16/2005 | 10.6 | DJC | Review Joint Request for Reassignment the Case arrange for filing; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction; | $ 4,240.00 |
| 6/17/2005 | 7.0 | WWP | TCW Gary Kessleman; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 2,800.00 |
| 6/17/2005 | 8.5 | DJC | Prepare LT attorney and TCW Robin Johansen; Multiple TCW attorney Daniel Culhane; Continue drafting amended complaint, declarations of clients, motion for recusal, motion | $ 3,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 41

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | for preliminary injunction; | |
| 6/18/2005 | 10.0 | WWP | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 4,000.00 |
| 6/18/2005 | 13.5 | DJC | TCW client regarding status; Emails from attorney Daniel Culhane; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction; | $ 5,404.00 |
| 6/19/2005 | 6.0 | WWP | TCW client regarding status; Emails from and to attorney Daniel Culhane; Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 2,400.00 |
| 6/19/2005 | 9.0 | DJC | Continue drafting amended complaint, declarations of clients, motion for recusal, motion for preliminary injunction. | $ 3,600.00 |
| 6/20/2005 | 8.5 | WWP | Prepare declarations of clients, arrange for original signature; Finalize and file motion for recusal; first amended complaint; memorandum in support of preliminary injunction; TCW client; Review lengthy email from client; Email from and to attorney Robin Johansen; Emails from and to attorney Daniel Culhane; | $ 3,400.00 |
| 6/20/2005 | 10.8 | DJC | Finalize and file motion for recusal; first amended complaint; memorandum in support of preliminary injunction; client declarations. | $ 4,320.00 |
| 6/21/2005 | 3.5 | WWP | Revise and finalize Request for Recusal and Reassignment of the case; Prepare declaration of William W. Palmer in Support, arrange for filing and service; TCW co-counsel; strategy and planning. | $ 1,400.00 |
| 6/21/2005 | 1.5 | DJC | TCW co-counsel; strategy and planning. | $ 600.00 |
| 6/22/2005 | 2.5 | WWP | Emails from and to attorney Daniel Culhane; Prepare Fee Agreement for client; Review order; TCW co-counsel; strategy and planning. | $ 1,000.00 |
| 6/22/2005 | 1.0 | DJC | TCW co-counsel; strategy and planning. | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 42

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 6/23/2005 | 1.8 | WWP | TCW Court and TCW attorney Robin Johansen; Emails from and TCW attorney Daniel Culhane; Review Order Setting StatusReview order reassigning case; Forward documents to clients | $ 720.00 |
| 6/23/2005 | 3.2 | DJC | Review Order reassigning case; TCW and emails to co-counsel. | $ 1,280.00 |
| 6/24/2005 | 1.0 | WWP | TCW co-counsel; strategy and planning. | $ 400.00 |
| 6/24/2005 | 1.5 | DJC | TCW co-counsel; strategy and planning. | $ 600.00 |
| 6/25/2005 | 0.3 | WWP | Emails to and from attorney Robin Johansen | $ 120.00 |
| 6/27/2005 | 2.5 | WWP | Multiple Emails to and from attorney Daniel Culhane and other associates; TCW R. Johansen regarding scheduling of hearing; draft amended notice of motion for preliminary injunction. | $ 1,000.00 |
| 6/27/2005 | 1.7 | DJC | LR and draft amended notice of motion. | $ 680.00 |
| 6/28/2005 | 9.2 | WWP | Emails to and form attorney Daniel Culhane and other associates; Forward Amended Notice of Motion for Preliminary Injunction to Dan for Filing; Email fro the Court regarding same; Agree to extension of time for Defendants to file Answer to First Amended Complaint. | $ 3,680.00 |
| 6/28/2005 | 6.5 | DJC | Edit and finalize amended notice of motion; LR re same. | $ 2,600.00 |
| 6/29/2005 | 1.5 | WWP | Email from and TCW opposing counsel Tom Willis regarding stipulated extension; Execute and return same by fax and mail; Email from the Court regarding same; Emails form and to and TCW attorney Daniel Culhane and other associates; Review stipulation to extend time; | $ 600.00 |
| 6/29/2005 | 1.4 | DJC | TCW co-counsel. | $ 560.00 |
| 6/30/2005 | 1.5 | WWP | Emails from and to associates regarding update; Review transcript of TRO hearing; TCW co-counsel. | $ 600.00 |
| 6/30/2005 | 3.0 | DJC | Review and analyze transcript of TRO hearing; TCW co-counsel. | $ 1,200.00 |
| 7/1/2005 | 0.5 | WWP | TCW co-counsel. | $ 200.00 |
| 7/1/2005 | 0.5 | DJC | TCW co-counsel. | $ 200.00 |
| 7/5/2005 | 1.5 | WWP | Emails to and from attorney Daniel Culhane; TCW co-counsel; strategy and planning; TCW Accountant | $ 600.00 |
| 7/5/2005 | 1.0 | DJC | TCW co-counsel; strategy and planning. | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 43

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 7/7/2005 | 0.3 | WWP | Fax from associate regarding unclaimed property; TCW co-counsel. | $ 120.00 |
| 7/7/2005 | 0.3 | DJC | TCW co-counsel. | $ 120.00 |
| 7/8/2005 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 7/8/2005 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 7/11/2005 | 5.5 | WWP | Report to clients; TCW attorney Daniel Culhane; Review Answer to First Amended Compliant; forward same to Daniel Culhane; Legal Research 12c Motion; Review discovery from other cases | $ 2,200.00 |
| 7/11/2005 | 6.5 | DJC | Review and analyze answer to First Amended Complaint. | $ 2,600.00 |
| 7/12/2005 | 1.2 | WWP | Email from attorney Daniel Culhane; TCW co-counsel; strategy and planning. | $ 480.00 |
| 7/12/2005 | 3.5 | DJC | TCW co-counsel; strategy and planning. | $ 1,400.00 |
| 7/13/2005 | 0.3 | WWP | TCW co-counsel. | $ 120.00 |
| 7/13/2005 | 0.3 | DJC | TCW co-counsel. | $ 120.00 |
| 7/14/2005 | 1.8 | WWP | TCW Private Investigator and travel to and from meeting regarding same | $ 720.00 |
| 7/15/2005 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 7/15/2005 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 7/18/2005 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 7/18/2005 | 0.5 | DJC | TCW co-counsel. | $ 200.00 |
| 7/19/2005 | 0.3 | WWP | TCWs co-counsel regarding status. | $ 120.00 |
| 7/19/2005 | 0.3 | DJC | TCW co-counsel. | $ 120.00 |
| 7/20/2005 | 0.5 | WWP | Email from associate regarding update; TCW co-counsel. | $ 200.00 |
| 7/20/2005 | 0.5 | DJC | TCW co-counsel. | $ 200.00 |
| 7/22/2005 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 7/22/2005 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 7/25/2005 | 6.5 | WWP | Receive and review opposition to motion for preliminary injunction and supporting papers; LR and begin drafting Reply in Support of Motion for Preliminary Injunction; Email from associate regarding update | $ 2,600.00 |
| 7/25/2005 | 8.5 | DJC | Receive and review opposition to motion for preliminary injunction and supporting papers; LR and begin drafting Reply in Support of Motion for Preliminary Injunction. | $ 3,400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 44

| Date | Hours | Attorney | Description | Amount |
|---|---|---|---|---|
| 7/26/2005 | 4.5 | WWP | LR and draft Reply in Support of Motion for Preliminary Injunction | $ 1,800.00 |
| 7/26/2005 | 6.1 | DJC | LR and draft Reply in Support of Motion for Preliminary Injunction | $ 2,440.00 |
| 7/27/2005 | 9.2 | WWP | TCW opposing counsel Robin Johansen; TT and email from associates regarding status; LR and draft Reply in Support of Motion for Preliminary Injunction; Declaration and review trascript | $ 3,680.00 |
| 7/27/2005 | 8.1 | DJC | Travel to Sacramento; LR and draft Reply in Support of Motion for Preliminary Injunction. | $ 3,240.00 |
| 7/28/2005 | 10.0 | WWP | TCW and travel to and from and meeting with Dianna Sorby regarding witness meeting; Emails from associates regarding hearing date and drafts; Legal Research and draft Reply in Support of Motion for Preliminary Injunction | $ 4,000.00 |
| 7/28/2005 | 6.7 | DJC | LR and draft Reply in Support of Motion for Preliminary Injunction; TCW and travel to and from and meeting with Dianna Sorby regarding witness meeting | $ 2,680.00 |
| 7/29/2005 | 8.3 | WWP | LR and draft Reply in Support of Motion for Preliminary Injunction; TCW attorney WWP | $ 3,320.00 |
| 7/29/2005 | 1.3 | DJC | TCW attorney DCJ; LR and draft Reply in Support of Motion for Preliminary Injunction | $  520.00 |
| 7/30/2005 | 9.6 | WWP | TCW and meet with D. Sorby; continue to draft Reply in Support of Motion for Preliminary Injunction. | $ 3,840.00 |
| 7/31/2005 | 9.6 | DJC | Meet with D. Sorby; continue to draft Reply in Support of Motion for Preliminary Injunction; travel from Sacramento. | $ 3,840.00 |
| 8/1/2005 | 8.3 | WWP | Multiple TCWs and emails to and from attorney Daniel Culhane and other associates; Finalize and file Reply in Support of Motion for Preliminary Injunction; TCW Dianna Sorby | $ 3,320.00 |
| 8/1/2005 | 9.6 | DJC | Finalize and file Reply in Support of Motion for Preliminary Injunction. | $ 3,840.00 |
| 8/2/2005 | 9.3 | WWP | Prepare for hearing; review files, Motion for Preliminary Injunction; Legal research regarding same; Multiple TCWs and emails to and from attorney Daniel Culhane and other associates | $ 3,720.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 45

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/2/2005 | 4.2 | DJC | Prepare for hearing; review files, Motion for Preliminary Injunction. | $ 1,680.00 |
| 8/3/2005 | 6.5 | WWP | Prepare for and attend status conference. | $ 2,600.00 |
| 8/3/2005 | 2.5 | DJC | LR recusal issues. | $ 1,000.00 |
| 8/4/2005 | 9.2 | WWP | Prepare for follow-up status conference; LR conflict of interest for judge;TCW multiple associates and attorney Daniel Culhane regarding update on  same; TCW Dianna Sorby; KCRA Channel 3 inquiries | $ 3,680.00 |
| 8/4/2005 | 8.5 | DJC | TCW co-counsel; LR conflict of interest for judge. | $ 3,400.00 |
| 8/5/2005 | 4.5 | WWP | Attend status conference before Judge Shubb. | $ 1,800.00 |
| 8/5/2005 | 1.5 | DJC | Finalize internal memorandum regarding conflict issue. | $  600.00 |
| 8/6/2005 | 8.3 | WWP | Multiple emails to and from associates regarding update and follow up; Prepare for hearing on Motion for Preliminary Injunction. | $ 3,320.00 |
| 8/6/2005 | 6.5 | DJC | Prepare for hearing on Motion for Preliminary Injunction. | $ 2,600.00 |
| 8/7/2005 | 4.3 | WWP | Prepare for hearing on Motion for Preliminary Injunction; Multiple emails to and from associates regarding update and follow up | $ 1,720.00 |
| 8/7/2005 | 5.0 | DJC | Prepare for hearing on Motion for Preliminary Injunction. | $ 2,000.00 |
| 8/8/2005 | 8.5 | WWP | Create hearing binders and prepare documents; Prepare for and argue Motion for Preliminary Injunction at 1:30 Hearing | $ 3,400.00 |
| 8/8/2005 | 4.5 | DJC | Prepare outline for hearing on motion for Preliminary Injunction. | $ 1,800.00 |
| 8/9/2005 | 9.5 | WWP | TCW associate and emails regarding status; Prepare for travel to and from and attend hearing; LR and draft supplemental letter brief per order of Court. | $ 3,800.00 |
| 8/9/2005 | 5.8 | DJC | LR and draft supplemental letter brief per order of Court. | $ 2,320.00 |
| 8/10/2005 | 6.1 | WWP | Emails to and form attorney Daniel Culhane regarding status; LR and draft supplemental letter brief per order of Court. | $ 2,440.00 |
| 8/10/2005 | 7.5 | DJC | LR and draft supplemental letter brief per order of Court. | $ 3,000.00 |

Re:  *Chris Lusby Taylor v Intel*
September 18, 2007
Page 46

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/11/2005 | 7.0 | WWP | Emails to and from attorneys Daniel Culhane and Robin Johansen; LR and draft supplemental letter brief per order of Court. | $ 2,800.00 |
| 8/11/2005 | 4.2 | DJC | LR and draft supplemental letter brief per order of Court. | $ 1,680.00 |
| 8/12/2005 | 2.3 | WWP | LR and draft supplemental letter brief per order of Court; Prepare DVDs as exibits. | $ 920.00 |
| 8/12/2005 | 4.0 | DJC | LR and draft supplemental letter brief per order of Court. | $ 1,600.00 |
| 8/13/2005 | 2.0 | WWP | LR and revise draft supplemental letter brief per order of Court. | $ 800.00 |
| 8/13/2005 | 0.5 | DJC | LR and revise draft supplemental letter brief per order of Court. | $ 200.00 |
| 8/15/2005 | 7.0 | WWP | LR and revise draft supplemental letter brief per order of Court. | $ 2,800.00 |
| 8/15/2005 | 6.5 | DJC | TCW Lexis Nexis regarding filing; Legal research regarding same; TCW associate regarding; LR and draft supplemental letter brief per order of Court. | $ 2,600.00 |
| 8/16/2005 | 6.5 | WWP | TCW attorney Daniel Culhane regarding flings; Review Memorandum of Order Re; Motion for Preliminary Injunction; Finalize and file supplemental Brief on Motion for Preliminary Injunction; review Order denying Motion for Preliminary Injunction. | $ 2,600.00 |
| 8/16/2005 | 7.1 | DJC | Finalize and file supplemental Brief on Motion for Preliminary Injunction; review Order denying Motion for Preliminary Injunction. | $ 2,840.00 |
| 8/17/2005 | 5.2 | WWP | LR standing, other issues; TCW co-counsel; strategy and planning. | $ 2,080.00 |
| 8/17/2005 | 3.8 | DJC | LR standing, other issues; TCW co-counsel; strategy and planning. | $ 1,520.00 |
| 8/18/2005 | 2.5 | DJC | LR process for appealing denial of preliminary injunction. | $ 1,000.00 |
| 8/19/2005 | 2.6 | WWP | Email from associates regarding update; TCW co-counsel; strategy and planning. | $ 1,040.00 |
| 8/19/2005 | 4.5 | DJC | TCW co-counsel; Legal reserarhc and strategy planning. | $ 1,800.00 |
| 8/20/2005 | 0.3 | WWP | Emails to and from attorney Daniel Culhane regarding status | $ 120.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 47

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/20/2005 | 0.3 | DJC | Emails from and to co-counsel regarding status | $ 120.00 |
| 8/21/2005 | 0.3 | WWP | Emails to and from attorney Daniel Culhane regarding status | $ 120.00 |
| 8/21/2005 | 0.3 | DJC | Emails from and to attorney WWP regarding status | $ 120.00 |
| 8/22/2005 | 3.5 | WWP | TCW clients; strategy and planning; Emails to and from attorney Daniel Culhane regarding status | $ 1,400.00 |
| 8/22/2005 | 4.6 | DJC | Emails to and from attorney WWP regarding status; TCW clients; strategy and planning. | $ 1,840.00 |
| 8/23/2005 | 5.3 | WWP | TCW client regarding status; Prepare client memorandum; discuss with clients; Legal Research regaridng same; | $ 2,120.00 |
| 8/23/2005 | 6.0 | DJC | Draft and revise client memorandum; TCW with clients regarding appeal. | $ 2,400.00 |
| 8/24/2005 | 2.3 | WWP | TCW clients; strategy and planning. | $ 920.00 |
| 8/24/2005 | 0.5 | DJC | TCW co-counsel. | $ 200.00 |
| 8/25/2005 | 6.0 | WWP | Review draft and legal research preliminary injunction; TT attorney Daniel Culhane regarding status of same | $ 2,400.00 |
| 8/29/2005 | 0.5 | WWP | TCW co-counsel; strategy and planning. | $ 200.00 |
| 8/29/2005 | 1.5 | DJC | TCW co-counsel; strategy and planning; LR appeal process; begin drafting Notice of Appeal and related documents. | $ 600.00 |
| 8/30/2005 | 0.5 | WWP | Emails to and from attorney Robin Johansen; TCW co-counsel; revise notice of appeal. | $ 200.00 |
| 8/30/2005 | 2.8 | DJC | LR standing and other issues. | $ 1,120.00 |
| 8/31/2005 | 0.3 | WWP | Emails to and from attorney Daniel Culhane regarding proposed discovery plan; Emails to and from attorney Robin Johansen regarding same; TCW co-counsel. | $ 120.00 |
| 8/31/2005 | 5.3 | DJC | LR issues for appeal. | $ 2,120.00 |
| 9/1/2005 | 0.5 | WWP | TCW co-counsel. | $ 200.00 |
| 9/1/2005 | 6.5 | DJC | TCW co-counsel; LR issues for appeal. | $ 2,600.00 |
| 9/2/2005 | 5.5 | WWP | TCWs attorney Daniel Culhane regarding federal rules of court; Emails and TCWs other associates regarding same; TCWs Robin Johansen regarding same; Prepare Preliminary Injunction Appeal and arrange for service and filing of same; Meeting with Vickie Berrninger | $ 2,200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 48

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/2/2005 | 9.6 | DJC | LR issues for appeal; begin drafting brief; TCW co-counsel | $ 3,840.00 |
| 9/3/2005 | 8.7 | DJC | LR and continue drafting brief | $ 3,480.00 |
| 9/4/2005 | 6.8 | DJC | Continue Legal Research and draft brief | $ 2,720.00 |
| 9/5/2005 | 7.5 | DJC | Continue drafting brief; LR re same. | $ 3,000.00 |
| 9/6/2005 | 5.7 | DJC | Review draft brief; Emails to co-counsel regarding draft brief and transcripts; Revise Biref. | $ 2,280.00 |
| 9/6/2005 | 5.5 | WWP | Review draft brief; Emails from attorney Daniel Culhane regarding same and transcripts | $ 2,200.00 |
| 9/7/2005 | 1.5 | WWP | Legal research regarding federal rules of court; Emails from attorney Daniel Culhane regarding same | $ 600.00 |
| 9/7/2005 | 5.4 | DJC | LR federal rules of court; prepare memorandum regarding same; Emails to co-counsel | $ 2,160.00 |
| 9/8/2005 | 3.2 | WWP | Emails to and from attorney Robin Johansen regarding proposed discovery plan; Emails to and from attorney Daniel Culhane regarding same and federal rules; Emails to and from other associates update; TF Susan Swinton; LR Rule 26(f) | $ 1,280.00 |
| 9/8/2005 | 6.1 | DJC | Emails to and from attorney Robin Johansen regarding proposed discovery plan; Emails to and from attorney Daniel Culhane regarding same and federal rules; Emails to and from other associates update; Review and edit discovery plan; review rules of court; LR re same; | $ 2,440.00 |
| 9/9/2005 | 9.2 | WWP | TCW attorney Robin Johansen regarding federal rules of court; Review draft and TCWs attorney Daniel Culhane regarding status of same; TCW associates regarding same; TCW regarding transcripts; Prepare email status report to clients; Prepare Motion for Judical Notice, Motion to Strike and Declaration | $ 3,680.00 |
| 9/9/2005 | 9.1 | DJC | Continue LR regarding rules of court, issues on appeal; TCW with co-counsel | $ 3,640.00 |
| 9/11/2005 | 1.5 | WWP | Emails to and from attorneys Robin Johansen and Daniel Culhane amd TCW co-counsel regarding stay of discovery; | $ 600.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 49

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/11/2005 | 0.8 | DJC | TCW and emails from and to co-counsel regarding stay of case, other issues. | $ 320.00 |
| 9/12/2005 | 3.5 | WWP | TCWs and emails to and from attorneys Daniel Culhane and Robin Johansen regarding Stipulation; Arrange for signature and fax same | $ 1,400.00 |
| 9/12/2005 | 4.5 | DJC | Stipulation to stay proceedings during appeal; Emails to and from and TCW co-counsel regarding same | $ 1,800.00 |
| 9/13/2005 | 0.3 | WWP | Email from court regarding filing | $ 120.00 |
| 9/13/2005 | 8.5 | DJC | Work with Court to enable electronic filing, correct filing glitches; continue drafting opening brief. | $ 3,400.00 |
| 9/14/2005 | 7.5 | WWP | Legal research; Review file and related document and revise Opening Brief; TCWs and emails from and to attorney Daniel Culhane regarding same | $ 3,000.00 |
| 9/14/2005 | 8.3 | DJC | LR and draft opening brief; TCW and emails to and from co-counsel regarding same | $ 3,320.00 |
| 9/15/2005 | 8.0 | WWP | TCW court clerk regarding transcript; Email from court regarding filings; Legal Research federal rules of court and forward same to attorney Daniel Culhane, emails and TCW's attorney Daniel Culhane regarding same | $ 3,200.00 |
| 9/15/2005 | 8.7 | DJC | LR and draft opening brief; inquire regarding status of transcripts; TCW and emails from co-counsel regarding same | $ 3,480.00 |
| 9/16/2005 | 0.6 | WWP | TCW Court clerk regarding transcript; TCW attorney Daniel Culhane regarding same | $ 240.00 |
| 9/16/2005 | 7.5 | DJC | LR and draft opening brief; TCW co-counsel regarding same | $ 3,000.00 |
| 9/17/2005 | 8.6 | DJC | LR and draft opening brief. | $ 3,440.00 |
| 9/18/2005 | 0.4 | WWP | TCW and emails to and from attorney Daniel Culhane regarding status. | $ 160.00 |
| 9/18/2005 | 5.5 | DJC | LR and draft opening brief; TCW co-counsel regarding same | $ 2,200.00 |
| 9/19/2005 | 1.8 | WWP | TCWs Court clerk regarding status of the transcript; Arrange to pick up same; TCWs attorney Daniel Culhane regarding status of same | $ 720.00 |
| 9/19/2005 | 13.0 | DJC | LR and draft opening brief; TCW co-counsel regarding same | $ 5,200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 50

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/20/2005 | 10.5 | DJC | LR and draft opening brief. | $ 4,200.00 |
| 9/20/2005 | 0.5 | WWP | TCW Gary Kesselmen; Return call from public inquiry | $ 200.00 |
| 9/21/2005 | 8.5 | WWP | TF Gary Kessleman; LR and Revise documents, multiple TCWs and emails to and from attorney Daniel Culhane regarding same | $ 3,400.00 |
| 9/21/2005 | 12.3 | DJC | LR and draft opening brief; TCW co-counsel regarding same | $ 4,920.00 |
| 9/22/2005 | 14.0 | DJC | LR and continue drafting Opening Brief. | $ 5,600.00 |
| 9/22/2005 | 4.5 | WWP | Review draft make necessary revisions, still in draft form | $ 1,800.00 |
| 9/23/2005 | 9.1 | DJC | Legal Research and continue drafting brief. | $ 3,640.00 |
| 9/23/2005 | 3.5 | WWP | Review previous draft of Opening Brief make revisions | $ 1,400.00 |
| 9/24/2005 | 12.5 | DJC | Continue LR and draft opening brief; Forward revised draft to co-counsel | $ 5,000.00 |
| 9/24/2005 | 5.5 | WWP | Review previous draft of Opening Brief make revisions | $ 2,200.00 |
| 9/25/2005 | 3.0 | DJC | Review draft make necessary revisions, still in draft form | $ 1,200.00 |
| 9/25/2005 | 0.9 | WWP | Review draft of Opening Brief | $ 360.00 |
| 9/26/2005 | 7.5 | DJC | LR and draft opening brief; TCW co-counsel regarding same | $ 3,000.00 |
| 9/26/2005 | 1.6 | WWP | TCW associate attorney; Review draft of Opening Brief | $ 640.00 |
| 9/27/2005 | 9.1 | DJC | LR and continue drafting Opening Brief; forward same to co-counsel; TCW co-counsel regarding same | $ 3,640.00 |
| 9/27/2005 | 8.5 | WWP | Receive draft from associate attorney; Review and make revisions to same; Regarding same; TCW co-cousnel regarding same | $ 3,400.00 |
| 9/28/2005 | 10.3 | DJC | LR and draft opening brief; TCWs WWP regarding same | $ 4,120.00 |
| 9/28/2005 | 8.5 | WWP | Reviwe draft from co-counsel DJC; and LR regarding same; Several TCWs DJC regarding same | $ 3,400.00 |
| 9/29/2005 | 6.5 | WWP | Revise documents, multiple TCWs and emails to and from attorney Daniel Culhane regarding same | $ 2,600.00 |
| 9/29/2005 | 12.5 | DJC | LR and draft opening brief. | $ 5,000.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 51

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 9/30/2005 | 8.5 | WWP | Finalize document; forward same to attorney Robin Johansen by fax and mail; Complete brief; Prepare two volumes of Exerpts of Records; Arrange of filing and service. | $ 3,400.00 |
| 9/30/2005 | 3.8 | DJC | Complete and file brief. | $ 1,520.00 |
| 10/6/2005 | 2.5 | WWP | Travel to and from lunch meeting with private investigator | $ 1,000.00 |
| 10/7/2005 | 1.5 | WWP | Faxes to and from attorney Daniel Culhane | $ 600.00 |
| 10/7/2005 | 1.5 | DJC | Review Court's order; consult with co-counsel. | $ 600.00 |
| 10/10/2005 | 0.3 | WWP | TCW attorney Daniel Culhane regarding status | $ 120.00 |
| 10/10/2005 | 0.3 | DJC | TCW co-counsel regarding status. | $ 120.00 |
| 10/12/2005 | 0.8 | WWP | TCW co-counsel DJC; Receive and review order from court regarding preliminary injunction | $ 320.00 |
| 10/12/2005 | 1.0 | DJC | Review Court's order; discuss with co-counsel. | $ 400.00 |
| 10/14/2005 | 1.2 | DJC | Review status; consult with co-counsel regarding same. | $ 480.00 |
| 10/14/2005 | 0.4 | WWP | Emails to and from attorney Daniel Culhane and other associates regarding update | $ 160.00 |
| 10/16/2005 | 2.5 | WWP | Review Order and Briefing Schedule; forward same to co-counsel | $ 1,000.00 |
| 10/24/2005 | 2.5 | WWP | Legal research supplemental Brief | $ 1,000.00 |
| 10/25/2007 | 1.2 | WWP | Legal research phisical evidence DVD filing | $ 480.00 |
| 10/26/2005 | 2.8 | WWP | Emails to and from attorney Daniel Culhane regarding update | $ 1,120.00 |
| 10/26/2005 | 2.7 | DJC | Consult with co-counsel regarding status; Research and draft motion to file physical evidence. | $ 1,080.00 |
| 10/27/2005 | 6.5 | WWP | Emails to and from attorney Daniel Culhane and other associates regarding update; Finalize Motion to File Physical Evidence, arrange for filing and service | $ 2,600.00 |
| 10/27/2005 | 3.6 | DJC | Edit and finalize motion to file physical evidence. | $ 1,440.00 |
| 10/28/2005 | 6.3 | WWP | Review Appellee's Ansering Brief and Excerpts of Record; LR regarding same | $ 2,520.00 |
| 10/31/2005 | 6.5 | WWP | Prepare motion to file physical evidence; arrange for service and filing of same | $ 2,600.00 |
| 11/2/2005 | 7.5 | WWP | Review Opposition; Legal research and draft Reply Brief; TCW attorney DCJ | $ 3,000.00 |
| 11/2/2005 | 4.5 | DJC | Continue Legal Research and start drafting Reply | $ 1,800.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 52

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | Brief. | |
| 11/3/2005 | 7.5 | WWP | Update clients; Legal research on Reply Brief, review cases and statutes; TCW Dianna Sorby | $ 3,000.00 |
| 11/3/2005 | 8.0 | DJC | Review Answering Brief form opposing side; Continue Legal Research and continue drafting Reply Brief. | $ 3,200.00 |
| 11/4/2005 | 4.5 | WWP | TCW attorney DJC, and legal research and revise draft Reply Brief | $ 1,800.00 |
| 11/4/2005 | 10.0 | DJC | Review Appellee's Ansering Brief and Excerpts of Record; LR regarding same; Continue drafting the brief. | $ 4,000.00 |
| 11/5/2005 | 11.0 | DJC | LR and draft Reply Brief. | $ 4,400.00 |
| 11/6/2005 | 1.0 | WWP | Meeting with pribate investigator | $  400.00 |
| 11/6/2005 | 4.5 | DJC | Continue Legal Research and start drafting Reply Brief. | $ 1,800.00 |
| 11/4/2005 | 2.5 | WWP | Review Draft Reply | $ 1,000.00 |
| 11/7/2005 | 11.0 | DJC | Review Answering Brief form opposing side; Continue Legal Research and continue drafting Reply Brief. | $ 4,400.00 |
| 11/8/2005 | 11.5 | DJC | LR and draft Reply Brief. | $ 4,600.00 |
| 11/8/2005 | 8.0 | WWP | TCW co-counsel DJC; Review draft of Reply Brief; revise same, forward same to attorney Daniel J. Culhane | $ 3,200.00 |
| 11/9/2005 | 12.0 | DJC | LR and draft Reply Brief. | $ 4,800.00 |
| 11/9/2005 | 8.0 | WWP | TCW co-counsel DJC; LR and review draft of Reply Brief; revise same, forward same to attorney Daniel J. Culhane | $ 3,200.00 |
| 11/10/2005 | 7.0 | DJC | LR and draft Reply Brief. | $ 2,800.00 |
| 11/10/2005 | 4.0 | WWP | Review draft of Reply Brief; revise same, forward same to attorney Daniel J. Culhane | $ 1,600.00 |
| 11/11/2005 | 9.5 | DJC | LR and draft Reply Brief. | $ 3,800.00 |
| 11/11/2005 | 7.0 | WWP | Review draft of Reply Brief; revise same, forward same to attorney Daniel J. Culhane, | $ 2,800.00 |
| 11/12/2005 | 9.3 | DJC | LR and draft Reply Brief. | $ 3,720.00 |
| 11/12/2005 | 8.8 | WWP | Emails to and from attorney Daniel Culhane; LR and revise reply breif | $ 3,520.00 |
| 11/13/2005 | 14.0 | DJC | LR and draft Reply Brief. | $ 5,600.00 |
| 11/13/2005 | 7.0 | WWP | Legal Research, forward same to attorney Daniel J. Culhane | $ 2,800.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 53

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 11/14/2005 | 7.5 | WWP | Pick up DCJ from Sacramento Airport and meeting; Legal Research, forward same to attorney Daniel J. Culhane | $ 3,000.00 |
| 11/14/2005 | 6.5 | DJC | Finalize and file Reply Brief; draft and file Request for Oral Argument. | $ 2,600.00 |
| 11/15/2005 | 3.5 | DJC | Organize files; review status. | $ 1,400.00 |
| 11/16/2005 | 1.0 | WWP | Correct documents and LT court forwarding same to the court | $ 400.00 |
| 11/17/2005 | 6.8 | WWP | Review and revise Request for Oral Argument on Appeal; Arrange for filing and service; Prepare necessary document and forward to court and attorney Daniel Culhane | $ 2,720.00 |
| 11/17/2005 | 2.5 | DJC | Review documents from attorney WWP | $ 1,000.00 |
| 11/18/2005 | 2.5 | DJC | Correct and file proof of service; strategy and planning. | $ 1,000.00 |
| 11/21/2005 | 6.5 | WWP | Travel to and from Los Angeles and meeting with Brian Boydston; Report to Clients | $ 2,600.00 |
| 11/28/2005 | 1.4 | WWP | LT clients regarding update and forwarding necessary documents | $ 560.00 |
| 12/2/2005 | 0.5 | WWP | Forward necessary document to associate attorney Daniel Culhane | $ 200.00 |
| 12/2/2005 | 0.6 | DJC | Review Court's order regarding Panel retains jurisdiction over appeal. | $ 240.00 |
| 12/7/2005 | 1.5 | WWP | Copies of Oppositiona nd Reply Brief | $ 600.00 |
| 12/14/2005 | 0.7 | WWP | TCW associate regarding update | $ 280.00 |
| 12/14/2005 | 0.7 | DJC | Consult with co-counsel regarding status | $ 280.00 |
| 12/16/2005 | 1.5 | WWP | TCWs associates, long discussions regarding status, and possible next steps | $ 600.00 |
| 12/16/2005 | 1.5 | DJC | Consult with co-counsel regarding status | $ 600.00 |
| 12/20/2005 | 2.5 | WWP | Travel to and from and attend meeting with private investigator | $ 1,000.00 |
| 12/21/2005 | 2.5 | WWP | Travel to and from meeting with private investigator | |
| 12/23/2005 | 0.5 | WWP | TCW associate discussed status | $ 200.00 |
| 12/23/2005 | 0.5 | DJC | Consult with co-counsel regarding status | $ 200.00 |
| 1/5/2006 | 1.0 | WWP | 2xTCW associates regarding updates | $ 400.00 |
| 1/5/2006 | 1.0 | DJC | Consult with co-counsel regarding status | $ 400.00 |
| 1/10/2006 | 1.0 | DJC | Consult with co-counsel regarding status | $ 400.00 |
| 1/11/2006 | 0.5 | DJC | TCW co-counsel regarding | $ 200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 54

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 1/11/2006 | 1.5 | WWP | Email received form associates regarding sibmittals; TCW co-counsel DJC regarding same | $ 600.00 |
| 9/12/2005 | 6.5 | WWP | TCWs and emails to and from attorneys Daniel Culhane and Robin Johansen regarding Stipulation; Arrange for signature and fax same; Travle to and from Los Angeles meeting with Brian Boydston | $ 2,600.00 |
| 9/12/2005 | 1.5 | DJC | TCWs and emails from and to attorney WWP regarding Stipulation | $ 600.00 |
| 9/13/2005 | 0.3 | WWP | Email from court regarding filing | $ 120.00 |
| 9/14/2005 | 7.5 | WWP | Legal research; Review file and related document and revise Opening Brief; TCWs and emails from and to attorney Daniel Culhane regarding same | $ 3,000.00 |
| 9/14/2005 | 5.5 | DJC | Review documents from attorney WWP, Revise same; TCWs and emails to and from WWP regarding same | $ 2,200.00 |
| 9/15/2005 | 8.0 | WWP | TCW court clerk regarding transcript; Email from court regarding filings; Legal Research federal rules of court and forward same to attorney Daniel Culhane, emails and TCW's attorney Daniel Culhane regarding same | $ 3,200.00 |
| 9/15/2005 | 6.5 | DJC | Legal research rules of court; Emails from and to and TCWs attorney WWP regarding same | $ 2,600.00 |
| 9/16/2005 | 0.6 | WWP | TCW Court clerk regarding transcript; TCW attorney Daniel Culhane regarding same | $ 240.00 |
| 9/16/2005 | 0.4 | DJC | TCW attorney WWP regarding transcripts from the court | $ 160.00 |
| 9/18/2005 | 0.4 | WWP | TCW and emails to and from attorney Daniel Culhane regarding status | $ 160.00 |
| 9/18/2005 | 0.4 | DJC | TCW and emails from and to co-counsel WWP | $ 160.00 |
| 1/20/2006 | 0.3 | WWP | TCW Antonio regarding case; Email from attorney Daniel Culhane regarding Contact information | $ 120.00 |
| 1/20/2006 | 0.2 | DJC | Email from attorney WWP regarding Contact information | $ 80.00 |
| 1/21/2006 | 1.0 | WWP | Email received from Daniel Culhane regarding Index of Documents | $ 400.00 |
| 1/21/2006 | 1.0 | DJC | Email to attorney WWP regarding Index of Documents | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 55

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 1/22/2006 | 0.3 | WWP | Email reviewed from State Contoller's Office | $ 120.00 |
| 1/30/2006 | 0.3 | WWP | Emails from and to associates; Review same | $ 120.00 |
| 1/30/2006 | 1.2 | DJC | Prepare email regarding status, media strategy. | $ 480.00 |
| 1/31/2006 | 1.0 | WWP | Prepare email to the media and other associates regarding update, TCW associates regarding same | $ 400.00 |
| 1/31/2006 | 1.0 | DJC | Consult with co-counsel. | $ 400.00 |
| 2/1/2006 | 0.5 | WWP | Email to attorney Daniel Culhane regarding unclaimed property; TCW co-counsel. | $ 200.00 |
| 2/1/2006 | 0.6 | DJC | Email from co-counsel and TCW co-counsel regarding status | $ 240.00 |
| 2/9/2006 | 0.3 | WWP | TCW co-counsel. | $ 120.00 |
| 2/9/2006 | 0.3 | DJC | TCW attorney WWP regarding status | $ 120.00 |
| 2/15/2006 | 1.0 | WWP | Email from associate regarding update | $ 400.00 |
| 2/15/2006 | 1.0 | DJC | Email to co-counsel WWP | $ 400.00 |
| 2/16/2006 | 0.2 | WWP | Email from associate | $ 80.00 |
| 2/16/2006 | 0.2 | DJC | Email to co-counsel WWP regarding update | $ 80.00 |
| 2/21/2006 | 1.0 | WWP | Email from associate; Review same | $ 400.00 |
| 2/21/2006 | 1.0 | DJC | Consult with co-counsel regarding status | $ 400.00 |
| 2/26/2006 | 0.2 | WWP | Emails from associates | $ 80.00 |
| 2/26/2006 | 0.4 | DJC | Consult with co-counsel regarding status | $ 160.00 |
| 3/7/2006 | 0.5 | WWP | Emails to and from Richard Cohen regarding USDOJ | $ 175.00 |
| 3/8/2006 | 0.2 | WWP | Email received regarding Bill 1752. | $ 70.00 |
| 3/15/2006 | 2.6 | WWP | Emails to and from associate's; Emails from investigator regarding SB 1752, review same; TCW and emails to DJC | $ 1,040.00 |
| 3/15/2006 | 2.3 | DJC | Emails from and to co-counsel regarding Bill SB 1752; review same; TCW regarding status | |
| 3/16/2006 | 1.7 | WWP | Prepare letter to the senators; arrange for deliver and distribution; TCW attorney DJC regarding status | $ 680.00 |
| 3/16/2006 | 1.5 | DJC | Consult with co-counsel regarding status | $ 600.00 |
| 3/17/2006 | 1.2 | WWP | TCW and emails from attorney Daniel Culhane regarding update | $ 480.00 |
| 3/17/2006 | 1.2 | DJC | Consult with co-counsel regarding status | $ 480.00 |
| 3/24/2006 | 1.0 | WWP | Emails from associates and attorney Daniel Culhane regarding status | $ 400.00 |
| 3/24/2006 | 1.0 | DJC | Consult with co-counsel regarding status | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 56

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 3/29/2006 | 0.3 | WWP | Emails from and to attorney Daniel Culhane and California Legislature | $ 120.00 |
| 3/29/2006 | 0.7 | DJC | Consult with co-counsel regarding status; Emails to co-counsel | $ 280.00 |
| 3/31/2006 | 0.5 | WWP | Emails to and from attorney Daniel Culhane and California Legislature | $ 200.00 |
| 3/31/2006 | 0.5 | DJC | Emails from and to co-counsel WWP regarding status | $ 200.00 |
| 4/1/2006 | 0.8 | WWP | Emails to and from California Legislature regarding update | $ 320.00 |
| 4/3/2006 | 1.0 | DJC | Emails from and to co-counsel regarding status | $ 400.00 |
| 4/3/2006 | 1.6 | WWP | Emails to and from associates, attorney Daniel Culhane, assistant, and California Legislature regarding update | $ 640.00 |
| 4/4/2006 | 5.2 | DJC | Email from co-counsel regarding update, Legal Research options | $ 2,080.00 |
| 4/4/2006 | 8.2 | WWP | Email to assistant and attorney DJC regarding update, LR options | $ 3,280.00 |
| 4/5/2006 | 8.5 | WWP | Prepare brief to fax to Daniel Culhane, fax transmitted. | $ 3,400.00 |
| 4/5/2006 | 6.5 | DJC | Emails from and to California Legislature; Fax from WWP and review and revise same | $ 2,600.00 |
| 4/7/2006 | 4.7 | WWP | Finalize Motion to Expedite from Baghdad, Iraq, and arrange for filing and service; Emails to and from attorney Daniel Culhane and other associates regarding same | $ 1,880.00 |
| 4/7/2006 | 4.0 | DJC | Review Motion to Expedite; Emails from and to attorney WWP in Baghdad, Iraq, regarding same | $ 1,600.00 |
| 4/8/2006 | 1.3 | DJC | Emails from and to co-counsel regaring Motion to Expedite | $ 520.00 |
| 4/8/2006 | 2.9 | WWP | Forward Motion to Expedite, from Baghdad, Iraq, to associates; Emails to and from attorney Daniel Culhane regarding same | $ 1,160.00 |
| 4/10/2006 | 0.8 | DJC | Emails from co-counsel | $ 320.00 |
| 4/10/2006 | 1.3 | WWP | Emails to and from attorney co-counsel and assistant regarding update and follow up; Email to California Legislature regarding update | $ 520.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 57

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 4/11/2006 | 3.5 | WWP | Email from Remcho, Johansen & Purcell regarding Opposition; Review same; Emails to and from associate attorney regarding same | $ 1,400.00 |
| 4/11/2006 | 1.0 | DJC | Emails from co-counsel WWP | $ 400.00 |
| 4/12/2006 | 0.5 | WWP | Emails to and from associate attorney DJC | $ 200.00 |
| 4/12/2006 | 0.5 | DJC | Emails from and to co-counsel | $ 200.00 |
| 4/13/2006 | 0.5 | WWP | Emails to and from associate attorney and other associates | $ 200.00 |
| 4/13/2006 | 0.3 | DJC | Emails from and to co-counsel | $ 120.00 |
| 4/15/2006 | 0.2 | WWP | Emails to and from associates and co-counsel | $ 80.00 |
| 4/15/2006 | 0.2 | DJC | Emails from and to co-counsel WWP regarding update | $ 80.00 |
| 4/23/2006 | 0.4 | WWP | Email to and from assistant regarding status | $ 160.00 |
| 4/25/2006 | 6.9 | WWP | TCW associates regarding update; Review Opposition to Motion for TRO and Motion for Preliminary Injunction; LR regarding same | $ 2,760.00 |
| 4/25/2006 | 3.5 | DJC | TCW co-counsel; Review Opposition | $ 1,400.00 |
| 4/27/2006 | 2.5 | WWP | TCW news reporter; TCW California State Legislature | $ 1,000.00 |
| 5/2/2006 | 0.4 | DJC | Emails from and to co-counsel | $ 160.00 |
| 5/2/2006 | 0.4 | WWP | Emails to and from associate attorney | $ 160.00 |
| 5/4/2006 | 0.3 | WWP | Email from California Legislature | $ 120.00 |
| 5/5/2006 | 0.3 | DJC | Emails to co-counsel | $ 120.00 |
| 5/5/2006 | 0.5 | WWP | Email from associates | $ 200.00 |
| 5/7/2006 | 0.5 | DJC | Emails to co-counsel | $ 200.00 |
| 5/7/2006 | 0.8 | WWP | Emails from associate attorney | $ 320.00 |
| 5/8/2006 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 5/8/2006 | 0.4 | DJC | Emails from and to | $ 160.00 |
| 5/9/2006 | 1.9 | WWP | TCW and meeting with an associate regarding case | $ 760.00 |
| 5/9/2006 | 1.0 | DJC | TCW co-counsel | $ 400.00 |
| 5/10/2006 | 1.3 | WWP | Emails from and TCW California Legislature, Prepare a lengthy email to TCalifornia Legislature | $ 520.00 |
| 5/11/2006 | 0.8 | WWP | Emails to California Legislature and other associates | $ 320.00 |
| 5/11/2006 | 0.4 | DJC | Emails from and to WWP | $ 160.00 |
| 5/12/2006 | 0.2 | WWP | Email to associates regarding update | $ 80.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 58

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 5/12/2006 | 0.2 | DJC | Email | $ 80.00 |
| 5/13/2006 | 0.5 | WWP | Email from and to associates | $ 200.00 |
| 5/13/2006 | 0.3 | DJC | Email to and from attorney WWP | $ 120.00 |
| 5/16/2006 | 2.8 | WWP | Prepare a lengthy email to California Legislature; Email to associate attorney regarding same | $ 1,120.00 |
| 5/16/2006 | 1.8 | DJC | Review lengthy email from WWP | $ 720.00 |
| 5/17/2006 | 1.9 | WWP | Emails to and from California Legislature, co-counsel, and other associates regarding this matter | $ 760.00 |
| 5/17/2006 | 1.0 | DJC | Review email from California Legislature; and emails from attorney WWP | $ 400.00 |
| 5/18/2006 | 0.2 | WWP | Email from associate regarding update | $ 80.00 |
| 5/18/2006 | 0.2 | DJC | Email to co-counsel | $ 80.00 |
| 5/19/2006 | 1.8 | WWP | Email to and from attorney Daniel Culhane and other associates | $ 720.00 |
| 5/19/2006 | 1.0 | DJC | Emails from and to co-counsel regaring status | $ 400.00 |
| 5/30/2006 | 0.5 | WWP | TCW associate discussed status and update | $ 200.00 |
| 5/30/2006 | 0.5 | DJC | TCW co-counsel WWP discussed update and status | $ 200.00 |
| 6/16/2006 | 8.5 | WWP | LR and Draft First Amended Complaint; Forward same to associate attorney | $ 3,400.00 |
| 6/16/2006 | 8.0 | DJC | Emails from co-counsel; LR and Draft First Amended Complaint | $ 3,200.00 |
| 6/17/2006 | 8.5 | WWP | LR and Draft First Amended Complaint; TCW and emails from and to associate attorney DJC regarding same | $ 3,400.00 |
| 6/17/2006 | 7.5 | DJC | Legal research; Revise draft of First Amended Complaint; Emails to and from and TCW co-counsel regarding same | $ 3,000.00 |
| 6/18/2006 | 8.0 | WWP | LR and Draft First Amended Complaint; Emails from and to and TCW attorney DJC regarding same | $ 3,200.00 |
| 6/18/2006 | 7.0 | DJC | Continue revising drafts of First Amended Complaint; Legal research regarding same; TCW and emails to and from WWP regarding same | $ 2,800.00 |
| 6/20/2006 | 8.7 | WWP | LR and Draft First Amended Complaint; Prepare Request for Recusal and Reasingment of Case and all supporting documents | $ 3,480.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 59

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 6/20/2006 | 8.0 | DJC | Review and revise Request for Recusal and Reasingment of Case and all supporting documents; Legal research and Draft First Amended Complaint | $ 3,200.00 |
| 6/21/2006 | 8.0 | WWP | Continue legal research and continue revising First Amended Complaint | $ 3,200.00 |
| 6/22/2006 | 8.0 | WWP | Finalize and file First Amended Complaint with the Eastern District Court; Review Order from the Court. | $ 3,200.00 |
| 6/22/2006 | 8.0 | DJC | Final review and revise of the First Amended Complaint; TCW and emails from and to attorney WWP regarding same | $ 3,200.00 |
| 6/23/2006 | 0.2 | WWP | Email from attorney Daniel Culhane | $ 80.00 |
| 6/23/2006 | 0.2 | DJC | Email to and from attorney WWP | $ 80.00 |
| 6/26/2006 | 0.2 | WWP | Fax to Daniel Culhane | $ 80.00 |
| 7/26/2006 | 0.2 | DJC | Fax from attorney WWP | $ 80.00 |
| 7/3/2006 | 0.2 | WWP | Email from Daniel McKinley | $ 80.00 |
| 7/5/2006 | 0.6 | WWP | Email from attorney Daniel Culhane; Finalize letter to attorney Robin Johansen | $ 240.00 |
| 7/5/2006 | 0.5 | DJC | Email to co-counsel; Review letter to attorney Robin Johanse | $ 200.00 |
| 7/17/2006 | 0.9 | WWP | TCW attorney Daniel Culhane; Emails regarding same | $ 360.00 |
| 7/17/2006 | 0.9 | DJC | Emails from and to and TCW co-counsel WWP | $ 360.00 |
| 7/18/2006 | 0.5 | WWP | Email reviewed, fax sent to associate's. | $ 200.00 |
| 7/18/2006 | 0.5 | DJC | Email to attorney WWP, and fax from WWP regarding same | $ 200.00 |
| 7/20/2006 | 0.5 | DJC | TCW co-counsel | $ 200.00 |
| 7/20/2006 | 0.9 | WWP | TCW Daniel McKinley; TCW attorney Daniel Culhane regarding update | $ 360.00 |
| 7/21/2006 | 2.5 | DJC | Emails to and from co-counsel regarding update and follow up | $ 1,000.00 |
| 7/21/2006 | 6.3 | WWP | Emails to and from attorney Daniel Culhane; Faxes to Daniel Culhane forwarding legal research, and cases | $ 2,520.00 |
| 7/22/2006 | 6.5 | WWP | Review Briefs and record | $ 2,600.00 |
| 7/23/2006 | 8.2 | WWP | Begin review of cases; Begin drafting consultant declaration | $ 3,280.00 |
| 7/24/2006 | 6.5 | DJC | TCW and emails to and from co-counsel regaridng declaration; Revise same | $ 2,600.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 60

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 7/24/2006 | 6.5 | WWP | TCW consultant and associate attorney; Multiple emails to and from associate attorney, and other associates regarding update; Faxes regarding same | $ 2,600.00 |
| 7/25/2006 | 5.5 | DJC | TCWs co-counsel, continue drafting declaration; review exhibits | $ 2,200.00 |
| 7/25/2006 | 10.5 | WWP | TCWs associates, meeting with consultant and finalize his declaration; TCWs associate attorney; Finalize pleading, review exhibits, arrange for filing; LT attorneys at Remcho, Johansen & Purcell | $ 4,200.00 |
| 7/26/2006 | 7.5 | DJC | Review LF attorney Kruger; Emails from and to co-counsel | $ 3,000.00 |
| 7/26/2006 | 8.4 | WWP | LF attorney Christopher Kruger addressed to Ninth Circuit Court of Appeals regarding the upcoming hearing; Emails to and from attorney Daniel Culhane regarding same | $ 3,360.00 |
| 7/27/2006 | 8.5 | WWP | Prepare letter to the court regarding the upcoming hearing and responding to attorney Krueger; revise and finalize letter; Draft reply Memorandum in Suport of Preliminary Injunction | $ 3,400.00 |
| 7/27/2006 | 7.5 | DJC | Revise letter to court regardin the upcoming hearing; Revise Reply Memorandum in Support of Preliminary Injunction | $ 3,000.00 |
| 7/28/2006 | 9.0 | DJC | Prepare for and travel to Seattle, Washington for oral argument | $ 3,600.00 |
| 7/28/2006 | 9.0 | WWP | Prepare for and travel to Seattle, Washington for oral argument | $ 3,600.00 |
| 7/30/2006 | 9.0 | DJC | Review cases, prepare for oral argument | $ 3,600.00 |
| 7/30/2006 | 9.0 | WWP | Review cases, prepare for oral argument | $ 3,600.00 |
| 7/31/2006 | 9.0 | DJC | Attend hearing in Seattle Washington | $ 3,600.00 |
| 7/31/2006 | 9.0 | WWP | Attend hearing in Seattle Washington | $ 3,600.00 |
| 8/1/2006 | 10.0 | DJC | Travel from Seattle, Washington | $ 4,000.00 |
| 8/1/2006 | 10.0 | WWP | Travel from Seattle, Washington | $ 4,000.00 |
| 8/2/2006 | 8.5 | DJC | Emails from and to co-councel; Finalize Reply | $ 3,400.00 |
| 8/2/2006 | 9.3 | WWP | Emails to and from associates regarding hearing; Finalize Reply Memorandum in Support of Motion for Preliminary Injunction | $ 3,720.00 |
| 8/3/2006 | 0.3 | DJC | Emails from and to co-counsel regarding status | $ 120.00 |
| 8/3/2006 | 0.3 | WWP | Emails to and from associates regarding hearing | $ 120.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 61

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/4/2006 | 0.2 | DJC | Fax from co-counsel | $ 80.00 |
| 8/4/2006 | 0.2 | WWP | Fax to attorney Daniel Culhane | $ 80.00 |
| 8/7/2006 | 0.5 | WWP | Emails to Office of California Legislature | $ 200.00 |
| 8/9/2006 | 1.0 | DJC | Emails from co-counsel regarding oral hearing | $ 400.00 |
| 8/9/2006 | 1.2 | WWP | Multiple emails to and from associates regarding oral hearing | $ 480.00 |
| 8/10/2006 | 1.0 | DJC | Emails from and to co-counsel regarding status | $ 400.00 |
| 8/10/2006 | 1.0 | WWP | Emails to and from associates regarding hearing | $ 400.00 |
| 8/14/2006 | 0.3 | DJC | Fax from co-counsel regarding costs | $ 120.00 |
| 8/14/2006 | 0.3 | WWP | Fax to attorney Daniel Culhane regarding costs | $ 120.00 |
| 8/15/2006 | 0.3 | WWP | Emails form and to WWP | $ 120.00 |
| 8/15/2006 | 0.5 | WWP | Emails to and from associates | $ 200.00 |
| 10/16/2006 | 1.0 | DJC | TCW attorney WWP | $ 400.00 |
| 10/16/2006 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 11/29/2006 | 0.3 | WWP | Emails from and to co-counsel | $ 120.00 |
| 11/29/2006 | 0.2 | WWP | Emails to and from associates | $ 80.00 |
| 12/27/2006 | 0.3 | WWP | Emails to and from associates | $ 120.00 |
| 1/3/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 1/3/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 1/4/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 1/4/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 1/5/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 1/5/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 1/6/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 1/6/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 1/8/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 1/8/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 1/9/2007 | 1.0 | DJC | Emails to and from associates | $ 400.00 |
| 1/9/2007 | 1.0 | WWP | Emails to and from associates | $ 400.00 |
| 1/10/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 1/10/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 1/11/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 1/11/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 1/12/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 1/12/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 1/15/2007 | 1.0 | DJC | Emails to and from associates | $ 400.00 |
| 1/15/2007 | 1.0 | WWP | Emails to and from associates | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 62

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 1/16/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 1/16/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 1/17/2007 | 1.0 | DJC | Emails to and from associates | $ 400.00 |
| 1/17/2007 | 1.0 | WWP | Emails to and from associates | $ 400.00 |
| 1/18/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 1/18/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 1/19/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 1/19/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 1/22/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 1/22/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 1/23/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 1/23/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 1/24/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 1/24/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 1/25/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 7/25/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 1/27/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 7/27/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 1/29/2007 | 1.0 | DJC | Emails to and from associates | $ 400.00 |
| 1/29/2007 | 1.0 | WWP | Emails to and from associates | $ 400.00 |
| 1/31/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 2/1/2007 | 0.4 | WWP | TCW co-counsel. | $ 160.00 |
| 2/2/2007 | 0.4 | DJC | Emails to and from associates | $ 160.00 |
| 2/3/2007 | 0.4 | WWP | Emails to and from associates | $ 160.00 |
| 2/4/2007 | 0.4 | DJC | TCW co-counsel. | $ 160.00 |
| 2/5/2007 | 0.5 | WWP | Emails to and from associates | $ 200.00 |
| 2/6/2007 | 0.5 | DJC | Emails to and from associates | $ 200.00 |
| 2/6/2007 | 0.4 | DJC | TCW co-counsel WWP regarding status | $ 160.00 |
| 3/28/2007 | 0.2 | WWP | Email to associate regarding Controller's Office | $ 80.00 |
| 4/4/2007 | 1.8 | WWP | Fax to associate regarding status and follow up; TF attorney interested in the case | $ 720.00 |
| 4/4/2007 | 1.0 | DJC | Fax from co-counsel regarding status; Review same | $ 400.00 |
| 4/16/2007 | 0.5 | WWP | Emails to and from associates | $ 200.00 |
| 4/16/2007 | 0.4 | DJC | Emails from and to co-counsel regarding status | $ 160.00 |
| 4/17/2007 | 0.2 | WWP | Email from associate. | $ 80.00 |
| 4/17/2007 | 0.2 | DJC | Email to co-counsel | $ 80.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 63

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 4/30/2007 | 10.5 | WWP | Email from associates, reviewed decision received via mail; TCW co-counsel; Begin preparation of TRO; Reivew email from Court | $ 4,200.00 |
| 4/30/2007 | 9.5 | DJC | Email to co-counsel regarding motions and orders; Draft TRO and review email from Court | $ 3,800.00 |
| 5/1/2007 | 12.5 | WWP | Draft Declaration and Pleading; Emails from associate attorney | $ 5,000.00 |
| 5/1/2007 | 13.0 | DJC | Emails to and from co-counse;' Draft declarations and pleading. | $ 5,200.00 |
| 5/2/2007 | 7.5 | DJC | Motion to Substitute Parties; Emails froma and to co-counsel | $ 3,000.00 |
| 5/2/2007 | 8.5 | WWP | Motion to Substitute Parties; Emails to and from associates; Respond to inquiries from media | $ 3,400.00 |
| 5/4/2007 | 10.5 | WWP | Email from attorney Daniel Culhane, E-file proposed order, TCW Judge, TCW associates; Write letter to Ninth Circuit, corrections made; letter finalized regarding publication; LR next steps; address media inquiries | $ 4,200.00 |
| 5/4/2007 | 8.5 | DJC | Email to co-counsel; Prepare Proposed Order, forward to co-counsel; TCW co-counsel; Draft LT Court | $ 3,400.00 |
| 5/5/2007 | 8.5 | WWP | Hearing Preparation; Email and TCW associate attorney | $ 3,400.00 |
| 5/5/2007 | 3.5 | DJC | Email to co-counsel; TCW co-counsel regarding preparation for hearing and LR | $ 1,400.00 |
| 5/6/2007 | 8.5 | WWP | Hearing Preparation; Email from associate attorney regarding same | $ 3,400.00 |
| 5/6/2007 | 0.7 | WWP | Email to co-counsel regarding hearing | $ 280.00 |
| 5/7/2007 | 12.0 | WWP | Prepare for and attend hearing; review opposition, deal with media inqueries; attend hearing; Fax to associate. | $ 4,800.00 |
| 5/7/2007 | 6.0 | DJC | TCW attorney WWP regarding upcoming hearing; Fax from WWP | $ 2,400.00 |
| 5/8/2007 | 3.5 | WWP | Multiple TCWs  to attorney Daniel Culhane; Multiple TCWs to associate's and emails to and from associates; Respond to media inqueries | $ 1,400.00 |
| 5/8/2007 | 8.5 | DJC | Multiple TCWs co-counsel | $ 3,400.00 |
| 5/9/2007 | 7.5 | WWP | TCWs to associates; review email from the court; Respond to media inquiries | $ 3,000.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 64

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 5/9/2007 | 2.5 | DJC | TCWs co-counsel; review email from the court | $ 1,000.00 |
| 5/10/2007 | 3.5 | DJC | Review request for consideration; TCW co-counsel regarding same | $ 1,400.00 |
| 5/10/2007 | 6.5 | WWP | Email from associate; Review request for reconsideration and respond to media inqueries; TCW associate attorney | $ 2,600.00 |
| 5/14/2007 | 7.5 | WWP | Email to and from associates multiple faxes to attorney's; Respond to Median inqueires | $ 3,000.00 |
| 5/14/2007 | 3.2 | DJC | Emails from and to co-counsel; Faxes to and from co-counsel | $ 1,280.00 |
| 5/15/2007 | 3.5 | WWP | Email to associates; Respond to media inqueries | $ 1,400.00 |
| 5/15/2007 | 1.5 | DJC | Emails from attorney WWP regarding status | $ 600.00 |
| 5/16/2007 | 0.3 | DJC | Emails to co-counsel | $ 120.00 |
| 5/16/2007 | 9.5 | WWP | Multiple emails from and to and TCW associate attorneys; respond to media inqueries | $ 3,800.00 |
| 5/17/2007 | 1.2 | DJC | Emails and TCW from and to co-counsel | $ 480.00 |
| 5/17/2007 | 10.5 | WWP | Multiple email to associates; TCW regarding same and LF associate; Respond to media inqueries | $ 4,200.00 |
| 5/18/2007 | 8.3 | DJC | Taylor Correspondance and Draft motion; Email to co-counsel regarding same | $ 3,320.00 |
| 5/18/2007 | 13.5 | WWP | Email from associate; LR and draft motion for Preliminary Injunction; address media inquiries | $ 5,400.00 |
| 5/18/2007 | 8.5 | DJC | Emails to and from co-counsel; Legal research and revise motion for Preliminary Injunction | $ 3,400.00 |
| 5/19/2007 | 7.5 | WWP | | $ 3,000.00 |
| 5/19/2007 | 7.5 | DJC | Legal research and revise Motion for Preliminary Injunction | $ 3,000.00 |
| 5/20/2007 | 8.5 | DJC | Email to co-counsel; Taylor Correspondance and Draft motion | $ 3,400.00 |
| 5/20/2007 | 6.9 | WWP | Taylor Correspondance and Draft motion for Preliminary Injunction; address media inquiries; Email from associate attorney | $ 2,760.00 |
| 5/21/2007 | 5.5 | DJC | TCW co-counsel; Draft motion for Preliminary Injunction | $ 2,200.00 |
| 5/21/2007 | 2.5 | WWP | Taylor Correspondance and Draft motion for Preliminary Injunction; address media inquiries; TCW associate attorney | $ 1,000.00 |
| 5/22/2007 | 5.5 | DJC | Taylor Correspondance and Draft; TCW co- | $ 2,200.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 65

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | counsel. | |
| 5/22/2007 | 8.5 | WWP | Taylor Correspondance and Draft; TCWs to associates; Respond to media inquiries | $ 3,400.00 |
| 5/23/2007 | 2.5 | WWP | Emails from and to and TCW associate attorney; continue LR and draft motion for Preliminary Injunction; address media inquiries | $ 1,000.00 |
| 5/23/2007 | 8.5 | DJC | Email to co-counsel; LR and draft motion for Preliminary Injunction | $ 3,400.00 |
| 5/24/2007 | 2.2 | WWP | Email to associate; LR and continue draft motion for Preliminary Injunction | $ 880.00 |
| 5/24/2007 | 8.9 | DJC | Continue LR and draft motion for Preliminary Injunction; Email to co-counsel regarding same | $ 3,560.00 |
| 5/25/2007 | 2.5 | WWP | Research and Pleading. | $ 1,000.00 |
| 5/26/2007 | 6.5 | DJC | TCW co-counsel; Review Opposition | $ 2,600.00 |
| 5/26/2007 | 8.5 | WWP | TCW associate attorney; Review and LR of Opposition | $ 3,400.00 |
| 5/27/2007 | 5.5 | DJC | TCW co-counsel; Review Opposition | $ 2,200.00 |
| 5/27/2007 | 7.5 | WWP | TCW associate attorney; Review and LR of Opposition | $ 3,000.00 |
| 5/28/2007 | 9.0 | DJC | LR and preparation of Reply | $ 3,600.00 |
| 5/28/2007 | 12.5 | WWP | LR and preparation of Reply, and address media. | $ 5,000.00 |
| 5/29/2007 | 12.5 | WWP | Correction of Draft, TCW associate; Review defendant's objections; prepare for and attend hearing; Address media inquiries | $ 5,000.00 |
| 5/29/2007 | 9.5 | DJC | TCW co-counsel regarding upcoming hearing; Review Objections; LR | $ 3,800.00 |
| 5/30/2007 | 8.5 | WWP | TCWs associate attorney; Field Calls and emails to co-counsel; Answer media inquiries | $ 3,400.00 |
| 5/30/2007 | 4.0 | DJC | TCWs co-counsel regarding update and possible next steps | $ 1,600.00 |
| 6/1/2007 | 12.5 | WWP | LR and draft Motion to Reinstate TRO; Address media inquiries | $ 5,000.00 |
| 6/1/2007 | 12.5 | DJC | LR and draft Motion to Reinstate TRO | $ 5,000.00 |
| 6/4/2007 | 9.5 | WWP | Letter received from associate; Address media; Review Order from Court; | $ 3,800.00 |
| 6/4/2007 | 9.0 | DJC | LT co-counse; TCW co-counsel regarding injunction | $ 3,600.00 |

Re:  *Chris Lusby Taylor v Intel*
September 18, 2007
Page 66

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 6/7/2007 | 7.5 | WWP | Faxes to associate attorney; Emails from and to associates; Address media inquiries | $ 3,000.00 |
| 6/7/2007 | 4.5 | DJC | Review faxes from co-counsel; and TCW co-counsel regarding same | $ 1,800.00 |
| 6/8/2007 | 6.5 | WWP | Email to and from associate; Address media inquiries | $ 2,600.00 |
| 6/8/2007 | 1.5 | DJC | Emails from and to co-counsel | $ 600.00 |
| 6/12/2007 | 7.5 | WWP | Email from associate; Address media inquiries | $ 3,000.00 |
| 6/12/2007 | 5.5 | DJC | Emails to co-counsel | $ 2,200.00 |
| 6/13/2007 | 7.5 | WWP | Email from associate; Address media inquiries | $ 3,000.00 |
| 6/13/2007 | 2.0 | DJC | Emails to co-counsel regarding Electronic Filing. | $ 800.00 |
| 6/15/2007 | 6.5 | WWP | Email to and from associates; Address media inquiries | $ 2,600.00 |
| 6/15/2007 | 2.0 | DJC | Emails from and tom co-counsel | $ 800.00 |
| 6/17/2007 | 7.5 | WWP | TCWs associates and clients; Address media inquiries | $ 3,000.00 |
| 6/17/2007 | 7.5 | DJC | TCW co-counsel, Assist co-counsel WWP | $ 3,000.00 |
| 6/18/2007 | 8.5 | WWP | Email to associate; Address media inquiries; Travel to and from meeting with LA Times ; TCW attorney Daniel Culhane regarding pleadings TCW Gary Fontana regarding same | $ 3,400.00 |
| 6/18/2007 | 2.0 | DJC | Email from co-counsel; Review same | $ 800.00 |
| 6/19/2007 | 8.5 | WWP | Fax to attorney Dan Culhane; Address media inquiries; Emails and fax to David Gerard | $ 3,400.00 |
| 6/19/2007 | 5.5 | DJC | Email from co-counsel; Review same; TT David Gerard | $ 2,200.00 |
| 7/2/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 7/2/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 7/3/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 7/3/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 7/4/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 7/4/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 7/5/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 7/5/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 7/6/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 7/6/2007 | 1.0 | WWP | TCW co-counsel. | $ 400.00 |
| 7/7/2007 | 1.0 | DJC | TCW co-counsel. | $ 400.00 |
| 8/14/2007 | 1.0 | WWP | TCW Gary Kesselmen regading status | $ 400.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 67

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| 8/16/2007 | 9.5 | WWP | Legal research and review Motion re Contempt; TCW Gary Kesselmen; TCW attorney DJC and California Legislature | $ 3,800.00 |
| 8/16/2007 | 8.0 | DJC | Draft Motion re Contempt; Forward same to WWP | $ 3,200.00 |
| 8/18/2007 | 3.0 | WWP | Prepare for Monday's Hearing; LR regarding same | $ 1,200.00 |
| 8/19/2007 | 2.5 | WWP | Prepare for Monday's Hearing, review cases and statutes | $ 1,000.00 |
| 9/7/2007 | 3.5 | WWP | Review Motion to lift injunction and accomanying documents | $ 1,400.00 |
| 9/9/2007 | 3.8 | WWP | Revise Memorandum of Points and Authorities for Motion for Interim Fee Award | $ 1,520.00 |
| 9/10/2007 | 8.0 | DJC | Draft Declaration and Pleading; Emails from associate attorney | $ 3,200.00 |
| 9/10/2007 | 8.5 | WWP | Begin Preparation of Motion for Fee Award and supporting declarations and exhibits; Emails to and from and TCW attorney DJC regarding same | $ 3,400.00 |
| 9/12/2007 | 8.0 | DJC | Revise Memorandum of Points and Authorities for Motion for Interim Fee Award forward same to WWP | $ 3,200.00 |
| 9/12/2007 | 8.5 | WWP | Review and revise Memorandum of Points and Authorities for Motion for Interim Fee Award from DJC | $ 3,400.00 |
| 9/13/2007 | 8.0 | DJC | Legal research and revise Motion for Fee Award; TCW and emails to and from WWP regarding same | $ 3,200.00 |
| 9/13/2007 | 8.5 | WWP | Revise Memorandum of Points and Authorities for Motion for Interim Fee Award; TCW and emails from and to DJC regarding same | $ 3,400.00 |
| 9/14/2007 | 8.5 | WWP | Prepare Exhibits for the Declaration for the Motion for Fee Award; TCW Daniel Culhane regarding same | $ 3,400.00 |
| 9/14/2007 | 4.0 | DJC | TCW WWP regarding status of Motion; Discussed strategy and planning. | $ 1,600.00 |
| 9/15/2007 | 8.5 | WWP | Prepare Declaration for Motion for Fee Award; Prepare Invoice | $ 3,400.00 |
| 9/15/2007 | 8.5 | DJC | Review Declaration for Motion for Fee Award from WWP; Assist in preparation of Invoice | $ 3,400.00 |
| 9/16/2007 | 6.5 | WWP | Prepare Motion for Fee Award and supporting | $ 2,600.00 |

Re: *Chris Lusby Taylor v Intel*
September 18, 2007
Page 68

| Date | Hours | Attorney | Description | Amount |
|------|-------|----------|-------------|--------|
| | | | documents | |
| 9/16/2007 | 6.5 | DJC | Assist in preparation of Motion for Fee Award and supporting documents; TCW WWP regarding same | $ 2,600.00 |
| 9/17/2007 | 8.5 | WWP | Prepare Motion for Fee Award and supporting documents | $ 3,400.00 |
| 9/17/2007 | 8.5 | DJC | Assist in preparation of Motion for Fee Award and supporting documents; TCW WWP regarding same | $ 3,400.00 |
| 9/18/2007 | 10.5 | WWP | Finalize Motion for Fee Award and supporting documents | $ 4,200.00 |
| 9/18/2007 | 10.5 | DJC | Assist and finalize preparation of Motion for Fee Award and supporting documents; TCW WWP regarding same | $ 4,200.00 |

Total Senior Attorney Billable Hours (6660.8 x $400)                    $    2,700,348.70

Costs:

| Description | DJC | WWP | Total |
|---|---|---|---|
| Airline Ticket | $350.60 | $6,641.00 | $6,991.60 |
| Hotel Cost | $1,133.90 | $4,041.11 | $5,175.01 |
| Gas | $34.10 | 170.42 | $204.52 |
| Car Rental | $250.40 | 54.04 | $304.44 |
| Meals | $131.24 | $1,601.43 | $1,732.67 |
| Parking | $54.00 | $313.00 | $367.00 |
| Mileage | N/A | $1,942.97 | $1,942.97 |
| Taxi-Cab | N/A | $353.82 | $353.82 |
| Copy cost | N/A | $5,496.51 | $5,496.51 |
| Faxes | N/A | $7,752.00 | $7,752.00 |
| Bridge Tolls | N/A | $68.50 | $68.50 |
| Computer Fees | N/A | $550.00 | $550.00 |
| Filing Fees | N/A | $635.00 | $635.00 |
| Postage | N/A | $300.73 | $300.73 |
| LexisNexis | N/A | $2,538.33 | $2,538.33 |
| Courier Fees | N/A | $330.25 | $330.25 |
| Transmision of Record | N/A | $165.60 | $165.60 |
| Court Reporter Fee | N/A | $330.41 | $330.41 |
| Consultant Fees | N/A | $2,625.00 | $2,625.00 |
| FedEx Fees | N/A | $275.34 | $275.34 |

**Total**     **$38,139.70**

---

**Total due**     $2,738,488.40

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit B

Declaration of Robert Huarte dated June 26, 2006

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California - 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM
FEE AWARD

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

| | |
|---|---|
| **STEVE WESTLY, STATE CONTROLLER AND RICHARD J. CHIVARO,** | |
| | Petitioners, |
| v. | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO,** | |
| | Respondents. |
| **TRUST REALTY PARTNERS,** | |
| | Real Party in Interest. |

I, Robert Huarte, declare as follows:

1.   I am the Chief of the Division of Collections in the Office of the Controller for the State of California. I am submitting this declaration in support of Petitioners Steve Westly, State Controller, and Richard J. Chivaro's Petition for Writ of Mandate, Prohibition, or Other Appropriate Relief. I have personal knowledge of all facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.   I have been employed by the State Controller's Office since May 2000, and have been the Chief of the Division of Collections since January 2003. As Division Chief, I am responsible for the overall operations of the Division of Collections. Among other things, the Division of Collections is responsible for administering California's unclaimed property system. I am extremely familiar with the Unclaimed Property Law ("UPL"), how property

1

3

is reported to the state, how claims for the return of unclaimed property are processed, and with the official records of the Office of the Controller relating to the escheat of property to the State pursuant to the UPL. In addition, as part of my job duties, I am required to be familiar with the official records of the Office of the Controller relating to the escheat of property to the State pursuant to California's Unclaimed Property Law.

3.   I have reviewed the Order on Plaintiff's Motion for Summary Judgment, etc., (the "Order") that has been entered in this action. I am also aware that a Notice of Appeal has been filed in this action. As described below, the Order would dramatically affect the Controller's Office's administration of the Unclaimed Property system.

## Sale of Unclaimed Property

4.   As required by the Unclaimed Property Law, the Controller's Office sells securities that have escheated within 30 days of receipt. The prompt sale of securities is intended to carry out the intent of the UPL by liquidating securities and depositing the proceeds into the Abandoned Property Account and then into the General Fund. It is unclear whether the Order requires the State Controller to cease sales of securities. If the Order requires the Controller to halt such sales, there will be a detriment to both the State and owners of unclaimed property. The State will be harmed because it will be unable to use escheated funds for General Fund purposes; and owners will be harmed because while the prompt sale of securities protects owners from unpredictable changes in the stock market; delaying the sale of securities increases the exposure to market fluctuations.

5.   As part of administering the Unclaimed Property Law, the State Controller's Office holds periodic live auctions and weekly on-line auctions of unclaimed property. A live auction had previously been scheduled to be held on May 25th and May 26th. Although it is unclear whether or not the securities

2

4

sales and auctions fall within the scope of the Order, in an abundance of
caution, the State Controller's Office has ceased its sale of escheated securities,
and its live and on-line auctions.       The State Controller's website
(http://www.sco.ca.gov/col/ucp/auction/index.shtml) has been updated to
provide the following statement: "Welcome to the Unclaimed Property On-line
Auction. At this time, there are no items being offered for sale. We expect to
resume on-line sales in the near future."

**Notice to Owners of Unclaimed Property**

6.     Under California's unclaimed property system, institutions and
others who hold property (known as "holders") whose owners cannot be found
or are unknown are required to transfer that property to the State when
conditions under which property becomes subject to escheat are met. Prior to
transferring the property, holders must make efforts to contact the owners to
advise them that their property will escheat to the State unless the owner
contacts the holder. If the holder's attempts to locate the owner fail, then the
holder must include the property on a "holder's report" filed by November 1 of
each year pursuant to Code of Civil Procedure section 1530(d).     The
Controller's Office receives approximately 13,000 holders' reports every year,
many of them containing the names of thousands of owners. A holder's report
must be made on a form approved by the Controller and must contain the name,
if known, and the last known address of each owner of property worth $50 or
more, as required by section 1530(b)(1). If the holder's report includes a social
security number for the owner, the Controller asks the Franchise Tax Board to
provide a current address on the basis of that number. If the address differs
from that given for the owner on the holder's report, the Controller mails a
notice to the owner at the address provided by the Franchise Tax Board
pursuant to section 1531(d).

7.     In the current fiscal year, the Controller's Office has sent

3

approximately 357,000 direct mail notices to owners for whom it was able to obtain an address different from the one on the holder's report.

8.    The Controller's Office also publishes the advertisements required by section 1531 of the California Code of Civil Procedure in 42 newspapers, including foreign language publications, throughout the state. These newspapers have a combined circulation of more than 5.4 million readers.    In addition to the language required by section 1531, the advertisements inform the public that the Controller's Office has received $4.8 billion in unclaimed property belonging to over 7.6 million individuals and companies and that the money is waiting to be claimed by its rightful owners. The advertisements invite readers to search the Controller's website at http://www.sco.ca.gov, which allows owners to search for property and initiate a claim to recover their property. From July 2005 to June 2006, the unclaimed property website received a total of 898,685,229 page views.    The advertisement also invites readers to call a free telephone number between 8:00 a.m. and 5:00 p.m. Monday through Friday.  The advertisements provide a separate telephone number for the deaf or hearing impaired and the address to which readers may send written inquiries.

9.    The State Controller's Office does not presently have the ability to provide notice in addition to that which is required by the Unclaimed Property Law (described above). If additional notice is to be provided, a system will need to be developed in order to identify additional addresses and generate notices.  Significant development tasks and costs will be incurred for the Controller's Office to modify its computer systems to provide additional forms of notice.  This would require a significant reallocation of staff and resources, which would in turn affect the Controller's Office's ability to carry out other responsibilities, including processing claims for unclaimed property.

10.  It is unclear what steps the State Controller's office is required to

4

6

take pursuant to the Order in order to provide additional notice to owners. As described above, holder's reports list last known addresses for the reported owners. However, property is reported only after the holder has notified the owner (at their last known address) that their property is about to escheat to the State unless the owner takes some action to show a continuing interest in the property (see, Code of Civil Procedure sections 1513.5, 1516, and 1520). Thus, since the holder has already unsuccessfully attempted to contact the owner at his or her last known address, it would not be effective for the State Controller to send additional notice to a reported owner's last known address. Thus, whenever a holder's report provides a social security number, the Controller mails a notice to the owner at the address listed with the Franchise Tax Board. Likewise, it is also not effective to publish notice in a newspaper in the county of the owner's last known address. There is no statewide newspaper of general circulation and, thus, as described above, the Controller publishes notice in dozens of newspapers throughout California and has a website that is available by any person, at any time. Providing any other type of notice will require the implementation of extensive modifications to the Controller's processing systems. For example, holder's reports do not list driver's license information for reported owners and, thus, it would be difficult, if not impossible, for the Controller's Office to conduct any meaningful search of DMV records.

11. In addition, the claim at issue in this case provides another example of why it is not efficacious to provide notice that is not required by the UPL. In this case, the underlying claim was reported in October 1996 in the name of "August Income Growth Fund," not Trust Realty Partners. Because this claim involved bankruptcy issues, competing claimants, and several successors to August Income Growth Fund, mailing a notice in 1996 to August Income Growth Fund would not likely have reached Trust Realty Partners.

12.

5

7

## Interest on Unclaimed Property

13. When escheated property is reported and transmitted to the State Controller's Office, the property is assigned a "Property Identification" number. Property Identification numbers are often referred to as "Controller's Account" numbers. Property Identification numbers are used in order to account for and track unclaimed property that is received, claimed and disbursed. Much like a filing system, Property Identification numbers are a mechanism for the Controller's Office to keep track of the amount of property reported, the holder that reported the property, the name of the last known owner as shown on the holder's records, and when the property was reported, when the property was claimed, and the name of the claimant(s).

14. Once unclaimed property has been reported to the State, it is not maintained in any type of segregated account, private account or interest-bearing account. The UPL does not require the State Controller to invest escheated funds nor to ensure that escheated property will generate interest. Instead, when property is reported and remitted to the State Controller's Office, the UPL requires that all money received be deposited in the Abandoned Property Account within the Unclaimed Property Fund. The Abandoned Property Account is an operations-type account, and money in the Abandoned Property Account is used to pay claims during a month. The Abandoned Property Account is not a trust account or an interest-bearing account.

15. The UPL also requires the Controller's Office to, at least once a month, transfer all money in the Abandoned Property Account in excess of $50,000 to the General Fund. Typically, at the end of each month, money in the Abandoned Property Account, in excess of an amount needed to pay claims during that month, is transferred to the General Fund. Once transferred to the General Fund, the Abandoned Property Account funds are commingled with other General Fund moneys.

6

8

16. Presently, there are over $4.8 billion in Unclaimed Property accounts with over 7.6 million individual and business owners as reported by the holders. During the 2004-2005 fiscal year, the SCO paid 239,202 claims for $238.5 million.

17. Previously, the Unclaimed Property Law authorized the State Controller to pay interest on paid claims. When the State Controller was authorized to pay interest, the authorization was to pay interest at the rate in effect when the claim was paid. For example, AB 3000, which took effect on September 30, 2002, authorized the Controller to pay simple, not compound, "interest at the rate of 5 percent or the bond equivalent rate of 13-week United States Treasury bills, whichever [was] lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund." And prior to September 30, 2002, the State Controller was authorized by AB 698 to pay interest "at the rate of 5% compounded annually or the current interest rate received upon deposits held in the Pooled Money Investment Account, whichever is lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund." Currently, section 1540(c) provides that the Controller has no authority to pay interest on claims: "No interest shall be payable on any claim paid under this chapter." Section 57 of AB 1756 provided that the "no interest" rule applied to all claims, including pending claims: "The changes made by this Act to Section 1540, 1541, and 1542 of the Code of Civil Procedure shall apply to any claims for which the Controller has not made a decision by the earlier of July 1, 2003, or the effective date of this Act [August 11, 2003]."

18. As described above, Property Identification/Controller's Account numbers are used as a tracking mechanism, but escheated property is not maintained in a segregated account like a private bank account. Instead, nearly

7

all escheated funds are commingled with other General Fund moneys. The State Controller's Office has never "posted" interest to Controller's Accounts. Instead, prior to the enactment of AB 1756, if an amount of interest was payable, it was payable based on the <u>rate in effect at the time the claim was paid</u>. For example, if property had escheated in 1980 and an owner's claim was submitted and paid on October 1, 2002, interest was payable at the rate which took effect on September 30, 2002 pursuant to AB 3000 (i.e., interest was payable "at the rate of 5 percent or the bond equivalent rate of 13-week U.S Treasury bills, whichever [was] lower, to the amount of any claim paid ... for the period the property was on deposit in the Unclaimed Property Fund.") Thus, the approved claim would not have had interest payable based on the different interest rates that had been in effect between 1980 and October 2002.

19.   The Order is unclear with respect to what actions the Controller's Office is to take regarding the payment of interest on approved claims. Property that has escheated by operation of law has been reported to the State since the UPL took effect in January 1960. Since that time, the UPL has provided for the payment of various interest rates at different times, and for no interest at the present time. It is unclear how the Controller's Office is to calculate interest: e.g., whether it is to be based on the rate in effect when the property was reported, when a claim was filed, or the rates in effect at different times while the property is in the State's custody.

20.   The State Controller's Office does not presently have the ability to calculate and post interest to individual Controller's Accounts based on varying rates of interest that are no longer in effect. In order to calculate and post interest to individual claims that have been approved and paid since July 1, 2003, the Controller's Office would have to institute significant modifications to the claims processing systems. And if the Court's order is interpreted to require the State Controller to treat all Controller's Accounts as

8

if interest were accruing during the entire time the property has been in the State's custody, massive systems modifications would be required. As mentioned above, the State has received over $4.8 billion of unclaimed property with over 7.6 million reported owners. Since most abandoned property is never claimed, the Controller's Office would be required to undertake massive changes to the manner in which it administers the Unclaimed Property Law to treat Controller's Accounts as if they were segregated bank accounts. The Division of Collections does not have staff available to implement changes that would be necessary to calculate interest on Controller's Accounts; and the Division does not presently have authorization to hire additional employees. Consequently, any systems modifications that may be required would require Division staff to be reassigned from other tasks, e.g., processing claims.

**Regulations**

21. The Order also requires the Controller's Office to promulgate regulations "within sixty (60) days setting forth the process by which Owners of private property held in custodial trust by the Controller pursuant to the Unclaimed Property Law may obtain the return of their property" in "strict compliance with the Administrative Procedure Act." Unless the regulations were adopted as emergency regulations, however, 60 days does not permit sufficient time to comply with the requirements of the Administrative Procedure Act, including publication in the Notice Registry, a 45-day public comment period, and 30 working days for the Office of Administrative Law to review the proposed the regulations.

22. Furthermore, at the direction of the Legislature, the Controller's Office has previously adopted "guidelines" for claimants of unclaimed property. Code of Civil Procedure section 1540 (as amended by Chapter 1029, section 1, of the Statutes of 1998 [effective Jan. 1, 1999]), required the Controller to "adopt guidelines and forms" to assist owners in filing claims for the return of

9

abandoned property (see Code of Civil Procedure section 1540(e)). In 1999, following public hearings and the taking of comments, the Controller adopted Guidelines. A true and correct copy of the Notice of Pubic Hearing dated June 8, 1999, is attached hereto as Exhibit "1." And the State Controller's Office continues to publish various guidelines and forms that provide specific instructions to assist owners in filing claims for the return of property. For example, in September 2003, State Controller Westly published the current version of "*Guidelines for Claiming Unclaimed Property,*" which discusses topic such as the "Claims Process," and "Required Documentation." *Guidelines for Claiming Unclaimed Property* also advises people that, "[b]eginning in August of 2003, the Unclaimed Property Law no longer provides for interest to be paid on any claims. *Guidelines for Claiming Unclaimed Property* is available to the public at the Bureau of Unclaimed Property, through the State Controller's website (http://www.sco.ca.gov/col/ucp/lawregs/claiming.pdf), and is also made available to anyone who requests information regarding the claims process under the UPL. In addition, the State Controller's Office also gives instructions to assist owners with filing claims for the return of property by making the current version of the Unclaimed Property Law and Regulations available to the public. The State Controller's website (http://www.sco.ca.gov/col/ucp/faq/index.shtml) also lists the answers to several "Frequently Asked Questions About Unclaimed Property." The same or similar information has been available either in hard copy or on the State Controller's website since 2000.

**Trust Realty Claim**

23. In September 2005, I submitted a declaration in support of Defendants' Motion for Summary Judgment Or, in the Alternative, for Summary Adjudication. A true and correct copy of my September 2005

10

12

declaration is attached hereto as Exhibit "2." Paragraphs 8-30 of this declaration describe in detail the extremely complicated nature of the claim that is the subject of Trust Realty's lawsuit. As described in my declaration, the claim (Property Identification Number 012083411), that is the subject of this lawsuit involved bankruptcy issues, several competing claimants, and several successors to the reported owner (August Income Growth Fund). I am not aware of another claim that has been processed during my tenure at the Controller's Office that was as complicated as the claim at issue in this lawsuit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on June _12_, 2006, at Sacramento, California.

Robert Huarte
Chief, Division of Collections
California State Controller's Office

11

13

# DECLARATION OF SERVICE

Case Name:   *Steve Westly, State Controller and Richard J. Chivaro v. Superior Court of California, County of Sacramento*

Court of Appeal Case No. : _____

Sacramento County Superior Court Case No.: 04AS02522

I declare: I am employed in the County of Sacramento, California. I am 18 years of age or older and not a party to the within entitled cause; my business address is 1300 I. Street, Sacramento, California.

On June 12, 2006, I served the attached

**DECLARATION OF ROBERT HUARTE IN SUPPORT OF PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF; EMERGENCY STAY REQUESTED OF TRIAL COURT ACTION BY JUNE 21, 2006**

in said cause, by placing a true copy thereof enclosed in a sealed envelope and served as follows:

\_\_\_\_   United States mail by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing mail in accordance with this office's practice, whereby the mail is deposited in a United States mailbox in the City of Sacramento, California, after the close of the day's business

\_\_\_\_   California Overnight Service (Overnight Courier)

\_\_\_\_   Facsimile at the following Number:

XX   Personal Service, *via Capitol Couriers*, at the below address(es), at the following time(s):
→ _____ A.M./P.M.

to the parties addressed as follows:

William W. Palmer, Esq.
Law Offices of William W. Palmer
1241 Carter Road
Sacramento, CA 95864
*(1 copy)*

Sacramento County Superior Court
Attention: The Honorable Shelleyanne W.L. Chang
Department 54
800 Ninth Street
Sacramento, CA 95814
*(1 copy)*

Sacramento County Superior Court
Attention: The Honorable Roland L. Candee
Department 47
720 Ninth Street
Sacramento, CA 95814
*(1 copy)*

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that this declaration was executed at Sacramento, California on June 12, 2006.

CYNTHIA FULKERSON

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit C

J. Chiang, "State Controller on Asset Seizures," Orange County Register (July 29, 2007)

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

- 10 -

Case 2:01-cv-02407-JAM-GGH   Document 120   Filed 09/18/07   Page 93 of 155

This is a printer-friendly version. The navigation and
other unnecessary elements have been removed.

Sunday, July 29, 2007

# State controller on asset seizures

## Reader Rebuttal

By John Chiang
California state controller

State Sen. Tom McClintock well knows that the problems plaguing the state's Unclaimed Property
Program stem from statutory shackles he and his legislative colleagues have approved over the
past 20 years to prevent Californians from being notified that their lost, forgotten and abandoned
property has been sent to the state. Rather than throw rhetorical bombs, as he did in the California
Focus column, "How Californians are escheated" [Opinion, July 18], I invite him to roll up his
sleeves and work with current legislative leaders and me to fix this mess.

Enacted in 1959, the original intent of the state's unclaimed property law was to safeguard private
property from being lost during mergers or bankruptcies, drawn down by "service" or "storage"
fees, or simply used by private interests for personal gain – either through an unwillingness to find
the owner or just plain greed.

But during the 1980s and 1990s, the Legislature ramped up restrictive laws in order to maximize
the use of the revenue to bridge budgetary shortfalls and fund programs. Not only has the
Legislature not weaned itself off this misguided dependency, it has increasingly coveted these
funds. As a result, the Legislature – where Sen. McClintock has served over 20 years – and
governors of both parties have enacted a series of laws that have sharply limited the ability to
provide notice and reunite people with their property.

Consider: Today, the controller is legally barred from contacting the owners of what effectively
amounts to 80 percent of all accounts we receive. That means, out of 800,000 properties we expect
to receive this year, the owners of 650,000 will be left out in the cold. Other laws have further
dismantled the program by prohibiting the state from paying interest on claims; increasing from 90
days to 180 days the amount of time to process claims; and shortening the time, from 15 years to
three years, a business must hold the customer's property before sending it to the state.

No, Sen. McClintock, I wasn't "shocked" when I took office six months ago. I was outraged –
outraged that a program that I believe should be safeguarding lost property had been perverted by
20 years of shortsighted lawmaking into becoming the very thing it was designed to protect against.

That's why, upon taking office six months ago, I immediately initiated a policy prohibiting my office
from selling, destroying or converting to cash any property until the owners have been notified and
are given an opportunity to claim what is rightfully theirs. I worked with legislative leaders to
negotiate reforms through the budget, and drafted and sponsored comprehensive reform legislation
(Senate Bill 919, by Sen. Mike Machado) to increase penalties for businesses that fail to protect
their customers' property; require written notification to all owners before their property is
transferred to the state; restore paying interest on claims; reduce the period to consider claims to

Case 2:01-cv-02407-JAM-GGH   Document 120   Filed 09/18/07   Page 94 of 155

no more than 90 days; and authorize my office to aggressively find property owners by using Internet search engines, commercial databases and public agency records.

My reform package also will require the state to safeguard family heirlooms, photographs, and other keepsakes that, while having no "commercial" value, are priceless to their owners who must be given the appropriate notification and opportunity to claim them.

Sen. McClintock's proposed solution does nothing to reunite 8.2 million owners with their lost property. It merely requires businesses to hold unclaimed property for an extended period of time. If Sen. McClintock is sincere about his contempt for the current condition of the Unclaimed Property Program, I invite him to put down his incendiary rhetoric and join me and an increasing number of legislators in fighting to reverse these bad laws so we can quickly reunite people with their property.

What's your opinion?
Want to comment on what you've just read? Fill in the form below.
Your comments will be considered for publication online or as a letter to the editor in The Orange County Register.

NAME:                CITY OF            E-MAIL ADDRESS:
                     RESIDENCE:

SUBJECT:

COMMENT:

**Submit**

1

Exhibit D

2

M. Lifsher, "Lost track of those old assets? The state may have seized them," Los Angeles

3

Times, July 9, 2007, p. A-1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM
FEE AWARD

BRAIN AGE    only $19.99! MSRP    only for NINTENDO DS    www.brainage.com

http://www.latimes.com/business/la-fi-unclaimed9jul09,1,1983435.story?ctrack=1&cset=true
*From the Los Angeles Times*

## Lost track of those old assets? The state may have seized them

By Marc Lifsher
Times Staff Writer

July 9, 2007

Nearly 15 years ago, the state of California seized about $25,000 worth of stock that Richard Valdes had set aside and forgotten about.

He's been fighting to get it back almost ever since.

Valdes' stock was in an escrow account that the state declared dormant. But no one from the government tried to contact him before the shares were taken and sold. Valdes said he was effectively robbed of stock that would now be worth at least $100,000.

"It's unbelievable to me that they can destroy records and sell your property without notifying you," Valdes, 71, said. "I've lived in the same Newport Beach area for 50 years. It's very easy to get ahold of me."

Valdes is one of millions of people who have seen their financial accounts and safe-deposit boxes drained under the state's "unclaimed property" law, which generates about $400 million in annual revenue for Sacramento, according to the state controller's office.

Last month, however, a federal judge slapped the state with an injunction that at least temporarily halted the seizure of assets. U.S. District Court Judge William B. Shubb said the state wasn't giving "constitutionally adequate notice before accepting or taking title to property."

Valdes and others who have sued the state claim that the government doesn't even try to find people who have misplaced or forgotten about their assets.

Even worse, they say, is that the state contracts with financial "bounty hunters" — auditors who comb through records at banks, escrow companies and insurance firms and elsewhere to find dormant accounts. These companies are typically paid 6% to 12% of what they find, court and state records show.

People who believe the state has taken their property can file a claim to regain it at any time. But many do not even know the state has their money.

States should "be engaged in meaningful, robust outreach efforts to locate owners," said Debbie Zumoff of Keane Organization Inc., whose consulting firm advises companies on their unclaimed property obligations.

Instead, over the years California has sharply curtailed efforts to find people before selling off their property.

Until the mid-1980s, the state controller ran a "locator unit" that searched telephone directories for property owners and published detailed lists of names from unclaimed accounts in newspapers around the state.

But in recent years, as the state came under pressure to balance its budget, efforts to find owners were gradually dismantled.

The locator unit was disbanded around 1985, and through the 1990s and the early part of this decade the Legislature steadily reduced the amount of money the controller could spend on notifying owners of unclaimed assets. In 2003, it eliminated the state's obligation to pay interest on new claims from property holders.

Notices to the public were eventually restricted to generalized newspaper advertisements telling people to contact the controller if they thought they had unclaimed property.

"It became unrestrained looting," said state Sen. Tom McClintock (R-Thousand Oaks).

Californians were also given less time to claim their property before it was seized by the state. In 1977, the so-called escheat period — the amount of time an account could be inactive before being turned over to the state — was reduced from 15 to seven years. It is now three years.

The chain of events that led Valdes to file suit began in 1976, when he sold his Costa Mesa yacht business to Whittaker Corp. for about $500,000. He was paid in Whittaker stock and stayed on with the company.

About 5% of the shares, then worth about $25,000, was set aside in an escrow account as a security that the new owners would be able to collect outstanding debts.

Valdes says he soon lost track of these set-aside shares. He didn't realize that his stock was gone until 1996, when a private investigator told him that the state of California had grabbed his securities three years earlier.

The investigator was an "heir finder," specializing in reuniting owners with their lost property for a commission.

Valdes eventually contacted Sacramento attorney William W. Palmer after reading a newspaper article about Palmer's involvement in an unclaimed property lawsuit.

Palmer subsequently launched a series of lawsuits in state and federal courts on behalf of Valdes and at least a dozen other property owners, losing many of them.

But on April 30, the U.S. 9th Circuit Court of Appeals reversed a federal district court decision, sending the case back to Shubb with instructions to grant a preliminary injunction that temporarily halted the state's sale of unclaimed property. The appeals court noted that citizens have a due-process right to be notified of the possible loss of their property.

The reversal buttressed the legal argument that the unclaimed property law "wasn't designed to be a revenue stream or a profit center," Palmer said.

The injunction sent the controller, the governor and state legislators scrambling to fill an estimated $442-million hole in the state budget for the fiscal year that began July 1.

They also rushed to increase the controller's budget by $8 million and hire 87 people to boost efforts to reunite owners and their property.

"I'm trying to fix this," said state Controller John Chiang. "My intent is to get the property back to its owners immediately."

Chiang said he realized there were problems with the program shortly after he took office in January. He said he was backing budget-related legislation that would send notices to owners before their property was taken.

It also would ban the sale of securities until at least 12 months after a notice is sent to their owners. And items in safe-deposit boxes of seeming sentimental value, but without commercial value, would be saved for at least eight months instead of being discarded.

It's unclear whether the state's plan would satisfy Shubb sufficiently for him to lift his injunction. If it doesn't, Chiang said he was ready to push for a comprehensive unclaimed property reform bill offered by Sen. Michael Machado (D-Linden) that would provide stronger protections for property owners.

"The bottom line is it's not the state's money, not the state's property," Machado said.

Meanwhile, state Sen. Dean Florez (D-Shafter) has scheduled investigative hearings in August. He said his Governmental Organization Committee would probe the controller's business dealings with private bounty hunting companies.

"It's a huge problem, and it's going to take a lot of unwinding," Florez said.

Even when the state does make amends, however, Californians can end up shortchanged.

Jo-Ann Seitzinger, another party in the federal lawsuit against the controller, says the state made no effort to find her and return 200 shares of General Electric stock.

The state seized the shares in 1994 from her husband Richard's employee stock option account, even though the Seitzingers had lived in the same Northridge home since 1974 and had filed income tax returns annually with the California Franchise Tax Board.

Jo-Ann Seitzinger said she didn't realize the stock was taken until her son, while researching the family tree on the Internet, found her name in an unclaimed property listing on the controller's website.

Eventually, after she made a claim in 2000, the state sent her a check for $17,000 to cover the proceeds of the stock sale. She figured the stock would be worth much more than that today if she still owned it.

"You can't be lost anymore. I do probate for a living and have no problem finding heirs," Seitzinger said. "It's impossible they couldn't find Dick and Jo-Ann Seitzinger."

*marc.lifsher@latimes.com*

--

*(INFOBOX BELOW)*

*Getting it back*

*Think the state may have your money?*

*California is sitting on $5.1 billion in unclaimed property from dormant bank accounts, safe-deposit boxes and other sources.*

*To find out whether you are owed any of that bounty, go to the state controller's website at http://www.sco.ca.gov and click on the link for*

"unclaimed property."

You can also call the controller's office toll-free at (800) 992-4647.

Source: California controller's office

---

If you want other stories on this topic, search the Archives at latimes.com/archives.



Article licensing and reprint options

Copyright 2007 Los Angeles Times | Privacy Policy | Terms of Service
Home Delivery | Advertise | Archives | Contact | Site Map | Help

PARTNERS:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit E

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary
Judgment, *Suever v. Westly*, No. CIV-03-00156 (E.D. Cal.) July 18, 2007

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM
FEE AWARD

1 | ROBIN B. JOHANSEN, State Bar No. 79084
JAMES C. HARRISON, State Bar No. 161958
2 | THOMAS A. WILLIS, State Bar No. 160989
MARGARET R. PRINZING, State Bar No. 209482
3 | REMCHO, JOHANSEN & PURCELL, LLP
201 Dolores Avenue
4 | San Leandro, CA  94577
Phone:  (510) 346-6200
5 | Fax:  (510) 346-6201
E-Mail:  rjohansen@rjp.com
6 |
Attorneys for Defendants
7 | John Chiang and Richard J. Chivaro

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN JOSE DIVISION

11 | AGNES SUEVER, ET AL., ) No.:  C 03-00156 RS
 )
12 | Plaintiffs, ) **MEMORANDUM OF POINTS AND**
 ) **AUTHORITIES IN SUPPORT OF**
13 | vs. ) **DEFENDANTS' OPPOSITION TO**
 ) **PLAINTIFFS' MOTION FOR**
14 | JOHN CHIANG, ET AL., ) **PARTIAL SUMMARY JUDGMENT**
 )
15 | Defendants. ) Hearing:
 )
16 | _____ ) Date:   August 8, 2007
Time:   9:30 a.m.
17 | Dept.:  4

18 | The Honorable Richard Seeborg

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

        A.    Procedural Background ................................................................................. 2

        B.    The Unclaimed Property Program ................................................................ 4

        C.    The Named Plaintiffs ..................................................................................... 7

STANDARD OF REVIEW ....................................................................................................... 9

        A.    The Standard For Summary Judgment is High on a Facial
              Challenge to a State Statute .......................................................................... 9

        B.    *Taylor II* is Not Binding as to Law or Facts ............................................ 11

ARGUMENT

I.     PLAINTIFFS' MOTION IS PROCEDURALLY DEFECTIVE ............................................. 12

        A.    Plaintiffs' Motion Fails to Provide Adequate Notice of the
              Relief Plaintiffs Seek ................................................................................... 12

        B.    Plaintiffs' Request for Summary Adjudication of the
              First Cause of Action Fails on Eleventh Amendment Grounds ..................... 13

        C.    Plaintiffs Fail to Meet the Standard for Permanent Injunctive
              Relief ........................................................................................................... 13

II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT
      ON THE UNCLAIMED PROPERTY LAW'S NOTICE PROVISIONS ............................... 15

        A.    California's Unclaimed Property Program Satisfies Due Process ............... 15

              1.    California's notice provisions satisfy *Texaco* and *Anderson* ............ 15

              2.    The notice provided by the Controller satisfies due process ............... 17

               3.    *Jones v. Flowers* does not apply to these facts ............................... 20

        B.    Unless the Court Finds That California's Current Notice
              Provisions Are Facially Valid, a Genuine Issue of Material
              Fact Exists as to What Constitutes Reasonable Notice ............................... 21

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

                               i

**TABLE OF CONTENTS**:  (Continued)                                         Page(s)

III.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT
       ON THEIR CLAIMS THAT THE CONTROLLER ACCEPTS
       PROPERTY OUTSIDE THE SCOPE OF THE UNCLAIMED
       PROPERTY LAW .................................................................................. 23

       A.   Plaintiffs Offer No Case Law to Support Their Claim That the
            State Must Independently Verify That Property is Subject to
            Escheat ...................................................................................... 23

       B.   Plaintiffs' Evidence Fails to Demonstrate That the Controller
            Accepts Property Not Subject to Escheat ................................. 25

IV.    PLAINTIFFS' CLAIM THAT THE CONTROLLER HAS VIOLATED
       THE ADMINISTRATIVE PROCEDURES ACT IS BARRED ............. 27

       A.   Plaintiffs' APA Claim is Wrong as a Matter of Law ................. 27

       B.   Plaintiffs Cannot Demonstrate That the Due Process Clause
            Requires Promulgation of Formal Regulations ......................... 28

       C.   Genuine Issues of Fact Exist With Respect to Plaintiffs'
            "Evidence" About the Sufficiency of the State's Claim
            Procedure .................................................................................. 28

V.     THE FIFTH AND FOURTEENTH AMENDMENTS DO NOT
       REQUIRE THE STATE TO PAY INTEREST ON UNCLAIMED
       PROPERTY ...................................................................................... 29

       A.   The Takings Clause Does Not Require the State to Pay
            Interest ...................................................................................... 29

       B.   There Is No Takings Because No Interest Was Generated ........... 33

       C.   No Plaintiff Has Provided Evidence That His or Her Property
            Was Interest-Bearing Prior to Escheat ..................................... 35

VI.    ALTERNATIVELY, DEFENDANTS REQUEST A RULE 56(f)
       CONTINUANCE ............................................................................... 35

CONCLUSION ............................................................................................... 35

1

## TABLE OF AUTHORITIES

2                                                                      **Page(s)**

3  **CASES:**

4  *Agricultural Labor Relations Bd. v. Superior Court,* ........................................... 28
      16 Cal. 3d 392 (1976)
5
   *Anderson National Bank v. Luckett,* ......................................................... passim
6     321 U.S. 233 (1944)

7  *Bank of Am. v. Cory,* ............................................................................. 4
      164 Cal. App. 3d 66 (1985)
8
   *Benning v. Bd. of Regents of Regency Univ.,* ............................................. 13
9     928 F.2d 775 (7th Cir. 1991)

10 *Brown v. Legal Found. of Wash.,* ........................................................... 31
      538 U.S. 216 (2003)
11
   *Clark v. K-Mart Corp.,* ............................................................ 12, 31, 33
12    979 F.2d 965 (3d Cir. 1992)

13 *Clark v. Strayhorn,* ........................................................................... 30
      184 S.W. 3d 906 (Tex. App. 2006)
14
   *Crawford v. Washington,* ..................................................................... 21
15    541 U.S. 36 (2004)

16 *Delaware v. N.Y.,* ............................................................................. 24
      507 U.S. 490 (1993)
17
   *Douglas Aircraft Co., Inc. v. Cranston,* ..................................................... 4
18    58 Cal. 2d 462 (1962)

19 *Fong v. Westly,* ................................................................. 2, 4, 15, 17
      117 Cal. App. 4th 841 (2004)
20
   *Hagner v. United States,* ..................................................................... 20
21    285 U.S. 427 (1932)

22 *Harris v. Westly,* ................................................................. 2, 15, 17
      116 Cal. App. 4th 214 (2004)
23
   *Herndon v. De La Cruz  (In re De La Cruz),* ............................................. 20
24    176 B.R. 19 (B.A.P. 9th Cir. 1994)

25 *Hodgers-Durgin v. De La Vina,* ................................................. 13, 14, 15
      199 F.3d 1037 (9th Cir. 1999)

26

27

28

1

**TABLE OF AUTHORITIES:** (Continued)                                     Page(s)

2   *Hooks v. Treasurer,* ........................................................................................ 30
    ___ So. 2d ___, 2007 WL 1299883 (La. App. May 4, 2007)
3

  *Jones v. Flowers,* ..................................................................................... passim
4     547 U.S. 220, 126 S. Ct. 1708 (2006)

5   *Leider v. United States,* ........................................................................ 32, 33, 34
    301 F.3d 1290 (Fed. Cir. 2002)
6

7   *Mabey v. Reagan,* .......................................................................................... 9
    537 F.2d 1036 (9th Cir. 1976)

8   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* ............................................ 9
    475 U.S. 574 (1986)
9

10   *Mennonite Bd. of Missions v. Adams,* ............................................................. 20
    462 U.S. 791 (1983)

11   *Moore v. Sims,* ............................................................................................ 32
    442 U.S. 415 (1979)
12

  *Mullane v. Central Hanover Bank & Trust Co.,* ......................................... passim
13     339 U.S. 306 (1950)

14   *Mylett v. Jeane,* .......................................................................................... 12
    910 F.2d 296 (5th Cir. 1990)
15

16   *Ohio v. Roberts,* ......................................................................................... 21
    448 U.S. 56 (1980)

17   *Orr v. Bank of Am.,* ..................................................................................... 29
    285 F.3d 764 (9th Cir. 2002)
18

19   *O'Shea v. Littleton,* ...................................................................................... 13
    414 U.S. 488 (1974)

20   *Phillips v. Washington Legal Foundation,* ...................................................... 30
    524 U.S. 156 (1998)
21

22   *Plemons v. Gale,* ......................................................................................... 18
    396 F.3d 569 (4th Cir. 2005)
23

  *Provident Inst. for Sav. v. Malone,* ................................................................ 24
24     221 U.S. 660 (1911)

25   *S.D. Myers, Inc. v. City and County of San Francisco,* ...................................... 10
    253 F.3d 461 (9th Cir. 2001)

26

27

28

**TABLE OF AUTHORITIES:**  (Continued)                                  Page(s)

*Security Sav. Bank v. Cal.*, ............................................................................... 10, 16, 30
  263 U.S. 282 (1923)

*Smolow v. Hafer*, ...................................................................................................... 30
  867 A.2d 767 (Pa. Comw. 2005)

*Smyth v. Carter*, .................................................................................................. 30, 33
  845 N.E.2d 219 (Ind. Ct. App. 2006)

*Sogg v. Ohio Dep't of Commerce*, .......................................................... 29, 30, 31, 33
  2007 WL 1821396 (Ohio App. June 21, 2007)

*Southern Or. Barter Fair v. Jackson County*, ........................................................... 12
  372 F.3d 1128 (9th Cir. 2004)

*Standard Oil Co. v. State of N.J.*, ..................................................................... 24, 30
  341 U.S. 428 (1951)

*Suever v. Connell*, ........................................................................................ 3, 11, 13, 27
  439 F.3d 1142 (9th Cir. 2006)

*Taylor v. Westly*  (*Taylor I*), ........................................................................... passim
  402 F.3d 924 (9th Cir. 2005)

*Taylor v. Westly*  (*Taylor II*), ................................................................... 3, 13, 17, 27
  ___ F.3d ___, 2007 WL 1557611 (9th Cir. May 31, 2007)

*Taylor v. Chiang*  (*Taylor III*), ........................................................................... 3, 15
  No. S-01-2407, 2007 WL 1628050 (E.D. Cal. June 1, 2007)

*Texaco, Inc. v. Short*, ........................................................................................... passim
  454 U.S. 516 (1982)

*Texas State Bank v. United States*, ........................................................................... 34
  423 F.3d 1370 (Fed. Cir. 2005)

*Tulsa Prof'l Collection Servs. Inc. v. Pope*, ............................................. 18, 19, 20, 22
  485 U.S. 478 (1988)

*United States Shoe Corp. v. United States*, ............................................................. 34
  296 F.3d 1378 (Fed. Cir. 2002)

*United States v. Thirty-Seven Photographs*, ........................................................... 32
  402 U.S. 363 (1971)

*University of Tex. v. Camenisch*, ..................................................................... 11, 12
  451 U.S. 390 (1981)

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, .................................................... 31
  449 U.S. 155 (1980)

**TABLE OF AUTHORITIES:  (Continued)**                                                       Page(s)

**STATUTES:**

California Civil Procedure Code
     § 1300 ............................................................................................................ 4, 32
     § 1305 ............................................................................................................... 32
     § 1510 .................................................................................................................. 4
     § 1511 .................................................................................................................. 4
     § 1513 .................................................................................................................. 4
     § 1516 ............................................................................................................. 5, 24
     § 1530 ............................................................................................................. 5, 24
     § 1531 ............................................................................................................... 5, 7
     § 1532 .................................................................................................................. 5
     § 1540 ........................................................................................................... passim
     § 1561 .................................................................................................................. 5
     § 1564 ......................................................................................................... 6, 7, 32
     § 1566 ............................................................................................................... 32

California Government Code
     § 11340 ............................................................................................................. 28
     § 11340.9 .......................................................................................................... 28

2006 California Statutes
     Ch. 47 ................................................................................................................. 6

**MISCELLANEOUS:**

California Senate Bill No. 919 .......................................................................... 21

Federal Rules of Civil Procedure
     Rule 5 ................................................................................................................. 19
     Rule 56 ......................................................................................................................
     Rule 554 ............................................................................................................ 19

17 California Federal Regulations
     § 240.17Ad-17 ................................................................................................. 19

### INTRODUCTION

Plaintiffs' motion for partial summary adjudication is premature, unnecessary, and procedurally defective. It is premature because several of the plaintiffs have not even made themselves available for deposition, thus denying defendants discovery on defenses such as statutes of limitation that would defeat plaintiffs' claims. It is unnecessary because another federal court has issued a preliminary injunction that enjoins the State from accepting or selling unclaimed property, the very activity about which plaintiffs complain. It is procedurally defective because the "evidence" on which plaintiffs rely is either irrelevant, inadmissible, or untrue (sometimes it is all of these things) and because it is so internally contradictory as to defy any rational response. Worse, plaintiffs repeatedly state that their motion "seeks to establish liability"[1] for alleged constitutional violations, presumably for all defendants in the form of declaratory relief, despite the fact that this Court has already dismissed these and other claims – twice – as barred by the Eleventh Amendment.

Plaintiffs' claims about the applicable law are equally problematic. First, their description of the "holdings" in "three unanimous Ninth Circuit decisions" is misleading at best. The *Taylor* panel's conclusion that the plaintiffs in that case were likely to succeed on the merits is not a final ruling and is not binding on this Court. Second, although plaintiffs are clearly making a facial challenge to California's Unclaimed Property Law, they rely entirely on highly fact-specific, as-applied cases like *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708 (2006). As demonstrated below, the notice and interest provisions of California's Unclaimed Property Law are perfectly consistent with the Supreme Court's rulings on facial challenges to unclaimed property laws.

Finally, genuine issues of material fact exist with respect to defendants' statute of limitations defense, plaintiffs' challenge to the notice provisions, and their claims that the Controller accepts property outside the scope of the UPL and has an inadequate claims process.

The truth is that even without defendants' Rule 56(f) objections, which defendants renew here, plaintiffs have not begun to demonstrate that this case is ready for partial summary

---

[1] Proposed Order Granting Pls.' Mot. for Partial Summ. J. ("Proposed Order") at 2; Mem. of P.&A. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem.") at 2, 5.

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

1

1   judgment.  Plaintiffs themselves describe their case as not yet "adequately developed to implement

2   final remedies," and they ask the Court to "defer determination of the appropriate remedies pending the

3   completion of discovery and/or class certification on these issues."  Pls.' Mem. at 24; Proposed

4   Order at 2.  Particularly where, as here, there is already a preliminary injunction in place and the

5   Legislature is expected to amend the law as part of the state budget process, there is no justification for

6   asking this Court to rule on the constitutionality of the existing law.  Instead, the Court should defer the

7   entire determination and deny plaintiffs' motion for partial summary judgment.

8   **STATEMENT OF FACTS**

9   **A.**    **Procedural Background**

10          Plaintiffs filed this action on January 10, 2003, asserting claims that California courts

11   had rejected in similar cases filed by counsel for plaintiffs.  *See, e.g.*, *Fong v. Westly*, 117 Cal. App. 4th

12   841, 853-55 (2004) (California's UPL does not violate due process); *Harris v. Westly*,

13   116 Cal. App. 4th 214, 222-224 & n.16 (2004) (California's UPL does not violate due process or

14   Takings Clause).  On June 20, 2003, this Court dismissed the complaint with leave to amend on

15   Eleventh Amendment grounds, and on November 19, 2003, the Court dismissed defendants' First

16   Amended Complaint without leave to amend on Eleventh Amendment grounds.  Order Granting Defs.'

17   Mot. to Dismiss Compl. (Nov. 19, 2003) at 5-8 ("2003 *Suever* Order").  Plaintiffs appealed.

18          On March 29, 2005, in a similar action filed by plaintiffs' counsel, the Ninth Circuit

19   held that the Eleventh Amendment did not bar claims for the return of plaintiffs' property, based in

20   part on allegations that the Controller retains "some money from sales of [escheated] stock . . . in a

21   fund that she controls," and based in part on allegations that the Controller was "violating clear

22   statutory restrictions."[2] *Taylor v. Westly*, 402 F.3d 924, 930, 933-35 (9th Cir. 2005) ("*Taylor I*").

23   *Taylor I* also affirmed plaintiffs' ability to pursue prospective claims while holding that they cannot

24   pursue "retroactive requests for money."  *Id*. at 935.  Finally, the Ninth Circuit determined that a

25   custodial escheat does not constitute a taking.  *See id*. at 936. Because the *Taylor I* appeal presented a

26

---

27   [2] As plaintiffs well know, the Controller sharply disputed these allegations then, as he does now,
     notwithstanding plaintiffs' misstatements to the contrary.  Pls.' Mem at 3, n.2.

28   
     2

1    jurisdictional question, the Ninth Circuit decided the case on the basis of allegations that the Court

2    admitted it was "in no position to assess" on the merits. *Id.* at 934. The Ninth Circuit followed with its

3    decision in this matter, *Suever v. Connell*, 439 F.3d 1142, 1143, 1147-48 (9th Cir. 2006), which

4    vacated this Court's previous ruling on the basis of *Taylor I*, and remanded for further proceedings.

5    This decision, too, was jurisdictional and based on plaintiffs' allegations alone. *Id.* at 1146.

6          Defendants then filed a motion for judgment on the pleadings. On November 13, 2006,

7    this Court granted the motion in part: (1) finding no basis for imposing individual liability;

8    (2) dismissing defendants who were former state officials; (3) dismissing claims founded solely on

9    state law; and (4) otherwise leaving the 2003 *Suever* Order intact except to the extent that it conflicted

10    with the Ninth Circuit's *Suever* decision. Order on the Mot. for J. on the Pleadings (Nov. 13, 2006)

11    ("2006 *Suever* Order"). Because this Court's 2003 *Suever* Order dismissed all claims, and the Ninth

12    Circuit resurrected only claims for the return of property and other prospective relief, this Court's

13    2006 *Suever* Order again dismissed all other claims, including claims for declaratory relief. *Id.* at 3.

14          Meanwhile in *Taylor*, the plaintiffs appealed the Eastern District's denial of their

15    motion for a preliminary injunction. On May 31, 2007, the Ninth Circuit reversed. *Taylor v. Westly*,

16    __ F.3d __, 2007 WL 1557611 (9th Cir. May 31, 2007) ("*Taylor II*"). In *Taylor II*, the Ninth Circuit

17    concluded, on the basis of *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708 (2006), that plaintiffs were

18    likely to succeed on the merits of their due process claim, and that a preliminary injunction would

19    address any irreparable harm that might flow from California's immediate sale of stock upon escheat.

20    2007 WL 1557611 at *2-3. The Eastern District subsequently preliminarily enjoined California from

21    accepting escheated property until the state adopts, and the court approves, regulations providing for

22    notice prior to escheat. *Taylor v. Chiang*, No. S-01-2407, 2007 WL 1628050, *3 (E.D. Cal. June 1,

23    2007) ("*Taylor III*").[3] Because the Controller cannot promulgate regulations that are contrary to

24    statute, the injunction will remain in place until the Legislature amends the statute, which it is expected

25

26    _____
    [3] On June 19, 2007, California's Second District Court of Appeal affirmed in an unpublished decision
    that California's UPL does not violate the due process or taking clauses, notwithstanding *Taylor II*
27    and *Flowers*. *Porcile v. Connell*, Case No. B187092, 2007 WL 1748612, *3-4 (Cal. App. June 19, 2007).
    Because the opinion is unpublished, the parties may not rely upon it. Cal. Rule of Court 8.1115(a).

28

       3

1  to do as part of the state budget process.  A trailer bill to the pending 2007 Budget Act would

2  substantially revise the UPL notice requirements at the heart of plaintiffs' motion for partial summary

3  judgment.  Huarte Decl. in Supp. of Defs.' Opp. To Mot. For Partial S.J., ¶ 10 ("Defs.' Huarte Decl.").

4  If enacted, these changes would take effect immediately, rendering plaintiffs' motion largely moot.

5  **B.    The Unclaimed Property Program**

6            The federal government, all fifty states, the District of Columbia, Puerto Rico and the

7  Virgin Islands all have unclaimed property programs that share many of the characteristics that

8  plaintiffs would have this Court enjoin.[4]  Under these laws, institutions ("holders") are required to

9  transfer property to the state once the property owners "abandon" it as defined by that state's laws.

10  Such programs generally serve at least two key purposes:  (1) they allow states to try to reunite owners

11  and their lost property; and (2) they allow states to put abandoned property to use to benefit society as

12  whole rather than allowing the holder to reap a windfall from the abandoned funds.  *Fong*,

13  117 Cal. App. 4th at 844; *Douglas Aircraft Co., Inc. v. Cranston,* 58 Cal. 2d 462, 463 (1962); *Bank of*

14  *Am. v. Cory*, 164 Cal. App. 3d 66, 74 (1985).

15            California has a custodial, rather than a permanent, escheat program.  An owner can

16  claim his or her property at any time, regardless of how many years have passed, by providing the

17  Controller with proof of ownership.  Cal. Civ. Proc. Code § 1540(a).[5]

18            Property escheats by operation of law, without the necessity for State-initiated

19  proceedings.  §§ 1300(c), 1513.  A holder must transfer unclaimed property to California, as opposed

20  to another state, if the owner's last known address is in California, or if the holder is domiciled in

21  California and the owner's last known address is either unknown or in a foreign country.  § 1510.

22  Property is "unclaimed" when certain statutory conditions are satisfied.  §§ 1511 *et. seq.*  Conditions

23  vary by property type, but stock escheats if the owner has not corresponded with the holder, claimed a

24

25

26  ───────────────

27  [4] 1 David J. Epstein, *Unclaimed Property Laws & Reporting Forms*, 1-12, § 1.06 (2005).

   [5] All statutory references are to the California Code of Civil Procedure unless otherwise indicated.

28

1  dividend or otherwise indicated an interest in the stock for three years,[6] *and* the holder does not know

2  the owner's location at the end of the three-year period.  § 1516(b).  Six to twelve months before the

3  stock is subject to escheat, holders must mail notice to all stockholders with addresses in the holders'

4  records.  § 1516(d).  If the owner fills out a form provided by the holder and returns it to the holder, the

5  holder is deemed to know the location of the owner, and the property is not subject to escheat.  *Id.*  If

6  the owner does not respond, the holder transfers the property along with a report listing the owner's

7  name and the last known address, if any.[7]  §§ 1530(b)(1), 1532(a).  If a holder transfers property by

8  mistake, the Controller is required to refund or redeliver the property to the holder.  § 1561(b).

9        Holders must submit verifications along with their reports, stating under penalty of

10  perjury that all reported property is presumed unclaimed under the law, meaning among other things,

11  that holders do not know the whereabouts of the owners.  § 1530(e).  The Controller's office reviews

12  these reports upon receipt.  If they are not verified, the Controller contacts the holder to secure the

13  verification.  Defs.' Huarte Decl., ¶ 3.

14        The Controller then provides three additional forms of notice.  First, if the holder's

15  report includes an owner's social security number, the Controller determines whether the Franchise

16  Tax Board has a different address for the owner than the address in the holder's report, and mails

17  notice to any such different address.  § 1531(d); Huarte Decl. in Supp. of Pls.' Mot. For Partial S.J., ¶ 6

18  ("Pls.' Huarte Decl.").  Second, the Controller's Office publishes newspaper notices, currently in

19  44 newspapers, advertising the fact that it holds unclaimed property belonging to 8.2 million owners,

20  and telling people how to reclaim their property.  § 1531(a); Pls.' Huarte Decl., ¶ 8; *see also* Defs.'

21  Huarte Decl., ¶ 5.  Third, the Controller maintains a website, which is advertised in the Controller's

22

23

24  _____

25  [6] Most states (twenty-seven) and the District of Columbia have three-year escheat periods.  Two states
    have seven-year escheat periods, while the remaining states have five-year escheat periods.  *See*
26  Prinzing Decl. in Supp. of Defs.' Opp. to Pls.' Mot. for Partial Summ. J., ¶¶ 3-5 ("Prinzing Decl.").

27  [7] The holders' role in California is typical of their role in other states' unclaimed property programs.
    All states that require direct mail notice prior to escheat – forty-four states do – give that responsibility
    to holders rather than the state.  *See* Prinzing Decl., ¶¶ 6-7.

28

newspaper notices, allows people to search for their property, and explains how to reclaim it.[8] In the last year, the website received more than 1 billion visits. Pls.' Huarte Decl., ¶ 8; *see also* Defs.' Huarte Decl., ¶ 6.

Approximately 74% of the property received by the Controller each year is in the form of cash, and so is never sold. Only 25% is in securities, while approximately 1% is in tangible form, such as coins or stamps. Defs.' Huarte Decl., ¶ 7. Securities must be sold within two years of escheat. § 1563(b). Before the *Taylor III* preliminary injunction, the Controller had implemented a policy to delay such sales until at least 18 months after transfer. While the preliminary injunction is in place, the Controller is not selling any property. Defs.' Huarte Decl., ¶ 9.

When the state receives unclaimed property, the Controller's office assigns it an identification number for tracking purposes. Pls.' Huarte Decl., ¶ 13. The property is deposited into the Abandoned Property Account within the Unclaimed Property Fund. § 1564(a); Pls.' Huarte Decl., ¶ 14. The Abandoned Property Account is not required by law to be, and is not, interest-bearing. Nor is the unclaimed property within that fund maintained in an individually segregated account, like a private bank account. Pls.' Huarte Decl., ¶ 14. Once a month, the Controller transfers all money in the Abandoned Property Account not needed to pay claims that month to the General Fund. § 1564(c); Pls.' Huarte Decl., ¶ 15. Once transferred, abandoned property funds are commingled with other General Fund moneys. Pls.' Huarte Decl., ¶ 15. Claims are paid from the Abandoned Property Account as they are processed, regardless of the date of escheat. *Id.*, ¶ 11.

The UPL provides that all money in the Unclaimed Property Fund is "continuously appropriated to the Controller . . . for expenditure in accordance with law in carrying out and enforcing

---

[8] California's post-escheat notice practices are more robust than the practices in most states. Thirty-four states do not impose *any* mail notice requirements on the state. Thirty-two of these states only require states to provide some form of publication notice such as newspaper and/or Internet notice – with or without the names of property owners – depending on the state. The other two states require even less notice. *See* Prinzing Decl., ¶¶ 8-9.

Thirteen states and the District of Columbia require states to send notice to some or all owners at addresses in the holders' reports. *See id.* at ¶¶ 10-11. None of these states, however, requires the state to seek out and send mail notice to a new address for owners, as California does. *See id.*, ¶ 12.

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

1   the provisions of this chapter." § 1564(b).  Nevertheless, the Legislature has limited the Controller's

2   authority to expend funds through provisions in state budget acts. Pls.' Huarte Decl., ¶ 9.  For

3   example, the 2006-2007 Budget Act limits the Controller's authority to spend funds to provide general

4   information to the public regarding unclaimed property and limits notice efforts to those required by

5   section 1531(d).  2006 Cal. Stat. ch. 47, Provisions 1 & 5(b), Item 0840-001-001.

6          The Controller has adopted guidelines and forms to assist owners in filing claims for the

7   return of abandoned property, in compliance with section 1540.  These guidelines, which were adopted

8   following public hearings, are publicly available on the Controller's website. Pls.' Huarte Decl., ¶ 22.

9   The guidelines explain how to fill out the necessary forms and list the documentation that must be

10  submitted to prove ownership.  *See id.*, Ex. B.

11         Like most states,[9] California's UPL does not authorize payment of interest on claims.

12  § 1540(c).  Previous versions of section 1540 did allow the Controller to pay interest at rates that

13  varied over the years, but interest never "posted" to a particular account.  Rather, the interest was

14  calculated when claims were paid based on the rate then in effect. Pls.' Huarte Decl., ¶ 18.  California

15  does not deduct any service fees or other charges from unclaimed property before returning it to

16  holders or owners.[10]  *Id.*, ¶ 13.

17  **C.    The Named Plaintiffs**

18         The Controller does not currently hold any of the property plaintiffs claim.  In other

19  words, the Controller has either returned all property to plaintiffs in response to claims that they filed,

20  or has no record of having ever held such property. Defs.' Huarte Decl., ¶¶ 14-19.

21

22

23  [9] Twenty-eight states plus the District of Columbia either do not authorize or prohibit the payment of
    interest from state funds on unclaimed property.  *See* Prinzing Decl., ¶ 13.  All other states – with one
24  exception – provide interest on a limited basis only.  These states either pay interest only on certain
    forms of property – typically property that was interest-bearing before being transferred to the state –
25  or pay interest only for a limited number of years; or impose both limitations.  New Jersey stands alone
    in paying interest without limitations as to time or form of property, but unlike California, New Jersey
26  is required to deposit unclaimed property funds in bonds or other interest-bearing accounts.  *See id.*,
    ¶ 14.

27  [10] Twenty-six states allow program administrators to deduct costs or service charges from claims, or
    withhold funds to pay child support or state tax arrearages.  *See* Prinzing Decl., ¶ 15.

28

1    Plaintiff Agnes Suever purchased a cashier's check in 1993, which escheated in 1999

2    and was reclaimed in 2002. Defs.' Huarte Decl., ¶ 14, Exs. C, D; Decl. of Jeffrey Ball in Supp. of

3    Defs.' Opp. to Pls.' Mot. for Partial Summ. J. ("Ball Decl."), Ex. 1 at 27:16 - 30:25, Ex. 2.

4    Mrs. Suever "forgot" about the check which "fell under a piece of heavy furniture and was unnoticed

5    for quite some time." Ball Decl., Ex. 1 at 50:14-21, 53:3-24. The Suevers subsequently filed a claim

6    and were "fully reimbursed" for the check. *Id.*, Ex. 1 at 17:15-19.

7    In November 1991, 505 shares of plaintiff Steve Tucker's Intel stock escheated to

8    California. Pls.' Comp., Ex. E at ¶¶4, 9(b); Ball Decl., Ex. 3 at 55:11-13. Mr. Tucker learned of the

9    escheat in 1995, but he did not file a claim for his property until 1999, at which time the State returned

10   $74,728 to him, including $18,703 in interest. Ball Decl., Ex. 3 at 62:3 - 80:19, 106; Pls.' Comp.,

11   Ex. E at ¶ 9(c).

12   Plaintiff Alexander Vondjidis purchased stock from Hewlett Packard when he worked

13   in HP's office in Athens, Greece in the 1970s. Ball Decl., Ex. 4 at 11:10-16, 38:13 - 40:18. The stock

14   purchase plan was administered in California, and HP's California office communicated with

15   Mr. Vondjidis about his stock through the Athens office. *Id.* at 42:5-21, 44:8-24. Mr. Vondjidis

16   stopped working for HP in 1978, and the Athens office closed in the early 1980s. *Id.* at 40:1 - 42:4.

17   After that, Mr. Vondjidis stopped receiving information about his stock, but he never "did anything to

18   alert HP to send documents to [his] home." *Id.* at 43:11 - 45:12. Mr. Vondjidis' stock escheated

19   in 1993. Defs.' Huarte Decl., ¶ 15(a), Ex. F. Mr. Vondjidis filed a claim for his stock in 2001, and the

20   Controller returned $25,961 to him, including $4,464 in interest. Defs.' Huarte Decl., ¶¶ 15(b), 15(c),

21   Exs. G, H; Ball Decl., Ex. 4 at 90:1-12, 108:21 - 111:12.

22   General Electric transferred stock owned by plaintiffs Richard and Jo-Ann Seitzinger to

23   California in 1994. Pls.' Comp., Exs. C at ¶ 4, D at ¶ 4. The Seitzingers learned about the escheat

24   through the Controller's Internet publication notice. *Id.* They submitted a claim for the shares in

25   September 2000, and the following month, the Controller returned $18,366 to them, including $3,986

26   in interest. Defs.' Huarte Decl., ¶ 16.

27

28

1    Plaintiff Johnstone Whitley and his daughter plaintiff Lynn Keith claim that the

2    Controller destroyed documentary evidence transferred to California by a trust company that would

3    have proved their family's interest in railroad rights of way.  Ball Decl., Ex. 5 at Interrog. No. 5.  But

4    the trust company transferred documents to the Controller in 1980 stating that the company sold the

5    railroad rights of way in 1977, and could not locate certain beneficiaries of the trust to pay them their

6    share of the sale proceeds.  These lost beneficiaries included Mr. Whitley's father and grandfather,

7    who were owed nearly $38,000 in trust assets.  Defs.' Huarte Decl., ¶ 17(a), Ex. J.  In 1986, the

8    Controller paid Mr. Whitley and another individual nearly $38,000 in trust assets.  Defs.' Huarte Decl.,

9    ¶ 17(b), Ex. K.  In other words, the evidence suggests that the Controller fully reimbursed plaintiffs for

10   their property interests.

11   Plaintiff Richard Valdes declares that the Controller seized shares of stock he owned in

12   Columbia Yacht Company but that he cannot recover those shares as a result of the Controller's

13   document retention policy and claims process.  Pls.' Comp., Tab F at ¶¶ 4, 5.  Yet Mr. Valdes admits

14   that none of the shares he now claims were transferred to California in his name.  *Id.*; Ball Decl.

15   Exs. 7, 8 at RFA No. 6.  Furthermore, he has testified in a related case that it is "possible" that his

16   memory is inaccurate and that he never owned the shares that he now claims, and he is unaware of any

17   documents that could prove his ownership.  Ball Decl., Ex. 9 at 65:23 - 66:16.

18   None of the plaintiffs alleges that the stock, cashier's check or documents at issue here

19   earned any interest prior to their escheat to the State.

20                            **STANDARD OF REVIEW**

21   **A.    The Standard For Summary Judgment is High on a Facial Challenge to a**
     **State Statute**
22

23   As with all motions for summary judgment, a court must view all evidence in the light

24   most favorable to the nonmoving party and make all reasonable inferences in favor of the nonmoving

25   party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 600-01 (1986).

26   Summary judgment must be denied where the factual record is inadequate for determining a

27   constitutional question.  *Mabey v. Reagan*, 537 F.2d 1036, 1050-51 (9th Cir. 1976).

28

1    However, in addition to the familiar requirements of Rule 56, the standard for summary

2    judgment is higher where, as here, plaintiffs challenge the constitutionality of state laws.  Long ago, in

3    another case challenging California's escheat statutes, the United States Supreme Court said that the

4    reasonableness of notice "'is one of local experience, on which this court ought to be very slow to

5    declare that the state Legislature was wrong in its facts' or abused its discretion."  *Security Sav.*

6    *Bank v. California*, 263 U.S. 282, 290 (1923) (citation omitted).

7    Thus, plaintiffs' burden of proof is higher because, despite pages of irrelevant

8    "evidence," they are actually mounting a facial challenge to the constitutionality of California's

9    Unclaimed Property Law.  In order to succeed on that challenge, plaintiffs must shoulder an additional

10   burden of proof:  They must "'establish that no set of circumstances exists under which the [statute]

11   would be valid.'"  *S.D. Myers, Inc. v. San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001), quoting

12   *United States v. Salerno*, 481 U.S. 739, 745 (1987).

13   Several things make it extremely difficult for plaintiffs to satisfy this high burden of

14   proof.  First, the question of what constitutes adequate notice is extremely fact-specific.  Courts must

15   give "due regard for the practicalities and peculiarities of the case," and "the constitutional validity of

16   any chosen method may be defended on the ground that it is in itself reasonably certain to inform those

17   affected, [citations omitted] or, where conditions do not reasonably permit such notice, that the form

18   chosen is not substantially less likely to bring home notice than other of the feasible and customary

19   substitutes."  *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950).  If the

20   Court determines that California provides constitutionally adequate notice, no further facts will be

21   required than those presented here.  If the Court determines otherwise, however, plaintiffs must present

22   evidence proving that there are additional reasonable and available forms of notice that the Controller

23   could provide.  Yet plaintiffs offer no such evidence at all.

24   Second, cases like *Jones v. Flowers,* 126 S. Ct. 1708, on which plaintiffs heavily rely,

25   were as-applied challenges, not facial challenges.  *Jones* involved an entirely separate inquiry into the

26   government's responsibility when it had *actual* knowledge that its otherwise constitutional form of

27   notice – in that case a certified letter returned as unclaimed – had failed.  126 S. Ct. at 1712.  By

28
MEMORANDUM OF POINTS AND AUTHORITIES IN                10
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

1    contrast, cases like *Anderson National Bank v. Luckett*, 321 U.S. 233 (1944) and *Texaco, Inc. v. Short*,

2    454 U.S. 516 (1982), on which defendants rely, deal with the facial validity of unclaimed property

3    statutes and the reasonableness of their notice provisions.

4            Third, as demonstrated below, the nature of the notice required for a permanent

5    deprivation of property differs substantially from notice required in the type of situation at issue here,

6    where owners may claim their property from the state at any time.  *See Anderson National Bank*,

7    321 U.S. at 246 (notice required for due process varies with circumstances).

8            Fourth, the nature of plaintiffs' claims and the circumstances under which the escheat of

9    their property occurred, differ enormously.  Pp. 7-9 above.  Given this wide variation, it is difficult to

10   know how plaintiffs could even succeed in defining the class that they wish to represent, much less

11   demonstrate that California's notice and interest provisions are invalid in all their applications.

12   **B.    _Taylor II is Not Binding as to Law or Facts_**

13           Plaintiffs claim that the Ninth Circuit in *Taylor II* "held that . . . the Controller violates

14   the Due Process Clause."  Pls.' Mem. at 15.  In fact, no federal court has ever determined the merits of

15   plaintiffs' claims (although two published California Courts of Appeal opinions have upheld

16   California's UPL against due process claims).  Certainly no appellate panel in this case has ever ruled

17   on the merits of these plaintiffs' claims.  *Suever*, 439 F.3d at 1146-47.  And *Taylor II* considered a

18   preliminary injunction, on a record of sharply disputed facts, without any discovery, and largely on the

19   basis of a new case – *Jones v. Flowers* – that the parties addressed at oral argument but had not briefed.

20           Plaintiffs ask this Court to equate "likelihood of success" at the preliminary injunction

21   stage with "success" on the merits, but the Supreme Court condemned that very reasoning in

22   *University of Tex. v. Camenisch*, 451 U.S. 390 (1981).  There, the Court reversed a decision that would

23   have denied defendants a trial on issues decided against them in preliminary injunction proceedings,

24   noting the "significant procedural differences" between preliminary and permanent injunctions.

25   451 U.S. at 394.  Preliminary injunctions are "customarily granted on the basis of procedures that are

26   less formal and evidence that is less complete than in a trial on the merits."  *Id.* at 395.  For that reason,

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN                    11
     SUPPORT OF DEFENDANT'S OPPOSITION TO
     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
     JUDGMENT – NO.: C 03-00156 RS

1    "the findings of fact and conclusions of law made by a court granting a preliminary injunction *are not*

2    *binding at trial on the merits.*" *Id.* (citations omitted) (emphasis added).

3          The same principles apply to cases based primarily on issues of law, and cases

4    presenting mixed questions of law and fact.  *See*, *e.g.*, *Southern Or. Barter Fair v. Jackson County*,

5    372 F.3d 1128, 1136 (9th Cir. 2004) (legal conclusions in preliminary injunctions "do not constitute

6    the law of the case."); *Clark v. K-Mart Corp.*, 979 F.2d 965, 968 (3d Cir. 1992) (rejecting factual

7    findings from preliminary injunction that were based on a "few hours" of testimony by competing

8    experts); *see also Mylett v. Jeane*, 910 F.2d 296, 299 (5th Cir. 1990) (findings of fact and law in

9    preliminary injunction are not binding at trial).  In short, "decisions on preliminary injunctions are just

10   that – preliminary."  *Southern Or. Barter Fair*, 372 F.3d at 1136.

## ARGUMENT

## I.

## PLAINTIFFS' MOTION IS PROCEDURALLY DEFECTIVE

**A.**    **Plaintiffs' Motion Fails to Provide Adequate Notice of the Relief Plaintiffs Seek**

15         Plaintiffs' pleadings are too internally inconsistent to tell either what issues are to be

16   litigated or what relief plaintiffs seek.  Plaintiffs' notice of motion says that the motion is in two parts,

17   seeking final determinations of whether the State's unclaimed property notice provisions violate the

18   due process clause of the Fourteenth Amendment and whether the State's failure to pay interest on

19   unclaimed property violates the Takings Clause of the Fifth Amendment.  Pls.' Notice of Mot. and

20   Mot. for Partial Summ. J. at 2.  Yet plaintiffs' memorandum also asks the Court to rule on their claims

21   that the state accepts property "outside the scope of the UPL" and has failed to promulgate

22   administrative regulations under the State's Administrative Procedure Act.  Pls.' Mem. at 22, 24.

23         Plaintiffs' memorandum asks for "permanent injunctive relief prohibiting prospective

24   violations of the Due Process Clause" (*id.* at 3), yet their proposed order contains no injunction and

25   merely asks the Court to "declare[ ] and adjudicate[ ]" that the State's notice and interest provisions are

26   unconstitutional.  There is not one word about accepting property outside the scope of the UPL or

27   failing to promulgate regulations and no proposed language for a permanent injunction.  For these

28
     12

1   reasons alone, the motion should be denied, because it fails to adequately explain what it is asking the

2   Court to do.

3   **B.      Plaintiffs' Request for Summary Adjudication of the First Cause of Action Fails on Eleventh Amendment Grounds**

4

5                 Plaintiffs move for summary adjudication of a claim – Count I for Declaratory Relief –

6   that this Court has already dismissed twice on Eleventh Amendment grounds. *See* 2003 *Suever* Order

7   at 5-7; 2006 *Suever* Order at 3.  Furthermore, the Ninth Circuit has twice held that the Eleventh

8   Amendment prohibits the retroactive relief plaintiffs seek. *See Suever*, 439 F.3d at 1148; *see also*

9   *Taylor I*, 402 F.3d at 935.  Retroactive relief includes declaratory relief that would pass judgment on

10   past acts, and declaratory relief that would "operate as an end-run around" the Eleventh Amendment

11   prohibition against damages because it could be used to win damages in state court. *Benning v. Bd. of*

12   *Regents of Regency Univ.*, 928 F.2d 775, 778 (7th Cir. 1991); *see also Taylor I*, 402 F.3d at 935;

13   *Suever*, 439 F.3d at 1148.  Plaintiffs' first count is directed exclusively at past acts. *See* Compl. at pp.

14   36-39.  Even if rewritten to relate to current practices, there would be no need for the declaration other

15   than to try to seek damages in state court, given that plaintiffs also seek injunctive relief.

16                 Alternatively, defendants have asserted a statute of limitations defense to this and all

17   claims designed to secure damages, and they request that the Court continue this motion so that they

18   can complete discovery to establish this and other defenses. *See* Fed. R. Civ. Proc. 56(f); p. 34 below.

19   **C.      Plaintiffs Fail to Meet the Standard for Permanent Injunctive Relief**

20                 To be entitled to injunctive relief, plaintiffs must show a "likelihood of substantial and

21   *immediate* irreparable injury." *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (emphasis added); s*ee*

22   *also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042-45 (9th Cir. 1999).  This they obviously

23   cannot do, because their own counsel has obtained a preliminary injunction on behalf of other plaintiffs

24   barring the State from accepting any unclaimed property at all.  Although plaintiffs acknowledge this

25   at page two of their memorandum and attach a copy of the injunction to their brief, they also ask this

26   Court to hold that they are entitled to summary judgment as a matter of law.

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN
      SUPPORT OF DEFENDANT'S OPPOSITION TO
      PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
      JUDGMENT – NO.: C 03-00156 RS

1        Even without the presence of the preliminary injunction, plaintiffs' allegations of

2   irreparable harm are simply untrue.  For example, plaintiffs allege that the Controller's Office sells

3   escheated securities within 30 days, relying on a 2006 declaration filed in another case.  Pls.' Mem.

4   at 9.  But plaintiffs' counsel knows from pleadings filed in the *Taylor* case that this is no longer true.

5   Defs.' Huarte Decl., ¶¶ 9, 10.  The Controller's office suspended this policy in June 2006, and in

6   January 2007, the new Controller ordered that no sales would take place until eighteen months after

7   securities escheat and one year after safe deposit box contents escheat.  *Id.*, ¶¶ 9, 10.

8        Plaintiffs also mislead the Court by asserting that prior to the injunction, "the Controller

9   immediately sold or destroyed *all* property."  Pls.' Mem. at 7, 12 (emphasis added).  The truth is that

10  the vast majority of unclaimed property – 74% in the most recent year – is never sold because it is in

11  the form of cash, thereby enabling owners to recover their property in its original form merely by filing

12  a claim.  Defs.' Huarte Decl., ¶ 7.  Circumstances vary for owners of unclaimed stock, which is subject

13  to sale.  Owners who file claims before sale recover their shares.  Owners who file after sale recover

14  the proceeds of the sale.  Whether the sale improved their position depends on factors such as whether

15  the stock price rises or falls between the date of escheat and the date of sale.  Whether an owner is

16  harmed by the inability to vote on corporate issues or attend shareholder meetings will vary by

17  individual.  Mr. Vondjidis, for example, incurred no such harm because he never engages in

18  shareholder activities.  Ball Decl., Ex. 4 at 63:10 - 67:7.

19       Thus, plaintiffs' "evidence" of irreparable harm is not only inadequate but affirmatively

20  misleading.  It is all the more so because, as plaintiffs know, the law they challenge is almost certain to

21  change.  As the Controller has stated publicly and to this Court, he expects the Legislature to amend

22  the UPL's notice and sale provisions as part of the State's budget process.  Defs.' Mot. to Enlarge

23  Time & Continue the Hr'g on Partial Summ. J. (filed on June 26, 2007) at 2, and evidence cited

24  therein.  Thus, by the time plaintiffs' motion is heard, the law will most likely have changed, and

25  plaintiffs' claims about lack of notice will be moot.  This circumstance itself is enough to defeat

26  plaintiffs' motion for permanent injunctive relief.  *See Hodgers-Durgin*, 199 F.3d 1037 at 1042 ("The

27  Supreme

28  MEMORANDUM OF POINTS AND AUTHORITIES IN             14
    SUPPORT OF DEFENDANT'S OPPOSITION TO
    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
    JUDGMENT – NO.: C 03-00156 RS

court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way.")

## II.

### PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE UNCLAIMED PROPERTY LAW'S NOTICE PROVISIONS

**A.    California's Unclaimed Property Program Satisfies Due Process**

The heart of plaintiffs' case is that the notice provisions of California's UPL violate the due process clause. This is not, however, an issue of first impression. Two California Courts of Appeal, relying upon *Texaco v. Short*, 454 U.S. 516, have upheld California's program against a due process challenge. Specifically, *Fong v. Westly*, 117 Cal. App. 4th 841, 855 and *Harris v. Westly*, 116 Cal. App. 4th 214, 222-23 held that because (1) property escheats to California by operation of law rather than adjudicative or administrative proceeding, and (2) California law establishes a program of custodial rather than permanent escheat, due process requires no more notice than that which is provided by the statute and the process of escheat (although the Controller provides more notice than that). By contrast, the Ninth Circuit has determined that plaintiffs demonstrated a likelihood of success on similar claims. *Taylor II*, 2007 WL 1557611 at *2-3. *See also Taylor III*, 2007 WL 1628050 at *2. The *Taylor II* court ignored *Texaco* and the other case most directly on point, *Anderson National Bank v. Luckett*, 321 U.S. 233, and instead relied upon *Jones v. Flowers*, 126 S. Ct. 1708, notwithstanding the fact that *Flowers* was an as-applied challenge to the permanent deprivation of property rather than a facial challenge to a system of custodial escheat.

None of these cases binds this Court. *See* pp. 11-12 above. *Texaco* and *Anderson*, by contrast, are binding, and *Fong* and *Harris* are persuasive because they apply *Texaco* to a challenge to California's system of custodial escheat. But even if they were not, plaintiffs' analysis of *Flowers* is flawed; the notice provisions of the UPL satisfy all standards of due process articulated by the Supreme Court.

**1.    California's notice provisions satisfy *Texaco* and *Anderson***

The Supreme Court last considered whether a custodial abandoned property program satisfied due process in *Anderson*, 321 U.S. 233. There, the Court concluded that the Kentucky

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

15

1    statutes governing abandoned bank deposits by themselves provided the notice due to bank account

2    owners of the conditions that would render their property presumptively abandoned and trigger the

3    bank's obligation to transfer the accounts to the state.  *Id.* at 243.  The Court held that such statutory

4    notice satisfies due process when coupled with notice posted on the courthouse bulletin board and the

5    notice provided by the seizure of the property itself.  *Id.* at 244.  Six years later, the Court in *Mullane*,

6    339 U.S. 306, affirmed *Anderson* when it distinguished the less rigorous notice required for abandoned

7    property from the more rigorous notice required for adjudicative procedures.  *See* 339 U.S. at 316.

8         Nearly 40 years later, in *Texaco v. Short*, the Supreme Court considered whether a state

9    must "advis[e] its citizens of actions that must be taken to avoid a valid rule of law that a mineral

10   interest that has not been used for 20 years will be deemed to be abandoned."  454 U.S. at 531.  It

11   answered the question in the negative:  "a legislature need do nothing more [to provide notice] than

12   enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its

13   terms. . . ."  *Id.* at 532.  On that basis, *Fong* found that the statutory notice provided by California's

14   UPL exceeded constitutional requirements.  *See* 117 Cal. App. 4th at 854 ("[D]ue process did not

15   require the Controller to give notice to plaintiffs under these circumstances beyond what plaintiffs had

16   already received constructively.").  In *Harris*, the Second District Court of Appeal concurred.  *See*

17   116 Cal. App. 4th at 223 & n.15.

18        Here, plaintiffs cannot complain that they did not have a fair opportunity to familiarize

19   themselves with the law.  California has had a custodial unclaimed property program since 1959, and

20   the United States Supreme Court upheld the State's prior abandoned property program in 1923.  *See*

21   *Security Sav. Bank v. Cal.*, 263 U.S. 282, 286-87 (1923).  Instead, plaintiffs assert that *Jones v.*

22   *Flowers* rejected as irrelevant such "constructive notice."  Pls.' Mem. at 18.

23        *Flowers* did no such thing; the opinion in that case does not even cite *Texaco*, let alone

24   overrule it.  Instead, *Flowers* emphasizes the other characteristic that distinguishes the line of cases

25   upon which it relies from *Texaco*:  *Flowers* addresses the *permanent* loss of a man's house rather than

26   the *custodial* escheat of stock or cash.  *Compare Flowers*, 126 S. Ct at 1716 (additional notice due

27   when "the subject matter of the letter concerns such an important and irreversible prospect as the loss

28

1  of a house") and *Mullane*, 339 U.S. at 311 ("We understand that every right which beneficiaries would

2  otherwise have . . . is sealed and wholly terminated by the decree" at issue) *with Texaco*, 454 U.S.

3  at 535 (distinguishing *Mullane* on ground that it involved an "'adjudication' . . . 'to be accorded

4  finality'" while owners in *Texaco* could reclaim their rights through subsequent adjudication) *and*

5  *Anderson*, 321 U.S. at 238 (addressing custodial escheat).  It was this distinction between permanent

6  and custodial escheat that *Fong* and *Harris* relied upon in part to uphold California's UPL against due

7  process challenges.  *Harris*, 116 Cal. App. 4th at 223 (finding "no constitutional dimension" to

8  deprivation of "one form of unclaimed property in favor of another."); *Fong*, 117 Cal. App. 4th at 854

9  (distinguishing cases involving permanent deprivations).

10       **2.       The notice provided by the Controller satisfies due process**

11              Even if *Texaco* and *Anderson* do not alone define the requirements of due process here,

12  the UPL goes much further than *Texaco* requires.  The UPL provides for two rounds of direct mail

13  notice: a first pre-transfer mailing by holders to virtually all owners at the addresses in the holders'

14  records, and a second post-transfer mail notice by the Controller to certain owners with different

15  addresses on file with the Franchise Tax Board ("FTB notice").  The law also provides for newspaper

16  publication notice, and in addition, the Controller provides Internet notice.  *See* pp. 5-6 above.

17  Plaintiffs claim, and the *Taylor II* panel agreed, that the direct mail notice sent by holders is irrelevant

18  and that the FTB notice is insufficient.  Pls.' Mem. at 17; *Taylor II*, 2007 WL 1557611 at *3.  Instead,

19  plaintiffs would have the Controller send direct mail notice to all owners "at the best available

20  address."  Plaintiffs also discount Internet notice and deem the Controller's newspaper publication

21  notice insufficient.  Pls.' Mem. at 17.  Instead, plaintiffs would require the Controller to publish

22  newspaper notice with the names and addresses of all unclaimed property owners.  *Id.*

23              The first error in plaintiffs' reasoning involves the relevance of the notice provided by

24  holders *prior* to escheat.  The *Taylor II* panel discounted the direct mail notice sent by holders,

25  reasoning that *Flowers* requires the State, rather than third parties, to give notice.  *See Taylor II*,

26  2007 WL 1557611 at *3.  But *Flowers* had no occasion to address – let alone decide – the issue,

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN                17
    SUPPORT OF DEFENDANT'S OPPOSITION TO
    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
    JUDGMENT – NO.: C 03-00156 RS

1   because third parties apparently play no role in the Arkansas tax-sale program.  A case cited by

2   *Flowers* with approval on other grounds,[11] however, does provide that private third parties may

3   participate in the State's provision of notice.  *See Plemons v. Gale*, 396 F.3d 569, 572 & n.3

4   (4th Cir. 2005) ("The Constitution only requires due process when the state or federal government

5   works the deprivation of property.  Appropriately, neither party disputes that the tax-sale procedure in

6   this case constitutes state action, *although state law charges a private party with providing notice*.")

7   (emphasis added).

8            When the Supreme Court has addressed the role of private parties in providing notice

9   under the due process clause, it has assumed what *Plemons* explicitly acknowledged.  *Mullane*

10  considered the notice required to inform beneficiaries that the trustee of their common trust fund

11  sought to settle related accounts through judicial action.  *See* 339 U.S. at 307.  The Court held that due

12  process allowed some beneficiaries to receive notice through newspaper publication alone, while more

13  easily ascertainable beneficiaries were entitled to mail notice.  *See id.* at 317-18.  But the Supreme

14  Court did not require the *state* to buy the newspaper advertising space or mail the letters of notice.

15  Instead, the Court affirmed the limited application of a statute that required the trustee – *i.e.*, Central

16  Hanover Bank – to publish notice, and suggested that the Bank send mail notice along with other

17  mailings that it periodically sent beneficiaries.  *See id.* at 317-18.  More recently, the Court considered

18  an Oklahoma probate code provision that required creditors to present claims against an estate within

19  two months of the publication of newspaper notice that probate had commenced.  *See Tulsa Prof'l*

20  *Collection Servs. Inc. v. Pope*, 485 U.S. 478, 479-480 (1988).  As in *Mullane*, the Court required mail

21  notice for all those creditors who had "reasonably ascertainable" addresses, and publication notice for

22

23

24

25

26

27   _____

28   [11] 126 S. Ct. at 1714 (citing *Plemons* with approval for anticipating the holding in *Flowers*).

1    others.  485 U.S. at 490.  The opinion anticipated that both forms of notice would be provided by a

2    private party[12] – the executor – while the state itself would provide no notice.  *See id.*

3            Furthermore, the UPL's procedures relating to the provision of notice by private parties

4    mirror procedures at the heart of the civil justice system.  Federal courts enter default judgments

5    against defendants who have "failed to plead or otherwise defend as provided by [the federal rules of

6    civil procedure]" when "that fact is made to appear by affidavit or otherwise."  Fed. R. Civ. P. 554(a).

7    Under the Federal Rules of Civil Procedure, notice of such default judgments need only be provided to

8    some litigants – *e.g.*, those who "ha[ve] appeared" – through service of "written notice."  Fed. R. Civ.

9    P. 554(b)(2).  The notice is not served by the court, of course, but by the plaintiff.  Federal law imposes

10   no duty on courts to verify whether plaintiffs have completed service; clerks need only accept the proof

11   of service filed by the plaintiff, through which plaintiff swears under penalty of perjury that plaintiff

12   did what the law required.  *See* Fed. R. Civ. P. 5(d).  Here, too, the Controller relies on holders'

13   verified statements that they have complied with the law.

14           Finally, because most of the plaintiffs owned securities that escheated to the state,[13]

15   there was an additional layer of protection in the form of a Securities and Exchange Commission

16   regulation requiring every recordkeeping transfer agent to use "reasonable care" to locate lost security

17   holders.  17 C.F.R. § 240.17Ad-17.  The regulation requires each agent to "conduct two data base

18   searches," using the owner's "taxpayer identification number or by name if a search based on taxpayer

19   identification number is not reasonably likely to locate the securityholder."  *Id*.  Thus, when a

20   corporation verifies under penalty of perjury that it is unable to locate a security holder, it is verifying

21   that it has conducted the searches required by both federal law and the UPL.

22

23   ───────────────

24   [12] As described in the opinion, the Oklahoma statute already required the private party to publish
     notice.  *See Tulsa*, 485 U.S. at 482.  The Court then went on to cite with approval probate statutes in

25   other states which provided for mail notice by private parties rather than states.  *See id*. at 490 (citing
     Cal. Prob. Code §§ 9050, 9100 (West Supp. 1988) and Nev. Rev. Stat. §§ 147.010, 155.010, 155.020

26   (1982)).

27   [13] The exceptions are Agnes Suever, who held a cashier's check from a holder that did not have her
     address, and Johnstone Whitley, who complains of lost trust documents from a trust company that did
     not have his address.  Defs.' Huarte Decl., ¶¶ 14, 17, Exs. C, K.

28   MEMORANDUM OF POINTS AND AUTHORITIES IN                          19
     SUPPORT OF DEFENDANT'S OPPOSITION TO
     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
     JUDGMENT – NO.: C 03-00156 RS

1    For all these reasons, the direct mail notice sent to virtually all owners prior to the

2    transfer or sale of their property is appropriate and must be included in the due process analysis.  This

3    round of mail notice for reasonably ascertainable owners coupled with the Controller's publication

4    notice for all others is all the Constitution requires – even in cases involving adjudicative proceedings

5    and permanent deprivations of property.  *See Tulsa Prof'l Collection Servs.*, 485 U.S. at 490;

6    *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *Mullane*, 339 U.S. at 317-18.

7    ### 3.    *Jones v. Flowers* **does not apply to these facts**

8    *Jones v. Flowers* did not change the rule described above.  *Flowers* considered whether

9    due process requires additional notice "*when notice of a tax sale is returned undelivered.*"  126 S. Ct.

10    at 1713 (emphasis added).  The Court reaffirmed that mail notice is adequate when the state "hear[s]

11    nothing back indicating that anything had gone awry."  *Id.* at 1714.  The issue decided in *Flowers* – the

12    "new wrinkle" that led the Court to grant certiori – is whether due process requires *more* once the

13    government has actual knowledge that its attempt at notice has failed.  *Id.*

14    In *Flowers*, Arkansas had actual notice that its two certified letters had not reached their

15    destination because both letters were "returned to the Commissioner marked 'unclaimed.'"  *Id.*  Here,

16    California has no notice whatsoever that the holders' mail notice failed when it receives unclaimed

17    property from the holder.  All the State knows is that the holders have sworn under penalty of perjury

18    that mail notice was sent to all owners required by law and that the owners did not respond.  A failure

19    to respond is not the same as a failure of notice.  The law presumes that mail has been received by the

20    addressee.  *Hagner v. United States,* 285 U.S. 427, 430 (1932); *Herndon v. De La Cruz (In re De La*

21    *Cruz)*, 176 B.R. 19, 22 (B.A.P. 9th Cir. 1994).  Absent proof to the contrary, the presumption is that

22    the holder's notice arrived at the owner's address, but might not have been acted upon because the

23    owner ignored the warning, or threw the envelope away unopened, or because the owner had passed

24    away.  Thus, while the return of an envelope marked "unclaimed" means in every case that the

25    envelope was not received and that further notice might help, the absence of a response indicates the

26    opposite.  Accordingly, the circumstance that triggered the requirement of an additional round of mail

27    notice in *Flowers* is not present here.

28    MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

20

**B.    Unless the Court Finds That California's Current Notice Provisions Are Facially Valid, a Genuine Issue of Material Fact Exists as to What Constitutes Reasonable Notice**

Plaintiffs' own evidence demonstrates that virtually all owners receive direct mail notice from the holders; more than a third of a million owners received additional direct mail notice last year from the Controller; and the Controller provides all owners newspaper publication notice, as well as Internet notice.  Pls.' Huarte Decl., ¶¶ 6-8.

If the Court determines that this notice is constitutionally adequate, no other facts will be relevant.  However, if the Court determines otherwise, *Flowers v. Jones*, requires a second step in the analysis to determine whether there are, in fact, additional reasonable forms of notice available to the Controller.  126 S. Ct. at 1718-19.  Plaintiffs offer no evidence on this issue.  By contrast, defendants' evidence demonstrates that additional forms of notice are not constitutionally required.[14]

*Flowers* made clear that additional steps may only be ordered if reasonable steps are in fact available.  *See id.*  Here, the only such steps are those already provided by law.  For example, one possibility involves sending a second round of mail notice to the addresses in the holders' reports, but such notice is unlikely to succeed given that the holders already sent notice to the addresses in their records and the owners did nothing.  Plaintiffs' circumstances underscore the challenge.  There are no reported addresses for Agnes Suever, Johnstone Whitley, Lynn Keith or the Seitzingers, and no report of even the name of Richard Valdes.  Had the Controller sent notice to the address Intel reported for Mr. Tucker, that notice would have arrived at an address he had vacated approximately three years earlier.  Had the Controller sent notice to the address HP reported for Mr. Vondjidis, it would have arrived at an office that had been closed for more than a decade.  *See* pp. 25-26 below.  "The law does not require the doing of a futile act."  *Ohio v. Roberts*, 448 U.S. 56, 74 (1980), *abrogated on other grounds*, *Crawford v. Washington*, 541 U.S. 36, 60 (2004).

---

[14] The Controller believes, however, that as a matter of policy, the state should do more to reunite lost owners with their property.  He has therefore sponsored legislation to require additional forms of notice and he supports a trailer bill to the State Budget, described above, which would also provide for additional notice.  *See* Cal. Senate Bill No. 919.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT – NO.: C 03-00156 RS

21

1    Possibly in acknowledgement of these facts, plaintiffs suggest that the Controller be

2    required to seek out the "best address available" for all owners.  Pls.' Mem. at 17.  They cannot cite

3    any authority supporting the request because *Flowers* flatly rejected the argument that a state should be

4    required to search for a "new address in the . . . phonebook and other government records such as

5    income tax rolls."  126 S. Ct at 1719.  Indeed, California already seeks out different addresses for

6    owners by requesting addresses from the FTB for all owners whose names are reported along with

7    social security numbers.  Last year, California mailed out 360,000 such notices, Defs.' Huarte Decl.,

8    ¶ 4, greatly exceeding its constitutional obligations.

9    With respect to owners whose whereabouts are not reasonably ascertainable, the

10   Supreme Court has held that newspaper publication notice of the type California uses is "clearly"

11   adequate.  *Mullane*, 339 U.S. at 317; *Tulsa Prof'l Collection Servs.*, 485 U.S. at 490.  Plaintiffs would

12   like the Controller to list the names of owners in newspaper ads, but *Mullane* forecloses the argument.

13   There, plaintiffs challenged a statute requiring newspaper publication notice without requiring

14   publication of the names of those with property interests at issue.  339 U.S. at 310.  The Court

15   acknowledged that "[t]he chance of actual notice is further reduced when as here the notice required

16   does not even name those whose attention it is supposed to attract."  *Id.* at 315.  Nevertheless, it upheld

17   statutory notice for beneficiaries who were not reasonably ascertainable.  *Id.* at 317.  In other words,

18   the Court decided that newspaper notice without names is constitutionally adequate even though it

19   might be more effective to include names.

20   At a minimum, the available evidence creates a genuine issue of material fact about

21   whether publication of names and addresses on the Internet is more reasonable *and* more effective than

22   newspaper publication.  The U.S. Census Bureau reports that people increasingly spend more time

23   using the Internet, and less time reading daily newspapers.  Defs.' Request for Judicial Notice, Ex. 1 at

24   Tables 1110, 1138.  More homes and workplaces are signing up for the Internet, and fewer subscribe to

25   daily newspapers.  *Id*. at Tables 1111, 1114, 1137, 1143.  These statistics are consistent with plaintiffs'

26   experiences.  The Seitzingers admit that they learned about the escheat of their stock through the

27   Controller's Internet notice.  Pls.' Comp., Tab C, ¶ 4.  Mr. Tucker admits that he did not read

28   MEMORANDUM OF POINTS AND AUTHORITIES IN               22
     SUPPORT OF DEFENDANT'S OPPOSITION TO
     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
     JUDGMENT – NO.: C 03-00156 RS

1   California newspapers at the time that his stock escheated and now spends more time reading the

2   Internet than newspapers.  Ball Decl., Ex. 3 at 137:12 - 140:4.  Mr. Vondjidis, who lives in Canada,

3   has never subscribed to a California newspaper, but he has visited the Controller's website.  Ball Decl.,

4   Ex. 4 at 27:9-24.

5           Finally, the evidence demonstrates that the UPL's current notice practices are more

6   successful in reuniting owners and their lost property than the practices plaintiffs would impose.

7   During the years that the current practices have been in place, the Controller has returned a greater

8   percentage of the unclaimed property that escheats to the state each year than during the years when

9   plaintiffs' proposed practices were in place.  For example, last fiscal year, the Controller's Office

10  returned 45% of the unclaimed property that escheated to the State to owners who filed claims.  This

11  rate was far lower when the UPL required the Controller to provide notice to owners before their

12  property escheated to the State, and publish newspaper notice with the names of apparent owners.  For

13  example, in 1985-86, only 17% of the unclaimed property received by the State was returned to

14  owners.  Defs.' Huarte Decl., ¶ 20.  Thus, although the Controller supports sending additional mail

15  notice in the hope that it may attract owners' attention, such notice is not constitutionally compelled.

16                                              **III.**

17      **PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT**
        **ON THEIR CLAIMS THAT THE CONTROLLER ACCEPTS PROPERTY**
18      <u>**OUTSIDE THE SCOPE OF THE UNCLAIMED PROPERTY LAW**</u>

19  **A.     Plaintiffs Offer No Case Law to Support Their Claim That the State Must Independently**
20          <u>**Verify That Property is Subject to Escheat**</u>

21          Plaintiffs argue that the Controller "indiscriminately seizes and sells property outside

22  the UPL."  Pls.' Mem. at 20.  The Controller, however, does not, "seize" property.  Rather, unclaimed

23  property escheats to the State by operation of law, as described above.  *See* pp. 4-5; *see also Texaco*,

24  454 U.S. at 533-34.

25          Plaintiffs also claim that the Controller "does nothing to verify that it actually has the

26  legal right to accept the property it takes into custody under the UPL."  Pls.' Mem. at 20.  Plaintiffs

27  point to no law, however, that imposes a duty on the Controller to verify the truth of the assertions in

28

1  the holders' reports, made under penalty of perjury, that plaintiffs' whereabouts were in fact unknown,

2  nor do they explain how the Controller could carry out this duty even if it had been imposed.

3  §§ 1516(d), 1530.  Under state law, the duty to verify, in both the practical and the legal sense, lies

4  with the holder:

5        The [holder's] report, if made by an individual, shall be verified by the
        individual; if made by a partnership, by a partner; if made by an
6        unincorporated association or private corporation, by an officer; and if
        made by a public corporation, by its chief fiscal officer or other
7        employee authorized by the holder.

8                                    § 1530(e).

9        Thus, holders must verify under penalty of perjury that their report is full, true, and

10  complete.  The Controller does not, and has no obligation to, confirm the accuracy of the 13,000 or so

11  reports received each year.  Pls.' Huarte Decl., ¶ 6; Defs' Huarte Decl., ¶ 3.  Instead, the Controller

12  ensures that all holders' reports are verified, and if they are not, his office follows up to secure the

13  verification.  Defs.' Huarte Decl., ¶ 3.

14        Plaintiffs offer not a single federal case suggesting that states have a constitutional duty

15  to verify the information contained in the holders' reports.  The Supreme Court has made clear that "it

16  is within the constitutional power of the state to protect the interests of [bank] depositors from the risks

17  which attend long neglected accounts, by taking them into custody when they have been inactive so

18  long as to be presumptively abandoned [citations omitted], just as it may provide for the administration

19  of the property of a missing person."  *Anderson*, 321 U.S. at 241; *see also Provident Inst. for Sav. v.*

20  *Malone*, 221 U.S. 660, 664 (1911) (affirming "right and power" of state to pass legislation escheating

21  abandoned property to state) (citing *Cunnius v. Reading Sch. Dist.*, 198 U.S. 458, 471 (1905) (it is

22  well-established that governments have right to regulate abandoned property)).  It has also made clear

23  that states have jurisdiction to exercise custodial and even permanent escheat over intangible property,

24  such as an interest in a corporation, and it has established rules that govern *which* state is entitled to

25  take custody of the property.[15]  Not one of these cases even suggests that before a state may exercise

26

27  [15] *See Delaware v. N.Y.*, 507 U.S. 490, 497-500 (1993) (addressing custodial escheat); *Standard Oil Co. v. State of N.J.*, 341 U.S. 428, 441 (1951) (addressing permanent escheat).

28  MEMORANDUM OF POINTS AND AUTHORITIES IN
    SUPPORT OF DEFENDANT'S OPPOSITION TO
    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
    JUDGMENT – NO.: C 03-00156 RS

                                    24

1    jurisdiction over unclaimed property it must independently verify the holder's own verification that the

2    property meets the statutory requirements for escheat.

3            Nevertheless, plaintiffs insist that it is the Controller's responsibility to verify the

4    accuracy of the holders' reports.  They fail to say, however, how this is to be done.  In effect, they ask

5    the Court to order the Controller to verify that the owner has not cashed a dividend check,

6    corresponded with the holder or otherwise indicated an interest in the property for three years and that

7    the owner failed to respond to the holder's notice of escheat.  But this information is solely within the

8    control of the holder and owner, and it would be difficult, if not impossible, for the Controller to

9    verify, for example, that the owner had no contact with the holder for three years or that the holder's

10   address records for the owner were up-to-date.  Thus, plaintiffs propose a rule that would effectively

11   eviscerate every unclaimed property program in the nation.  If they are going to ask this Court to take

12   such a step, they should at least provide some authority that it is constitutionally compelled.

13   **B.    Plaintiffs' Evidence Fails to Demonstrate That the Controller Accepts Property Not
        Subject to Escheat**

14            Even if plaintiffs' construction of the law were correct, they fail to establish that the

15   Controller "receives" property that is outside the scope of the UPL.  In fact the holders either reported

16   that the owners were unknown or that their whereabouts were unknown.  If plaintiffs dispute the

17   accuracy of this information, their dispute is with the holder, not the Controller.[16]  At a minimum, they

18   must present competent, probative evidence, which defendants are entitled to test at trial, that their

19   allegations about the holders' knowledge are true and that the holders' knowledge can somehow be

20   imputed to the Controller.  This they have not done.

21            For example, the Seitzingers support their claim that GE "was in possession of [their

22   name and address] at the time of the seizure of our stock" with testimony that "GE communicated with

23   our family regularly, sending us DRIP statements, annual reports and proxy materials."  Pls.' Comp.,

24   Ex. C, ¶ 5.  Whether they received communications from GE historically proves nothing about whether

25

26   _____

27   [16] Plaintiffs do not claim that the Controller knew or should have known that the holders who
     transferred their property to the State knew how to find them.  Not one plaintiff suggests that the
     Controller was on notice that the holders transferred their stock despite knowing how to find them.

28

1    GE knew where they were in 1994.  In fact, when General Electric transferred the Seitzingers' stock to

2    the Controller, it reported no last known street address for the Seitzingers, only a city and zip code.

3    Defs.' Huarte Decl., ¶ 16(a), Ex. I.

4              Mr. Tucker declares that Intel knew his name and address "at the time of the seizure of

5    [his] stock" in 1991 because he was a former Intel employee and because Intel located him "to discuss

6    a separate matter at about the same time that my stock 'escheated'."  Pls.' Comp., Ex. E, ¶ 5.  Yet

7    Mr. Tucker previously testified that "in 1993 . . . Intel . . . needed to contact me as a result of some

8    changes to the Intel pension fund.  They did not have my current address . . . ."  Ball Decl., Ex. 3

9    at 46:16 - 48:20.  In other words, Mr. Tucker knows that Intel did *not* have his address.  And when

10   Intel transferred Mr. Tucker's stock in November 1991, it reported an address that Mr. Tucker admits

11   he had left nearly three years before.  *Compare* Defs.' Huarte Decl., ¶ 18, Ex. L *with* Pls.' Comp.,

12   Ex. E, ¶ 2.

13             Similarly, Mr. Valdes' declaration that he was never "'unknown' to Columbia Yacht"

14   Company proves nothing relevant.  Pl. Comp., Tab F, ¶ 6.  Columbia Yacht was sold to another

15   company (Whittaker) in 1967, which transferred the unclaimed shares to the Controller in 1994.  Ball

16   Decl., Ex. 9 at 22:9 - 23:24.  There is no evidence that Whittaker knew Mr. Valdes' whereabouts in

17   1994, or had any reason to know them, given that Mr. Valdes may not have owned any of the

18   transferred stock.  *See* p. 9 above.[17]  When Whittaker reported the stock shares that Mr. Valdes claims

19   to own, Mr. Valdes was not listed among the owners.  Ball Decl., Exs. 7, 8 at RFA No. 6.

20             As for foreign residents like Mr. Tucker, California law provides that when the last

21   known address of an owner is in a foreign nation and the holder is domiciled in this state, the property

22   escheats to the State.  § 1510(d).  Plaintiffs have not argued, much less offered evidence to prove, that

23   Intel was not domiciled in California at the time Intel transferred Mr. Tucker's stock to the State.  The

24   key questions are where the stock was issued and where the holder, in this case Intel, was domiciled

25

26   [17] The same is true with respect to the other Plaintiffs.  World Savings Bank and Ticor Trust Company
     reported no addresses for Mrs. Suever or Mr. Whitley's father and grandfather.  Defs.' Huarte Decl.,
27   ¶¶ 14, 17, Ex. C, K.  Hewlett Packard reported an old address for Mr. Vondjidis.  Defs.' Huarte Decl.,
     Ex. 15(a), Ex. F; Ball Decl., Ex. 4 at 40:1-5.

28

1  when Mr. Tucker's stock escheated. In 1991 and even today, Intel had its principal place of business

2  in California, which is where it issued its stock.[18]  And if Intel wrongly believed it was domiciled in

3  California at the time it transferred Mr. Tucker's stock, the Controller was entitled to rely on that

4  verified representation.

5          Finally, even if plaintiffs had adequately supported their claims, the stories of four

6  individuals do not prove a systemic problem justifying relief directed at the entire program. It would

7  only prove that these plaintiffs are entitled to relief tailored to them. Plaintiffs have not met their

8  burden of demonstrating that California routinely accepts property outside the UPL.

                                        **IV.**

9

10        **PLAINTIFFS' CLAIM THAT THE CONTROLLER HAS VIOLATED THE
          ADMINISTRATIVE PROCEDURES ACT IS BARRED**

11

12  **A.      Plaintiffs' APA Claim is Wrong as a Matter of Law**

13          Plaintiffs argue that the Controller has not complied with California's Administrative

14  Procedure Act ("APA") by promulgating regulations regarding the UPL's claims process. Pls.' Mem.

15  at 22-24. Because this Court "lacks jurisdiction over any claim seeking to enforce state law where the

16  effort to do so is based on anything other than an alleged federal constitutional right held by plaintiffs,"

17  however, plaintiffs' claim fails as a matter of law. 2006 *Suever* Order at 6:1-3; *see also Taylor II*, 2007

18  WL 1557611 at *3 & fn. 18 (because "federal courts lack jurisdiction to issue injunctions ordering

19  compliance with state law, plaintiffs' request for such relief should be rejected.") (citing *Pennhurst*

20  *State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-25 (1984)); *Suever*, 439 F.3d 1142, 1148.

21          Even if the Eleventh Amendment did not bar determination of the issue, plaintiffs

22  cannot prevail because the APA does not apply to the UPL's claims process. In 1998, the Legislature

23  added the following provision to the UPL: "Following a public hearing, the Controller shall adopt

24  guidelines and forms that shall provide specific instructions to assist owners in filing claims pursuant

25  to this article." § 1540(e) (Stats. 1998, ch. 1029, § 1). The statute thus required a public comment

26  process *similar* to that required in the APA, but it did not require compliance with the APA itself. Pls.'

27  ---

[18] *See* Intel Corp., <http://www.intel.com/ and follow "contact Us" hyperlink).

28
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

1   Huarte Decl. ¶ 22.  Furthermore, the APA  does not apply to "[a] form prescribed by a state agency or

2   any instructions relating to the use of the form."  Cal. Gov't Code § 11340.9(c).  The Controller's

3   claim forms and guidelines for making a claim are therefore exempt from the APA.[19]

4   **B.    Plaintiffs Cannot Demonstrate That the Due Process Clause Requires Promulgation of
        Formal Regulations**

5

6           Plaintiffs cite not a single authority for the proposition that APA-promulgated

7   regulations are *required* to assure due process.  Because the Controller's claims process forms and

8   guidelines were implemented following a public hearing and comments, and are easily available on his

9   website, the public has had ample notice of the UPL claims process and the guidelines that govern it.

10  Pls.' Huarte Decl., ¶ 22; Defs.' Huarte Decl., Ex. B.  The guidelines, which appear as Exhibit B to

11  defendants' Huarte declaration, spell out in clear, simple terms what a person must do in order to file a

12  claim for property.  *See* Defs.' Huarte Decl., ¶ B.

13          In addition, section 1541 allows "any person aggrieved by a decision of the Controller

14  or as to whose claim the Controller has failed to make a decision within 180 days after the filing of the

15  claim" to "commence an action . . . to establish his or her claim" in any city in which the state Attorney

16  General has an office.  These procedures are more than ample under the due process clause.

17  **C.    Genuine Issues of Fact Exist With Respect to Plaintiffs' "Evidence" About the Sufficiency
        of the State's Claim Procedure**

18          Finally, plaintiffs rely upon disputed facts in support of their argument:

19          [S]ome Plaintiffs' property (such as Plaintiffs Valdes, Keith, and
            Whitley) is maintained in the Controller's custody forever . . ., because

20

21  [19] In fact, plaintiffs' specific request for an injunction requiring the Controller to "immediately present
    lawful regulations to this Court" (Pls.' Mem. at 24) regarding notice, verification, and interest, does
22  nothing to correct the harm of which they complain.  Moreover, such an injunction would itself violate
    the APA, which requires a lengthy public comment and review process.  *See* Cal. Gov't Code § 11340
23  *et seq.* (West 2007).  Finally, such regulations are unnecessary because the UPL itself is quite specific;
    regulations on these issues would be duplicative.  *See, e.g.*, Cal. Gov't Code § 11340.9(f) (APA does
24  not apply to a regulation that embodies "the only legally tenable interpretation of a provision of law").
    This is borne out by the fact that in response to the preliminary injunction in *Taylor III*, the Controller
25  is pursuing new statutory provisions, not new regulations, to address the issues raise by that court.
    Defs.' Huarte Decl., ¶ 10.  The Controller must do so, because he cannot promulgate regulations that
26  contradict the UPL:  "'Administrative regulations that violate acts of the Legislature are void and no
    protestations that they are merely an exercise of administrative discretion can sanctify them.  They
27  must conform to the legislative will if we are to preserve an orderly system of government.'"
    *Agricultural Labor Relations Bd. v. Superior Court*, 16 Cal. 3d 392, 419 (1976) (citation omitted).

28

1    they cannot comply with the unwritten, arbitrary "process" used to
2    perfect a claim. Each of these Plaintiffs has attempted to "claim" his or
     her property but was turned away by the Controller, who continues to
3    hold their private property.

4                          Pls.' Mem. at 23.

5          First, plaintiffs provide no factual support for this claim, which in itself is a ground for

6    denying summary judgment. *See Orr v. Bank of Am.*, 285 F.3d 764, 774-75 (9th Cir. 2002) (failure to

7    cite pages of deposition "warrants exclusion of the evidence"). The reason plaintiffs provide no

8    evidence is because there is no record at all that the Controller holds property belonging to Mr. Valdes,

9    Ms. Keith, or Mr. Whitley. *See* pp. 8-9 above; *see also* Defs.' Huarte Decl., ¶¶ 17(a), 19. The only

10   reason these plaintiffs feel the claims process failed, apparently, is because they did not receive the

11   answers they wanted. Plaintiffs do not, after all, dispute that each plaintiff who claimed property

12   actually held by the Controller retrieved that property after following the claims procedure they attack

13   here. *See* pp. 8-9 above. Claims that the Controller violated the APA and the due process clause

14   cannot succeed simply because some plaintiffs are unhappy with the outcome of a process that worked

15   as it should.

16         The Controller cannot be charged with lack of a process for recovering property that he

17   does not have. At a minimum, there is a genuine issue of fact as to whether the Controller holds any of

18   these plaintiffs' property at all.

19                                  **V.**

20          **THE FIFTH AND FOURTEENTH AMENDMENTS DO NOT REQUIRE
            THE STATE TO PAY INTEREST ON UNCLAIMED PROPERTY**

21   **A.      The Takings Clause Does Not Require the State to Pay Interest**

22         Like the majority of states,[20] California does not pay interest on unclaimed property

23   once it escheats to the State. § 1540(c) ("No interest shall be payable on any claim paid under" the

24   unclaimed property law.). Plaintiffs' argument that this amounts to an unconstitutional taking has been

25   consistently rejected by state courts, for good reason. *See Sogg v. Ohio Dep't of Commerce,* 2007 WL

26

27   _____

28   [20] *See* footnote 9 above.

     MEMORANDUM OF POINTS AND AUTHORITIES IN                 29
     SUPPORT OF DEFENDANT'S OPPOSITION TO
     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
     JUDGMENT – NO.: C 03-00156 RS

1   1821396, *10 (Ohio App. June 21, 2007) (retention of interest on abandoned property is not an

2   unconstitutional taking); *Hooks v. Treasurer*, __ So. 2d __, 2007 WL 1299883, *6 (La. App.

3   May 4, 2007) (decision to "award owners only post-abandonment interest" on certain types of property

4   is not an unconstitutional taking); *Clark v. Strayhorn,* 184 S.W.3d 906, 910, 915 (Tex. App. 2006) (no

5   unconstitutional taking of interest on abandoned property) *cert. denied*, 126 S. Ct. 508 (2006); *Smyth v.*

6   *Carter,* 845 N.E.2d 219, 223-24 (Ind. Ct. App. 2006) (common-law principle that "interest follows

7   principal" "does not apply where an owner's actions cause the loss of rights of ownership"; thus

8   retention of interest is not an unconstitutional taking), *cert. denied*, 127 S. Ct. 1155( 2006); *Smolow v.*

9   *Hafer,* 867 A.2d 767, 775-76 (Pa. Comw. 2005) (dismissing complaint alleging that failure to pay

10  interest on abandoned property is unconstitutional).

11           First, it is clear that states may use abandoned property for the general good:

12               As a broad principle of jurisprudence rather than as a result of the
                 evolution of legal rules, it is clear that a state, subject to constitutional
13               limitations, may use its legislative power to dispose of property within its
                 reach, belonging to unknown persons. Such property thus escapes
14               seizure by would-be possessors and is used for the general good rather
                 than for the chance enrichment of particular individuals or organizations.

15                                 *Standard Oil,* 341 U.S. at 436.

16           Not one of the Supreme Court cases upholding the states' rights of escheat even

17  mentions a duty to pay interest, much less holds that payment of interest is one of the "constitutional

18  limitations" mentioned above. Over the years, holders have challenged various states' escheat laws,

19  arguing that they violate either the holders' or the owners' due process rights.[21] In none of those cases

20  has the Supreme Court ever suggested that states have a duty to pay interest on escheated property.

21  The reason is that the Takings Clause protects rather than creates property interests, and therefore the

22  existence of a property interest is determined by "'existing rules or understandings that stem from an

23  independent source such as state law.'" *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164

24  (1998) (*quoting Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Here, the

25  underlying property or principal was not unlawfully taken, and the State has expressly stated that no

26

27  _____

28  [21] *See id. See also Anderson,* 321 U.S. at 239-240 (1944); *Security Sav. Bank,* 263 U.S. at 285 (1923).

1    interest shall be paid on unclaimed property.  § 1540(c).  Thus, there is simply no cognizable property

2    interest at issue here that is protected by the Takings Clause.

3          Plaintiffs nevertheless argue that under the common law doctrine that "interest follows

4    principal," the state must pay interest on unclaimed property.  Pls.' Mem. at 24-28.  The chief case on

5    which they rely is *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 (1980), in which a

6    company filed a complaint of interpleader in state court and tendered the disputed amount to the court.

7    The court then deposited the money in an interest-bearing account but when the case concluded, the

8    court, pursuant to Florida law, kept the interest.  The company sued, and the Supreme Court found a

9    violation of the Takings Clause.[22]

10          The argument that *Webb's* requires the payment of interest on unclaimed property,

11    however, has been thoroughly rejected.  *See Sogg,* 2007 WL 1821306 at **4-5; *Clark,* 184 S.W.3d

12    at 914-15.  First, unlike unclaimed property, or failure to assert rights in the property, *Webb's* involved

13    private property given to a third party to hold, and there was never any lapse in title.  "There is an

14    important distinction between property like that at issue in *Webb's* and property like that in *Texaco* that

15    is unused for a statutorily prescribed period of time – a difference that is critical to our analysis."

16    *Sogg,* 2007 WL at 1821306 at *6; *see also Clark,* 184 S.W.3d at 914-15 (rejecting argument that

17    *Webb's* applies, and holding that such property is not held in trust exclusively for owner).  Second, the

18    property at issue in *Webb's* was deposited in a segregated, interest-bearing account, where the interest

19    earned was easily ascertainable.  *See Sogg,* 2007 WL 1821306 at *2.  In contrast, as discussed in the

20    next section, unclaimed property in California is deposited in an operational account that is not

21    interest-bearing or segregated.  In short, no interest is generated by the unclaimed property.  For these

22    reasons, *Webb's* and the other cases on which plaintiffs rely are irrelevant.

23          In *Taylor I,* 402 F.3d at 931, the Ninth Circuit, in reviewing the statutory provisions of

24    the UPL, said that the Controller holds unclaimed property in "trust" for the unknown owners, and

25

26    [22] Similarly, and more recently, the Supreme Court has held that interest earned on IOLTA accounts
      "'is the private property of the owner of the principal.'"  *Brown v. Legal Found. of Wash.,* 538 U.S.
27    216, 235 (2003) (quoting *Phillips v. Washington Legal Found.,* 524 U.S. 156, 172 (1998)) (together the
      "IOLTA" cases).

28    MEMORANDUM OF POINTS AND AUTHORITIES IN            31
      SUPPORT OF DEFENDANT'S OPPOSITION TO
      PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
      JUDGMENT – NO.: C 03-00156 RS

1   plaintiffs will no doubt seize on this to argue that the State has a fiduciary obligation to generate and

2   pay interest.  But the argument fails for several reasons.  First, the Ninth Circuit's statement is dictum,

3   because it was not relevant or necessary to its Eleventh Amendment holding.  As such, the court's

4   interpretation of state law (i.e. that the UPL acts as a trust) is not controlling on the issue of whether

5   the state must pay interest.  *Moore v. Sims,* 442 U.S. 415, 429 (1979) (state courts and not federal

6   courts "are the principal expositors of state law."); *United States v. Thirty-Seven Photographs,*

7   402 U.S. 363, 369 (1971) (federal courts "lack jurisdiction authoritatively to construe state

8   legislation").  Here, the state courts have never interpreted the UPL as creating a trust, and in fact, have

9   consistently held that it has the dual purpose of conserving unclaimed property for the unknown

10  owners while also providing the state the benefit of the use of such property.  *See* p. 6 and cases cited

11  therein.  That, of course, is inconsistent with a traditional trust relationship.

12       Second, the Ninth Circuit relied heavily on its belief that unclaimed property remained

13  in a special account and therefore was being "held by the state as custodian in trust for [the owners],

14  rather than as the state's own funds."  *Taylor I*, 402 F.3d at 931.  But proceeds from unclaimed

15  property are deposited in an unsegregated operational account and, within a month, deposited in the

16  state's general fund.  § 1564(c).

17       Third, the Ninth Circuit's statement fails to read the UPL as a whole and ignores

18  provisions that clearly demonstrate that the Legislature did not intend to create a traditional trust

19  relationship.  These include the provisions stating that no interest shall be paid on unclaimed property

20  (§ 1540(c)), limiting the Controller's liability (§ 1566), requiring proceeds of the property to be

21  deposited in the general fund (§ 1564(c)), and stating that the purpose of the unclaimed property laws

22  is to provide the state with title and use of such property (§§ 1300(c), 1305).  All of these are

23  inconsistent with a traditional trust relationship.  *See Leider v. United States,* 301 F.3d 1290, 1298-99

24  (Fed. Cir. 2002) (statutory silence about the payment of interest is "fatal to the argument" that the

25  provision "imposes a fiduciary trustee obligation on the government to invest unlocated creditor's

26  funds productively or to pay constructive interest to unlocated creditors.").

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN                    32
    SUPPORT OF DEFENDANT'S OPPOSITION TO
    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
    JUDGMENT – NO.: C 03-00156 RS

1     Finally, other courts have consistently rejected the argument that unclaimed property

2   laws like California's establish a trust relationship. *Smyth*, 845 N.E.2d at 223 ("Smyth's reliance on

3   the custodial nature of the Act is misplaced."); *Sogg,* 2007 WL 1821306 at *7 (state not obliged to pay

4   interest to owners where escheat program is not "purely custodial"; "common law maxim that 'interest

5   follows principal'" is inapplicable); *Clark*, 184 S.W.3d at 912-13 (because abandoned property is

6   placed in state's general revenue fund, abandoned property law does not create a trust).

7   **B.     There Is no Takings Because No Interest Was Generated**

8     There is a second reason plaintiffs' argument fails: Even if the state's failure to provide

9   interest implicates the Takings Clause, and it does not, plaintiffs have failed to establish a cognizable

10  property interest for which they are entitled to compensation.

11    Under California's UPL, all proceeds from escheated property are deposited in the

12  Abandoned Property Account until transferred to the General Fund, neither of which is a trust account

13  or interest-bearing account. *See* p. 6 above. In sum, once unclaimed property comes in, it is used to

14  pay either administrative expenses or claims or transferred to the General Fund, where it is

15  commingled and used to pay current expenses. The property never generates interest.

16    The case on point is *Leider v. United States,* 301 F.3d 1290. There, a bankruptcy court

17  issued a check to Leider, an unsecured creditor, but because of a change of address, Leider did not

18  receive the check. Under federal bankruptcy law, creditor checks that are not cashed within 90 days

19  are deposited in the U.S. Treasury but may be reclaimed at anytime by the creditor. Once he

20  discovered he was entitled to the payment, Leider filed a petition for the amount of the check plus

21  interest. The government paid the check proceeds but not interest, and Leider filed suit claiming that

22  he was entitled to interest on the check under the Takings Clause. *Id.* at 1292-93. Like plaintiffs here,

23  Leider argued that *Webb's* required that "interest follow principal" and therefore he was entitled to

24  interest for the period the government held the check proceeds. *Id.* at 1296. The court rejected the

25  argument, holding that because the funds were deposited in the general treasury account and did not

26  generate ascertainable interest, Leider could not assert a valid property right under the Takings Clause.

27  The court rejected plaintiff's argument about interest following principal, holding that

28

1    such a rule does not apply to the present circumstances, where interest
2    never was generated.  According to Mr. Leider's own complaint, "the
     Defendants . . . make no effort to properly protect the principal of the
3    unclaimed funds by investing it in interest bearing accounts."  In short,
     because there existed no interest, there was nothing that could be taken.
4    Accordingly, the transformation of "private property into public property
     without compensation" to which the Supreme Court referred in *Phillips*
     never occurred.

5

6                            301 F. 3d at 1297.[23]

7          Plaintiffs' reliance on two cases that ordered interest to be paid on unlawfully seized

8    property is also misplaced.  Pls' Mem. at 27-8 (*citing United States v. $133,735.30 U.S. Currency*,

9    139 F.3d 1491 (9th Cir. 1998), *United States v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir. 1995).

10   As the *Leider* court observed, those cases are not relevant because the courts there were determining

11   "the amount of just compensation after concluding that a taking had occurred, which is irrelevant to . . .

12   whether interest that was never earned may satisfy the threshold property interest requirement."

13   *Lieder v. United States*, 301 F.3d at 1298 fn. 6.  In other words, those cases involved an unlawful

14   taking of the underlying property itself.  Here, the underlying property in the UPL is not taken

15   unlawfully.  *Taylor I*, 402 F.3d at 936.  Moreover, in both cases, the property was supposed to be

16   deposited in interest-bearing accounts, a fact that both courts relied on.  Here, of course, no interest

17   was earned or expected to be earned.  Finally, the courts in those case were troubled by the fact that the

18   government had benefited from the use of the property, but this case involves a custodial escheat

19   where courts have universally found it acceptable and appropriate for the government to use property

20   in the interim for the public good.

21

22

23

24   _____
     [23] *See also Texas State Bank v. United States*, 423 F.3d 1370, 1379-80 (Fed. Cir. 2005) (in rejecting
25   takings claim regarding interest earned on bank funds required to be deposited with the federal reserve,
     the court stated that in "contrast to *Webb's, Phillips*, and *Brown*, where the deposited funds were held
26   by third party banks, here Texas State did not provide funds to a third party that were then deposited in
     an interest-bearing account in a private bank . . ."), *cert. denied*, 126 S. Ct. 2889 (2006); *see also*
27   *United States Shoe Corp. v. United States*, 296 F.3d 1378, 1384 (Fed. Cir. 2002) (for accrued interest
     to rise to the level of private property cognizable under the takings clause, "the principal must be held
28   in an identified private account").

**C.      No Plaintiff Has Provided Evidence That His or Her Property Was Interest-Bearing Prior to Escheat**

This Court's 2006 Order on Defendants' Motion for Judgment on the Pleadings stated that the interest issue may turn in part on facts such as the nature of the escheated property; whether the property was interest-bearing prior to escheat; and how the State held the property, including whether the State earns interest on property in its custody.  2006 *Suever* Order at 6.  None of the plaintiffs alleges, nor could they, that their property was interest-bearing prior to escheat, and plaintiffs' own evidence proves that the State does not earn interest on unclaimed property in its custody.  Pls.' Huarte Decl., ¶14.  For this reason, plaintiffs are not entitled to declaratory relief that the State's failure to pay interest on their property amounts to a constitutional violation.

**VI.**

**ALTERNATIVELY, DEFENDANTS REQUEST A RULE 56(f) CONTINUANCE**

If the Court does not deny plaintiffs' motion as a matter of law, defendants request additional time to take discovery regarding:  (1) their statute of limitations defense; (2) the reasonableness of various forms of notice; (3) plaintiffs allegations that the Controller took property that was not subject to escheat; and (4) plaintiffs' APA claim.  *See* Prinzing Decl., ¶¶ 16-23; Defs.' Mot. to Enlarge Time & Continue the Hr'g on Partial Summ. J. (filed on June 26, 2007), pp. 3-5 and accompanying Harrison Decl., ¶¶ 5-11.

**CONCLUSION**

Plaintiffs' motion for partial summary adjudication should be denied.

Dated:  July 18, 2007                                    Respectfully submitted,

                                                        REMCHO, JOHANSEN & PURCELL, LLP


                                                        By: _____/s/_____
                                                              Robin B. Johansen

                                                        Attorneys for Defendants John Chiang
                                                        and Richard J. Chivaro

(00037785-16)

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – NO.: C 03-00156 RS

35

1

Exhibit F

2

Order Denying Application for Temporary Restraining Order, *Suever v. Chiang*, No. C 03-

3

00156 RS (E.D. Cal. August 27, 2007)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM
FEE AWARD

1

2

3                                                              **\*E-FILED 8/27/07\***

4

5

6

7                        IN THE UNITED STATES DISTRICT COURT

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                                SAN JOSE DIVISION

10   AGNES SUEVER, et al.,                           NO. C 03-00156 RS

11              Plaintiffs,                           **ORDER DENYING**
                                                      **APPLICATION FOR**
12        v.                                          **TEMPORARY RESTRAINING**
                                                      **ORDER**
     KATHLEEN CONNELL, et al.,
13

14              Defendants.

15   _____/

16

17        On August 24, 2005, plaintiffs filed an application for a temporary restraining order seeking

18   to prohibit the State Controller from communicating with any putative class members until and

19   unless the form and substance of the communication is first reviewed and approved by the Court and

20   plaintiffs have had the opportunity to state any objections.  For the reasons explained below, the

21   application is DENIED.

22

23        A. Recent Developments[1]

24        On August 23, 2007, the Controller held a press conference in which he apparently

25   announced a "plan" that purportedly would address at least some of the concerns raised by plaintiffs

26   in this action as to how the State of California has implemented and administered its Unclaimed

27   _____

28        [1]  The factual background of this action has been described in prior orders and in a Ninth
     Circuit opinion in this case and will not be repeated here.

                                        1

**United States District Court**
For the Northern District of California

Property Law ("UPL") in recent years.  According to plaintiffs, the "plan" comprises sending out letters to thousands of putative class members and launching a new website.  Plaintiffs contend that both the letters and the website are "replete" with "misinformation and omissions."

B. Ninth Circuit Rulings

The Ninth Circuit has issued one opinion in this case, *see Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006), and two opinions in a similar case brought by the same plaintiffs' counsel in the Eastern District of California. *See Taylor v. Westley*, 402 F.3d 924, 933 (9th Cir. 2005) (*Taylor I*) and *Taylor v. Westley*, 488 F.3d 1197 (9th Cir. 2007) ("*Taylor II*").  In response to the mandate of *Taylor II*, the Eastern District of California has entered a preliminary injunction that effectively precludes California from taking possession of *any* property under the purported authority of the UPL.

The present Controller was elected after the first two of these decisions issued.  The new Controller has now publicly stated his intent to restore the "original intent" of the UPL through legislative action and policy changes in his office.

Nevertheless, the Court understands and recognizes that in *this* action, as recently as in the opposition to plaintiffs' motion for partial summary judgment now under submission, the Controller has continued to argue that California's *existing* UPL and the practices thereunder (currently enjoined), suffer from *no* Constitutional infirmities. Plaintiffs' obvious frustration with the apparent inability of the Controller to "get it" is therefore understandable.

The Controller, however, is technically correct that to date, the Ninth Circuit has never issued a ruling *on the merits*.  Both *Suever* and *Taylor I* involved motions to dismiss, where plaintiffs' allegations were to be presumed true.  *Taylor II* implicated only the *likelihood* of success on the merits, based on the then-existing factual record.  As a consequence, the Controller had, has, and will have, every right to argue that the *proven* facts establish no constitutional violation.  Indeed, plaintiffs rely on the fact that there has been no ruling on the merits to support their pending motion for partial summary judgment.

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

1    That said, at least some of the arguments presented by the Controller in opposition to the

2  motion for partial summary judgment appear to challenge whether or not *Suever*, *Taylor I*, and

3  *Taylor II* were correctly decided.[2]  To the extent the Controller is so arguing, he must present his

4  case to a higher court, not the trial court.  The Controller may be correct that *if* the facts as proven

5  are materially different from the facts upon which  *Suerver, Taylor I ,*and *Taylor II* were decided,

6  then none of those cases would be "controlling."  Plaintiffs may rest assured, though, that to the

7  extent they prove, as a matter of undisputed fact or at trial, that the facts are not materially different

8  than those considered by the Ninth Circuit, the Court will endeavor faithfully to apply the holdings

9  of the Ninth Circuit in  *Suerver*, *Taylor I*, and *Taylor II*.

10

11    C.  <u>The Communications</u>

12    Plaintiffs' application for a temporary restraining order rests largely on their contention that

13  certain statements in the notices the controller now intends to send out, or on the new website, still

14  do not conform to what plaintiffs contend the Constitution, and the Ninth Circuit decisions in

15  *Suerver*, *Taylor I*, and *Taylor II,* require.  It appears that at least some of the assertions made in the

16  challenged communications may not be consistent with either the current state of affairs or what the

17  Ninth Circuit has suggested the Controller likely will be required to do in the event plaintiffs prove

18  their case.  For example, the communications apparently state that materials taken from safe deposit

19  boxes will be destroyed within 90 days, without mentioning either the existing injunction or the

20  Controller's pledge predating that injunction that he would hold any property seized for at least 180

21  days.  Similarly, the communications purportedly assert that claimants to property that has been sold

22  will be entitled to nothing more than the sales proceeds, which directly implicates an issue still in

23  controversy in this litigation.

24

25

26    [2]  Those arguments remain under submission, and will be addressed, if at all, in the Court's
    ruling on the summary judgment motion.  The comments in this order provide relevant background
27  to the present decision, but neither prejudge the issues presented in the summary judgment motion
    nor constrain any order thereon.

28

3

**United States District Court**
For the Northern District of California

1

    D. <u>Basis for a Restraining Order</u>

2

    The temporary restraining order plaintiffs seek is unlike the prototypical TRO that provides

3

preliminary relief on the same issues raised in a plaintiff's complaint. Thus, the ordinary calculus of

4

"likelihood of success on the merits" does not apply in the usual way. At the same time, a Court

5

maintains inherent power to enjoin conduct that would interfere with its proceedings. Nevertheless,

6

plaintiffs have not shown that a TRO is warranted here. Even assuming it might be appropriate to

7

constrain a defendant's communications with prospective class members prior to class certification

8

under some circumstances, the only basis for doing so would be the potential that, as plaintiffs put it,

9

the communications might "improperly interfere with the orderly completion of this litigation." See

10

also *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986) (injunction entered against perjurious

11

communications by attorney to class members aimed at discouraging class members from

12

participating or encouraging them to "opt out"); *Haffer v. Temple Univ.*, 115 F.R.D. 506 (E.D. Pa.

13

1987) (defendant and its counsel enjoined from actively discouraging class members from

14

cooperating with plaintiffs' counsel).

15

    Given plaintiffs' view that the Controller has not taken seriously the admonishments of the

16

Ninth Circuit, it is understandable that they take issue with some of the statements in, or omissions

17

from, the communications in issue. There is nothing here, however, that even remotely approaches

18

the kind of conduct enjoined in *Tedesco* or *Haffer,* and plaintiffs have made no showing that the

19

communications will significantly impair their ability to proceed in this action. As an initial matter,

20

whether or not the Controller accurately describes how the UPL operates or may someday operate, is

21

of little moment given that he is *enjoined* from taking any property until he has satisfied at least the

22

Eastern District of California that the law and procedures pass constitutional muster. In other words,

23

the Controller may say whatever he wants as to what the law requires or does not require without

24

affecting plaintiffs' rights, whatever they may be. Plaintiffs have invoked the jurisdiction of the

25

federal courts, and it is those courts, not the Controller, who will ultimately decide what is

26

constitutionally required.

27

    Even as to matters implicated in this action that are outside the scope of the Eastern District's

28

1   injunction, such as how *existing* claims are processed and paid and whether interest should be

2   included, plaintiffs have failed to show how the Controller's communications will interfere with

3   their prosecution of this action.  Again, it will be the Courts, not the Controller, that ultimately

4   decide what is required, and nothing the Controller may say or fail to say  in these communications

5   will change that.

6        Finally, Plaintiffs suggest that the Controller may be seeking releases from potential class

7   members in exchange for paying claims.  Even if that is so, it seems unlikely that any such purported

8   releases would be sufficient to bar such persons from pursuing relief on constitutional grounds such

9   as are alleged in this action.   Accordingly, plaintiffs have not established a basis for entering a

10  temporary restraining order at this juncture.

11

12

13  IT IS SO ORDERED.

14  Dated: August 27, 2007

                                        _____
15                                      RICHARD SEEBORG
                                        United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27
    ORDER DENYING TRO
28  C 03-00156 RS

**United States District Court**
For the Northern District of California

5

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

2  James C. Harrison     jharrison@rjp.com, kkrogseng@rjp.com

3  Robin Bradle Johansen     rjohansen@rjp.com, kkrogseng@rjp.com

4  William Wayne Palmer     wmwpalmer@aol.com, dculhane@dim.com

5  Margaret R. Prinzing     mprinzing@rjp.com, lfien@rjp.com

6  Thomas Andrew Willis     twillis@rjp.com, kkrogseng@rjp.com

7

8  Counsel are responsible for distributing copies of this document to co-counsel who have not
   registered for e-filing under the Court's CM/ECF program.

9

10  **Dated: 8/27/07**                    **Chamber of Judge Richard Seeborg**

11

12                                         **By:** _____**/s/ BAK**_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER DENYING TRO
    C 03-00156 RS

6

1

Exhibit G

2

Executive Summary of Credentials and Experience of William W. Palmer

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LAW OFFICES OF
William W. Palmer
1241 Carter Road – Sacramento – California – 95864
TELEPHONE (916) 972-0761

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM
FEE AWARD

# WILLIAM W. PALMER
## Summary

This summary provides an overview of significant work including published decisions from the United States Supreme Court, published and unpublished state and federal decisions, published writings, and transactional work.

## Overview

- **Administrative Regulations:**   Mr. Palmer re-wrote the Unfair Claims Regulations, to become the "Fair Claims Regulations." The Fair Claims Regulations (Cal. Code Regs. Tit. 10, § 2695.1 (1995)), guide and control the timing, payment, and grievance resolution of property casualty insurance claims in the State of California. California is the largest insurance market in the United States of America and controls 20-25% of the insurance business of this country. Mr. Palmer authored a law review article, which was published and may be found at: William W. Palmer, "Proposed Unfair Claims Regulations" (1996) 36 Santa Clara Law Review 687, which explains the operation of the Fair Claims Regulations.

- **Legal Work in Iraq:**   Mr. Palmer worked in Iraq at the request of federal government during March – April 2006.

- **Holocaust Insurance Litigation and Claims Payments:**   Mr. Palmer wrote the "Fifteenth Annual International Law Symposium Nazi Gold and Other Assets of the Holocaust: *What Happens Next?*," 20 Whittier Law Review 122 (1998).  This law review article provides a detailed plan for the resolution of the life and property casualty insurance benefits owed to victims of the Holocaust atrocities and genocide.

- Mr. Palmer then wrote the Budget Change Proposal (or BCP) for the State of California that created the funding mechanism for the plan, which was folded into Senator Tom Hayden's Senate Bill (SB 1530) that allowed California to create the International Holocaust Commission. This piece of legislation, carried by Senator Hayden (D), was signed into law by Governor Pete Wilson (R).  Amazingly, Sen. Hayden, who was known as a Vietnam War activist, and Governor Wilson, a United States Marine who served in Vietnam, had not spoken with one another during Governor Wilson's entire term in office, but both supported this piece of legislation. Mr. Palmer was presented with the Governor's signing pen and the original legislation as a gift recognizing his work on creating the law.

- The Holocaust Insurance reparations law, prepared by Mr. Palmer, was later endorsed by Presidents Clinton and Bush, and the law was reviewed by the United States Supreme Court, and found to be constitutional in *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003). Mr. Palmer worked in the United States and overseas, *pro bono* (at his cost), to implement SB 1530, and was later

called one of the lead witnesses in the *AIA v. Garamendi* case, as discussed above. Prime Minister of Israel, Benjamin Netanyahu thanked Mr. Palmer in a personal letter (dated May 2, 1999) for his "determined efforts to achieve justice on the issue of Holocaust Era Insurance Claims."

- **Restructuring of Lloyd's of London:**  Mr. Palmer was the attorney responsible for coordinating the litigation and restructuring of Lloyd's of London ($24 billion, approx.) that protected consumers and policyholders in California and the United States.  *See, for example,* Mr. Palmer's appearance in the published decision of *Allen v. Lloyd's of London*, 94 F.3d 923 (4ᵗʰ Cir. 1996) (Held: The policies of the United States securities laws did not override the parties' choice of forum and law for resolving disputes; thus, the contractual provisions selecting the law of and a forum in the United Kingdom were enforced).

- Mr. Palmer was presented with a small commemorative plate in London by Sir David Rowland, the Chairman of Lloyd's, who was later knighted by the Queen of England for his role in strengthening this famous syndicate of English companies. Mr. Palmer was also the lead attorney responsible for negotiating a Memorandum of Understanding between the Department of Corporations and the Department of Insurance in the Governor's Office that allowed each agency to oversee and regulate Lloyd's of London. Based primarily on his work on behalf of California and the United States, Mr. Palmer was presented with the flag flown over the State of Texas by the Insurance Commissioner of Texas, followed by a short meeting with the former Texas Governor George W. Bush.

- **Executive Life Insurance Company (ELIC):**  Mr. Palmer testified on behalf of the California Department of Insurance in *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003) (discussed below), and in Commissioner John Garamendi's case involving the Executive Life Insurance Company (ELIC) and a French investment consortium. The case resulted in roughly a $1 billion judgment following a jury trial on behalf of the ELIC policy holders and claimants.

- **California Homeowner's Insurance Market:**  Mr. Palmer worked on the restructuring of the private California Homeowner's Insurance Market and avoided its collapse by assisting (in a minor role) with the creation the California Earthquake Authority (or CEA), a $12 billion dollar, vertical and horizontally risk-layered, government/private sector business entity.  Mr. Palmer received an award recognizing his work.  Mr. Palmer presented a paper on the subject of the CEA to the Chinese Bank and Insurance Company in Beijing, China.

- **Demutualization of California's Largest Mutual Insurance Company:**  Mr. Palmer was responsible for leading California's legal team effort to successfully demutualize and restructure Pacific Mutual Life Insurance Company into Pacific Life Insurance Company. Pacific Life is one of California's largest, most successful, and best run life insurance companies with significant assets, making it one of the largest companies of its kind in the world. Most important, Mr.

Palmer worked to create safeguards and to protect the policyholders within a unique "closed block" that preserved their ownership and equity rights in the former mutual company. As a mutual company, the former policyholders were also owners of the company, and these rights could have been lost when the company underwent its restructuring.  Ultimately, Pacific Life was the only demutualization that was not challenged and sued in a class action by the trial bar during that period of time; roughly 19 other similar transactions were either sued or halted.

- **<u>Significant Transactional Experience:</u>**  Mr. Palmer has significant transactional experience and has written business plans, including a business plan that was accepted by the Fortune One Company, and has written a variety of stock purchase and redemption agreements, buy-sell agreements, creation of various business entities, mergers and acquisitions, and handled all manner of large and small business work and government filings.

- Mr. Palmer has significant private practice insurance coverage experience and drafted the manuscript risk pool (insurance) coverage for roughly 180 of California's schools, including Kindergarten (K) through Ninth (9th) grades, and the Community Colleges.  Mr. Palmer has written over 300 insurance coverage analyses and opinions in plaintiff and defense cases.  He is routinely called to testify on behalf and assist the State and Federal Governments on complex insurance cases.  *See, for example,* Mr. Palmer's published decision in *Downey Venture, et. al. v. LMI Ins. Co.* (1998) 66 Cal. App. 4th 478 (The court held that public policy prevented appellee insurance company from being liable for indemnification on a malicious prosecution claim incurred by appellants, but public policy did not prevent appellee's duty to defend the claim).

- **<u>Insurance Insolvency:</u>**  Mr. Palmer was lead counsel for the restructuring of Golden Eagle Insurance Company that, at $1.2 billion, was one of the largest insurance insolvencies (bankruptcies) in the last decade.  Mr. Palmer successfully preserved the current business within a "New" Golden Eagle Insurance Company that was purchased for $1.2 billion by Liberty Mutual Insurance Company, while creating a massive liquidating trust.  The Golden Eagle insolvency is now used as a model for the efficient handling and resuscitation of an insurance company.

- Additional work performed in complex insurance insolvencies may be found in published and unpublished decisions in which Mr. Palmer appeared as counsel, for example, *see Quackenbush v. Mission Ins. Co.* (1998) 62 Cal. App. 4th 797 (<u>Held</u>:  Liquidation plan submitted by California Insurance Commissioner was approved even though objections were made that the plan required estimated payments prior to claims being established when plan provided for process to establish claims).

- **Appearances and Work Before the United States Supreme Court:**   Mr. Palmer is admitted to the United States Supreme Court and appeared in *Mission Ins. Co. v. Allstate*, 517 U.S. 706 (1996).  The case ultimately settled for full value owed to the policyholders and claimants.

- Mr. Palmer settled *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal. 4th 216, literally on the steps of the United States Supreme Court, following which the Petition for Certiorari was dismissed pursuant to Rule 46 of the Rules of the United States Supreme Court.  The settlement Mr. Palmer created, utilized a unique strategy that funded the Prop. 103 rebate to the past policyholders as required by law, while creating a financial buffer to protect the current policyholders and shareholders to fund the Northridge Earthquake claims that were still developing.  After the settlement, 20th Century Insurance Company, which was on the edge of financial insolvency, rebounded and its stock rose from $7.00 to $21.00 per share.  It remains one of California's strongest companies and employers.  Following this settlement, Mr. Palmer drafted a detailed multi-million dollar Budget Change Proposal, or "BCP," then retained ten (10) law firms and prosecuted the insurance companies that owed Prop. 103 Rollbacks, which resulted in a recovery of $1.2 Billion for the policyholders and taxpayers in the State of California.

- Mr. Palmer's appeared in the Ninth Circuit's decision in *Fireman's Fund Ins. Co. v. Quackenbush* (9th Cir. 1996) No. 92-15861, United States Court of Appeals for the Ninth Circuit, 1996 U.S. App. LEXIS 19493 (Held: The insurers' claims against the insurance commissioner's implementation of regulations were properly dismissed under the abstention doctrine, even though some were ripe, because there was a difficult and unresolved question of state law).

- **Additional Appearances:**   Mr. Palmer has appeared and represented California and United States before the Governments of Iraq, Germany, France, the United Kingdom, Israel, Russia, and China.

- Mr. Palmer presented two papers on the financial structure and purpose of the California Earthquake Authority (CEA), and a second paper on predictions and improvements to California insurance underwriting at the International Catastrophic Insurance Seminar in Beijing, China. He was awarded with a commemorative gift for his participation by the Chinese government.

- **Unclaimed Property Law and Litigation:**   Mr. Palmer and his law firm do a significant amount of work involving the Unclaimed Property Law with litigation pending against California Controller Steve Westly involving the mishandling of public and private funds.  *See, for example,* Mr. Palmer's published decisions in: *Suever v. Westly,* 439 F. 3d 1142 (March 14 2006); *Taylor v. Westly* 402 F.3d 924 (9th Cir. 2005) (Kleinfeld, J.), *reh'g denied, reh'g en banc denied* ___ F.3d ___ (May 13, 2005) ("*Taylor I*") (The Ninth Circuit denied the Controller's petition for rehearing and rehearing *en banc* with the added comment that the

4

panel circulated the petition to all the 58-judges of the Ninth Circuit and "not a single judge" wished to rehear the case); *Taylor v. Westly*, ___ F.3d ___, C.A. 05-16763 (9th Cir. 2007) ("*Taylor II*") (Directing the District Court to enter a preliminary injunction enjoining Defendants from accepting property under color of the UPL until Controller satisfies Due Process Clause.); *see also*, *Taylor v. Westly*, Order Re: Preliminary Injunction, No. Civ. 01-2407 WBS (E.D. Cal. June 1, 2007) (Enjoining the California Controller from taking possession of or title to any additional property under color of the Unclaimed Property Law until the Court has approved regulations satisfying the Due Process Clause in accordance with directive of *Taylor II*); *Harris, et. al. v. Westly* (2004) 116 Cal. App. 4th 214; *and see Fong v. Westly* (2004) 117 Cal. App. 4th 841; *Harris v. Verizon* (2006) 141 Cal. App. 4th 573.

On May 15, 2006, Mr. Palmer and his law firm prevailed on a motion for summary adjudication of issues and obtained four injunctions against the California Controller in *Trust Realty Partners v. Westly*, Sacramento Superior Court Case No. 04AS02522. The injunctions prohibit the Controller from further violations of law and require the State Official to (1) provide Constitutional Notice and Due Process to property owners before their property is sold or otherwise destroyed; (2) promulgate proper regulations under the Administrative Procedures Act (or "APA"), Government Code §§11340 *et seq.*; (3) prohibit the Controller from retroactively applying reductions in interest rates, and requiring the Controller to restore the wrongfully-stripped interest by retroactive application of the law to *all* private accounts; and (4) return property to Mr. Palmer's client TRP. The Controller is appealing the adverse ruling.

- **Pro Bono Work and Civil Rights Work:** In addition to his pro bono work on behalf of Holocaust victims, Mr. Palmer routinely handles *pro-bono* or public service work. As previously mentioned, Mr. Palmer's work on behalf of the Holocaust victims was performed to correct an eternal wrong committed to the face of mankind. Mr. Palmer declined all manner of gifts and remuneration.

- He received a first edition book personally autographed by Rosa Parks, entitled "Quiet Strength: The Faith, the Hope, and the Heart of a Woman Who Changed a Nation," for his assistance to one of Sacramento County's top community leaders, and minority bookstore owner Carol McNeal. Ms. McNeal's case was reported in the Sacramento Bee Newspaper and was "resolved" against an NBA basketball player to the satisfaction of the parties.

- **Actions Against State Officials for Government Records:** Mr. Palmer routinely pursues government records requests against recalcitrant government officials and state agencies under both California Public Records Act (CPRA), Cal. Gov. Code §§ 6250, *et seq.*, and the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552, *et seq*. Court Order issued to award fees and costs. Contempt motion filed against Government Officials who fail to comply with Court Order. Follow through.

- **Complex Securities Cases:**  Mr. Palmer has significant experience dealing with complex securities cases.  *See, for example,* Mr. Palmer's recent successful appearances in *Tucker v. Intel Corporation*, Ninth Circuit Court of Appeals Case No. 03-17079 (SLUSA Preemption); *Harris v. Verizon Communications, Inc.*, No. 02-56335 , United States Court of Appeals for the Ninth Circuit, 84 Fed. App. 958; 2003 U.S. App. LEXIS 26502, November 4, 2003 (9th Cir. 2003)(Mr. Palmer associated into the case on appeal, wrote the appellate briefs in the class action brought on behalf of Verizon minority shareholders and overturned a lower court ruling based on ERISA preemption); *see also, Allen v. Lloyd's of London*, 94 F.3d 923 (4th Cir. 1996) (Held: The policies of the United States securities laws did not override the parties' choice of forum and law for resolving disputes; thus, the contractual provisions selecting the law of and a forum in the United Kingdom were enforced).