FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRIS LUSBY TAYLOR; NANCY A. PEPPLE-GONSALVES; SUSAN SWINTON; WILLIAM J. PALMER, deceased; DON H. PERRI; JENNIFER WALSH; MARK MACAULEY; MARY A. STEELE, on behalf of themselves and other persons similarly situated,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>BETTY YEE,[*] individually and in her official capacity as State Controller of the State of California; RICHARD CHIVARO,<br><br>*Defendants-Appellees*. | No. 12-17828<br><br>D.C. No. 2:01-cv-02407-JAM-GGH<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

---

[*] Betty Yee, is substituted for her predecessor, John Chiang, as Controller of the State of California, Fed. R. App. P. 43(c)(2).

Argued and Submitted
February 11, 2015—San Francisco California

Filed March 11, 2015

Before: Mary M. Schroeder and Barry G. Silverman,
Circuit Judges and Paul C. Huck,[**] Senior District Judge.

Opinion by Judge Huck

---

## SUMMARY[***]

---

### Civil Rights

The panel affirmed the district court's dismissal, for failure to state a claim, of a putative class action challenging the California State Controller's application of California's Unclaimed Property Law.

Appellants alleged that the procedures used both before unclaimed property is transferred to the Controller ("pre-escheat") and after it is transferred ("post-escheat") violate appellants' due process rights.   Specifically, appellants asserted that the pre-escheat notice provided by the

---

[**] The Honorable Paul C. Huck, Senior District Judge for the U.S. District Court for Southern Florida, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Controller was constitutionally inadequate because the Controller does not attempt to locate property owners using the data sources required by Sections 1531 of the Unclaimed Property Law.  The panel held that appellants' argument was based on a misinterpretation of the statute, which relates only to post-escheatment procedures, and that appellants' suggested requirement that the Controller use additional databases exceeded due process requirements.

The panel further rejected appellants' argument that the Controller's pre-escheat notice process was inadequate because it is carried out by companies that receive a portion of the escheated value and therefore have a conflict of interest.  The panel held that this argument was not supported by law or the alleged facts.  The panel further held that appellants' challenge to the post-escheat procedure was not ripe for review.

## COUNSEL

William W. Palmer, The Law Offices of William W. Palmer, Sacramento, California; C. Brooks Cutter and John R. Parker, Jr., Kershaw, Cutter & Ratinoff, LLP, Sacramento, California; Robert A. Buccola, Steven M. Campora, and James J. Ison, Dreyer Babich Buccola Wood Campora, LLP, Sacramento, California, for Plaintiffs-Appellants.

Robin B. Johansen and Margaret R. Prinzing, Remcho, Johansen & Purcell, LLP, San Leandro, California, for Defendants-Appellees.

4                            TAYLOR V. YEE

## OPINION

HUCK, Senior District Judge:

## I.  INTRODUCTION

This putative class action has a long and tortuous history in this Court.  Presumably this opinion will be known as *Taylor V.*[1]   Appellants challenge the constitutionality of California's Unclaimed Property Law ("UPL"), which provides for the conditional transfer of unclaimed property to the State of California.[2]  While this Court has previously held the UPL facially constitutional, *see Taylor III*, 525 F.3d at 1289, the instant suit challenges

---

[1] This Court's prior decisions in this matter are: *Taylor v. Westly (Taylor I)*, 402 F.3d 924 (9th Cir. 2005); *Taylor v. Westly (Taylor II)*, 488 F.3d 1197 (9th Cir. 2007) (per curiam); *Taylor v. Westly (Taylor III)*, 525 F.3d 1288 (9th Cir. 2008) (per curiam); and *Taylor v. Chiang (Taylor IV)*, 405 F. App'x 167 (9th Cir. 2010).  In addition, this Court has decided four appeals in a related case brought by Appellants' counsel:  *Suever v. Connell (Suever I)*, 439 F.3d 1142 (9th Cir. 2006); *Suever v. Connell (Suever II)*, 579 F.3d 1047 (9th Cir. 2009); *Suever v. Connell (Suever III)*, 484 F. App'x 187 (9th Cir. 2012); and *Suever v. Connell (Suever IV)*, 133 S. Ct. 1243 (2013).

[2] The UPL is California's escheatment statute. "Escheat is . . . a means of dealing with . . . money and property [that] are unclaimed and the person entitled to it is dead or . . . cannot be found and there is no other individual with a good claim." *Taylor I*, 402 F.3d at 926.  Essentially, property that is unclaimed, as defined by the UPL, is transferred (escheats) to California.  However, an owner may reclaim property escheated pursuant to the UPL at any time; thus the property "does not permanently escheat to the state." Cal. Civ. Proc. Code § 1501.5(a).  If California sells the property, the owner may recover the proceeds.  The State may destroy property that has no commercial value.

the California State Controller Betty Yee's ("the Controller") application of the statute.[3]  Appellants claim that the procedures used both before unclaimed property is transferred to the Controller ("pre-escheat") and after it is transferred ("post-escheat") violate Appellants' due process rights. The district court dismissed Appellants' suit with prejudice for failure to state a claim.  We **AFFIRM**.

Appellants' first and primary argument is that the pre-escheat notice provided by the Controller is constitutionally inadequate because the Controller does not attempt to locate property owners using the data sources required by Section 1531.5 of the UPL.  Appellants further argue that the Controller's pre-escheat notice process is inadequate because it is carried out by companies that have an alleged conflict of interest because they receive a portion of the escheated property's value.  Finally, Appellants argue that the Controller's post-escheat procedures violate the Due Process and Takings Clauses because they do not provide an adequate remedy when the Controller denies an individual's claim to escheated property.

## II. BACKGROUND

As explained below in more detail, under the UPL, property that appears to be lost or abandoned by the owner is conditionally transferred to the State if it remains unclaimed after notice is provided to the owner.  Examples of such lost or abandoned property are savings accounts at a bank or shares of stock held in a brokerage account.  In

---

[3] Appellee Betty Yee is the California State Controller and Appellee Richard Chivaro is the Chief Counsel to the State Controller.

August of 2007, in response to *Taylor II*, which found the UPL's notice requirements insufficient, the California Legislature amended the UPL to provide additional notice to owners of unclaimed property. In *Taylor III*, this Court determined that the amended UPL is facially constitutional. Appellants now bring this as-applied challenge to the law.

### *California's Unclaimed Property Law*

According to the Controller, the purpose of the UPL is to locate owners of apparently lost or abandoned property and restore their property to them; but if these efforts are unsuccessful, to give the benefit of any unclaimed property to California, rather than to financial institutions or other private entities holding the property ("holders"). As the Controller explains, the UPL thus ensures that unless and until the owner reclaims it, unclaimed property will be used for the public good rather than for the benefit of private banks and financial institutions.

Pursuant to the UPL, holders must transfer property to the State once the property meets the UPL's definition of unclaimed property. *See* Cal. Civ. Proc. Code § 1511 *et seq*. However, prior to escheatment to California, the UPL requires that multiple forms of notice be given to the apparent owners of unclaimed property, including two notice letters.

As an initial step, the UPL provides that the holder "shall make reasonable efforts to notify any owner by mail or, if the owner has consented to electronic notice, electronically, that the owner's" property will escheat to the State. *Id*. §§ 1513.5(d), 1514(b), 1516(d). The same general notice requirements apply to all types of property under the UPL, although the specifics vary by property type. *Compare id*. § 1514 (safe deposit boxes), *with* § 1516

(business dividends and distributions).  This notice is sent to the apparent owner's address, as reflected in the holder's records.  The notice contains a form that the owner is to complete, sign, and return, in which case, "it shall be deemed that the [holder] knows the location of the owner," who claims the property.  *E.g., id* § 1531.5(d).  The holder may also provide telephonic or electronic methods by which the owner can claim the property.  *Id.*

If the owner does not respond to the holder's notice, the property is deemed unclaimed and the holder must report to the Controller "the name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property of value of at least fifty dollars ($50) escheated under this chapter."  *Id.* § 1530(b)(1).  The statute mandates specific dates, depending on the property's classification, by which a holder must report the unclaimed property to the Controller.  *Id.* § 1530(d).  The holder's notice to the owner is to be given "[n]ot less than 6 nor more than 12 months before the time the account, deposit, shares, or other interest becomes reportable to the Controller in accordance with this chapter."  *Id.* § 1513.5.

After the holder has reported the unclaimed property to the Controller, but before it is transferred, that is, pre-escheat, "the Controller shall mail a notice to each person having an address listed in the report who appears to be entitled to property of the value of fifty dollars ($50) or more escheated under this chapter."  *Id.* § 1531(d).[4]  The

---

[4] By design of the statute, the Controller's notice occurs *prior* to escheatment because it must be sent "[w]ithin 165 days after the final

Controller's notice must state that property is being held, name the addressee who may be entitled to it, and give the name and address of the holder. *Id.* § 1531(e). Further, the notice must provide:

> [a] statement that, if satisfactory proof of claim is not presented by the owner to the holder by the date specified in the notice, the property will be placed in the custody of the Controller and may be sold or destroyed pursuant to this chapter, and all further claims concerning the property or, if sold, the net proceeds of its sale, must be directed to the Controller.

*Id.* § 1531(e)(3). Usually, the Controller's notice is mailed to the owner's address provided by the holder.

The Controller takes an additional step to determine the current address of the owner. Under the UPL, if the holder's report includes the owner's Social Security number, "the Controller shall request the Franchise Tax Board to provide a current address for the apparent owner on the basis of that number." *Id.* § 1531(d). If the Franchise Tax Board provides an address different from the one provided by the holder, the Controller sends notice to that address. *Id.* Otherwise, if the Franchise Tax Board does not provide any address, or provides the same address

---

date" on which the holder submits its report to the Controller, whereas the holder is to deliver the unclaimed property "no sooner than seven months [i.e., 210 days] and no later than seven months and 15 days after the final date for filing the report." *See id.* §§ 1531(d), 1532.

as the holder, the Controller mails notice to the address provided by the holder. *Id.*

If the owner fails to timely "establish[] his or her right to receive any property specified in the report to the satisfaction of the holder before that property has been delivered to the Controller" then the property must be transferred (that is, escheated) to the Controller in the time specified by the statute. *Id.* § 1532(a)–(b). However, the property transferred to the Controller does not "permanently escheat to the state." *Id.* § 1501.5(a). Rather, the Controller holds the unclaimed property in trust for the owner who may claim it at any time. Those who "claim[] to have been the owner . . . of property paid or delivered to the Controller under this chapter may file a claim to the property or to the net proceeds from its sale." *Id.* § 1540(a).

Beyond the notice mailed by the Controller, the UPL requires additional forms of notice. The Controller must also provide notice via publication "in a newspaper of general circulation which the Controller determines is most likely to give notice to the apparent owner of the property." *Id.* § 1531(a). The newspaper notice does not state which property was taken or from whom, but instead explains generally that the Controller takes custody of unclaimed property. The advertisement states that "California may have received Property belonging to You" and explains that property is deemed unclaimed if there has been no owner contact with the property holder or account activity for three years.

The newspaper notice also informs potential owners of the Controller's website where they may perform a search to determine whether they may be the owner of unclaimed property. If there is property in that person's name, the

website further describes what the property is, what it is worth, which holder reported it, and the owner's name and address as reported by the holder.  The website provides instructions for filling out a claim form, which can be done online.

In *Taylor III*, this Court explained that the UPL, as amended in 2007, passes constitutional muster because the *State*, in addition to the holder, "is required to provide pre-escheat 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  525 F.3d at 1289 (quoting *Jones v. Flowers*, 547 U.S. 220, 226 (2006)).  The UPL declares, "[i]t is the intent of the Legislature that property owners be reunited with their property" and that in amending the law, California intended to provide "[n]otification by the state to all owners of unclaimed property *prior* to escheatment." Cal. Civ. Proc. Code § 1501.5(c)(1) (emphasis added).  The amended UPL came about as a result of this Court's decision in *Taylor II*.

### Taylor I, II, and III

In *Taylor I*, two individuals[5] sued after the Controller escheated purportedly unclaimed shares of stock that the individuals owned.  *Taylor I*, 402 F.3d at 926.  The issue then was whether the notice provided to plaintiffs was constitutionally adequate.  The district court dismissed the complaint under the Eleventh Amendment for lack of

---

[5] The suit "was filed as a class action, but never reached the point of class certification *vel non*." *Taylor I*, 402 F.3d at 925.

jurisdiction.  This Court reversed.  *Id*. at 936.  We ruled that
the suit was not barred by the Eleventh Amendment
because plaintiffs' action was for return of their own
properties.  *See id*.

After remand, plaintiffs, challenging the adequacy of
the notice provided prior to escheat of the unclaimed
property to the Controller, moved for a preliminary
injunction.  In response, the Controller argued the UPL
provided constitutionally adequate notice by requiring that:
1) the Controller place advertisements in the newspaper
explaining that owners could check an unclaimed property
website to see if their names or property were listed as
escheated to the State; 2) the Controller "mails written
notice to some, but not all, individuals whose property has
been escheated"; and 3) the holders of the property subject
to escheat "provide notice to individuals" prior to the
property being escheated.  *Taylor II*, 488 F.3d at 1201.

The district court denied plaintiffs' request for a
preliminary injunction and this Court again reversed, noting
that California needed to take action to "remedy the
constitutional problem with its escheat statute,"
specifically, the lack of adequate notice.  *Id*. at 1202.  We
explained, "[b]efore the government may disturb a person's
ownership of his property, 'due process requires the
government to provide notice reasonably calculated, under
all the circumstances, to apprise the interested party of the
pendency of the action and afford him an opportunity to
present his objections.'"  *Id*. at 1201 (quoting *Jones*,
547 U.S. at 226).

In reversing the district court's denial of the injunction,
this Court ruled that the plaintiffs had a strong likelihood of
success in proving that the notice provisions of the UPL did
not provide due process.  *Id*.  First, we held that the website

and the Controller's mailings (which only went to some individuals) "[did] not respond to the requirement that notice be given *before* an individual's control of his property is disturbed," (i.e. escheated). *Id*. Further, "mere publication is not constitutionally adequate." *Id*. Finally, the *holder's* obligation to provide notice did not satisfy the obligation of the *State itself* to give notice. *Id*. As a result, this Court ruled that a preliminary injunction should have been granted. *Id*. at 1202.

On remand, the district court issued the preliminary injunction. *Taylor v. Chiang*, No. CIV. S-01-2407 WBS GGH, 2007 WL 1628050 (E.D. Cal. June 1, 2007). The injunction enjoined the Controller from receiving, taking title to, possessing, selling, or destroying any property pursuant to the UPL "until the Controller has first promulgated regulations providing for fair notice to the owner and public, satisfactory to and approved by this court." *Id*. at *5.

As a result of *Taylor II*, in 2007 the California Legislature "eliminated the statutory and administrative procedure that [this Court] had determined to be unconstitutional" and "promulgated an entirely new statutory procedure addressing escheat." *Taylor III*, 525 F.3d at 1289. In light of the revised UPL, the district court dissolved the injunction. *Taylor v. Chiang*, No. Civ. S-01-2407 WBS GGH, 2007 WL 3049645 (E.D. Cal. Oct. 18, 2007). The district court ruled that the notice provision of the amended UPL remedied the constitutional problems identified by *Taylor II* because it required the *Controller* to send notice *before* an individual's property is transferred to the State and maintain a searchable unclaimed property website. *Id*. at *3.

Appellants appealed the dissolution of the injunction, which resulted in *Taylor III*.  There, this Court ruled that "[o]n its face, the new procedure complies with the due process standard established by the Supreme Court in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), and *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006)." *Taylor III*, 525 F.3d at 1289.  Appellants could not prevail on a facial challenge because "[u]nder the new law, the Controller is required to provide pre-escheatment notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations and quotation marks omitted).  Therefore, it is clear that this Court has held that the UPL, on its face, provides for constitutionally adequate notice.  This Court reiterated the facial constitutionality of the UPL in *Suever II*, 579 F.3d at 1054 n.4, stating:

> In *Taylor v. Westly* (*Taylor III*), 525 F.3d 1288 (9th Cir. 2008) (per curiam), we held that the "entirely new statutory procedure addressing escheat" promulgated by the State following the issuance of the preliminary injunction in *Taylor II* is facially constitutional, and that, as a result, the district court did not abuse its discretion in dissolving the injunction.  *Id.* at 1289–90.

As a result of *Taylor III*, Appellants' ostensibly last hope is to craft an as-applied challenge to the UPL, which they have done in their Second Amended Class Action Complaint.

### Appellants' Second Amended Class Action Complaint

Appellants' Second Amended Class Action Complaint alleges that the Controller is administering the UPL in a manner that violates Appellants' due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The district court dismissed all counts for failure to state a claim.

Here, the primary issue to be resolved is whether Appellants have sufficiently stated an as-applied claim that the Controller is not providing constitutionally adequate notice because she is not taking additional steps to locate and notify property owners.

### III.    STANDARD OF REVIEW

We review *de novo* the district court's order granting Appellees' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009) (citation and quotation omitted). The Court "can affirm a 12(b)(6) dismissal on any ground

supported by the record, even if the district court did not
rely on the ground." *Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152, 1159 (9th Cir. 2012) (citation and quotation
omitted).

## IV.    ANALYSIS

### A.  Appellants' Claim of Inadequate Notice

Since *Taylor I*, Appellants have continuously argued
that under the UPL the Controller is not providing notice in
compliance with the Due Process Clause.

The Supreme Court announced that where persons may
be deprived of their property, the Due Process Clause
requires "notice reasonably calculated, under all the
circumstances, to apprise interested parties of the pendency
of the action and afford them an opportunity to present their
objections." *Mullane*, 339 U.S. at 314.

A second, more recent, Supreme Court opinion further
defined the law regarding adequate notice, explaining that
"[b]efore a State may take property and sell it for unpaid
taxes, the Due Process Clause of the Fourteenth
Amendment requires the government to provide the owner
'notice and opportunity for hearing appropriate to the
nature of the case.'" *Jones*, 547 U.S. at 223 (quoting
*Mullane*, 339 U.S. at 313).

In *Jones*, the petitioner purchased a house and lived
there with his wife for more than twenty-five years before
they separated. *Id*. After the separation, the petitioner
moved out, but continued to pay the mortgage each month,
and the mortgage company paid the property taxes. *Id*.
However, once the mortgage was paid, the property taxes
were unpaid and delinquent. *Id*. Arkansas' Commissioner

of State Lands notified the petitioner of the tax delinquency by mailing a certified letter to the petitioner at the property's address.  *Id*.  This letter "stated that unless [the petitioner] redeemed the property, it would be subject to public sale two years later."  *Id*.  However, nobody was home to sign for the letter and nobody appeared at the post office to claim the letter.  *Id*. at 224.  Therefore, the letter was returned to the Commissioner as unclaimed.  *Id*.

Just weeks before the public sale of the property, the Commissioner published a notice of the sale in a local newspaper.  *Id*.  After the sale of the property was negotiated with a third party, the Commissioner sent another certified letter to the petitioner in an attempt to notify the petitioner that his home was going to be sold if he did not pay the delinquent taxes.  *Id*.  Just as the first notice, this second letter was returned to the Commissioner as unclaimed.  *Id*.

Ultimately, the property was sold and the buyer "had an unlawful detainer notice delivered to the property. The notice was served on [the petitioner's] daughter, who contacted [the petitioner] and notified him of the tax sale." *Id*.  The petitioner filed suit, arguing that the Commissioner failed to provide constitutionally adequate notice of the tax sale.  *Id*.

*Jones* required the Court to determine "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed."  *Id*. at 226.  This is because the Court had previously "explained that the 'notice required will vary with circumstances and conditions.'" *Id*. at 227 (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)). Stated another way, the issue was whether the government's knowledge that the notice had not been

received was a "circumstance and condition that varies the notice required." *Id.* (quotation omitted).

The Supreme Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 225.

The Court found there were "several reasonable steps the State could have taken," and that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Id*. The certified mail was marked as unclaimed, which could have meant that the petitioner still lived at the address, but was not home or that the petitioner no longer lived at the address. *Id*. One reasonable step would have been for the State to "resend notice by regular mail, so that a signature was not required." *Id*. This would "increase the chances of actual notice to [the petitioner] if—as it turned out—he had moved." *Id*. at 235. Relevant to Appellants' case, the petitioner in *Jones* argued "that the Commissioner should have searched for his new address in the Little Rock phonebook and other government records such as income tax rolls." *Id*. at 235–36. However, the Court declared that it "[did] not believe the government was required to go this far." *Id*.[6]

---

[6] It is important to note that in *Jones* the Court was concerned with the "important and irreversible prospect" of "the loss of a house." *Id*. at 230. Indeed the Court cited to a number of federal appellate and state supreme court cases addressing notice in the context of selling real property to a third party at a tax sale. *Id*. at 227. In stark contrast, the property conditionally transferred to the Controller pursuant to the UPL

Appellants rely on *Jones* for their proposition that the Controller must also "consult 'all' publicly available databases" to locate the owners of unclaimed property. Specifically, Appellants claim that the Controller is violating the Due Process Clause because he is failing to utilize Section 1531.5 of the UPL. Section 1531.5 provides that "[t]he Controller shall establish and conduct a notification program designed to inform owners about the possible existence of unclaimed property *received* pursuant to" the UPL. Cal. Civ. Proc. Code § 1531.5(a) (emphasis added). It permits California's state and local governmental agencies, "upon the request of the Controller," to provide the Controller with information from their databases that could be used post-escheat to locate owners of unclaimed property. *Id.* § 1531.5(c)(1). Appellants maintain that the Controller's failure to utilize the additional data available through Section 1531.5 violates Appellants' due process rights. This interpretation is incorrect.

---

does not permanently escheat to the State and may be claimed at any time. Cal. Civ. Proc. Code § 1501.5(a). That said, owners that belatedly step forward to reclaim their property may be able to obtain only the sale proceeds. In such a case, the Controller then holds the proceeds in trust until the owner steps forward to claim the property. Further, if the property "has no apparent commercial value" the Controller must retain the property "for a period of not less than seven years from the date the property is delivered to the Controller . . . [and] may at any time thereafter destroy or otherwise dispose of the property . . . ." *Id.* § 1565.

## B. Appellants Incorrectly Interpret Section 1531.5

This Court has already ruled that the UPL passes muster under the *Mullane–Jones* standard.   However, Appellants contend that in ruling the UPL constitutional, this Court relied upon Section 1531.5.  Under Appellants' interpretation of the law, when generating the pre-escheat notices, the Controller is required to utilize Section 1531.5 and search additional databases in an attempt to locate property owners.

Contrary to Appellants' position, it appears this Court did not rely on Section 1531.5, which applies *post*-escheat, in determining the facial constitutionality of the revised UPL.  Indeed, the only reference to Section 1531.5 found in *Taylor III* was in a citation where the Court mentioned California had overhauled its escheat law.[7]   *Taylor III*,

---

[7] In *Taylor III*, this Court provided a brief history of the case stating,

> After the plaintiff had won these two victories on appeal, the district court issued a preliminary injunction pursuant to our mandate. The State then eliminated the statutory and administrative procedure that we had determined to be unconstitutional. The State promulgated an entirely new statutory procedure addressing escheat. *See* Cal. Civ. Proc. Code § 1501.5(c) (West 2008); *see also id.* at §§ 1531, 1531.5, 1532, 1563, 1565. Concluding that the amendments remedied the constitutional defects we identified in *Taylor II*, the district court granted the Controller's motion to dissolve the injunction.

*Taylor III*, 525 F.3d at 1289.  This is the only mention of Section 1531.5 in the opinion.

525 F.3d at 1289.  Rather, it was the requirement that the
Controller provide reasonable *pre*-escheat notice that
brought the UPL into constitutional compliance, as this
Court stated:

> On its face, the new procedure complies
> with the due process standard established by
> the Supreme Court in *Mullane v. Cent.*
> *Hanover Bank & Trust Co.*, 339 U.S. 306,
> 70 S.Ct. 652, 94 L.Ed. 865 (1950), and
> *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct.
> 1708, 164 L.Ed.2d 415 (2006).  Under the
> new law, the Controller is required to
> provide *pre*-escheat "'notice reasonably
> calculated, under all the circumstances, to
> apprise interested parties of the pendency of
> the action and afford them an opportunity to
> present their objections,'" *Flowers*, 547 U.S.
> at 226, 126 S.Ct. 1708 (quoting *Mullane*,
> 339 U.S. at 314, 70 S.Ct. 652). Thus, the
> plaintiffs' challenge, to the extent that it is a
> facial challenge against the new law, fails.

*Id.* (emphasis added).  That Section 1531.5 relates only to
*post*-escheatment procedures is clear from the language of
that section, titled "Notification program for possible
owners of escheated property," which states "[t]he
Controller shall establish and conduct a notification
program designed to inform owners about the possible
existence of unclaimed property *received* pursuant to this
chapter."   Cal. Civ. Proc. Code § 1531.5(a) (emphasis

added).[8]   Therefore, Section 1531.5 does not mandate that the Controller seek access to additional databases to locate property owners to provide *pre*-escheat notice.

Tellingly, when appealing the dissolution of the injunction, Appellants argued that the amended provisions of the UPL did not satisfy the *Mullane–Jones* standard because the additional information available under Section 1531.5 was not available until *after* the property is received by the Controller.   Appellees correctly note that this Court's focus in *Taylor II* and *Taylor III* was on notice being provided by the Controller *before* the property was transferred to the State, that is, escheated, and therefore Section 1531.5 could not have been a deciding factor for the Court in *Taylor III*, as Appellants argue.

Furthermore, Section 1531.5 is permissive in that it allows state and local agencies to furnish records "upon the request of the Controller," but it does not mandate that the Controller request such records.   Cal. Civ. Proc. Code § 1531.5(c)(1).   It seems clear that the purpose of this provision is to permit the agencies to disclose personal information that would be non-disclosable in the absence of this statutory waiver.   Rather than a mandate that the Controller use the agencies' databases, Section 1531.5 provides legal cover for the agencies' disclosure of such personal information should the Controller opt to request it.

Therefore, Appellants' argument that the Controller does not meet the *Mullane-Jones* standard because she fails

---

[8]  Moreover, at oral argument Appellants' counsel conceded that Section 1531.5 does not apply pre-escheat.

to utilize data made available by Section 1531.5 is without merit as it is based upon a misinterpretation of the statute. Moreover, in trying to provide pre-escheat notice to owners of unclaimed property, the Controller does take "additional reasonable steps to notify [the owners], if practicable to do so." *Jones*, 547 U.S. at 234.  If provided with a Social Security number, the Controller utilizes the Franchise Tax Board's database to determine if there is a more current address.   The Controller also provides notice in the newspaper to explain to the public generally that it is holding properties that may belong to the readers.  Finally, the Controller maintains a searchable website where individuals can determine whether they are the owners of unclaimed property, and if so, can submit a claim form.

Appellants' suggested requirement that the Controller utilize additional governmental databases may, of course, lead to more claims being filed, but it exceeds the minimum due process requirements.  Indeed, as indicated above, the property owner in *Jones* argued that Arkansas' Commissioner of State Lands "should have searched for [his] new address in the Little Rock phonebook and other government records such as income tax rolls." *Id.* at 235–36.  However, the Supreme Court "[did] not believe the government was required to go this far." *Id.* at 236. Likewise here, the Controller is not required, either by the Due Process Clause or Section 1531.5, to go as far as Appellants suggest.[9]

---

[9] Appellants take issue with the Controller's use of the Franchise Tax Board database, arguing that

## C. Appellants' Additional Arguments

The Court also rejects Appellants' additional argument related to the Controller's use of related companies to administer the UPL. This argument is not supported by law or the alleged facts. The cases cited by Appellants are inapposite because here, the allegedly biased companies are not decision-makers and instead merely perform ministerial duties. Furthermore, Appellants do not sufficiently allege that the companies have failed to carry out the UPL's notice procedures.

---

[b]y using *only* the FTB database to notify owners of unclaimed property before their property is seized, the Controller purposely and by design fails to find current addresses of millions of Californians and other citizens who moved, permanently reside out-of-state, and may never even have set foot in California, but have deposited their earnings in bank accounts, bought securities, opened safety deposit boxes and otherwise invested and safeguarded their properties by depositing said assets with banks, corporations, and financial institutions that [have] offices in California.

(Sec. Am. Compl. ¶ 70). Yet, when ruling the law constitutional, this Court was obviously aware that in sending pre-escheat notices, the Controller would utilize the last known address provided by the holders or alternative addresses from the FTB database. Moreover, Appellants' argument undercuts their other argument that the Controller should be utilizing other databases, such as California's Department of Motor Vehicles, to locate property owners. Those who simply maintained their assets in California banks and permanently reside out-of-state, such as Plaintiff Chris Lusby Taylor, likely do not have California driver's licenses and would therefore likely not appear in a California DMV database.

Appellants' challenge to the Controller's post-escheat procedure is not ripe because the Appellants failed to challenge the Controller's action—or inaction—in superior court as required by Section 1541 and Appellants do not appeal the district court's determination that the post-escheat procedure provided by the UPL is reasonable. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985); *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004) (citing *Williamson*, 483 U.S. at 186)).[10]

## V.  CONCLUSION

For these reasons, this Court **AFFIRMS** the district court's ruling.

---

[10] Even if adequately raised, Appellants' argument regarding the Controller's post-escheat procedure is without merit.  The UPL provides that within ninety days after the Controller's denial of a claim, an individual aggrieved by the Controller's decision may seek review in state court.  *See* Cal. Civ. Proc. Code § 1541.  The ninety day limitation is not inherently unreasonable.  Indeed, ninety days is the same period in which a plaintiff must bring suit for discrimination under Title VII after the EEOC has issued its right to sue letter.  *See* 42 U.S.C. § 2000e-5(f)(1).  Moreover, any claim that the limitation period is unconstitutional is foreclosed by our prior decision holding the UPL facially constitutional.  *See Taylor III*, 525 F.3d at 1289.